LAURA R. RAMOS (SBN CA 186326)
lramos@selmanlaw.com
LAUREN A. EDSON (SBN CA 344089)
ledson@selmanlaw.com
SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
10880 Wilshire Blvd., Suite 1200
Los Angeles, CA 90024
Telephone: 310.445.0800

Attorneys for Defendant,
SENTRY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESCO INSURANCE COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SENTRY INSURANCE COMPANY, formerly known as Sentry Insurance a Mutual Company, a Wisconsin Corporation,<br><br>Defendant. | Case No. 3:25-cv-07584-TSH<br><br>SENTRY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS<br><br>[Filed with Request for Judicial Notice; Declaration; Proposed Order]<br><br>Date: December 4, 2025<br>Time:   10:00 a.m.<br>Courtroom:  E |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 4, 2025, at 10:00 a.m., in Courtroom E of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant, SENTRY INSURANCE COMPANY ("Sentry") will, and hereby does, move the Court to dismiss the Complaint by WESCO INSURANCE COMPANY ("Wesco") in its entirety.

This motion is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to state a claim for relief. Plaintiff has failed to state a claim for subrogation against Sentry as Plaintiff cannot meet the elements of subrogation as a matter of law as follows:

4922-2773-2083

- Plaintiff cannot allege that the settlement giving rise to this action was a loss for which it was not primarily liable;

- Plaintiff cannot allege that it compensated the insured for losses for which Sentry was primarily liable.

- Plaintiff cannot establish that it holds an existing and assignable cause of action against Sentry because the insured suffered no damages.

- Plaintiff cannot establish that it holds an existing and assignable cause of action because Sentry did not act in bad faith as the settlement offer was not reasonable under California law.

- Plaintiff cannot establish that it holds an existing and assignable cause of action against Sentry because Sentry is not bound by the settlement reached without its participation or consent as the defending insurer.

- The Sentry policy's No-Voluntary Payments provision applies to preclude any coverage obligation for the settlement on Sentry's part.

- The Sentry policy's No Action clause applies to preclude any coverage obligation for the settlement on Sentry's part.

- The equities are in Sentry's favor as the defending insurer where the settlement was entered without its participation or consent.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings and papers filed in this action thus far, and on any and all further evidence that may be presented at or before the hearing on this motion.

DATED: October 15, 2025  SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP


By: /s/ Laura R. Ramos

  LAURA R. RAMOS
  LAUREN A. EDSON
  Attorneys for Defendant,
  SENTRY INSURANCE COMPANY

2

NOTICE OF MOTION AND MOTION TO DISMISS

4922-2773-2083

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**

I       INTRODUCTION .................................................................................... 1

II      STANDARD FOR RULING ON MOTION TO DISMISS......................... 2

III     FACTUAL BACKGROUND................................................................... 3

    A.      The Underlying Action........................................................... 3

    B.      The Sentry Policy ................................................................. 4

    C.      Wesco Agrees To Pay A Settlement Without Sentry's Consent.......... 7

IV      LEGAL ARGUMENT ........................................................................... 8

    A.      Wesco Cannot State A Claim For Subrogation................................... 8

    B.      Wesco Cannot Meet The Elements of Subrogation As Wesco Was Primarily Responsible for the Liability Settled................................. 9

    C.      Taylor Houseman Lacks an Existing and Assignable Cause of Action Against Sentry And Therefore Wesco Has No Claim............ 12

    D.      Wesco Cannot State A Claim For Bad Faith As A Matter Of Law ... 16

    E.      Sentry Is Not Bound By the Settlement Entered Without Its Participation.................................................................................. 18

    F.      The Equities Favor Sentry ................................................................ 20

V       THE COURT SHOULD DENY LEAVE TO AMEND ............................ 21

NOTICE OF MOTION AND MOTION TO DISMISS

4922-2773-2083

# TABLE OF AUTHORITIES

**Cases**                                                                               **Page(s)**

*21st Century Ins. Co. v. Superior Court*
(2015) 240 Cal.App.4th 322 ................................................................................ 19

*Albrecht v. Lund*
(1988) 845 9th Cir. F.2d 193 .............................................................................. 21

*Amato v. Mercury Casualty Co.*
(1997) 53 Cal.App.4th 825 ................................................................................ 15

*Ashcroft v. Iqbal*
(2009) 556 U.S. 662 ............................................................................................ 2

*Balistreri v. Pacifica Police Dept.*
(9th Cir. 1990) 901 F.2d 696 .............................................................................. 2

*Bell Atlantic Corp. v. Twombly*
(2007) 550 U.S. 544 ............................................................................................ 2

*Bramalea California, Inc. v. Reliable Interiors, Inc.*
(2004) 119 Cal.App.4th 468 .............................................................................. 12

*Capital Specialty Ins. Corp. v. GEICO Ins. Co.*
(C.D Cal. 2021) 562 F.Supp.3d 563 ................................................................. 16

*Ceresino v. Fire Ins. Exchange*
(1989) 215 Cal.App.3d 814 ................................................................................ 14

*Davis v. HSBC Bank Nevada, N.A.*
(9th Cir 2012) 691 F.3d 1152 .............................................................................. 3

*Donahue Constr. Co. v. Transport Indem. Co.*
(1970) 7 Cal.App.3d 291 .................................................................................... 14

*Doser v. Middlesex Mutual Ins. Co.*
(1980) 101 Cal.App.3d 883 ................................................................................ 19

*Emerald Bay Community Ass'n v. Golden Eagle Ins. Corp.*
(2005) 130 Cal.App.4th 1078 ...................................................................... 13, 14

*Executive Risk Specialty Ins. Co. v. Rutter Hobbs and Davidoff, Inc.*
(C.D. Cal. 2012) 2012 WL 12878754 ................................................................ 17

ii

4922-2773-2083

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

*Finkelstein v. 20th Century Ins. Co.*
(1992) 11 Cal.App.4th 926 ...................................................................... 15

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*
(1998) 65 Cal.App.4th 1279 ........................................................... 8, 9, 14

*Graciano v. Mercury General Corp.*
(2014) 231 Cal.App.4th 414 .................................................................... 16

*Hamilton v. Maryland Cas. Co.*
(2002) 27 Cal.4th 718 ............................................................................. 19

*Howard v. American Nat. Fire Ins. Co.*
(2010) 187 Cal.App.4th 498 .................................................................... 15

*Interstate Fire & Casualty Ins. Co. v. Cleveland Wrecking Co.*
(2010) 182 Cal.App.4th 23 ........................................................................ 9

*Jamestown Builders, Inc. v. General Star Indem. Co.*
(1999) 77 Cal.App.4th 341 ...................................................................... 20

*Knievel v. ESPN*
(9th Cir. 2005) 393 F.3d 1068.................................................................... 3

*Lehto v. Allstate Ins. Co.*
(1994) 31 Cal.App.4th 60 ........................................................................ 17

*Love v. Fire Ins. Exchange*
(1990) 221 Cal.App.3d 1136..................................................................... 12

*Low v. Golden Eagle Ins. Co.*
(2003) 110 Cal.App.4th 1532 .................................................................. 20

*Maryland Cas. Co. v. Nationwide Mutual Ins. Co.*
(2000) 81 Cal.App.4th 1082 .............................................................. 10, 11

*Papasan v. Allain*
(1986) 478 U.S. 265 ................................................................................... 3

*Presley Homes, Inc. v. American States Ins. Co.*
(2001) 90 Cal.App.4th 571 ...................................................................... 18

*Pulte Home Corp. v. CBR Electric, Inc.*
(2020) 50 Cal.App.5th 216 ...................................................................... 21

NOTICE OF MOTION AND MOTION TO DISMISS
4922-2773-2083

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

*Reddy v. Litton Industries, Inc.*
(9th Cir. 1990) 912 F.2d 291 ................................................................................ 22

*Reliance Nat. Indem. Co. v. Gen. Star Indem. Co.*
(1999) 72 Cal.App.4th 1063 ................................................................................. 10

*Residence Mut. Ins. Co. v. Travelers Indem. Co. of Connecticut*
(C.D. Cal. 2014) 26 F.Supp.3d 965 ...................................................................... 10

*Ringler Inc. v. Maryland Casualty Co.*
(2000) 80 Cal.App.4th 1165 ........................................................................... 13, 14

*RLI Ins. Co. v. CNA Casualty of California*
(2006) 141 Cal.App.4th 75 ............................................................................. 14, 15

*Safeco Ins. Co. v. Superior Court*
(1999) 71 Cal.App.4th 782 ............................................................................. 18, 19

*Schwartz v. State Farm Fire and Cas. Co.*
(2001) 88 Cal.App.4th 1329 ................................................................................. 17

*Shell Oil Co. v. Nat'l Union Fire Ins. Co.*
(1996) 44 Cal.App.4th 1633 ................................................................................. 17

*Strauss v. Farmers Ins. Exch.*
(1994) 26 Cal.App.4th 1017 ................................................................................. 17

*Swanson v. State Farm General Ins. Co.*
(2013) 219 Cal.App.4th 1153 ............................................................................... 18

*Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania*
(2007) 148 Cal.App.4th 1296 ......................................................................... 11, 21

*Truck Ins. Exchange v. Unigard Ins. Co.*
(2000) 79 Cal.App.4th 966 ................................................................................... 18

*United States v. Ritchie*
(9th Cir. 2003) 342 F.3d 903 ................................................................................. 3

*Van Buskirk v. Cable News Network, Inc.*
(9th Cir. 2002) 284 F.3d 977 ................................................................................. 3

*Walbrook Ins. Co. v. Liberty Mutual Ins. Co.*
(1992) 5 Cal.App.4th 1445 ................................................................................... 18

iv
NOTICE OF MOTION AND MOTION TO DISMISS

4922-2773-2083

*Waller v. Truck Ins. Exch., Inc.*
(1995) 11 Cal.4th 1 .................................................................................... 12

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

NOTICE OF MOTION AND MOTION TO DISMISS

4922-2773-2083

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I    INTRODUCTION

This is an insurance coverage suit between two insurers. Wesco seeks reimbursement for indemnity it paid to settle an Underlying Action, *infra*; yet Wesco has failed to state a claim against Sentry, and this complaint should be dismissed. The Underlying Action involved bodily injury from the use of a commercial washing machine manufactured by Alliance, and sold by and serviced by Taylor Houseman. Wesco is Taylor Housman's primary insurer and Sentry is Alliance's primary insurer. Each insurer provided primary insurance coverage to Taylor Houseman - Wesco as its direct carrier and Sentry as its additional insured carrier. Sentry also defended its named insured, Alliance, and also agreed to defend Taylor Houseman as an additional insured pursuant to a reservation of rights. Wesco did not provide a defense to Taylor Houseman. Sentry's additional insured coverage did not apply to Taylor Houseman's independent negligence pursuant to the Sentry policy's express terms. The Wesco policy did apply to Taylor Houseman's independent negligence. Although Wesco was not defending the Underlying Action, it choose to use its limit to settle the claim as to Taylor Houseman only, without Sentry's agreement or consent. Wesco now asks this Court for reimbursement, on equitable subrogation grounds, of settlement amounts it unilaterally paid to cover its primary exposure for its named insured. Wesco's claims fail as a matter of law.

Each of Wesco's equitable subrogation claims fail because Wesco fails to establish the necessary elements of the causes of action. First, Wesco cannot prove that Sentry had the primary obligation for the settlement given that the Sentry policy did not indemnify for Taylor Houseman's independent negligence, whereas the Wesco policy did cover such negligence on a primary basis. Further, Wesco cannot establish that Taylor Houseman held an existing and assignable cause of action against Sentry which is required for subrogation. In this regard, plaintiff cannot establish that Taylor Houseman suffered any damages as Taylor Houseman was fully

1

MOTION TO DISMISS

4922-2773-2083

defended and indemnified in the Underlying Action. Moreover, Sentry cannot be bound by the settlement because it was entered without its consent where Sentry was the defending carrier and Wesco was not, and the settlement was not reasonable as to Sentry and its obligations under California law because the settlement did not resolve the Underlying Action as to Sentry's named insured, Alliance.

Sentry respectfully requests this Court grant its motion to dismiss based on Wesco's failure to state a claim upon which relief can be granted. Wesco should not be permitted to gain a windfall by securing reimbursement of settlement amounts covered under its primary policy, which are not covered under the Sentry policy, where it reached the settlement without the consent of Sentry, as the defending insurer, and where Wesco otherwise failed to participate in Wesco's named insured's defense. Sentry should not be punished for fulfilling its contractual obligations to both of its insureds for this claim, while Wesco breached its obligation. Sentry had the exclusive right to control the defense and settlement of the claim and Wesco obtains no rights against Sentry in subrogation for its voluntary and unilateral payment on behalf of its own named insured.

## II    STANDARD FOR RULING ON MOTION TO DISMISS

A court may dismiss an action for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dept.* (9th Cir. 1990) 901 F.2d 696, 699. "Two survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678. "The factual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 556-557. On a motion to dismiss, while courts must take all factual allegations as true, courts are not bound to accept as true a legal conclusion couched as a factual

2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

4922-2773-2083

allegation. *Papasan v. Allain* (1986) 478 U.S. 265, 286 (holding that for purposes of a Rule 12 motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but its] not bound to accept as true a legal conclusion couched as a factual allegation.")

In deciding this Rule 12(b)(6) motion, the Court may consider the complaint itself, as well as documents incorporated by reference upon which plaintiff's claims rely, here such other documents include  pleadings in the Underlying Action and insurance policies. See, *Knievel v. ESPN* (9th Cir. 2005) 393 F.3d 1068, 1076 (the "incorporation by reference" doctrine allows courts to consider documents on which "the plaintiff's claims depends" and documents "whose contents are alleged in a complaint"). Under the incorporation by reference doctrine, "a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Van Buskirk v. Cable News Network, Inc.* (9th Cir. 2002) 284 F.3d 977, 980. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim." *United States v. Ritchie* (9th Cir. 2003) 342 F.3d 903, 907-908; *Davis v. HSBC Bank Nevada, N.A.* (9th Cir. 2012) 691 F.3d 1152, 1160 (courts may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading). Sentry filed with this motion the Sentry policy, the Wesco policy, the Underlying Action complaint, and the judgment pursuant to Code of Civil Procedure § 998 offer in the Underlying Action, as the documents which form the basis for Wesco's claims in this action. Sentry's Request For Judicial Notice ("RJN"), ¶¶ 1-4, Exhibits A – D.

## III   FACTUAL BACKGROUND

### A.   The Underlying Action

As alleged in this instant action (referred to as the "Coverage Complaint"), this matter arises from the suit *Hutson v. Taylor Houseman*, *et al.,* Contra Costa Superior

3

4922-2773-2083

Court Case No. CIV MSC21-01940 ("Underlying Action.") (Coverage Complaint, ¶5; Request for Judicial Notice ("RJN"), Exhibit C.). The Underlying Action involves product liability and negligence claims related to a commercial washing machine manufactured by Alliance and sold and maintained by Taylor Houseman. (Underlying Action at ¶¶ 3,4 (RJN, Exhibit C).) The claims against Taylor Houseman allege, among other things, that Taylor Houseman sold the washing machine and entered into a contract to service and repair the washing machine with the owner, and that Taylor Houseman was negligent in its maintenance, inspection, and servicing of the subject washing machine. (Underlying Action, ¶¶5-6, 78-81, 98-109 (RJN, Exhibit C).) The underlying injury occurred when a worker's arm was caught in the washing machine while it was spinning. (Underlying Action, ¶ 1 (RJN, Exhibit C).)

### B.    The Sentry Policy

Sentry issued Policy No. 90-05297-03 to Alliance Laundry Systems, LLC ("Alliance") as the named insured. (Coverage Complaint, ¶7; Sentry Policy (RJN, Exhibit A.) As applicable to the Underlying Action, the policy provides a $2 million Products-Completed Operations Aggregate limit. (Coverage Complaint, ¶7; Sentry Policy, RJN, Exhibit A, page 5.) Sentry agreed to defend its named insured Alliance in the Underlying Action. Sentry also agreed to participate in Taylor Houseman's defense pursuant to a reservation of rights, and retained counsel to represent Taylor Houseman. (Coverage Complaint, ¶ 12.) Sentry accepted Taylor Houseman's defense under a reservation of rights pursuant to the Sentry policy's Additional Insured – Vendors endorsement, which provides as follows:

**ADDITIONAL INSURED – VENDORS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SCHEDULE**

**Name of Person or Organization (Vendor):**

4

4922-2773-2083

ALL VENDORS OF YOUR PRODUCTS DOMICILED IN THE UNITED STATES OF AMERICA OR CANADA

**Your Products:**

ALL PRODUCTS

**WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization (referred to below as "vendor") shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional provisions:

1.    The insurance afforded the vendor does not apply to:

**a.**    "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.**    Any express warranty unauthorized by you;

**c.**    Any physical or chemical change in the product made intentionally by the vendor;

**d.**    Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**e.**    Any failure to make inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**f.**    Demonstration, installation, servicing or repair operations,

5

4922-2773-2083

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

except such operations performed at the vendor's premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products. (Emphasis added.)

(Coverage Complaint, ¶ 8; Sentry policy, (RJN, Exhibit A, page 28-29.)

The Additional Insured endorsement specifically provides that the Sentry policy does not apply to several specific risks including failures related to product inspections and liability for installation, servicing or repair operations. (Sentry Policy (RJN, Exhibit A, page 28-29.) Sentry agreed to defend Taylor Housman in the Underlying Action pursuant to the terms of the Sentry policy and reserved the right to deny coverage for the independent negligence claims alleged against Taylor Houseman as such claims fell plainly within the indemnity carve-out set forth in the Additional Insured endorsement.

The Sentry policy also includes the following provisions contained in Section IV – Commercial General Liability Conditions:

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**…**

2. Duties In The Event of Occurrence, Offense, Claim Or Suit

…

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expenses, other than for first aid, without our consent.

6

4922-2773-2083

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3.  Legal Action Against Us

No person or organization has a right under this Coverage Part:

a.  To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.  To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Sentry Policy (RJN,  Exhibit A, page 18)

C.    **Wesco Agrees To Pay A Settlement Without Sentry's Consent**

The plaintiff in the Underlying Action issued a CCP 998 Offer to Compromise for $1,999,9999 which was directed to Taylor Houseman only.  (Judgment and Plaintiff's Offer to Compromise, RJN, Exhibit D, page 3.)  By its terms, the acceptance of this 998 Offer did not offer to resolve any claims as to Sentry's named insured, Alliance. (Coverage Complaint, ¶16; Judgment and 998 Offer (RJN, Exhibit D, page 3).) As discussed further below, Sentry could not use its limits to accept this 998 Offer as to one of its insureds (Taylor Houseman) when it would leave none of its limits to resolve the claim as to Sentry's named insured (Alliance.)   On August 12, 2025, Taylor Houseman accepted the underlying claimant's 998 Offer, without Sentry's consent. (Coverage Complaint, ¶24; Judgment and 998 Offer (RJN, Exhibit D, page 4).) Wesco funded part of this agreed to Judgment from its primary insurance limit. (Coverage Complaint, ¶¶ 23-24.)  In addition, the 998 Offer was also for an

7

4922-2773-2083

amount more than the Sentry policy's remaining Products-Completed Operations Aggregate limit, which had been reduced by payment of prior claims. (Coverage Complaint, ¶¶ 16, 20-21.) Wesco paid to settle its named insured's independent liability which Sentry never covered and also Wesco paid as a volunteer and therefore cannot obtain reimbursement from Sentry based in subrogation.

## IV    LEGAL ARGUMENT

### A.    Wesco Cannot State A Claim For Subrogation

Wesco's complaint sounds solely in subrogation; however, Wesco does not meet the requirements for such a claim. Under California law subrogation is the "substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.* (1998) 65 Cal.App.4th 1279, 1291. In the insurance context, "subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid." *Id.* at 1291-1292. The court in *Fireman's Fund*, set forth the following "essential elements" of an insurer's cause of action for equitable subrogation:

(a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer;

(b) the claimed loss was one for which the insurer was *not* primarily liable;

(c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable;

(d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer;

(e) the insured has an existing, assignable cause of action against the

MOTION TO DISMISS

4922-2773-2083

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

defendant for which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer;

(f) the insurer has suffered damages caused by that act or omission upon which the liability of the defendant depends;

(g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and

(h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*Fireman's Fund*, *supra*, 65 Cal.App.4th at 1292.

The subrogated insurer "stands in the shoes" of the insured, "because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights and may claim no rights which the insured does not have." *Id*. at 1292-1293; *Interstate Fire & Casualty Ins. Co. v. Cleveland Wrecking Co.* (2010) 182 Cal.App.4th 23, 32 (holding that that a subrogated insurer "cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have.")

### B.   <u>Wesco Cannot Meet The Elements of Subrogation As Wesco Was Primarily Responsible for the Liability Settled</u>

The principal defect in the complaint is the inability to allege that Wesco paid for losses for which it was *not* primarily liable, and that it had compensated the insured for losses for which Sentry *was* primarily liable. The Wesco policy provides primary coverage to Taylor Houseman for its business operations (see, Wesco Policy, RJN <u>Exhibit B</u>), and was the only insurance policy with potential coverage for the independent negligence claims alleged against Taylor Houseman in the Underlying Action. As set forth above, the Sentry policy specifically provides that the additional insured coverage <u>does not apply</u> to the independent negligence claims alleged against

9

4922-2773-2083

Selman Leichenger Edson Hsu Newman & Moore LLP
ATTORNEYS AT LAW

Taylor Houseman.  Sentry Policy (RJN, ¶ 1, Exhibit A, pages. 28-29.)

Wesco erroneously characterizes its policy as "excess coverage" based on the Wesco policy's "other insurance" provision.   (Coverage Complaint, ¶¶ 9-10.) California courts, however, hold that the "inclusion of an 'other insurance' clause in an otherwise primary policy will not convert a primary policy into 'true' excess coverage." *Residence Mut. Ins. Co. v. Travelers Indem. Co. of Connecticut* (C.D. Cal. 2014) 26 F.Supp.3d 965, 973 (emphasis added.) Wesco tacitly admits its policy provides primary coverage based on its reliance on the "other insurance" provision as an "'other insurance' clause dispute cannot arise between a truly excess carrier and a primary carrier, but only between insurers on the same level." *Reliance Nat. Indem. Co. v. Gen. Star Indem. Co.* (1999) 72 Cal.App.4th 1063, 1077 (emphasis added.)

In *Maryland Cas. Co. v. Nationwide Mutual Ins. Co.* (2000) 81 Cal.App.4th 1082, the court addressed a coverage dispute between insurers in a construction defect action. The dispute centered on coverage for a general contractor that was a named insured under policies issued by Maryland and National Union, and was also an additional insured under subcontractors' policies issued by Nationwide. Maryland and National Union provided a defense while Nationwide did not. *Id.* at 1087. The relevant Additional Insured endorsement provided that the subcontractors' policy coverage was primary, but that the policy did not apply to the general contractor's independent negligence. *Id*. at 1086-1087. Based on this fact, the court held that each insurer had a primary coverage obligation:

> "The critical point is that [the insurers] had parallel 'complete' duties to defend. Nationwide had a duty to defend [general contractor] because there was a potential [general contractor] would be vicariously liable for [subcontractor's] alleged negligence. Likewise, Maryland and National Union had a duty to defend [general contractor] because there was a potential [general contractor] would be liable for its own negligence." *Id*. at 1091.

10

MOTION TO DISMISS

4922-2773-2083

The court rejected the general contractor's insurers' argument that its policy was "excess" based such that it was subrogated to its insured's rights against the subcontractor insurers. The court noted that such standards were "inapplicable here where we are dealing only with carriers that are primary carriers with respect to certain obligations and excess and primary as to others." *Id*. at 1093. The court further clarified:

> "An excess policy is one where no insurance obligation or defense duty attaches until the insurance limits for an underlying policy are exhausted. Respondents' policies remained primary policies with respect to [general contractor's] own negligence, creating an immediate obligation to defend." *Id*.

The court held that the "policies issued by the contractor's insurers remained primary policies with respect to the contractor's own negligence, creating an immediate obligation to defend." *Id*. at 1083.   As applied here, this means that the Wesco policy remained primary as to Taylor Houseman's own negligence.

The court in *Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania* (2007) 148 Cal.App.4th 1296 reached a similar holding. There, the court addressed a coverage dispute between two insurers, CNA which defended a party as an additional insured and ISOP which provided direct coverage for that same party as named insured. The CNA policies included Additional Insured endorsements which stated the coverage did not apply to the additional insured's own negligence (again, like the one in the Sentry policy.) The court held that the ISOP policies were not excess but rather, primarily liable for the independent negligence of its own named insured. The court held that the carrier that provided additional insured coverage, there  CNA, (and here Sentry) was <u>not</u> primarily liable for liability incurred for the additional insured's own negligence.  *Id*. at 1308.  The court held that the direct carrier for that entity, there the ISOP policy (and here the Wesco policy) remained the primary policy for the liability of its named insured.

11

4922-2773-2083

Therefore here, Wesco remained primarily liable for the negligence claims asserted against Taylor Houseman. Sentry had no indemnity obligation with respect to such damages pursuant to the applicable Additional Insured endorsement which excluded such liability. Accordingly, Wesco cannot prove the essential element of its claims *i.e.* that it *was not* primarily liable for the independent negligence claim against Taylor Houseman.

**C.** **Taylor Houseman Lacks an Existing and Assignable Cause of Action Against Sentry And Therefore Wesco Has No Claim**

Wesco's equitable subrogation claim also fails because Taylor Houseman lacks an existing, assignable cause of action against Sentry.

Wesco asserts that it is subrogated to the rights of Taylor Houseman, but Taylor Houseman has no claim against Sentry, and therefore neither does Wesco. To support an action at law for breach of contract and bad faith, the Taylor Houseman must be able to show it has suffered damages. *Bramalea California, Inc. v. Reliable Interiors, Inc.* (2004) 119 Cal.App.4th 468, 473 ("A breach of contract is not actionable without damage.") The present action fails, as a matter of law, because Wesco cannot establish that Taylor Houseman suffered any damages due to Sentry's alleged breach. Wesco admits that Sentry defended Taylor Houseman and that Taylor Houseman's other insurers, Wesco, funded the settlement amount for Taylor Houseman. (Coverage Complaint, ¶¶ 12, 23-26.) As Wesco's breach of contract claim fails, so does its other claim against Sentry for bad faith, as a bad faith claim cannot be maintained unless there has been a breach of contract. *Waller v. Truck Ins. Exch., Inc.* (1995) 11 Cal.4th 1, 35 (holding that an insurer cannot be liable for bad faith absent breach of contract); *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1153 (concluding that "a bad faith claim cannot be maintained unless policy benefits are due").

Claims for breach of contract against an insurer when the insured had already been defended and indemnified by other carriers have been addressed and rejected by several courts including by the court in *Emerald Bay Community Ass'n v. Golden*

12

MOTION TO DISMISS

*Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078. As discussed herein, *Emerald Bay* and other decisions hold that an insured whose defense and settlement costs were paid by one insurer, as is the case here, has no claim for breach of contract and bad faith against another non-participating insurer. In *Emerald Bay*, the insured sued one of its insurers for breach of contract and bad faith after having been fully defended and indemnified by another carrier. The trial court held that because the insured was fully defended and indemnified in the underlying action by another insurer, that the insured's breach of contract and bad faith claims failed against the non-participating insurer. *Id*. at 1085. The appellate court affirmed:

> The fact that several insurance policies may cover the same risk does not increase the insured's right to recover for the loss, or give the insured the right to recover more than once. Rather, the insured's right of recovery is restricted to the actual amount of the loss. Hence, where there are several policies of insurance on the same risk and the insured has recovered the full amount of its loss from one or more, but not all, of the insurance carriers, the insured has no further rights against the insurers who have not contributed to its recovery. Similarly, the liability of the remaining insurers to the insured ceases, even if they have done nothing to indemnify or defend the insured. *Id*. at 1090 [citation omitted].

The *Emerald Bay* court held that because the insured was fully defended and indemnified "plaintiff cannot show it suffered any contract damages." *Id*. at 1088-1089. The same is true here given that Sentry fully defended Taylor Houseman and its other direct insurers, including Wesco, funded the settlement amount within available limits. Therefore, Wesco has failed to show that Taylor Houseman had an assignable claim to which Wesco could be subrogated.

Similarly, in *Ringler Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, the court held an insured's claims for breach of contract and bad faith failed as

13

4922-2773-2083

a matter of law where the insured's interests were adequately protected by other insurers. In *Ringler*, an insured was sued, and multiple insurers defended the insured. One insurer withdrew from the defense and refused to contribute to settlement. The insured sued that non-participating insurer and the trial court granted the insurer's summary judgment motion. The court held that even if the insurer had breached its duties under the policy, the insured could still not state a claim against the insurer as no damages had arisen out of the alleged breach where, as here, the insured was fully defended and indemnified by other insurers. *Id*. at 1187. The *Emerald Bay* court cited to *Ringler* in recognizing that California law does not permit an insured to recover damages for breach of contract where the insured suffered no liability, was not compelled or unable to defend itself and was fully protected from having to pay any costs of its own. *Emerald Bay*, *supra*, 130 Cal.App.4th at 1089-1090, citing *Ringler*, *supra*, 80 Cal.App.4th at 1187-1188. This is the exact situation here.

There is a long list of other relevant California authority which is in accord with the holdings in *Emerald Bay* and *Ringler*, which hold that an insured who has been fully defended and indemnified by one insurer cannot state causes of action for breach of contract or bad faith against a non-defending insurer. *See, e.g., Fireman's Fund*, *supra*, 65 Cal.App.4th at 1295 (finding that other insurers have no liability to an insured once a single insurer fully defends and indemnifies the insured); *Ceresino v. Fire Ins. Exchange* (1989) 215 Cal.App.3d 814, 823 (holding that insurer did not breach duty to defend where, *inter alia*, the action was fully defended by other insurer); *Donahue Constr. Co. v. Transport Indem. Co.* (1970) 7 Cal.App.3d 291, 303-304 (affirming trial court's entry of judgment in favor of insurer on bad faith claim where insured was fully defended by another insurer.)

In addition to the foregoing, California courts also hold that a primary insurer's alleged wrongful refusal to settle is not actionable by the insured, or a subrogated excess insurer, absent an excess judgment entered against the insured. *RLI Ins. Co. v. CNA Casualty of California* (2006) 141 Cal.App.4th 75. In *RLI*, the insured's excess

14

4922-2773-2083

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

insurer sued for equitable subrogation to recover amounts spent in settlement of the underlying action after the primary insurer allegedly rejected a settlement offer within the primary limits. The appellate court affirmed the trial court order granting the primary carrier's motion for judgment on the pleadings holding that "[w]ithout an excess judgment, the primary insurer's refusal to settle is not actionable." *Id*. at 82. The court recognized that a true excess carrier's subrogation rights were purely derivative, such that the focus is on "whether the insured has a claim to assert against the primary insurer." *Id*. at 81. In holding for the primary insurer, the *RLI* court stated:

> "The subrogation complaint in this case alleges that the [underlying action] settled. Missing from the complaint is the critical allegation that an excess judgment was entered against [the insured] in the [underlying action]. Because there is not an excess judgment, [the insured] suffered no harm, and has no claim to assert against the primary insurer. As a result, the excess insurer has no claim to assert against the primary insurer because the subrogation rights of the excess insurer are co-equal to and derivative of the rights of the insured. The excess insurer cannot sue the primary insurer for failure to settle within the limits of the primary insurer's policy, absent an excess judgment against the insured." *Id*. at 82-83 [citation omitted].

California authorities hold that the insured must suffer actual harm to state causes of action for breach of contract and bad faith. *See, e.g., Howard v. American Nat. Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 522 (holding that an insurer's wrongful refusal to settle left the insured with significant personal liabilities); *Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 834 (insured was compelled to defend itself, could not do so, and suffered default as a result); *Finkelstein v. 20th Century Ins. Co.* (1992) 11 Cal.App.4th 926, 928 (insured subjected to liability in excess of policy limits). None of these circumstances are present here as Sentry fully defended Taylor Houseman, no excess judgment was entered, and Taylor Houseman

15

4922-2773-2083

was not forced to pay any amounts in indemnity.   Wesco therefore has no claim to be subrogated to.

### D.    Wesco Cannot State A Claim For Bad Faith As A Matter Of Law

Wesco's proffered subrogated bad faith claim is premised on Sentry's alleged wrongful refusal to accept the underlying plaintiff's $1,999,999.00 offer to compromise pursuant to Code of Civil Procedure § 998. (Coverage Complaint ¶29.) Critically, the offer did not apply to Sentry's named insured as it was directed to only Taylor Houseman.  (See, Judgment and 998 Offer to Compromise, RJN, Exhibit D.) Therefore, Sentry was precluded to accepting the offer as a matter of law.

In *Graciano v. Mercury General Corp.* (2014) 231 Cal.App.4th 414, the court recognized that an "insured's claim for bad faith based on an alleged wrongful refusal to settle first requires proof the third party made a reasonable offer to settle the claims against the insured for an amount within the policy limits. The offer satisfies this first element if (1) its terms are clear enough to have created an enforceable contract resolving all claims had it been accepted by the insurer, (2) all of the third party claimants have joined in the demand, (3) it provides for a complete release of all insureds, and (4) the time provided for acceptance did not deprive the insurer of an adequate opportunity to investigate and evaluate its insured's exposure." *Id*. at 425. The issue of "reasonableness of an insurer's conduct" becomes a question of law when "there are no conflicting inferences, reasonable minds could not differ." *Capital Specialty Ins. Corp. v. GEICO Ins. Co.* (C.D. Cal. 2021) 562 F.Supp.3d 563, 571.

Here, there was no "reasonable" settlement offer providing the basis for a bad faith claim against Sentry. The statutory offer pursuant to § 998 did not provide for a complete release of all Sentry's insureds. (Judgment and 998 Offer, RJN Exhibit D.]  Therefore, Sentry's acceptance of the offer and use of Sentry's entire limit to settle one insured while leaving its own named insured in the line of fire would have itself constituted bad faith. The court in *Shell Oil Co. v. Nat'l Union Fire Ins. Co.*

16

4922-2773-2083

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

(1996) 44 Cal.App.4th 1633, 1647 held that the "disbursement of [insurer's] entire policy limits to indemnify [one insured] did not discharge [insurer's] policy obligations to [co-insured] <u>but rather constituted an actionable breach of those duties.</u>" (emphasis added.) Sentry's acceptance of the 998 offer to settle the claim only as to Taylor Houseman would have been an act of bad faith as to Sentry's named insured.

Further, in *Strauss v. Farmers Ins. Exch.* (1994) 26 Cal.App.4th 1017, 1022, the court held that because the insurer "would have acted in bad faith by accepting the offer [that did not include a release of all insureds], it could not be held in bad faith for refusing it." Rather, the court stated that insurers act in good faith when they "reject a settlement offer that does not include a complete release of all its insureds." *Id.* at 1021. See also, *Schwartz v. State Farm Fire and Cas. Co.* (2001) 88 Cal.App.4th 1329, 1337-1338 (recognizing that an insurer favoring one insured over another breaches the covenant of good faith and fair dealing); *Executive Risk Specialty Ins. Co. v. Rutter Hobbs and Davidoff, Inc.* (C.D. Cal. 2012) 2012 WL 12878754, at *5 ("California does not recognize a 'first to settle' rule. In fact, the opposite is true. Under numerous California cases, an insurer may be liable on a claim for bad faith made by other insureds with competing claims if it pays the entire policy limit on behalf of fewer than all insureds."). Similarly, in *Lehto v. Allstate Ins. Co.* (1994) 31 Cal.App.4th 60, the court held an "insurer owes the duty of good faith and fair dealing to each of its insureds and cannot favor the interests of one insured over the other." *Id.* at 70.

Sentry was not in bad faith as a matter of law in not paying the 998 Offer, because accepting the settlement offer would not have released all of Sentry's insureds and because it was for an amount greater than Sentry's remaining aggregate policy limit [See Coverage Complaint, ¶¶ 20-21.] California law provides that an insurer has no duty to accept a settlement demand in excess of its policy limit. *Walbrook Ins. Co. v. Liberty Mutual Ins. Co.* (1992) 5 Cal.App.4th 1445, 1457-1458

17

4922-2773-2083

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

(stating that "the duty of good faith compels acceptance of a settlement offer only if the offer is *within* the insurer's policy limits")

Based on the foregoing, Taylor Houseman has no assignable cause of action for bad faith and therefore Wesco has no claim to subrogate to as against Sentry. Therefore, Wesco's has failed to plead an essential element of its claim.

**E.    Sentry Is Not Bound By the Settlement Entered Without Its Participation**

Wesco admits that Sentry accepted Taylor Houseman's defense of the Underlying Action.  (Coverage Complaint, ¶ 12.)    Sentry did so based on its obligations under California law requiring an insurer to defend an additional insured against the entire action if coverage is triggered, regardless of the limitations in the Additional Insured Endorsement. *Presley Homes, Inc. v. American States Ins. Co.* (2001) 90 Cal.App.4th 571, 575 ("It is settled that where an insurer has a duty to defend, the obligation generally applies to the entire action, even though the suit involves both covered and uncovered claims, or a single claim only partially covered by the policy.") There is also no dispute that Wesco paid the settlement without Sentry's consent while otherwise failing to contribute to the defense despite its primary exposure, as discussed above.

California law is clear that Sentry, as the defending insurer, had the right to control defense and settlement of the Underlying Action. *Swanson v. State Farm General Ins. Co.* (2013) 219 Cal.App.4th 1153, 1162 (holding that a defending insurer has the right to control defense and settlement); *Truck Ins. Exchange v. Unigard Ins. Co.* (2000) 79 Cal.App.4th 966, 977 (recognizing insurers accepting a defense "thereby gain control over the defense and settlement of the claim.") In *Safeco Ins. Co. v. Superior Court* (1999) 71 Cal.App.4th 782, the court noted that when "the insurer provides a defense to its insured, the insured has no right to interfere with the insurer's control of the defense, and a stipulated judgment between the insured and the injured claimant, without the consent of the insurer, is ineffective

18

to impose liability on the insurer." *Id*. at 787. Moreover, "neither the adequacy of the representation nor the effectiveness of the defense are relevant to the question whether the [insured] can enter into a binding settlement without the insurer's consent" and when "the insurer is providing a defense but merely refuses to settle, the insured has no immediate remedy. A cause of action for bad faith refusal to settle arises only after a judgment has been rendered in excess of the policy limits." *Id*. at 787-788.

In *Hamilton v. Maryland Cas. Co.* (2002) 27 Cal.4th 718, the California Supreme Court held a defending insurer was not bound by a judgment entered between its insured and the injured claimant without the insurer's consent. *Id*. at 730 ("[a] defending insurer cannot be bound by a settlement made without its participation and without any commitment on its insured's part to pay the judgment…"). The *Hamilton* court stated that such a settlement "carries no weight in the bad faith action" brought by the assignee of the insured's claims. *Id.* at 731; *21st Century Ins. Co. v. Superior Court* (2015) 240 Cal.App.4th 322, 327 (holding an insurer is not bound by a settlement reached without its participation). The *Hamilton* court held that even where an insurer fails to accept a reasonable opportunity to settle within policy limits, "where the insurer has accepted defense of the action, no trial has been held to determine the insured's liability, and a covenant not to execute excuses the insured from bearing any actual liability from the stipulated judgment, the entry of a stipulated judgment is insufficient to show, even rebuttably, that the insured has been injured to *any* extent by the failure to settle, much less in the amount of the stipulated judgment. *Id*. at 726. In such circumstances, the judgment entered without the insurer's consent "provides not reliable basis to establish damages resulting from a refusal to settle, an essential element of plaintiff's cause of action." *Id*.; see also, *Doser v. Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883, 891 (holding "[n]o legal liability was ever imposed as a result" of the alleged breach of the duty to settle where the insured stipulated to judgment

19

4922-2773-2083

without the insurer's participation or consent).

There is also no valid claim against Sentry because the settlement violated the policy's conditions regarding voluntary payments and Legal Action Against Us. Again, the Sentry policy states that no insured may voluntarily make a payment or assume any obligation without Sentry's consent. (Sentry policy (RJN, Exhibit A page 18.) Here, Taylor Houseman and Wesco settled the action without Sentry's consent, thus the voluntary payments provision and "no-action" clause apply to bar Wesco's claims. *Id*. at 787 (""Safeco indisputably provided a defense and, accordingly, had the right to control that defense and to decide on its own whether or not to settle. The [insured] had no authority to settle the matter without the consent of Safeco"). California courts enforce no voluntary payments provisions for post-tender settlement payments made by an insured. *Low v. Golden Eagle Ins. Co.* (2003) 110 Cal.App.4th 1532, 1546-1547 (holding an insured breached the policy's no voluntary payments provision via a post-tender settlement reached without insurer participation). The insurer is not required to prove prejudice. *Jamestown Builders, Inc. v. General Star Indem. Co.* (1999) 77 Cal.App.4th 341, 343-344 (holding "the rule requiring a showing of prejudice does not apply" in construing a no-voluntary payments provision).

California law supports that Sentry has no liability for a settlement made without its participation as the defending insurer. Moreover, such a settlement breaches the policy's voluntary payments and no-action provisions without a showing of prejudice. This Court should therefore grant Sentry's motion as no valid cause of action derives from the settlement and Wesco is otherwise barred from bringing this action based on Taylor Houseman's breach of the Sentry policy conditions.

## F.    The Equities Favor Sentry

The seventh required element for equitable subrogation asks "whether justice requires that the claimed loss 'be entirely shifted from the insurer to the defendant,

20

4922-2773-2083

whose equitable position is inferior to that of the insurer.'" *Pulte Home Corp. v. CBR Electric, Inc.* (2020) 50 Cal.App.5th 216, 235 [citation omitted]. The first factor in this analysis asks, "as between the parties to the subrogation action, which has the greater causal connection to the loss." *Id*. at 236. Here, Wesco stands in the shoes of Taylor Houseman, which has a greater connection to the loss as its alleged negligence is alleged to have caused the injury giving rise to the Underlying Action. *Id*. at 236-237 (stating the equities "tip slightly in [insurer's] favor because it had nothing to do with causing the plaintiff homeowners' property damage, whereas [insured's] work was at least alleged to have contributed to the damage…").

The final factor discussed by *Pulte* was "whether public policy should play a role in the fairness analysis." *Id*. at 238. The *Pulte* court held that "the better public policy is to reward the party that fulfilled its contractual responsibilities, rather than incentivize future breaches of the duty to defend." *Id*. at 239; *Transcontinental*, *supra*, 148 Cal.App.4th at 1309 ("An insurer that *breaches* its defense obligations to its insured should not gain a windfall at the expense of another insurer that *honors* them.") Here, Sentry fulfilled its contractual obligations by fully defending Taylor Houseman against the Underlying Action.   Wesco, in contrast, breached its obligations by failing to contribute to the defense despite its exposure for negligence liability.

This Court should not reward Wesco's inaction in not defending, and punish Sentry for fulfilling its contractual obligations. Moreover, Wesco paid the settlement without Sentry's consent in violation of its rights as the defending insurer; thus, to permit reimbursement in this case would frustrate the purpose of the policy's voluntary payments provision and no-action clause.

## V    THE COURT SHOULD DENY LEAVE TO AMEND

If a complaint is dismissed for failure to state a claim, leave to amend may be denied if amendment would be futile. *Albrecht v. Lund* (9th Cir. 1988) 845 F.2d 193, 195-196 (stating that "leave to amend may be denied, even if prior to a responsive

21

4922-2773-2083

pleading, if amendment of the complaint would be futile."). In determining whether amendment would be futile, a court should examine whether the complaint can be amended to cure the defect "without contradicting any of the allegations of the [operative] complaint." *Reddy v. Litton Industries, Inc.* (9th Cir. 1990) 912 F.2d 291, 296-297. While leave to amend is often liberally granted, "the amended complaint may only allege 'other facts consistent with the challenged pleading.'" *Id*. at 296-297 [citation omitted].

Here, Wesco is primarily liable for the settlement payment based on its primary coverage obligation regarding the independent negligence allegations as to its named insured Taylor Houseman. In addition, Sentry is otherwise not bound by the settlement which it could not accept as a matter of law and which was agreed to without its consent. Moreover, Taylor Houseman breached the policy through its settlement of this action, thus barring the current action against Sentry. As such, this Court should grant Sentry's motion to dismiss without leave to amend.

## VI.    CONCLUSION

Based on the foregoing, Sentry respectfully requests that this Court grant its motion to dismiss Wesco's Complaint in its entirety without leave to amend.


DATED: October 15, 2025        SELMAN LEICHENGER EDSON
                               HSU NEWMAN & MOORE LLP


                               By:    /s/ Laura R. Ramos
                                      LAURA R. RAMOS
                                      LAUREN A. EDSON
                                      Attorneys for Defendant,
                                      SENTRY INSURANCE COMPANY

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

22

MOTION TO DISMISS

4922-2773-2083