1
2
3
4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    WESCO INSURANCE COMPANY,              Case No. 25-cv-07584-TSH

8                   Plaintiff,

9           v.                            **ORDER DENYING DEFENDANT'S**
                                          **MOTION TO DISMISS PURSUANT TO**
10   SENTRY INSURANCE COMPANY,            **RULE 12(b)(6)**

11                  Defendant.            Re: Dkt. No. 12

12

13                          **I.    INTRODUCTION**

14          Plaintiff Wesco Insurance Company ("Wesco") brings this action in subrogation against

15   Defendant Sentry Insurance Company ("Sentry"), alleging that Sentry failed to perform its

16   obligations under an insurance contract by refusing to settle a case brought against Sentry's

17   insured.  ECF No. 1.  Pending before the Court is Sentry's Motion to Dismiss pursuant to Rule

18   12(b)(6).  ECF No. 12 ("Mot.").  The Court finds this matter suitable for disposition without oral

19   argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the December 4, 2025, hearing.

20   For the reasons stated below, the Court **DENIES** the motion.[1]

21                          **II.    BACKGROUND**

22   **A.    Factual Background**

23          Wesco, a Delaware corporation with its principal place of business in New York, issued a

24   commercial insurance policy naming Taylor Houseman, Inc. ("Taylor") as an insured.  Compl. ¶¶

25   1, 6 (ECF No. 1).  Sentry, a Wisconsin corporation with its principal place of business in

26

27   ───────────────
     [1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos.
28   13, 16.

1     Wisconsin, issued a commercial insurance policy covering Taylor as an additional insured party.[2]

2     *Id.* ¶¶ 2, 7–8.  This matter arises out of an underlying state court action that names Taylor as a

3     defendant.  *Id.* ¶ 5; *see Jaurice Hutson v. Taylor Houseman, Inc., et al.*, Contra Costa Superior

4     Court No. CIV MSC21-01940 (the "*Hutson* Action").

5         Overall, Wesco alleges that it suffered harm when Sentry refused to accept the statutory

6     offer for Taylor in the *Hutson* Action and Wesco was forced to pay its excess limits toward

7     satisfying the judgment against Taylor.  Compl. ¶¶ 22–26.  According to Wesco, as Taylor's

8     primary insurer, Sentry was obligated to accept the statutory offer for Taylor, and Wesco is now

9     subrogated to the rights of Taylor as against Sentry.  *Id.* ¶¶ 28–30.

### 1.     The Underlying Action And Insurance Policies

11         Jaurice Hutson initiated the *Hutson* Action, alleging that on "November 8, 2019, he

12     suffered serious injuries caused by a defective commercial washing machine made and distributed

13     by" Alliance Laundry Holdings, LLC ("Alliance") and sold by Taylor.  *Id.* ¶ 5; *see* Sentry's

14     Request for Judicial Notice, Ex. C (the "*Hutson* Complaint") (ECF No. 12-1 at 334).  Mr. Hutson

15     alleged four causes of action against Taylor and Alliance:  (1) strict products liability for

16     manufacturing defect, design defect, and failure to warn; (2) negligence in, *inter alia*, design and

17     maintenance; (3) breach of implied warranty; and (4) breach of express warranty.  *Hutson*

18     Complaint at 16–21.  Mr. Hutson alleged that Taylor poorly maintained the subject washing

19     machine for twenty years and that Taylor was negligent in "maintaining, and/or servicing of the

20     subject washing machine."  *Id.* at 16, 18–20.

21         The *Hutson* Action implicates three insurance policies.  Wesco issued a commercial

22     insurance policy naming Taylor as an insured—the policy has a one-million-dollar limit.  Compl.

23     ¶ 6.  Sentry issued a commercial insurance policy naming Alliance as an insured that qualified

24     Taylor as an additional insured party under the policy's Vendor Endorsement—the policy has a

25     two-million-dollar limit.  *Id.* ¶¶ 7–8.  Alliance also had excess liability insurance through Federal

26     Insurance Company—the policy has a twenty-five-million-dollar limit.  *Id.* ¶ 11.

---

28     [2] "[B]efore 2021, Sentry Insurance Company was known as Sentry Insurance a Mutual Company." Compl. ¶ 2.

a.      **The Wesco Policy**

Wesco issued to Taylor,

> as named insured, a policy of commercial general liability insurance,
> no. WPP1827846 00, for the policy year August 25, 2019-2020, with
> per-occurrence limits of insurance of $1 million.  The basic insuring
> provisions of the Wesco policy were set out in Insurance Services
> Office form CG 00 01 04 13.  The Wesco policy was in effect on the
> date of Mr. Hutson's alleged injury.

Compl. ¶ 6; *see* Sentry's Request for Judicial Notice, Ex. B (the "Wesco Policy") (ECF No. 12-1

at 81).

The Wesco Policy contains an "Other Insurance" provision that states:

> If other valid and collectible insurance is available to the insured for
> a loss we cover under Coverages A or B of this Coverage Part, our
> obligations are limited as follows:
>
> a. Primary Insurance
> This insurance is primary except when Paragraph b. below applies.  If
> this insurance is primary, our obligations are not affected unless any
> of the other insurance is also primary.  Then, we will share with all
> that other insurance by the method described in Paragraph c. below.
>
> b. Excess Insurance
>
> > (1) This insurance is excess over:
> >
> > > (a) Any of the other insurance, whether primary,
> > > excess, contingent or on any other basis:
> > >
> > > > (i) That is Fire, Extended Coverage, Builder's
> > > > Risk, Installation Risk or similar coverage for
> > > > 'your work';
> > > >
> > > > (ii) That is Fire insurance for premises rented
> > > > to you or temporarily occupied by you with
> > > > permission of the owner;
> > > >
> > > > (iii) That is insurance purchased by you to
> > > > cover your liability as a tenant for 'property
> > > > damage' to premises rented to you or
> > > > temporarily occupied by you with permission
> > > > of the owner; or
> > > >
> > > > (iv) If the loss arises out of the maintenance or
> > > > use of aircraft, 'autos' or watercraft to the
> > > > extent not subject to Exclusion g. of Section I
> > > > - Coverage A - Bodily Injury And Property
> > > > Damage Liability.

3

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any 'suit' if any other insurer has a duty to defend that insured against the 'suit.' If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Compl. ¶ 9; *see* Wesco Policy at Section IV.4.

### b.    The Sentry Policy

Sentry issued to Alliance,

as named insured, a policy of commercial general liability insurance, no. 90-05297-03, effective for the policy year May 5, 2019- 2020, with per-occurrence limits of insurance of $2 million. The basic insuring provisions of the Sentry policy were set out in Insurance Services Office form CG 00 01 04 13. Sentry's named insured [Alliance] was named as a defendant in the underlying *Hutson* action. The Sentry policy was in effect on the date of Mr. Hutson's alleged injury.

Compl. ¶ 7; *see* Sentry's Request for Judicial Notice, Ex. A (the "Sentry Policy") (ECF No. 12-1 at 7). Taylor qualified as an additional insured under the Sentry Policy with respect to the *Hutson* Action. Compl. ¶ 8.

The Sentry Policy contains a Vendor Endorsement provision that covers as additional insureds "All Vendors Of Your Products Domiciled In The United States Of America Or Canada"

4

for "All Products."  Compl. ¶ 8; *see* Sentry Policy at 28 (emphasis omitted).  This provision states, in pertinent part:

> WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as 'vendor') shown in the Schedule, but only with respect to 'bodily injury' or 'property damage' arising out of 'your products' shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional provisions:
>
> 1. The insurance afforded the vendor does not apply to:
>
>> a. 'Bodily injury' or 'property damage' for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;
>>
>> b. Any express warranty unauthorized by you;
>>
>> c. Any physical or chemical change in the product made intentionally by the vendor;
>>
>> d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;
>>
>> e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;
>>
>> f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;
>>
>> g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

Compl. ¶ 8; *see* Mot. at 4–6; Sentry Policy at 28–29.

The Sentry Policy contains an "Other Insurance" provision that contains language identical to the "Other Insurance" provision in the Wesco Policy (stated above).  Compl. ¶ 9; *see* Sentry Policy at Section IV.4.

The Sentry Policy contains a provision titled, "Duties In The Event Of Occurrence, Offense, Claim Or Suit," that states, in pertinent part:

> No insured will, except at that insured's own cost, voluntarily make a

United States District Court
Northern District of California

> payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Mot. at 6; *see* Sentry Policy at Section IV.2.d.

The Sentry Policy contains a provision titled, "Legal Action Against Us," that states:

> No person or organization has a right under this Coverage Part:
>
> a. To join us as a party or otherwise bring us into a 'suit' asking for damages from an insured; or
>
> b. To sue us on this Coverage Part unless all of its terms have been fully complied with.
>
> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Mot. at 7; *see* Sentry Policy at Section IV.3.

### c.     The Federal Insurance Company Policy

Sentry's named insured Alliance

> was also insured under a policy of excess liability insurance issued by non-party Federal Insurance Company with limits of insurance of $25 million in excess of Sentry's $2 million in primary insurance.  The Federal policy thus provided Alliance Laundry with $25 million in coverage applicable to the underlying *Hutson* Action over and above the $2 million available under the Sentry policy.

Compl. ¶ 11.

### 2.     Wesco's Allegations Regarding Defense And Settlement In The Underlying Action

Wesco alleges the following in the Complaint.  Concerning the *Hutson* Action, under the "Other Insurance" provisions in the Wesco and Sentry Policies, "Sentry's coverage for [Taylor] was and is primary and Wesco's coverage for [Taylor] was and is excess." *Id.* ¶ 10.

As Taylor's primary insurer, Sentry agreed to defend Taylor in the *Hutson* Action.  *Id.* ¶ 12.  Sentry hired separate defense counsel to represent Taylor and Alliance—both counsel were supervised by the same Sentry claims adjuster.  *Id.* ¶ 13.

Mr. Hutson served a Statutory Offer on Taylor "under Cal. Code of Civil Procedure § 998

to allow judgment to be taken against [Taylor] in the amount of $1,999,999.99." *Id.* ¶ 16. Taylor's counsel "advised Sentry and Wesco that the value of the claims against [Taylor] in the underlying *Hutson* action exceeded the value of [Mr. Hutson's] statutory offer." *Id.* ¶ 18.  As Taylor's excess insurer, Wesco "demanded that Sentry accept [Mr. Hutson's] statutory offer within Sentry's limits on or before the offer's expiration." *Id.* ¶ 19; *see* Wesco's Request for Judicial Notice, Ex. C (the "Wesco Demand Letter") (ECF No. 19-1 at 18).  In its Demand Letter, Wesco invited Sentry to share evidence that its limits were impaired.  Compl. ¶ 20.  Sentry rejected Wesco's demand, did not provide evidence of impairment, and did not offer to pay any portion of Taylor's liability under Mr. Hutson's statutory offer.  *Id.* ¶¶ 21–22.  Sentry's actions threatened Taylor "with liability in excess of the Sentry policy limits." *Id.* ¶ 30.

Wesco then "committed its excess limits of $1 million to [Taylor's] defense counsel hired by Sentry for purposes of accepting [Mr. Hutson's] statutory offer." *Id.* ¶ 23.  Taylor's counsel "accepted the pending statutory offer to allow judgment to be taken against [Taylor] in the amount of $1,999,999.99." *Id.* ¶ 24.  Judgment was entered against Taylor in the *Hutson* Action in the amount of $1,999,999.99.  *Id.* ¶ 25; *see* Sentry's Request for Judicial Notice, Ex. D (the "*Hutson* Judgment") (ECF No. 12-1 at 359).

Wesco "has paid or will shortly pay its $1 million toward satisfaction" of this judgment against Taylor.  Compl. ¶ 26; *see* Wesco's Request for Judicial Notice, Ex. B (the "*Hutson* Satisfaction of Judgment") (ECF No. 19-1 at 15).  "A non-party insurer committed to pay the additional sums needed to satisfy the judgment."  Compl. ¶ 24.

At no point did Mr. Hutson's "demands for settlement against [Alliance] exceed or threaten to exceed the $25 million limits of Federal's excess policy, without considering Sentry's primary policy." *Id.* ¶ 17.  Thus, "[h]ad Sentry accepted the statutory offer, Sentry's named insured would have remained fully protected by its excess insurance coverage, thereby eliminating financial exposure to [Taylor] without prejudice to the interests of [Alliance]." *Id.* ¶ 34.

As Taylor's excess insurer, "Wesco should not have been required to pay out Wesco's limits of insurance on behalf of [Taylor] toward satisfaction of the judgment, in whole or in part[.]" *Id.* ¶ 33.  Wesco therefore suffered damages in the amount of at least one million dollars

7

1    for the amount that it paid toward satisfying the judgment against Taylor. *Id.* ¶¶ 31, 34.

2    **B.    Procedural Background**

3        The *Hutson* Action commenced on September 15, 2021, when Mr. Hutson filed a

4    complaint in the Contra Costa Superior Court. *Hutson* Complaint at 1. On April 16, 2025, Mr.

5    Hutson served the Statutory Offer on Taylor. Compl. ¶ 16. On August 12, 2025, Taylor's counsel

6    accepted the Statutory Offer, allowing judgment to be taken against Taylor. *Id.* ¶ 24. On August

7    21, 2025, judgment was entered against Taylor in the *Hutson* Action. *Id.* ¶ 25; *see* Hutson

8    Judgment. On September 12, 2025, Mr. Hutson filed a satisfaction of judgment acknowledging

9    that Taylor had satisfied the judgment in full. *See Hutson* Satisfaction of Judgment.

10       On September 5, 2025, Wesco filed its complaint against Sentry, alleging three causes of

11   action under California law:  (1) Breach of Contract (In Subrogation); (2) Breach of Implied

12   Covenant of Good Faith and Fair Dealing (In Subrogation); and (3) Declaratory Judgment.

13   Compl. ¶¶ 27–35 (ECF No. 1). Wesco seeks, *inter alia*, damages, attorneys' fees, and binding

14   judicial declarations. *Id.* at 7–8.

15       On October 15, 2025, Sentry filed the instant Motion to Dismiss pursuant to Rule 12(b)(6)

16   and a Request for Judicial Notice. ECF Nos. 12 ("Mot."), 12-1. On November 11, 2025, Wesco

17   filed an Opposition and a Request for Judicial Notice. ECF Nos. 19 ("Opp."), 19-1. On

18   November 19, 2025, Sentry filed a Reply. ECF No. 20 ("Reply").

19                            **III.    LEGAL STANDARD**

20       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

21   sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff

22   can prove no set of facts in support of his claim which would entitle him to relief." *Cook v.*

23   *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (cleaned up). Rule 8 provides that a complaint must

24   contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

25   Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that

26   is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does

27   not mean probability, but it requires "more than a sheer possibility that a defendant has acted

28   unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore provide a

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1  defendant with "fair notice" of the claims against it and the grounds for relief.  *Twombly*, 550 U.S.

2  at 555 (citation omitted).

3         In considering a motion to dismiss, the court accepts factual allegations in the complaint as

4  true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v.*

5  *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*,

6  551 U.S. 89, 93–94 (2007).  However, "the tenet that a court must accept as true all of the

7  allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of

8  the elements of a cause of action, supported by mere conclusory statements, do not suffice."

9  *Iqbal*, 556 U.S. at 678.

10        If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

11 request to amend the pleading was made, unless it determines that the pleading could not possibly

12 be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

13 banc) (cleaned up).  A court "may exercise its discretion to deny leave to amend due to 'undue

14 delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by

15 amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of

16 amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010)

17 (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Courts have broader

18 discretion in denying motions for leave to amend after leave to amend has already been granted.

19 *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already

20 afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or

21 refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be

22 disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen

23 a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent

24 motions to amend is particularly broad.") (cleaned up).

25                                    **IV.   DISCUSSION**

26        Sentry moves to dismiss all of Wesco's claims for failing to state a cognizable claim.  Mot.

27 at 1–2.  In sum, the Court concludes that Wesco alleges cognizable claims for breach of contract

28 and breach of the implied covenant of good faith and fair dealing in subrogation and for

1    declaratory judgment.  Therefore, dismissal of Claims 1, 2, and 3 is not warranted.

2    **A.    Motion For Leave To File Sur-Reply**

3         On November 23, 2025—after briefing on Sentry's Motion was complete—Wesco sought

4    leave to file a sur-reply to respond "to two new arguments raised in Sentry's reply brief."  ECF

5    No. 24.  Wesco asserts that (1) Sentry's objection to "Wesco's request for judicial notice equates

6    to an objection to the evidence offered in the judicial-notice request"; and (2) Sentry offers its

7    arguments on *Hartford*, a case cited by Wesco in its Opposition to Sentry's Motion, for the first

8    time in Sentry's Reply.  *Id.*  On November 25, 2025, Sentry filed an Opposition to Wesco's

9    request to file a sur-reply.  ECF No. 25.  Sentry argues that the Court should deny Wesco's request

10   because "Sentry's Reply Brief does not make new arguments or proffer new evidence."  *Id.*

11        Under the Local Rules, a party must obtain the court's permission to file supplementary

12   material after a reply is filed, unless the additional material comprises an objection to new

13   evidence proffered in the reply or a newly published judicial opinion.  Civ. L.R. 7.3(d).

14        Here, the Court finds that granting Wesco leave to file a sur-reply is not warranted.  To be

15   sure, "[i]f a party raises a new argument or presents new evidence in a reply brief, a court may

16   consider these matters only if the adverse party is given an opportunity to respond."  *Banga v.*

17   *First USA, NA*, 29 F. Supp. 3d 1270, 1276 (N.D. Cal. 2014) (citing *El Pollo Loco, Inc. v. Hashim*,

18   316 F.3d 1032, 1040–41 (9th Cir. 2003)).  However, Wesco fails to identify any new evidence or

19   legal argument proffered by Sentry for the first time in Sentry's Reply.  First, as Wesco

20   acknowledges, Sentry objected to Wesco's request for judicial notice.  ECF No. 24.  Wesco cites

21   to no authority—and the Court is aware of none—holding that an opposition to judicial notice is

22   tantamount to presenting new evidence or legal argument.  Second, because Wesco discussed the

23   *Hartford* case in its Opposition, the Court agrees with Sentry that Sentry's discussion of *Hartford*

24   in its Reply does not constitute a new legal argument.  *See* ECF No. 25; *Burnham v. City of*

25   *Rohnert Park*, No. C-92-1439-SC, 1992 WL 672965, at *1 n.2 (N.D. Cal. May 18, 1992)

26   ("[R]eply briefs are limited in scope to matters either raised by the opposition or unforeseen at the

27   time of the original motion.").  Therefore, Wesco has not demonstrated a valid reason exists for

28   additional briefing.  *Cf. Banga*, 29 F. Supp. 3d at 1276.

United States District Court
Northern District of California

1    Accordingly, the Court **DENIES** Wesco's request to file a sur-reply.

2    **B.    Requests For Judicial Notice**

3        **1.    Sentry's Request For Judicial Notice**

4    Sentry requests the Court take judicial notice of four documents:

5        1. Sentry Insurance Company policy issued to Alliance Laundry
         Holdings LLC, policy No. 90-05297-03 effective 5/5/2019 –
6        5/20/2020.  A true and correct copy of the Sentry policy with the
         premiums redacted is attached as Exhibit A.
7
         2. Wesco Insurance Company policy issued to Taylor Houseman Inc.,
8        policy no. WPP1827846 00, effective 8/25/2019 – 8/25/2020.  A true
         and correct copy of the Wesco policy provided by Wesco to Sentry is
9        attached as Exhibit B.

10       3. The Third Amended Complaint in the action *Jaurice Hutson v.
         Taylor Houseman, Inc et al*, Contra Costa Superior Court Case No.
11       CIV MSC21-0190 'Underlying Action.')  A true and correct copy of
         the Third Amended Complaint is attached as Exhibit C.
12
         4. The Judgment Pursuant to Code of Civil Procedure § 998 which
13       attaches as Exhibit A, Plaintiff's Offer to Compromise Judgment filed
         in the Underlying Action.  A true and correct copy is attached as
14       Exhibit D.

15   ECF No. 12-1.  In its Motion, Sentry also argues that the Court should consider these documents

16   under the incorporation by reference doctrine.  Mot. at 3:5–24.  The Court therefore construes

17   Sentry's request for judicial notice also as a request for incorporation by reference.  Wesco

18   responds that "under the incorporation rule . . . Sentry's requests are procedurally appropriate and

19   [Wesco] does not object."  ECF No. 19-1.

20       Normally, when adjudicating a motion to dismiss brought pursuant to Rule 12(b)(6), the

21   Court's consideration of extra-pleading materials is limited and matters outside of the pleading

22   cannot be considered without converting the motion into a motion for summary judgment.  *See*

23   Fed. R. Civ. P. 12(b)(6), 12(d).  However, there are two exceptions—the incorporation-by-

24   reference doctrine and judicial notice.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998

25   (9th Cir. 2018).

26       Under the Federal Rules of Evidence, the Court may take judicial notice of matters that are

27   (1) generally known within the trial court's territorial jurisdiction; or (2) capable of accurate and

28   ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed.

United States District Court
Northern District of California

11

R. Evid. 201(b).

Under the doctrine of incorporation-by-reference, the Court may consider a document not attached to the complaint provided the complaint "necessarily relies" on the document or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

Here, the Court agrees that it is appropriate to incorporate by reference the four documents requested by Sentry. Wesco does not contest the authenticity or relevance of the documents, and the Court agrees that the Complaint and Wesco's claims necessarily rely upon the Sentry Policy, the Wesco Policy, the *Hutson* Complaint, and the *Hutson* Judgment. *See* Compl. ¶¶ 5–7, 16. Therefore, the Court considers the documents incorporated for purposes of this Motion, and the request for incorporation is **GRANTED**. The Court expresses no opinion on the request for judicial notice, as it is unnecessary to reach that issue.

### 2.    Wesco's Request For Judicial Notice

Wesco requests the Court take judicial notice of three documents, marked as follows:

> 1.Exh. A:  Taylor Houseman's separate statement of undisputed facts in support of motion for summary judgment
>
> 2. Exhibit B:  Satisfaction of Judgment
>
> 3. Exhibit C:  Demand Letter

ECF No. 19-1. Wesco argues that in the "spirit of a fuller record," the Court should take judicial notice of "two additional public documents taken from the *Hutson* action as well as one of the documents, the demand letter alleged referenced in Wesco's complaint[.]" *Id.* (citing Compl. ¶19). The Court construes Wesco's request for judicial notice also as a request for incorporation

United States District Court
Northern District of California

1  by reference.  Sentry contends that the Court may only take judicial notice of the existence of

2  Taylor's Statement of Facts in the *Hutson* Action but "cannot take as true the arguments or

3  allegations in that pleading."  Reply at 10:13–25.  Sentry further contends that the Wesco Demand

4  Letter "is not the contract upon which the breach of contract is based and therefore is irrelevant

5  and should not be [the] subject of judicial notice."  *Id.*

6          Here, the Court finds that it is appropriate to incorporate by reference the *Hutson*

7  Satisfaction of Judgment and the Wesco Demand Letter as Wesco's Complaint and claims

8  necessarily rely on these two documents.  *See* Compl. ¶¶ 19–20, 25–26.  Sentry contests the

9  relevance of the Wesco Demand Letter.  Reply at 10:13–25.  But Wesco relies on the letter in its

10  Complaint to allege that Sentry was on notice of Wesco's position that it is Taylor's excess insurer

11  and that it asked Sentry if Sentry's limits were impaired.  Compl. ¶¶ 19–20; *see also* Opp. at 9:26–

12  10:7, 19:18–25.  Therefore, the Court considers the *Hutson* Satisfaction of Judgment and the

13  Wesco Demand Letter incorporated for purposes of this Motion and assumes their contents are

14  true for purposes of this Motion.  *Ritchie*, 342 F.3d at 908.

15          However, because Wesco's Complaint does not reference Taylor's Statement of Facts in

16  the *Hutson* Action, the Court cannot incorporate the document by reference.  *See generally* Compl.

17  While a court may take judicial notice of the existence of unrelated court documents, it cannot

18  "take judicial notice of such documents for the truth of the matter asserted therein."  *In re Bare*

19  *Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010).  Thus, the Court takes

20  judicial notice only of the existence of Taylor's Statement of Facts in the *Hutson* Action.

21          Accordingly, the Court **GRANTS** Wesco's request for judicial notice of the existence of

22  Taylor's Statement of Facts in the *Hutson* Action and **GRANTS** Wesco's request to incorporate

23  by reference the *Hutson* Satisfaction of Judgment and the Wesco Demand Letter.

24  **C.    Subrogation**

25          Wesco alleges that it is subrogated to the rights of Taylor as against Sentry.  Compl. ¶¶ 28–

26  30.

27           "In general terms, subrogation is the substitution of one party in place of another with

28  reference to a lawful claim, demand or right. . . .  Subrogation places the party paying the loss or

United States District Court
Northern District of California

13

1  claim (the 'subrogee') in the shoes of the person who suffered the loss ('the subrogor')." *In re*

2  *Hamada*, 291 F.3d 645, 649 (9th Cir. 2002). In California, "[s]ubrogation is of two sorts: 'legal'

3  and 'conventional.' Legal subrogation had its source in equity and arises by operation of law.

4  Conventional subrogation arises by act of the parties and rests on contract." *Fifield Manor v.*

5  *Finston*, 54 Cal. 2d 632, 638 (1960) (citations omitted). As such, "legal" subrogation is also

6  known as "equitable" subrogation. *State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A.*, 143 Cal.

7  App. 4th 1098, 1106 (2006).

8          Under California law, "insurance companies may be subrogated to the rights of their

9  insureds." *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622, 634 (1975). "Equitable

10  subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's

11  position to pursue a full recovery from another insurer who was primarily responsible for the

12  loss." *Maryland Cas. Co. v. Nationwide Mut. Ins. Co.*, 81 Cal. App. 4th 1082, 1088 (2000).

13          The essential elements of an insurer's cause of action for equitable subrogation are:

14
15        (a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer;
16

17        (b) the claimed loss was one for which the insurer was not primarily liable;

18
      (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable;
19

20        (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer;

21
22        (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer;

23        (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends;
24

25        (g) justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer; and
26

27        (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

28  *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1292 (1998).

1    Sentry argues that Wesco cannot state a cognizable claim for subrogation because (1) it is

2    Wesco, not Sentry, who is "primarily liable for the independent negligence claim against

3    [Taylor]"; (2) Taylor "lacks an existing and assignable cause of action against Sentry"; and (3)

4    "the equities favor Sentry." Mot. at 8–16, 20–21. The Court addresses each of these arguments in

5    turn below.

6    **1.    Primary Liability**

7    Sentry argues that "[t]he principal defect in the complaint" is that Wesco cannot "allege

8    that Wesco paid for losses for which it was *not* primarily liable, and that it had compensated the

9    insured for losses for which Sentry *was* primarily liable." Mot. at 9:19–12:6 (emphasis in

10    original). Wesco contends that its policy "is expressly 'excess over' other insurance for Taylor"

11    for which Taylor was "added as an additional insured." Opp. at 9:8–12:25.

12    Equitable subrogation permits an excess insurer to obtain recovery against a primary

13    insurer. *Maryland*, 81 Cal. App. 4th at 1088–89. "Primary insurance refers to the first layer of

14    coverage, whereby liability attaches *immediately* upon the happening of the occurrence that gives

15    rise to liability. Excess insurance, by contrast, refers to indemnity coverage that attaches upon the

16    exhaustion of underlying insurance coverage for a claim." *Montrose Chem. Corp. of California v.*

17    *Superior Ct.*, 9 Cal. 5th 215, 222 (2020) (emphasis in original) (cleaned up).

18    Here, the Court finds that Wesco pleads sufficient facts to plausibly allege that Wesco is

19    not primarily liable for Taylor's loss. Sentry asserts that Wesco cannot allege that Wesco is

20    Taylor's excess insurer, and that Sentry is Taylor's primary insurer. Mot. at 9:19–10:3. But

21    Wesco has done just that. *See* Compl. ¶ 10. Both parties point to their respective insurance

22    policies and reach opposite conclusions regarding Wesco's obligation to Taylor in the *Hutson*

23    Action. *Compare* Mot. at 9:21–12:6 *with* Opp. at 9:18–12:7. In short, the Court cannot determine

24    at the pleadings stage who has the better reading of the insurance policies.

25    "[I]nterpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch.,*

26    *Inc.*, 11 Cal. 4th 1, 18 (1995). "A policy provision will be considered ambiguous when it is

27    capable of two or more constructions, both of which are reasonable." *Id.* But within a policy, "[i]f

28    contractual language is clear and explicit, it governs." *Bank of the W. v. Superior Ct.*, 2 Cal. 4th

United States District Court
Northern District of California

1254, 1264 (1992). Where the language of an insurance policy is clear and explicit, the policy's effect can be decided at the pleadings stage. *Albert D. Seeno Constr. Co. v. AIG Specialty Ins. Co.*, No. 21-cv-02152-JST, 2021 WL 11592633, at *4 (N.D. Cal. Sept. 20, 2021).

The Wesco Policy states that it is "excess over . . . [a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured." Compl. ¶ 9; Opp. at 7:1–6 (citing Wesco Policy at Section IV.4). The Sentry Policy names Taylor as an additional insured and covers Taylor for loss "arising out of" Alliance's products. Compl. ¶¶ 7–8. By the plain terms of the Wesco Policy, Wesco thus plausibly alleges that Sentry is primarily liable for any of Taylor's loss "arising out of" Alliance's defective washing machine. Opp. at 7:1–16, 11:26–12:7 (citing Compl. ¶ 9). Sentry counters that it has no indemnity obligation because "Wesco remained primarily liable for the negligence claims against" Taylor. Mot. at 9:21–10:1, 12:1–6. Sentry asserts that its Vendor Endorsement excluded liability for Taylor's independent negligence. *Id.*; *see* Sentry Policy at 28–29. But even if true, the negligence claim—which alleged more than Taylor's negligent maintenance—was only one of four claims in the *Hutson* Action. *Hutson* Complaint at 16–21; *see* Opp. at 5:3–8. In other words, because there are at least two reasonable interpretations of the policies—that Sentry is primarily liable because the action "arises out of" Alliance's product or that Wesco is primarily liable because Sentry's policy excludes liability for Taylor's negligence—the policies are ambiguous. *Waller*, 11 Cal. 4th at 18.

Overall, Sentry asks the Court to embark on a complex analysis of ambiguous policy language at the dismissal stage; this is too much to ask at this stage. Indeed, the cases Sentry cites to for its proposition that Wesco is primarily liable for Taylor's loss are all in the summary judgment posture, reinforcing that the question of whether an insurer is primarily liable for a loss is one best answered on summary judgment. *See* Mot. at 10:12–11:28 (citing *e.g., Maryland*, 81 Cal. App. 4th at 1082); *see also generally Westport Ins. Corp. v. California Cas. Mgmt. Co.*, 249 F. Supp. 3d 1164 (N.D. Cal. 2017) (interpreting insurance policies to determine order of coverage on summary judgment). Therefore, on a motion to dismiss, the Court cannot say as a matter of law that Wesco is primarily liable for Taylor's loss.

United States District Court
Northern District of California

### 2.    Existing And Assignable Cause Of Action

Sentry argues that Wesco has no claim against Sentry because Taylor did not suffer any damages caused by Sentry's alleged breach.  Mot. at 12:7–16:2.  Wesco contends that an insurer's claim in subrogation is not precluded when an insurer, rather than an insured, pays for a judgment against the insured.  Opp. at 13:1–15:21.

A "subrogated insurer is said to 'stand in the shoes' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured." *Fireman's Fund*, 65 Cal. App. 4th at 1292 (cleaned up).

Here, the Court finds that Wesco pleads sufficient facts to plausibly allege that Taylor has an existing, assignable cause of action against Sentry.  Sentry takes issue with the purported fact that Taylor has no live claim against Sentry because Taylor cannot show that it suffered damages.  Mot. at 12:11–25.  But that is not the correct standard.  Equitable subrogation requires that "the insured has an existing, assignable cause of action against the defendant which the insured *could have asserted* for its own benefit had it not been compensated for its loss by the insurer." *Fireman's Fund*, 65 Cal. App. 4th at 1292 (emphasis added); *see* Opp. at 13:15–26.  Wesco plausibly alleges that by refusing "to accept the within-limits statutory offer against Taylor," Sentry "breached its contractual duty to [Taylor], thereby threatening [Taylor] with liability in excess of the Sentry policy limits."[3]  Compl. ¶ 30.  In other words, had Wesco not stepped in, Taylor *could have asserted* a contract action against Sentry based on Sentry's failure to fulfill its obligations under the Sentry Policy to pay the money judgment against Taylor.  Opp. at 15:22–26.

Sentry's cited cases are inapposite—they involve insureds bringing suit for money paid by insurers, not insurers bringing suit for money paid on behalf of an insured that another should have paid.  *See* Mot. at 12:26–14:24 (citing *e.g.*, *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1089 (2005)); Opp. at 13:6–14:2 (discussing Sentry's cited cases).

---

[3] In its Reply, Sentry argues that Taylor was not threatened with liability in excess of Sentry's policy limits because Taylor "was also an insured under the Federal excess policy" and "was protected by the $25 million excess [Federal] policy."  Reply at 7:18–27.  But these purported facts are not in the Complaint and must therefore be resolved at the summary judgment stage, not on dismissal.  *See generally* Compl.

1    Unlike the cases cited by Sentry, Wesco alleges that it (an insurer) paid money on behalf of Taylor

2    (an insured) that Sentry should have paid.  Compl. ¶¶ 30–34.  Therefore, Wesco plausibly alleges

3    that Taylor could have asserted a cause of action against Sentry had Wesco not stepped in.

### 3.    Balance Of Equities

5    Sentry argues that Wesco fails to allege facts satisfying the seventh element for equitable

6    subrogation because (1) Taylor "has a greater connection to the loss as its alleged negligence is

7    alleged to have caused the injury giving rise to the" *Hutson* Action; (2) "Sentry fulfilled its

8    contractual obligations by fully defending" Taylor; and (3) Wesco "breached its obligations by

9    failing to contribute to the defense despite its exposure for negligence liability."  Mot. at 20:26–

10    21:24.  Wesco contends that Sentry breached its policy and settlement duty to Taylor.  Opp. at

11    23:2–24:9.

12    The most restrictive principle of equitable subrogation "is the doctrine of superior equities,

13    which prevents an insurer from recovering against a party whose equities are equal or superior to

14    those of the insurer."  *State Farm*, 143 Cal. App. 4th at 1107.  While a court is required to

15    determine who ultimately ought to bear the loss, "there is no facile formula for determining

16    superiority of equities."  *Id.* at 1112 (cleaned up).

17    Here, the Court finds that because Wesco pleads sufficient facts to show that it is Taylor's

18    excess insurer, Wesco likewise pleads sufficient facts to show that the equites weigh in its favor.

19    *See Great Am. All. Ins. Co. v. Cont'l Cas. Co.*, No. 23-cv-1796-BAS-JLB, 2025 WL 2323512, at

20    *24 (S.D. Cal. Aug. 12, 2025) (citing *Reliance Nat. Indem. Co. v. Gen. Star Indem. Co.*, 72 Cal.

21    App. 4th 1063, 1080–83 (1999)) ("[C]ourts tend to find this element favors the excess insurer in a

22    subrogation dispute between a primary and an excess insurer.").  To be sure, while "a major part

23    of the equities assessment" is "the parties' involvement as excess and primary insurers," a court

24    "must still, however, weigh the equities."  *Id.*  But at the dismissal stage, the Court need not weigh

25    the equities—that is a matter for summary judgment.  *Cf. id.* at *23–25 (weighing equities for

26    equitable subrogation claim on summary judgment).

27    Accordingly, the Court concludes that Wesco pleads sufficient facts to show that it is

28    subrogated to the rights of Taylor as against Sentry.

United States District Court
Northern District of California

United States District Court
Northern District of California

**D.      Breach Of Contract Claim (Claim 1)**

Wesco alleges that "Sentry breached its contractual duty to [Taylor], thereby threatening [Taylor] with liability in excess of the Sentry policy limits" when Sentry refused to authorize Taylor's counsel to accept the within-limits statutory offer against Taylor in the *Hutson* Action. Compl. ¶ 30.  Sentry argues that Wesco's breach of contract claim fails because Taylor must suffer actual harm to state such a claim.  Mot. at 15:20–16:2.  Wesco contends that its claim in subrogation is not precluded by the fact that Taylor cannot separately sue Sentry on Taylor's own account.  Opp. at 13:2–26.

To prevail on a breach of contract claim under California law, a plaintiff must prove "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  "Implicit in the element of damage is that the defendant's breach *caused* the plaintiff's damage."  *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1352 (2009) (emphasis in original).  Whether a party breached a contract is a question of fact.  *Locke v. Warner Bros.*, 57 Cal. App. 4th 354, 365 (1997).

Here, the Court concludes that Wesco alleges a cognizable breach of contract claim, in subrogation, against Sentry.  As with its arguments on subrogation, Sentry conflates an insured's claim with an insurer's claim.  While there is no dispute that if Taylor brought a breach of contract claim against Sentry, Taylor would need to allege actual harm, the same requirement does not apply to Wesco's claim in subrogation against Sentry.  Mot. at 12:11–14:24; Opp. at 14 n.3; *see Emerald Bay*, 130 Cal. App. 4th at 1082, 1089 (holding in insured's action against non-participating insurer that insured "cannot show it suffered any contract damages"); *but see United Servs. Auto. Ass'n v. Alaska Ins. Co.*, 94 Cal. App. 4th 638, 647 (2001) ("Ordinarily, an excess insurer's damages in an equitable subrogation action against a primary insurer are the sums the excess insurer paid to settle a third party claim against the insured due to the primary insurer's wrongful refusal to settle."); *cf. Maryland*, 81 Cal. App. 4th at 1089 ("[A]n excess insurer that pays defense costs will frequently obtain a full recovery against the primary insurer on an equitable subrogation theory.").  Wesco alleges that Sentry breached its contractual duties to

19

1    Taylor and that Sentry's breach caused Wesco to suffer harm in the form of paying Taylor's loss

2    that Sentry was required to pay.  Compl. ¶¶ 27–31.  At the pleadings stage, this sufficiently

3    establishes a legal claim by one insurer against another insurer.

4        Accordingly, the Court **DENIES** Sentry's motion to dismiss Wesco's Breach of Contract

5    Claim (Claim 1).

6    **E.    Breach Of Implied Covenant Of Good Faith And Fair Dealing Claim (Claim 2)**

7        Wesco alleges that "Sentry breached its implied covenant of good faith and fair dealing

8    when it wrongfully refused to accept a reasonable statutory settlement offer within the policy

9    limits, or to commit its limits if impaired, thereby exposing [Taylor] to significant liability."

10   Compl. ¶ 34.  Sentry argues this claim fails because (1) no excess judgment was entered against

11   Taylor; and (2) "there was no 'reasonable' settlement offer providing the basis for a bad faith

12   claim against Sentry."  Mot. at 14:25–18:5.  Wesco contends that (1) a judgment within primary

13   limits is sufficient to state a claim; and (2) the *Hutson* Statutory Offer, rejected by Sentry, was

14   reasonable.[4]  Opp. at 14:3–20:8.

15       Under California law, "[t]he covenant of good faith and fair dealing, implied by law in

16   every contract, exists merely to prevent one contracting party from unfairly frustrating the other

17   party's right to receive the *benefits of the agreement actually made*."  *Guz v. Bechtel Nat. Inc.*, 24

18   Cal. 4th 317, 349 (2000) (emphasis in original).  "Just what conduct will meet this criteria must be

19   determined on a case by case basis and will depend on the contractual purposes and reasonably

20   justified expectations of the parties."  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App.

21   3d 1371, 1395 (1990).  Whether the implied covenant has been breached is a question of fact.

22   *Hicks v. E.T. Legg & Assocs.*, 89 Cal. App. 4th 496, 509 (2001).

23       The implied covenant "applies equally to insurance policies, which are a category of

24   contracts."  *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000).  "[A]

25   liability insurance policy's express promise to defend and indemnify the insured against injury

26

27   ─────────────────
     [4] In its Reply, Sentry asserts that "Wesco does not address or refute that it cannot state a bad faith
28   claim."  Reply at 10:4–12.  This is simply not true—Wesco devotes pages of its Opposition to the
     bad faith claim.  *See* Opp. at 15–20.

United States District Court
Northern District of California

1    claims implies a duty to settle third party claims in an appropriate case." *Id.* at 401.  "More

2    specifically, the insurer must settle within policy limits when there is substantial likelihood of

3    recovery in excess of those limits." *Id.* (cleaned up).  Further, "an insurer's breach of the implied

4    covenant will provide the basis for an action in tort." *Id.* at 400 (cleaned up).

5          Here, the Court concludes that Wesco alleges a cognizable implied covenant claim, in

6    subrogation, against Sentry.  First, the Court disagrees with Sentry that an excess judgment against

7    an insured is a prerequisite for an insurer's implied covenant claim.  Sentry cites to *RLI Ins. Co. v.*

8    *CNA Cas. of California* for its proposition that an excess judgment is required.  Mot. at 14:25–

9    15:19 (citing 141 Cal. App. 4th 75, 82 (2006)).  But the Ninth Circuit expressly rejected *RLI*,

10   holding that the California Supreme Court would not likely adopt such a categorical rule but

11   would instead adopt a "rule that an excess litigated judgment is not a prerequisite to an equitable

12   subrogation action by an excess insurer against a primary insurer when the excess carrier has

13   contributed to the underlying settlement." *RSUI Indem. Co. v. Discover P & C Ins. Co.*, 649 F.

14   App'x 534, 535–37 (9th Cir. 2016).  The Court agrees with other district courts that although not

15   binding (because it is unpublished), the Ninth Circuit's reasoning is persuasive.  *See UFG*

16   *Specialty Ins. v. Am. Fire & Cas. Co.*, No. 2:23-cv-02263-SB-MAR, 2024 WL 1680067, at *2

17   (C.D. Cal. Mar. 18, 2024) (holding absence of excess judgment does not preclude subrogation).

18   Namely, the *RSUI* court explained that where, as in this case, an excess insurer contributes to

19   settle a case on behalf of an insured, an excess judgment is not required because there is little risk

20   of collusive settlement.  *RSUI*, 649 F. App'x at 536; *see* Opp. at 24:18–25:2.  Moreover, since

21   *RSUI*, California courts have held that "[a]n excess judgment is not a required element of a cause

22   of action for equitable subrogation or breach of the duty of good faith and fair dealing." *Ace Am.*

23   *Ins. Co. v. Fireman's Fund Ins. Co.*, 2 Cal. App. 5th 159, 183 (2016).  The *Ace* court explained

24   that when an excess insurer alleges that

25          it was required to contribute to the settlement of the underlying case
         due to the primary insurer's failure to reasonably settle the case within
26          policy limits, the lack of an excess judgment against the insured in the
         underlying case does not bar an action for equitable subrogation and
27          breach of the duty of good faith and fair dealing.

28   *Id.* at 164.  Therefore, the Court cannot say that California law requires an excess judgment for an

United States District Court
Northern District of California

insurer's cognizable implied covenant claim.

Second, the Court cannot say that as a matter of law, Wesco fails to plead facts showing that the statutory offer was reasonable. "[O]rdinarily whether the insurer has acted unreasonably, and hence in bad faith, in rejecting a settlement offer is a question of fact to be determined by the jury. . . . The question becomes one of law only when, because there are no conflicting inferences, reasonable minds could not differ." *Walbrook Ins. Co. v. Liberty Mut. Ins. Co.*, 5 Cal. App. 4th 1445, 1454 (1992) (cleaned up). The California Supreme Court has explained that "the *only permissible consideration* in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer." *Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 464 (2007) (citing *Johansen v. California State Auto. Ass'n Inter-Ins. Bureau*, 15 Cal. 3d 9, 16 (1975)) (emphasis in original). Wesco alleges that the statutory offer for Taylor was within the Sentry Policy limits, that Taylor's counsel opined that the value of the claims against Taylor exceeded the amount of the offer, that Alliance was covered by another insurer for twenty-five million dollars which would have covered any claims against Alliance had Sentry accepted the offer for Taylor, and that Sentry refused to contribute to the judgment against Taylor. Compl. ¶¶ 11, 16–18, 22. Thus, Wesco alleges facts showing that the judgment against Taylor was likely to exceed the amount of the *Hutson* Statutory Offer.

Further, Sentry's assertion that the offer was *per se* unreasonable because "Sentry was precluded to accepting the offer as a matter of law" as "the offer did not apply to Sentry's named insured [Alliance]" is disputed. Mot. at 16:3–9. Sentry's cases on this issue are not on point—no case involved insureds that were protected against liability with additional insurance policies. *Id.*; *see* Opp. at 2:7–14 ("Each of Sentry's authorities rely on settings where a coinsured would be left 'bereft of coverage' if an insurer in Sentry's position paid for one insured and not another."). Therefore, the Court agrees with Wesco that Sentry fails to show at the pleadings stage that the *Hutson* Statutory Offer was not reasonable as a matter of law.

Accordingly, the Court **DENIES** Sentry's motion to dismiss Wesco's Breach of Implied Covenant of Good Faith and Fair Dealing claim (Claim 2).

**F.    Declaratory Judgment Claim (Claim 3)**

Wesco requests a binding judicial declaration that

> Sentry was and remains obligated to pay out Sentry's limits of insurance on behalf of Taylor Houseman toward satisfaction of the judgment entered against [Taylor], that Wesco should not have been required to pay out Wesco's limits of insurance on behalf of [Taylor] toward satisfaction of the judgment, in whole or in part, and therefore that Sentry should reimburse Wesco for the sums Wesco should not have been required to pay, whether by way of equitable subrogation, equitable indemnity, equitable contribution, or otherwise.

Compl. ¶¶ 32–35.  Sentry does not make any arguments specifically directed to this claim other than its general request that the Court dismiss the Complaint "in its entirety."  Mot. at 22:15–17.

Under the Declaratory Judgment Act, a federal district court may declare the rights and other legal relations of any interested party seeking such declaration.  *Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1280 (9th Cir. 2021).

Here, because Wesco's equitable subrogation claims survive dismissal, the Court concludes that Wesco alleges a cognizable declaratory judgment claim against Sentry.  *See AIU Ins. Co. v. Acceptance Ins. Co.*, No. C-07-5491-PJH, 2008 WL 4937830, at *3 (N.D. Cal. Nov. 17, 2008) ("Until the equitable indemnity/contribution and subrogation claims have been resolved, the court cannot find that the claim for declaratory relief would be duplicative of other claims or that it serves no useful purpose.").

Accordingly, the Court **DENIES** Sentry's motion to dismiss Wesco's Declaratory Judgment claim (Claim 3).

**G.    Sentry's Defenses**

Sentry argues that Wesco's claims fail because (1) "Sentry is not bound by the settlement entered without its participation"; and (2) "the settlement violated the policy's conditions regarding voluntary payments and Legal Action Against Us."  Mot. at 18:6–20:25; *see* Sentry Policy at Sections IV.2.d, IV.3.  Wesco contends that Sentry's defenses fail because (1) "Sentry impliedly consented to entry of the judgment against Taylor"; (2) there is no evidence of collusion; and (3) "Sentry's own breaches of its duty to settle . . . prevent Sentry from relying on these policy conditions."  Opp. at 2:19–26.

23

United States District Court
Northern District of California

Here, the Court finds that Sentry's defenses cannot be resolved at the pleadings stage. "Ordinarily affirmative defenses may not be raised by motion to dismiss, but this is not true when . . . the defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (internal citation omitted); *see also Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1030 (N.D. Cal. 2024) ("[T]he voluntary payments rule is an affirmative defense.").  Wesco alleges that Sentry hired and controlled Taylor's defense counsel, Taylor's counsel recommended that Sentry accept Mr. Hutson's statutory offer, Wesco committed its excess limits to Taylor's counsel, and Taylor's counsel accepted Mr. Hutson's offer.  Compl. ¶¶ 12, 18, 23–24.  As such, contrary to Sentry's position, there is a dispute whether Taylor "voluntarily" agreed to the *Hutson* Statutory Offer without Sentry's consent.  *Compare* Mot. at 18:16–17 ("There is also no dispute that Wesco paid the settlement without Sentry's consent[.]") *with* Opp. at 20:18–21:20 ("Under these facts, Sentry impliedly consented to entry of judgment.").  Further, California law enforces such no-voluntary payments provisions only in the absence of insurer breach.  *Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 346 (1999).  Because Wesco plausibly alleges that Sentry breached its obligations to Taylor, it is not clear at this juncture that Sentry's no-voluntary payments clause is enforceable.  *See* Compl. ¶¶ 30, 34.

For the same reasons, it is unclear at this stage whether Sentry's no action clause is enforceable.  *See* Opp. at 21:21–22:10.  "The 'no action' clause gives the insurer the right to control the defense of the claim—to decide whether to settle or to adjudicate the claim on its merits." *Safeco Ins. Co. v. Superior Ct.*, 71 Cal. App. 4th 782, 787 (1999).  Thus, under such a clause, an insurer is not "bound by the terms of a stipulated judgment or a settlement agreement to which it has not consented." *Cont'l Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 803 F. Supp. 2d 1113, 1123 (E.D. Cal. 2011).  As discussed, Wesco plausibly alleges that Sentry at least impliedly consented to the *Hutson* Statutory Offer.  Opp. at 20:18–21:20.

Accordingly, Sentry's asserted defenses do not bar Wesco's claims at this stage of litigation.

## V.    CONCLUSION

For the reasons stated above, the Court **DENIES** Sentry's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: December 3, 2025

THOMAS S. HIXSON
United States Magistrate Judge