Jennifer Yu Sacro, SBN: 208988
E-Mail: jsacro@sacrowalker.com
Ilya A. Kosten, SBN: 173663
E-Mail: ikosten@sacrowalker.com
Paul A. Impellezzeri, SBN: 231012
E-Mail: pimpellezzeri@sacrowalker.com
SACRO & WALKER LLP
700 North Brand Boulevard, Suite 610
Glendale, California 91203
Tel.: (818) 721-9597; Fax: (818) 721-9670

Attorneys for Defendant, Counterclaimant and
Third-Party Plaintiff SENTRY INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WESCO INSURANCE COMPANY, a Delaware Corporation<br><br>Plaintiff,<br><br>vs.<br><br>SENTRY INSURANCE COMPANY, FORMERLY KNOWN AS SENTRY INSURANCE A MUTUAL COMPANY, a Wisconsin corporation,<br><br>Defendant.<br><br>vs.<br><br>EVANSTON INSURANCE COMPANY, an Illinois corporation, and FEDERAL INSURANCE COMPANY, a New Jersey corporation.<br><br>Third-Party Defendants. | CASE NO. 3:25-CV-07584-TSH<br><br>SENTRY INSURANCE COMPANY'S THIRD-PARTY COMPLAINT |
| AND RELATED COUNTERCLAIM | |

Pursuant to FRCP 14, Third-Party Plaintiff Sentry Insurance Company ("Sentry"), by and through its attorneys, alleges the following in support of its Third-Party Complaint against Third-Party Defendants Evanston Insurance Company and Federal Insurance Company.

## THE PARTIES

1.      Sentry Insurance Company ("Sentry") is a Wisconsin corporation with its principal place of business in Wisconsin.

2.      Evanston Insurance Company ("Evanston") is an Illinois corporation with its principal place of business in Illinois.

3.      Federal Insurance Company ("Federal") is a New Jersey corporation with its principal place of business in Indiana.

4.      Wesco Insurance Company ("Wesco") is the plaintiff and counter-defendant in this suit and a Delaware corporation with its principal place of business in New York.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because this is a civil action among citizens of different states and the amount in controversy exceeds $75,000.  The Court also has jurisdiction to declare the rights of the parties pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

6.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367, because Sentry's claims as a Third-Party Plaintiff against Evanston and Federal are related to the claims asserted against Sentry within Wesco's Complaint.

7.      Venue is proper under 28 U.S.C. § 1391(b)(1), because a substantial part of the events or omissions giving rise to the insurance claims underlying this dispute occurred in the County of Contra Costa, and the underlying lawsuit was prosecuted in the County of Contra Costa, which is situated in this District.

## GENERAL ALLEGATIONS

8.      Sentry issued a primary commercial general liability policy (the "Sentry Policy") to Alliance Laundry Systems LLC ("Alliance"), a company that manufactures industrial washers.  The Sentry Policy was issued with a products-completed operations aggregate policy limit of $2,000,000. The Sentry Policy is attached as **Exhibit A.**

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

2
THIRD-PARTY COMPLAINT

9.      The Sentry Policy includes a Liability Deductible Endorsement which provides an each occurrence deductible under Coverage A of $250,000, which is within and reduces the applicable limit of insurance.  See **Exhibit A**, p. 50.

10.      Federal issued an umbrella insurance policy to Alliance (the "Federal Policy") which includes, among other coverages, a products-completed operations aggregate policy limit of $25,000,000 specifically in excess of the Sentry Policy.  The Federal policy is attached as **Exhibit B**.

11.      Wesco is the plaintiff and counter-defendant in this action and issued a primary multiline commercial policy (the "Wesco Policy") to Taylor Houseman, Inc., ("Taylor"), a company that distributed, serviced, maintained, and repaired washers manufactured by Alliance.  The Wesco Policy includes commercial general liability coverage with a per occurrence limit of liability of $1,000,000 and an aggregate products-completed operations aggregate limit of $2,000,000. The Wesco Policy is attached as **Exhibit C**.

12.      On information and belief, Evanston issued to Taylor an excess or umbrella liability insurance policy (the "Evanston Policy") specifically excess to the Wesco Policy that provides at least $1,000,000 in applicable policy limits.  Sentry currently has no copy of the Evanston Policy.

13.      Taylor sold washers manufactured by Alliance and also repaired and serviced the washers through work orders and agreements directly with the owners of the washers.

14.      Alliance entered into an agreement with Taylor (the "Distribution Agreement") under which Taylor agreed to indemnify and hold harmless Alliance from any and all claims and litigation arising out of or occasioned by the negligent, faulty or improper installation or repair of Alliance washers by Taylor or any of its customers.

15.      Taylor sold an Alliance washing machine to its customer Shields Nursing Center in Richmond, California ("Shields").

16.      After it sold the washing machine at issue, Taylor serviced, maintained, and repaired the washing machine for Shields through work orders and agreements

3

THIRD-PARTY COMPLAINT

directly with Shields.

17.    On November 4, 2021, a suit styled *Jaurice Hutson v Taylor Houseman, Inc., Alliance Laundry Systems LLC*, Contra Costa County Superior Court, Case No. CIV MSC21-01940 (the "*Underlying Action*") was filed, which alleged that, on November 8, 2019, the claimant was injured while working at Shields when he was using an Alliance washing machine that had been serviced, maintained, and repaired by Taylor for the twenty (20) years prior to the accident.  A copy of the Third Amended Complaint in the *Underlying Action* is attached as **Exhibit D**.

18.    The *Underlying Action* alleged that Taylor was negligent in its service and repair of the washing machine for over twenty (20) years and this negligence led to the underlying claimant's injury.

19.    The Wesco Policy provides "contractual liability" coverage, including coverage for bodily injury for which Taylor is obligated to pay damages by reason of the assumption of liability in a contract or agreement to the extent that the contract or agreement is an "insured contract."  See **Exhibit C**, p. 84. The Wesco Policy defines "insured contract" in relevant part as:

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

See **Exhibit C**, p. 96

20.    Accordingly, the Wesco Policy insured Taylor's obligation to indemnify and hold harmless Alliance for the *Underlying Action* pursuant to the terms of the Distribution Agreement.

21.    On information and belief, the Evanston Policy follows form to the Wesco Policy and provides that same coverage to Taylor for its obligation to indemnify and hold harmless Alliance for the *Underlying Action* pursuant to the terms of the

THIRD-PARTY COMPLAINT

Distribution Agreement.

22.   Wesco and Evanston each breached the terms of their respective policies by refusing to defend or indemnify Alliance in the *Underlying Action*.

23.   The Sentry Policy contains the following endorsement entitled Additional Insured – Vendors endorsement (the "AI Endorsement"), which provides as follows:

**ADDITIONAL INSURED – VENDORS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

**PART**

**SCHEDULE**

**Name of Person or Organization (Vendor):**

ALL VENDORS OF YOUR PRODUCTS DOMICILED IN THE UNITED STATES OF AMERICA OR CANADA

**Your Products:**

ALL PRODUCTS

**WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization (referred to below as "vendor") shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional provisions:

1.   The insurance afforded the vendor does not apply to:

a.   "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

5

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

b. Any express warranty unauthorized by you;

c. Any physical or chemical change in the product made intentionally by the vendor;

d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

e. Any failure to make inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

See, **Exhibit A**, pages 28-29.

24. Coverage A in the Federal Policy provides Excess Follow-Form Coverage that followed the terms and conditions of the Sentry Policy unless a term or condition in the Federal Policy expressly differed from any term or condition contained in the Sentry Policy or is not contained in the Sentry Policy. See **Exhibit B**, page 15.

25. The Federal Policy further provides in the section titled "Who Is An Insured/ Excess Follow Form Coverage A" that "persons or organizations qualifying as an

6

THIRD-PARTY COMPLAINT

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

insured in underlying insurance" are insured under the Federal Policy, "but not beyond the extent of any limitation imposed under any contract or agreement." See **Exhibit B**, page 26. Accordingly, Taylor was an insured under the Federal Policy pursuant to the AI Endorsement subject to all of the terms of the AI Endorsement.

26. Subject to a reservation of rights, Sentry agreed to defend Taylor in the *Underlying Action* pursuant to the AI Endorsement in the Sentry Policy. Sentry's reservation of rights included the right to refuse to indemnify Taylor for claims outside the scope of the AI Endorsement and the right to seek reimbursement of defense fees and costs expended in defense of claims outside the scope of the AI Endorsement.

27. Sentry also agreed to defend its named insured, Alliance, in the *Underlying Action*.

28. Taylor waived its right under Cal. Civ. Code 2860 to use independent counsel for its defense of the *Underlying Action*. A copy of the waiver is attached as **Exhibit E**.

29. The AI Endorsement excludes coverage to Taylor for "any failure to make inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products." See, **Exhibit A,** pages 28-29.

30. The AI Endorsement excludes coverage to Taylor for its "installation, servicing or repair operations." **Exhibit A,** pages 28-29.

31. The AI Endorsement does not provide coverage for Taylor for its independent negligence.

32. Based on the above terms, the Wesco Policy is the only primary policy that insures Taylor for negligence related to the installation, inspection, adjustment, testing, servicing or repair of the washer, or any other independent negligence of Taylor, as alleged in the *Underlying Action*.

33. On information and belief, the Evanston Policy follows form to the above-described terms, and therefore, is the only excess policy that insures Taylor for

THIRD-PARTY COMPLAINT

negligence related to the installation, inspection, adjustment, testing, servicing or repair of the washer, or any other independent negligence of Taylor, as alleged in the *Underlying Action*.

34.    Wesco and Evanston breached the terms of their respective policies by refusing to defend or indemnify Taylor in the *Underlying Action* with respect to Taylors' liability that was not covered by the AI Endorsement.

35.    A C.C.P. section 998 Offer to Compromise (the "Offer") was issued by the claimant in the *Underlying Action* to Taylor in the amount of $1,999,999.99.

36.    The Offer was directed to resolve the *Underlying Action* only as to Taylor and not Alliance.

37.    At the time of the Offer, the Sentry Policy's applicable aggregate limit of liability had been eroded through the payment of sums towards the resolution of other claims. The Policy's deductible also reduced the Sentry Policy's limit of liability. Accordingly, the Offer was in an amount in excess of the available Sentry Policy limit.

38.    Because the claims against Taylor and Alliance in the *Underlying Action* implicated the excess coverage provided by Federal, prior to the expiration of the Offer, Sentry sought the consent of Federal for Sentry to contribute toward a settlement in which Taylor could accept the Offer. Federal did not provide its consent.

39.    Given the competing demands for the remaining Sentry Policy limits, the fact that the Offer exceeded those limits, and the lack of consent by Federal, among other reasons, Sentry was unable to agree to contribute toward the acceptance of the Offer.

40.    Wesco agreed to pay $1,000,000 to meet the Offer to Taylor.

41.    On information and belief Evanston agreed to pay $999,999.99 to meet the Offer to Taylor.

42.    After all of the claims against Taylor in the *Underlying Action* were resolved, Sentry paid sums towards the settlement of the claims in the *Underlying Action* against its named insured, Alliance, which have exhausted its applicable limit of liability.

8

43.    Wesco initiated the complaint in this action against Sentry and is seeking reimbursement of the $1,000,000 it paid to settle the claims in the *Underlying Action* against Taylor.

44.    Evanston notified Sentry that it also contends that Sentry owes Evanston reimbursement of the amount Evanston paid to resolve the *Underlying Action* for Taylor.

45.    Evanston advised Sentry that its claim for reimbursement had priority over any claim made by Wesco.

46.    Sentry denies that it owes any sums to Wesco, Evanston, or any other entity regarding the sums paid to resolve the *Underlying Action*.

Sentry has filed a counterclaim against Wesco in this matter to adjudicate the rights and duties regarding the defense and settlement of the *Underlying Action* and seeks a declaration that Wesco owed a duty to defend and indemnify Taylor in the *Underlying Action* on a primary basis and seeks equitable contribution for Wesco's share of Taylor's defense fees.

## FIRST CAUSE OF ACTION

## Declaratory Relief – No Duty to Indemnify

(Against Evanston)

47.    Sentry reincorporates its previous allegations as if stated herein in full.

48.    Evanston issued an excess or umbrella policy to Taylor.

49.    Evanston voluntarily agreed to pay sums to settle the *Underlying Action*.

50.    In accordance with the terms of the AI Endorsement, the Wesco Policy, and the Evanston Policy, Wesco and Evanston were the only insurers which owed the duty to settle the claims against Taylor regarding the claims against Taylor in the *Underlying Action* that are outside of the coverage provided by the AI Endorsement.

51.    Some or all of the sums paid by Evanston to settle the claims against Taylor were paid with respect to Evanstson's own duty to settle claims against Taylor for Taylor's own independent negligence or otherwise outside the coverage provided by the AI Endorsement.

9

THIRD-PARTY COMPLAINT

52. Sentry has, at all times, acted in good faith, in defending Taylor and in reasonably responding to settlement offers.

53. Sentry was unable to accept the Offer or contribute to the acceptance of the Offer because the Offer exceeded the Sentry Policy limits, because of competing claims by its insureds to policy benefits, because of lack of consent by Federal, and for other good faith bases according to proof.

54. Sentry had the right to control the defense of Taylor, including the discretion to settle or decline to settle claims against Taylor.

55. Taylor was not injured by Sentry's inability to accept the Offer.

56. Evanston's claim for reimbursement against Sentry is also precluded by its own breach of contract and breach of the implied covenant of good faith and fair dealing, in failing to agree to defend or indemnify Alliance in the *Underlying Action*.

57. On information and belief, Evanston disputes the allegations of paragraphs 49 to 56 above and on that basis contends that Sentry owes Evanston reimbursement of some or all the sums Evanston paid to settle the *Underlying Action* with respect to Taylor.

58. An actual controversy has arisen and now exists between Sentry and Evanston concerning the duty of Sentry to reimburse Evanston for the settlement of the *Underlying Action* with respect to Taylor.

59. Sentry seeks a judicial determination that Sentry owes no sums to Evanston.

## SECOND CAUSE OF ACTION

### Equitable Indemnity

(Against Federal)

60. Sentry reincorporates its previous allegations as if stated herein in full.

61. Wesco and Evanston each contend that Sentry had an obligation to accept the Offer or agree to contribute toward satisfaction of the Offer and that Sentry's failure to do so was in breach of its contract and/or in bad faith.

62. Sentry disagrees that it breached any term of the Sentry Policy and contends that it has at all times acted in good faith. However, to the extent that Sentry was

10

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

obligated to contribute any amount towards satisfaction of the Offer, Sentry was precluded from doing so by the lack of consent by Federal.

63.     The Offer exceeded the Sentry Policy limits, and the coverage provided by the Federal Policy follows form to the Sentry Policy, and therefore, to the extent Sentry was obligated to contribute toward the satisfaction of the Offer, Federal was also obligated to contribute toward the Offer and to provide its consent for Sentry to contribute.

64.     Sentry disputes it has any liability to Wesco or Evanston; however, to the extent it is ever determined that such liability exists, Federal is primarily liable due to its failure to consent.

65.     As an entirely independent basis for indemnity against Federal, the applicable limit of liability of the Sentry Policy has been exhausted through the payment of claims toward the settlement of the *Underlying Action* with respect to Alliance. Therefore, any amount that Sentry had contributed toward the settlement of the *Underlying Action* with respect to Taylor would have reduced the amount available for Sentry to contribute to the settlement claims against Alliance, thereby increasing the amount that Federal would have had to contribute.

66.     Sentry disputes that it owes any amount to Wesco or Evanston; however, to the extent Sentry is ever determined to owe any amount to Wesco or Evanston with respect to the *Underlying Action*, that amount in whole or in part represents an amount by which Federal has been unjustly enriched, in that Federal avoided contributing that amount toward the settlement of the claims against Alliance.

67.     Accordingly, while Sentry denies owing any amount to Wesco or Evanston, to the extent that it is ever determined that Sentry owes any amount, Sentry is entitled to equitable indemnity from Federal.

/ / /

/ / /

/ / /

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

11
THIRD-PARTY COMPLAINT

## THIRD CAUSE OF ACTION

### Declaratory Relief – Order of Coverage

(Against Evanston and Federal)

68.    Sentry reincorporates its previous allegations as if stated herein in full.

69.    Sentry, Federal, Wesco and Evanston each made payments to settle the *Underlying Action*.

70.    Only Sentry made payments to defend against the *Underlying Action*.

71.    Sentry contends that if any of these payments should be re-allocated amongst the four policies, that Sentry should be reimbursed by Wesco and/or Evanston for amounts paid by Sentry in defense of Taylor and the defense and indemnity of Alliance that should have been borne by Wesco and/or Evanston.

72.    Sentry further contends that if Wesco or Evanston is owed any reimbursement, that such reimbursement is the duty of Federal, which has remaining limits, and not the Sentry Policy which has exhausted all of its remaining limits.

73.    Sentry is informed and believes that the other insurers disagree with Sentry and that they each contend that they are each entitled to some amount of reimbursement from the other insurers.

74.    Sentry seeks a declaration from this court regarding the appropriate re-allocation of payments among the insurers, if any..

## PRAYER FOR RELIEF

WHEREFORE, Sentry prays for relief as follows:

A.    On the first cause of action, for a declaration and judgment that Sentry owes no sums to Evanston regarding the *Underlying Action*;

B.    On the second cause of action, for judgment in favor of Sentry awarding it indemnity for any amount owed with respect to the *Underlying Action*, if any;

C.    On the third cause of action, for a declaration as to the proper allocation of payments amongst the insurers with respect to the *Underlying Action*;

D.    For prejudgment interest;

E.    For costs of suit;

THIRD-PARTY COMPLAINT

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

F.    For any other relief the court deems just and proper.

DATED:  February 17, 2026          SACRO & WALKER LLP


By    /s/Ilya A. Kosten
          JENNIFER YU SACRO
          ILYA A. KOSTEN
          PAUL A. IMPELLEZZERI
          Attorneys for Defendant,
          Counterclaimant, and Third-party
          Plaintiff SENTRY INSURANCE
          COMPANY

SACRO & WALKER LLP
700 N. Brand Boulevard, Suite 610
Glendale, California 91203

THIRD-PARTY COMPLAINT

# EXHIBIT A



SENTRY INSURANCE A MUTUAL COMPANY
STEVENS POINT, WISCONSIN
(A PARTICIPATING MUTUAL COMPANY)
A MEMBER OF THE SENTRY FAMILY OF INSURANCE COMPANIES

COMMERCIAL GENERAL
LIABILITY POLICY

---

DECLARATIONS

POLICY NUMBER: 90-05297-03

---

**FIRST NAMED INSURED AND ADDRESS**

ALLIANCE LAUNDRY HOLDINGS, LLC
DBA ALLIANCE LAUNDRY SYSTEMS,
LLC

SHEPARD ST
PO BOX 990
RIPON                     WI
                       54971

**PRODUCER     90176105**

MARSH USA INC
1166 AVE OF THE AMERICAS
NEW YORK, NY 10036
212-345-6000

REFER TO THE ENCLOSED SCHEDULE FOR ADDITIONAL NAMED INSUREDS.

Policy Period:  From 05-05-19 To 05-05-20 at 12:01 AM Standard Time.
                at your mailing address shown above.

Form of Named Insured's Business:  LLC

In return for the payment of the premium, and subject to all the terms of
this policy, we agree with you to provide the Insurance as stated in this
policy.

The Estimated Premium for this policy is █████████████

Forms Applicable to all Coverage Parts:
IL 00 17 (1198)   80 2313 (0186)

For Service Please Contact The Office At:
      1800 NORTH POINT DRIVE
      STEVENS POINT, WI  54481
      800-473-6879

IL DS 00 04 98

---

ALL 90-05297-03
05-22-19

NON-ASSESSABLE POLICY

01T180RG

00099



IL 00 17 11 98

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A.  CANCELLATION

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b.  30 days before the effective date of cancellation if we cancel for any other reason.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

B.  CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C.  EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D.  INSPECTIONS AND SURVEYS

1.  We have the right to:

a.  Make inspections and surveys at any time;

b.  Give you reports on the conditions we find; and

IL 00 17 11 98

Copyright, Insurance Services Office, Inc., 1998

ALL 90-05297-03 01 191
05-22-19
PAGE 001 of 002

01T180RG

00101



## COMMON POLICY CONDITIONS - CONTINUED

    c.  Recommend changes.

  2.  We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a.  Are safe or healthful; or

    b.  Comply with laws, regulations, codes or standards.

  3.  Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

  4.  Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

E.  PREMIUMS

The first Named Insured shown in the Declarations:

  1.  Is responsible for the payment of all premiums; and

  2.  Will be the payee for any return premiums we pay.

F.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98

Copyright, Insurance Services Office, Inc., 1998

ALL 90-05297-03 01 191
05-22-19
PAGE 002 of 002

00102

EXHIBIT A - PAGE 3

# ADDITIONAL CONDITIONS – MEMBERSHIP AND PARTICIPATION

## Membership

By virtue of this policy, you are a member of Sentry Insurance A Mutual Company of Stevens Point, Wisconsin.

You are entitled to vote either in person or by proxy at any meeting of the Company. The annual meeting of the Company is held at the Company's Home Office in Stevens Point, Wisconsin at 9:00 A.M. on the third Wednesday in April.

## Participation

You will share in any dividends in accordance with conditions established by the Board of Directors.

This policy is not assessable.

Vice President, Secretary                                   President

80-2313 (Ed. 01 86)                                                                                  01T1ROR3

EXHIBIT A - PAGE 4



SENTRY INSURANCE A MUTUAL COMPANY                    COMMERCIAL GENERAL
STEVENS POINT, WISCONSIN                             LIABILITY POLICY
(A PARTICIPATING MUTUAL COMPANY)
A MEMBER OF THE SENTRY FAMILY OF INSURANCE COMPANIES

## GENERAL LIABILITY DECLARATIONS

### OCCURRENCE COVERAGE

LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $ 5,000,000 |
| Products-Completed Operations Aggregate Limit | $ 2,000,000 |
| Personal and Advertising Injury Limit | $ 2,000,000 |
| Each Occurrence Limit | $ 2,000,000 |
| Damage To Premises Rented To You | $ 1,000,000 (ANY ONE PREMISES) |
| Medical Expense Limit | $ 10,000 (ANY ONE PERSON) |
| Employee Benefits Liability Limit | $ 2,000,000 |
| EMPLOYEE BENEFITS DEDUCTIBLE | $ 1,000 PER EMPLOYEE |

DEDUCTIBLE SCHEDULE

Any limitations on deductible application are stated on attached
endorsements.

| COVERAGE | AMOUNT AND BASIS OF DED |
|---|---|
| Employee Benefits Liability | $ 0 Each Occurrence |

FORMS AND ENDORSEMENTS:
The following forms and endorsements were included in the policy at the
time of issuance:
  SEE ATTACHED SCHEDULE OF FORMS AND ENDORSEMENTS

CG 89 01 07 98

ALL 90-05297-03 01 191
05-22-19

OITIBORG

00107

EXHIBIT A - PAGE 5



**ADDITIONAL NAMED INSUREDS**                    **POLICY NUMBER   90-05297-03**

The persons or organizations named below are named insureds under this policy.

ALH HOLDING INC (APPLICANT)
ALLIANCE LAUNDRY HOLDINGS LLC
ALLIANCE LAUNDRY SYSTEMS LLC
ALLIANCE LAUNDRY EQUIPMENT RECEIVABLES 2015 LLC
ALLIANCE COMMERCIAL APPLIANCES FINANCE LLC
ALLIANCE LAUNDRY S.A.
SPEED QUEEN LAUNDRY LLC
SPEED QUEEN LAUNDRY (ATLANTA) LLC
LAUNDROMAX - HEADLAND HOLDING COMPANY, LLC
SPEED QUEEN LAUNDRY (HOUSTON) LLC
SPEED QUEEN LAUNDRY (SAN ANTONIO) LLC

ANY CORPORATION OR OTHER BUSINESS ORGANIZATION, INCLUDING A JOINT VENTURE, PARTNERSHIP OR LIMITED LIABILITY COMPANY IN WHICH THE NAMED INSURED SHOWN IN THE DECLARATIONS HAS, FORMS OR ACQUIRES DURING THE POLICY PERIOD AN OWNERSHIP INTEREST OF MORE THAN FIFTY (50%) PERCENT AND WHICH IS DOMICILED WITHIN THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS, PUERTO RICO, OR CANADA.

IT IS FURTHER AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THIS ENDORSEMENT TO A NEWLY ACQUIRED OR FORMED ENTITY DOES NOT APPLY TO AN OCCURRENCE PRIOR TO THE ACQUISITION OF SUCH ENTITY.

IL 89 01 09 87

ALL 90-05297-03 191
05-22-19
Page 001

ALLIANCE LAUNDRY HOLDINGS, LLC
DBA ALLIANCE LAUNDRY SYSTEMS, LLC

01T18ORG

00100

EXHIBIT A - PAGE 6



ADDED DECLARATION

POLICY NUMBER   90-05297-03

SCHEDULE OF FORMS AND ENDORSEMENTS

The following forms and endorsements are contained in this policy
at its inception:

```
CG 00 01   0413   COMMERCIAL GENERAL LIABILITY COVERAGE FORM
CG 01 24   0193   WISCONSIN CHANGES - AMENDMENT OF POLICY
                  CONDITIONS
CG 20 11   0413   ADDITIONAL INSURED - MANAGERS OR LESSORS OF
                  PREMISES
CG 20 15   0413   ADDITIONAL INSURED - VENDORS
CG 20 28   0413   ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT
CG 21 41   1185   EXCLUSION - INTERCOMPANY PRODUCTS SUITS
CG 21 47   1207   EMPLOYMENT-RELATED PRACTICES EXCLUSION
CG 21 67   1204   FUNGI OR BACTERIA EXCLUSION
CG 21 75   0115   EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND
                  EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED
                  OUTSIDE THE UNITED STATES
CG 21 96   0305   SILICA OR SILICA-RELATED DUST EXCLUSION
CG 24 04   0509   WAIVER OF TRANSFER OF RIGHTS OF RECOVERY
                  AGAINST OTHERS TO US
CG 24 26   0413   AMENDMENT OF INSURED CONTRACT DEFINITION
CG 70 01   0413   EMPLOYEE BENEFITS LIABILITY ENDORSEMENT
CG 70 04   1204   FELLOW EMPLOYEE BODILY INJURY
CG 70 98   1204   CHANGES - POLLUTION LIABILITY
CG 79 11   0306   LIABILITY DEDUCTIBLE ENDORSEMENT
CG 80 09   1204   EARLIER NOTICE OF CANCELLATION AND NON-RENEWAL
                  PROVIDED BY US
CG 80 12   0118   INCIDENTAL MEDICAL MALPRACTICE
CG 80 13   1204   AMENDATORY ENDORSEMENT - EXTENDED PROPERTY
                  DAMAGE
CG 80 14   1204   AMENDATORY ENDORSEMENT - BROAD KNOWLEDGE OF
                  OCCURRENCE, CLAIM OR SUIT
CG 80 16   0118   OWNED, NON-OWNED AND HIRED WATERCRAFT
CG 80 18   1204   ADDITIONAL INSURED - AUTOMATIC STATUS WHEN
                  REQUIRED BY CONTRACT OR AGREEMENT WITH YOU
CG 80 21   0118   UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS/
                  EXPOSURES
CG 88 08   1204   EXCLUSION - ASBESTOS
IL 00 21   0908   NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
                  (BROAD FORM)
IL 02 83   1118   WISCONSIN CHANGES - CANCELLATION AND NONRENEWAL
IL 70 58   0214   NOTICE OF CANCELATION - CERTIFICATE HOLDERS
GLSPEC58   0116   GENERAL LIABILITY PREMIUM AND RATE ENDORSEMENT
  SPEC01   0786   PERSONAL INJURY AMENDED
```

SPECIAL

ALL 90-05297-03 01 191
05-23-19                          ALLIANCE LAUNDRY SYSTEMS LLC

01T18ORG

00075

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

### COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**CG 00 01 04 13**
ALL 90-05297-03 01 191

© Insurance Services Office, Inc., 2012

**Page 1 of 16**
05/22/2019

00008 0000000003 19143 0 N          31583B6F-D2E3-400A-A2D5-945CB791E4B6

EXHIBIT A - PAGE 8

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

EXHIBIT A - PAGE 9

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

  (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

  (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

  (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

  (i) Any insured; or

  (ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

  (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

  (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

  (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**CG 00 01 04 13**
ALL 90-05297-03 01 191

© Insurance Services Office, Inc., 2012

**Page 3 of 16**
05/22/2019

3    00008 0000000003 19143 0 N          31583B6F-D2E3-400A-A2D5-945CB791E4B6

EXHIBIT A - PAGE 10

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(b) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

© Insurance Services Office, Inc., 2012

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

5    00008 0000000003 19143 0 N                    31583B6F-D2E3-400A-A2D5-945CB791E4B6

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

EXHIBIT A - PAGE 13

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**CG 00 01 04 13**
ALL 90-05297-03 01 191

© Insurance Services Office, Inc., 2012

**Page 7 of 16**
05/22/2019

31583B6F-D2E3-400A-A2D5-945CB791E4B6

EXHIBIT A - PAGE 14

## COVERAGE C - MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. Any Insured

To any insured, except "volunteer workers".

b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

d. Workers' Compensation And Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. Athletics Activities

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard".

g. Coverage A Exclusions

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

EXHIBIT A - PAGE 15

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

9   00008 0000000003 19143 0 N        31583B6F-D2E3-400A-A2D5-945CB791E4B6

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by;

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13
05/22/2019

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**CG 00 01 04 13**
ALL 90-05297-03 01 191

© Insurance Services Office, Inc., 2012

**Page 11 of 16**
05/22/2019

11  00008  0000000003 19143 0 N          31583B6F-D2E3-400A-A2D5-945CB791E4B6

EXHIBIT A - PAGE 18

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

EXHIBIT A - PAGE 19

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**CG 00 01 04 13**
ALL 90-05297-03 01 191

© Insurance Services Office, Inc., 2012

**Page 13 of 16**
05/22/2019

13  00008  0000000003  19143  0  N          31583B6F-D2E3-400A-A2D5-945CB791E4B6

EXHIBIT A - PAGE 20

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

31583B6F-D2E3-400A-A2D5-945CB791E4B6

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

EXHIBIT A - PAGE 23



COMMERCIAL GENERAL LIABILITY

WISCONSIN CHANGES -
AMENDMENT OF POLICY CONDITIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

1.  The following is added to CHANGES (Common Policy Conditions):

    If one of our agents knows of a fact that breaches a condition of
    this Coverage Part, we will be considered to have knowledge of this
    same fact if:

    a.  The agent knows of this fact at the time the Coverage Part
        is issued or an application is made; or

    b.  The agent later learns of this fact in the course of his
        dealings as an agent with you.

    Any fact that breaches a condition of this Coverage Part and is
    known to the agent prior to loss shall not void the Coverage Part
    or prevent a recovery in the event of loss.

2.  The LEGAL ACTION AGAINST US Condition (Section IV) does not apply.

3.  The following is added to Conditon 6. REPRESENTATIONS (Section IV):

    No misrepresentation or breach of affirmative warranty made by
    you or on your behalf in the negotiation of this Coverage Part
    affects our obligation under this Coverage Part unless:

    a.  We rely on it and it is either material or made with intent
        to deceive; or

    b.  The facts misrepresented or falsely warranted contribute
        to the loss.

    No failure of a condition before the loss and no breach of a
    promissory warranty affects our obligation under this Coverage Part
    unless such failure or breach.

    a.  Exists at the time of the loss; and

    b.  Either increases the risk at the time of the loss or
        contributes to the loss.

    The provisions of this condition do not apply to nonpayment of
    premium.

4.  Condition 8. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US
    (Section IV) is replaced by the following:

    In the event of any payment under this Coverage Part, we will be
    entitled to the insured's rights of recovery against any person or
    organization and the insured will do whatever is necessary to
    secure such rights.  We will be entitled to a recovery only
    after the insured has been fully compensated for damages.

CG 01 24 01 93

Copyright, Insurance Services Offices, Inc., 1984, 1992

ALL 90-05297-03 01 191
05-22-19
PAGE 001 of 002

01T18ORG

00114



COMMERCIAL GENERAL LIABILITY

WISCONSIN CHANGES -
AMENDMENT OF POLICY CONDITIONS - CONTINUED

5.  CONFORMITY TO STATUTE OR RULE

Any provision of this policy (including endorsements which modify
the policy) that is in conflict with a Wisconsin statute or rule
is hereby amended to conform to that statute or rule.

The term rule means a valid rule promulgated by the Commissioner of
insurance in accordance with the rule-making authority conferred
under Wis. Stat. Ann. 227.11(2) and published in the Wisconsin
Administrative Code.

CG 01 24 01 93

Copyright, Insurance Services Offices, Inc., 1984, 1992

ALL 90-05297-03 01 191
05-22-19
PAGE 002 of 002

01TIBORG

00115

EXHIBIT A - PAGE 25



COMMERCIAL GENERAL LIABILITY

| NAMED INSURED | ENDORSEMENT EFFECTIVE | POLICY NUMBER |
|---|---|---|
| ALLIANCE LAUNDRY HOLDINGS, LLC<br>DBA ALLIANCE LAUNDRY SYSTEMS,<br>LLC | 05-05-19 | 90-05297-03 |

## ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

1. Designation of Premises (Part Leased to You):

   ANY LEASED PREMISES

2. Name of Person or Organization (Additional Insured):

   LESSOR OF PREMISES LEASED TO YOU

3. Additional Premium:   Included

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

CG 20 11 04 13
Copyright, Insurance Services Office, Inc., 2012

ALL 90-05297-03 01 191
05-23-19
PAGE 001 OF 002
#01

O1T18ORG

00076

EXHIBIT A - PAGE 26



COMMERCIAL GENERAL LIABILITY

ADDITIONAL INSURED - MANAGERS OR LESSORS OF
PREMISES - CONTINUED

This insurance does not apply to:

1.  Any "occurrence" which takes place after you cease to be a
    tenant in that premises.

2.  Structural alterations, new construction or demolition
    operations performed by or on behalf of the person or organization
    shown in the Schedule.

CG 20 11 04 13
Copyright, Insurance Services Office, Inc., 2012

ALL 90-05297-03 01 191
05-23-19
PAGE 002 OF 002
#01

00077

O1T18ORG



SENTRY INSURANCE A MUTUAL COMPANY
STEVENS POINT, WISCONSIN
(A PARTICIPATING MUTUAL COMPANY)
A MEMBER OF THE SENTRY FAMILY OF INSURANCE COMPANIES
COMMERCIAL GENERAL LIABILITY

| NAMED INSURED | ENDORSEMENT EFFECTIVE | POLICY NUMBER |
|---|---|---|
| ALLIANCE LAUNDRY HOLDINGS, LLC DBA ALLIANCE LAUNDRY SYSTEMS, LLC | 05-05-19 | 90-05297-03 |

## ADDITIONAL INSURED - VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

Name of Person or Organization (Vendor):

ALL VENDORS OF YOUR PRODUCTS DOMICILED IN THE UNITED STATES OF
AMERICA OR CANADA

Your Products:

ALL PRODUCTS

WHO IS AN INSURED (Section II) is amended to include as an insured
any person or organization (referred to below as "vendor") shown
in the Schedule, but only with respect to "bodily injury" or
"property damage" arising out of "your products" shown in the
Schedule which are distributed or sold in the regular course of
the vendor's business, subject to the following additional
provisions:

1.  The insurance afforded the vendor does not apply to:

    a.  "Bodily injury" or "property damage" for which the vendor is
        obligated to pay damages by reason of the assumption of
        liability in a contract or agreement.  This exclusion does not
        apply to liability for damages that the vendor would have in
        the absence of the contract or agreement;

CG 20 15 04 13

Copyright, Insurance Services Office, Inc., 2012

ALL 90-05297-03 01 191
05-23-19
PAGE 001 OF 002
#01

OITIBORG

00078



COMMERCIAL GENERAL LIABILITY

### ADDITIONAL INSURED - VENDORS - CONTINUED

b. Any express warranty unauthorized by you;

c. Any physical or chemical change in the product made intentionally by the vendor;

d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.


CG 20 15 04 13

Copyright, Insurance Services Office, Inc., 2012

ALL 90-05297-03 01 191
05-23-19
PAGE 002 OF 002

O1T180RG

00079

EXHIBIT A - PAGE 29



SENTRY INSURANCE A MUTUAL COMPANY
STEVENS POINT, WISCONSIN
(A PARTICIPATING MUTUAL COMPANY)
A MEMBER OF THE SENTRY FAMILY OF INSURANCE COMPANIES
COMMERCIAL GENERAL LIABILITY

| NAMED INSURED | ENDORSEMENT EFFECTIVE | POLICY NUMBER |
|---|---|---|
| ALLIANCE LAUNDRY HOLDINGS, LLC<br>DBA ALLIANCE LAUNDRY SYSTEMS,<br>LLC | 05-05-19 | 90-05297-03 |

## ADDITIONAL INSURED - LESSOR OF
## LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

```
+-------------------------------------------------------------------+
|NAME OF ADDITIONAL INSURED PERSON(S) OR ORGANIZATION(S)             |
+-------------------------------------------------------------------+
|ANY PERSON OR ORGANIZATION IS INCLUDED AS AI WHERE REQUIRED BY      |
|WRITTEN CONTRACT OR AGREEMENT                                       |
|                                                                   |
|                                                                   |
|                                                                   |
|                                                                   |
|                                                                   |
|                                                                   |
|                                                                   |
|                                                                   |
|                                                                   |
|                                                                   |
+-------------------------------------------------------------------+
|Information required to complete this Schedule, if not shown above, |
|will be shown in the Declarations.                                 |
+-------------------------------------------------------------------+
```

A.  Section II - WHO IS AN INSURED is amended to include as an additional
    insured the person(s) or organization(s) shown in the Schedule, but
    only with respect to liability for "bodily injury", "property damage"
    or "personal and advertising injury" caused, in whole or in part, by
    your maintenance, operation or use of equipment leased to you by such
    person(s) or organization(s).

B.  With respect to the insurance afforded to these additional insureds,
    this insurance does not apply to any "occurrence" which takes place
    after the equipment lease expires.

CG 20 28 04 13

Copyright, Insurance Services Office, Inc., 2012

ALL 90-05297-03 01 191
05-23-19
PAGE 001
#01

O1T18ORG

00080



COMMERCIAL GENERAL LIABILITY

EXCLUSION - INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILTY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any claim for damages by any
Named Insured against another Named Insured because of "bodily
injury" or "property damage" arising out of "your products" and
included within the "products - completed operations hazard."

CG 21 41 11 85

Copyright, Insurance Services Office, Inc., 1984

ALL 90-05297-03 01 191
05-22-19
PAGE 001

O1T180RG

00109



COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., EXCLUSIONS of Section I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., EXCLUSIONS of Section I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

CG 21 47 12 07

Copyright, ISO Properties, Inc., 2006

ALL 90-05297-03 01 191
05-22-19
PAGE 001 of 002

O1T|80RO

00125



COMMERCIAL GENERAL LIABILITY

EMPLOYMENT-RELATED PRACTICES EXCLUSION - CONTINUED

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 12 07

Copyright, ISO Properties, Inc., 2006

ALL 90-05297-03 01 191
05-22-19
PAGE 002 of 002

00126

EXHIBIT A - PAGE 33



## FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  The following exclusion is added to Paragraph 2. EXCLUSIONS of
SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

2.  EXCLUSIONS

This insurance does not apply to:

FUNGI OR BACTERIA

a.  "Bodily injury" or "property damage" which would not have
occurred, in whole or in part, but for the actual, alleged or
threatened inhalation of, ingestion of, contact with,
exposure to, existence of, or presence of, any "fungi" or
bacteria on or within a building or structure, including its
contents, regardless of whether any other cause, event,
material or product contributed concurrently or in any
sequence to such injury or damage.

b.  Any loss, cost or expenses arising out of the abating,
testing for, monitoring, cleaning up, removing, containing,
treating, detoxifying, neutralizing, remediating or disposing
of, or in any way responding to, or assessing the effects of,
"fungi" or bacteria, by any insured or by any other person or
entity.

This exclusion does not apply to any "fungi" or bacteria that
are, are on, or are contained in, a good or product intended for
bodily consumption.

B.  The following exclusion is added to Paragraph 2. EXCLUSIONS of
SECTION I - COVERAGE B - PERSONAL AND ADVERTISING LIABILITY.

2.  EXCLUSIONS

This insurance does not apply to:

FUNGI OR BACTERIA

a.  "Personal and advertising injury" which would not have taken
place, in whole or in part, but for the actual, alleged or
threatened inhalation of, ingestion of, contact with,
exposure to, existence of, or presence of any "fungi" or
bacteria on or within a building or structure, including its
contents, regardless of whether any other cause, event,
material or product contributed concurrently or in any
sequence to such injury.

b.  Any loss, cost or expense arising out of the abating, testing
for, monitoring, cleaning up, removing, containing, treating,
detoxifying, neutralizing, remediating or disposing of, or in
any way responding to, or assessing the effects of, "fungi"
or bacteria, by any insured or by any other person or entity.

CG 21 67 12 04

Copyright ISO Properties, Inc., 2003

ALL 90-05297-03 01 191
05-22-19
PAGE 001 of 002



COMMERCIAL GENERAL LIABILITY

## FUNGI OR BACTERIA EXCLUSION - CONTINUED

C.  The following definition is added to the DEFINITIONS Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

CG 21 67 12 04

Copyright ISO Properties, Inc., 2003

ALL 90-05297-03 01 191
05-22-19
PAGE 002 of 002

00117

COMMERCIAL GENERAL LIABILITY
CG 21 75 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   **a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

CG 21 75 01 15
ALL 90-05297-03 01 191

© Insurance Services Office, Inc., 2015

**Page 1 of 2**
05/22/2019

00001 0000000006 19143 0 N          1024A3C1-17C4-46CB-8234-64DEFB491A74

EXHIBIT A - PAGE 36

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

b. The act resulted in damage:

(1) Within the United States (including its territories and possessions and Puerto Rico); or

(2) Outside of the United States in the case of:

(a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

(b) The premises of any United States mission; and

c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015



COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

## SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

    2. EXCLUSIONS

       This insurance does not apply to:

       SILICA OR SILICA-RELATED DUST

       a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

       b. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

       c. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

B. The following exclusion is added to Paragraph 2., Exclusions of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:

    2. EXCLUSIONS

       This insurance does not apply to:

       SILICA OR SILICA-RELATED DUST

       a. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

       b. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

C. The following definitions are added to the DEFINITIONS Section:

    1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

CG 21 96 03 05

Copyright ISO Properties, Inc., 2004

ALL 90-05297-03 01 191
05-22-19
PAGE 001 of 002

00128



COMMERCIAL GENERAL LIABILITY

SILICA OR SILICA-RELATED DUST EXCLUSION - CONTINUED

2.  "Silica-related dust" means a mixture or combination of silica
    and other dust or particles.

CG 21 96 03 05

Copyright ISO Properties, Inc., 2004

ALL 90-05297-03 01 191
05-22-19
PAGE 002 of 002

00129

EXHIBIT A - PAGE 39



**COMMERCIAL GENERAL LIABILITY**
CG 24 04 05 09

NAMED INSURED                      ENDORSEMENT EFFECTIVE  POLICY NUMBER
ALLIANCE LAUNDRY HOLDINGS, LLC           05-05-19          90-05297-03
DBA ALLIANCE LAUNDRY SYSTEMS,

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

WAIVER OF TRANSFER OF RIGHTS OF RECOVERY
AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

SCHEDULE

```
+----------------------------------------------------------------+
|NAME OF PERSON OR ORGANIZATION:                                 |
|WHERE REQUIRED BY WRITTEN CONTRACT, AND                         |
|NOT PROHIBITED BY LAW                                           |
|                                                                |
|                                                                |
|                                                                |
|                                                                |
+----------------------------------------------------------------+
|Information required to complete this Schedule, if not shown above, |
|will be shown in the Declarations.                              |
+----------------------------------------------------------------+
```

The following is added to Paragraph 8. TRANSFER OF RIGHTS OF RECOVERY

AGAINST OTHERS TO US of SECTION IV - CONDITIONS:

We waive any right of recovery we may have against the person or organi-
zation shown in the Schedule above because of payments we make for injury
or damage arising out of your ongoing operations or "your work" done
under a contract with that person or organization and included in the
"products-completed operations hazard".  This waiver applies only to the
person or organization shown in the Schedule above.

CG 24 04 05 09

Copyright, Insurance Services Offices, Inc., 2008

ALL 90-05297-03 01 191
05-22-19
PAGE 001

01T180RG

00130

EXHIBIT A - PAGE 40



COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINITIONS section is replaced by the following:

"Insured contract" means:

a.  A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b.  A sidetrack agreement;

c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e.  An elevator maintenance agreement;

f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement.

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

CG 24 26 04 13

Copyright, Insurance Services Office, Inc., 2012

ALL 90-05297-03 01 191
05-22-19
PAGE 001 of 002

O1T1B0RG

00131



COMMERCIAL GENERAL LIABILITY

AMENDMENT OF INSURED CONTRACT DEFINITION - CONTINUED

    (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

CG 24 26 04 13

Copyright, Insurance Services Office, Inc., 2012

ALL 90-05297-03 01 191
05-22-19
PAGE 002 of 002

00132

EXHIBIT A - PAGE 42



COMMERCIAL GENERAL LIABILITY
CG 70 01 04 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

EMPLOYEE BENEFITS LIABILITY ENDORSEMENT

This endorsement modifies the insurance provided under the:

Commercial General Liability Coverage Part

A.  The following is added to SECTION I - COVERAGES:

COVERAGE D. EMPLOYEE BENEFITS LIABILITY

1.  INSURING AGREEMENT

a.  We will pay those sums that the insured becomes legally obligated to pay as "damages" because of an "occurrence" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those "damages".  However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1) The amount we will pay for "damages" is limited as described in paragraph B. of this endorsement; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage D.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b.  This insurance applies only to "damages" caused by an "occurrence" during the policy period.  The "occurrence" must take place in the "coverage territory".

c.  "Damages" sustained by any one "employee", including "damages" sustained by such "employee's" dependents and beneficiaries, as a result of a series of related errors or omissions shall be considered one "occurrence".

2.  Exclusions

This insurance does not apply to:

a.  "Bodily injury" or mental injury to any person, "property damage" or "personal and advertising injury".

b.  Liability assumed by the insured under any contract or agreement.

c.  Any claim for:

CG 70 01 04 13

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ALL 90-05297-03 01 191
05-22-19
PAGE 001 of 005

01T180HG

00133

COMMERCIAL GENERAL LIABILITY

EMPLOYEE BENEFITS LIABILITY ENDORSEMENT - CONTINUED

    (1) Failure of performance of a contract by any insurer or other fiduciary entrusted with monies intended to fund "employee benefits";

    (2) Insufficiency of funds to meet any obligations under any "employee benefits";

    (3) Inadequacy of performance of investments, errors in providing information on past performance of investment vehicles or advice given with respect to participation;

    (4) Your failure to establish any "employee benefits" in compliance with the mandatory provisions of any law governing workers' compensation, unemployment insurance, social security or disability benefits or any similar state or federal laws;

    (5) Advice given to any person to participate or not to participate in any "employee benefits";

    (6) Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law;

    (7) "Damages" arising out of wrongful termination of employment, discrimination, or other employment-related practices.

  d. Liability based on:

    (1) Medical malpractice of any physician or surgeon;

    (2) Dishonest, fraudulent, criminal, or malicious acts or omissions committed by any insured;

    (3) The Employee Retirement Income Security Act of 1974 or any amendment thereof; or

    (4) Circumstances of which you were aware, or should have been aware, at the inception of this insurance.

3. The Supplementary Payments provisions are extended to Coverage D.

B. Section III - Limits of Insurance, is amended as follows:

  1. Paragraph 1. is replaced by the following:

    1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

      a. Insureds;

      b. Claims made or "suits" brought;

CG 70 01 04 13

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ALL 90-05297-03 01 191
05-22-19
PAGE 002 of 005

00134

EXHIBIT A - PAGE 44



COMMERCIAL GENERAL LIABILITY

EMPLOYEE BENEFITS LIABILITY ENDORSEMENT - CONTINUED

   c.  Persons or organizations making claims or bringing "suits"; or

   d.  Benefits included in your "employee benefits".

2.  Paragraph 2. is replaced by the following:

   2.  The General Aggregate Limit is the most we will pay for the sum of:

      a.  Medical expenses under Coverage C.;

      b.  Damages under Coverage A, except damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard";

      c.  Damages under Coverage B; and

      d.  "Damages" under Coverage D.

3.  Paragraph 8. is added, as follows:

   8.  Subject to 2. above, the Each Employee Limit is the most we will pay under Coverage D. for all "damages" sustained by any one "employee", including "damages" sustained by such "employee's" dependents and beneficiaries because of any one "occurrence".

C.  Deductible

   1.  Our obligation under Coverage D to pay "damages" on behalf of the insured applies only to the amount of "damages" in excess of any Each Employee deductible amount shown in the Declarations.

   2.  The deductible amount applies to all "damages" sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of any one "occurrence".

   3.  The terms of this insurance, including those with respect to:

      a.  Our right and duty to defend the insured against "suits" seeking those "damages"; and

      b.  Your duties in the event of an "occurrence", claim, or "suit"

      apply regardless of the application of the deductible amount.

   4.  We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

D.  COVERAGE D DEFINITIONS

CG 70 01 04 13

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ALL 90-05297-03 01 191
05-22-19
PAGE 003 of 005

01T180RG



COMMERCIAL GENERAL LIABILITY

EMPLOYEE BENEFITS LIABILITY ENDORSEMENT - CONTINUED

For the coverage provided by this endorsement:

1.  The following definitions replace those definitions found in the Commercial General Liability Coverage Form:

    "Employee" includes a person actively employed, formerly employed, on leave of absence or disabled, or retired.  "Employee" does not include a "leased worker" or "temporary worker".

    "Occurrence" means an error or omission in the "administration" of "employee benefits".

2.  The definition of "suit" in the Commercial General Liability Coverage Form is amended by the addition of the following:

    "Suit" includes a civil proceeding in which "damages" because of an "occurrence" to which this insurance applies are alleged.

3.  The following definitions are added

    "Administration" means:

    a.  Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefits";

    b.  Interpreting "employee benefits";

    c.  Handling of records in connection with the "employee benefits"; or

    d.  Effecting, continuing or terminating any "employee's" participation in any benefit included in "employee benefits"

    by you or a person or organization authorized by you to perform such acts.

    However, "administration" does not include handling payroll deductions.

    "Damages" means:

    a.  Those sums that the "insured" is legally obligated to pay as a result of negligent errors or omissions to which this insurance applies.  For the purpose of this coverage, "damages" does not include punitive or exemplary damages, requests for restitution, requests for injunctive or declarative relief including associated requests for costs or fees or any other costs, fees or penalties that are not insurable by law; or

    b.  Other costs, fees or penalties required to be paid by order of enforcement of any federal state or local statutes to the extent they are insurable by law.

    "Employee benefits" means:

    a.  Insurance programs for:

CG 70 01 04 13

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ALL 90-05297-03 01 191
05-22-19
PAGE 004 of 005

00136



COMMERCIAL GENERAL LIABILITY

EMPLOYEE BENEFITS LIABILITY ENDORSEMENT - CONTINUED

    (1) Group life;

    (2) Group accident and health;

    (3) Dental, vision and hearing plans;

    (4) Flexible spending accounts;

    (5) Workers' compensation;

    (6) Unemployment; and

    (7) Social Security and disability benefits.

b.  Group Plans for:

    (1) Profit sharing;

    (2) Pension;

    (3) "Employee" stock subscription;

    (4) "Employee" savings plans; and

    (5) "Employee" stock ownership plans.

c.  Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

d.  Other similar employee benefits identified by separate endorsement.

The above plans must be provided by you and are applicable only to you and your "employees".

CG 70 01 04 13

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ALL 90-05297-03 01 191
05-22-19
PAGE 005 of 005

O1T18ORG

00137



COMMERCIAL GENERAL LIABILITY

## FELLOW EMPLOYEE BODILY INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 2.a. of SECTION II - WHO IS AN INSURED is replaced by the following:

a.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" are insureds for:

    (1) "Personal and advertising injury":

        (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

        (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of paragraph (1)(a) above; or

        (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1) (a) or (b) above.

    (2) "Bodily injury" or "personal and advertising injury" arising out of his or her providing or failing to provide professional health care services.

    (3) "Property damage" to property:

        (a) Owned, occupied or used by,

        (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

        you, any of your "employees", "volunteer workers", any partner or member (if you are a partner or joint venture) or any member (if you are a limited liability company.

CG 70 04 12 04

Includes copyrighted material of Insurance Services
Office, Inc., with its permission.

ALL 90-05297-03 01 191
05-22-19
PAGE 001

01T180RG

00118



COMMERCIAL GENERAL LIABILITY

## CHANGES - POLLUTION LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  POLLUTION EXCLUSION AMENDMENT

    The following is added to Subparagraph f. Pollution of Paragraph 2., EXCLUSIONS of BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE (SECTION I - COVERAGES) and to Paragraph 2.  EXCLUSIONS OF PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE (SECTION I - COVERAGES) or to any amendment to or replacement thereof:

    This Pollution Exclusion applies whether or not:

    a.  Such irritant or contaminant has any function in your business, operations, premises, site or location, or

    b.  The "bodily injury", "property damage" or "personal and advertising injury" arises from environmental damage or pollution of the environment, and this exclusion applies to "bodily injury", "property damage" or "personal and advertising injury" resulting, for example and without limitation, from exposure to "pollutants" within a residential or commercial building.

2.  POLLUTANTS REDEFINED

    The definition of "pollutants" in SECTION V - DEFINITIONS is replaced by the following:

    "Pollutants" means any solid, liquid, gaseous, bacterial, viral, electromagnetic or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, acids, alkalis, harmful or toxic chemicals, fuels, motor oil, petroleum products, cleaning solvents, dry cleaning fluids, brake fluid, transmission fluid, antifreeze, exhaust gases, lead, lead paint, carbon monoxide, asbestos, silica, sewage, waste and fumes, including but not limited to welding fumes, paint fumes, and glue fumes.

    Waste includes, but is not limited to, material to be recycled, reconditioned or reclaimed.

    A substance does not lose its character of being a "pollutant" by virtue of having a useful function.

CG 70 98 12 04

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ALL 90-05297-03 01 191
05-22-19
PAGE 001

01T180RG

00119



## LIABILITY DEDUCTIBLE ENDORSEMENT
### (INCLUDING ALLOCATED AND CALCULATED UNALLOCATED LOSS ADJUSTMENT EXPENSES)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### DEDUCTIBLE SCHEDULE

| | |
|---|---|
| Each Occurrence Deductible: | $250,000 |
| Annual Aggregate Deductible: | $4,000,000 |
| Loss Adjustment Expense Percentage: | 1.115    % |
| Maximum Adjustment Expense Basis: | $250,000 |

### APPLICATION OF THIS ENDORSEMENT

The deductible provisions of this endorsement will apply to all "occurrences" under Coverage A Bodily Injury And Property Damage Liability, "offenses" under Coverage B Personal And Advertising Injury Liability and accidents under Coverage C Medical Payments unless an exception is scheduled below.  The provisions of this endorsement will not apply to these scheduled exceptions:

Except for claims or "suits" subject to an exception listed in the Application Of This Endorsement portion of the Deductible Schedule for this endorsement:

A.  EACH OCCURRENCE DEDUCTIBLE

Our obligation to pay "damages" from:

1.  An "occurrence" under Coverage A Bodily Injury And Property Damage Liability;

2.  An "offense" under Coverage B Personal And Advertising Injury Liability; and

3.  An accident under Coverage C Medical Payments
shall be reduced, subject to the provisions of the Annual Aggregate Deductible in paragraph B below, by the amount of the Each Occurrence Deductible shown in the Deductible Schedule in this endorsement.  The Each Occurrence Deductible will be applied after the application of the applicable limit of insurance for each coverage to which this endorsement applies and the applicable limit of insurance will be reduced by the amount of the applied deductible.

B.  ANNUAL AGGREGATE DEDUCTIBLE

This paragraph applies only if an Annual Aggregate Deductible is shown in the Deductible Schedule in this endorsement.
The maximum deductible you will be required to pay for each annual period, from the inception date or annual anniversary date of this policy, shall be the Annual Aggregate deductible shown in the Deductible Schedule of this endorsement.  After you have paid the Annual Aggregate Deductible, the Each Occurrence Deductible described in paragraph A. above will not apply to any subsequent claims or

CG 79 11 03 06

ALL 90-05297-03 01 191
05-22-19
PAGE 001 of 003

O1T18ORG



## LIABILITY DEDUCTIBLE ENDORSEMENT
## (INCLUDING ALLOCATED AND CALCULATED UNALLOCATED
## LOSS ADJUSTMENT EXPENSES) - CONTINUED

"suits" arising out of "bodily injury" or "property damage" which occurs or "offenses" committed during that annual period from the inception or annual anniversary date.

C.  LOSS ADJUSTMENT EXPENSE

1.  The following applies only if a Loss Adjustment Expense Percentage is shown in the Deductible Schedule in this endorsement.

In addition to the deductibles described in paragraphs A and B of this endorsement, you will reimburse us for other claims handling expenses that are not allocated to a specific claim or "suit". This reimbursement will be calculated by multiplying the amount we pay for "damages" by the loss adjustment expense percentage shown in the Deductible Schedule of this endorsement.

2.  The following applies only if a Maximum Adjustment Expense Basis is shown in the Deductible Schedule in this endorsement:

The maximum reimbursement you will be required to pay for all claims or "suits" from a single "occurrence", "offense" or accident will be the loss adjustment expense percentage multiplied by the maximum adjustment expense basis from the Deductible Schedule in this endorsement.

D.  To settle any claim or "suit", we may pay (or will pay if required by law) all or any part of the deductible shown in the Schedule for this endorsement.  We will notify you if we pay all or a portion of the deductible and you must reimburse us for the amount of the deductible we have paid on your behalf.

E.  The terms and conditions of this policy, including:

1.  Our right and duty to investigate and defend the insured against any claim or "suit" under this policy; and

2.  Yours or any other insured's duties in the event of an "occurrence", "offense", accident, claim or "suit" to which this insurance applies;

Apply irrespective of the application of the deductible described in this endorsement.

F.  ADDITIONAL DEFINITIONS

The following are added to SECTION V - DEFINITIONS:

As used in this endorsement:

1.  "Allocated loss adjustment expenses" means the following expenses which are directly attributable to a specific claim or "suit":

a.  Premiums on bonds paid for by us;

CG 79 11 03 06

ALL 90-05297-03 01 191
05-22-19
PAGE 002 of 003



## LIABILITY DEDUCTIBLE ENDORSEMENT
### (INCLUDING ALLOCATED AND CALCULATED UNALLOCATED LOSS ADJUSTMENT EXPENSES) - CONTINUED

    b.  Interest accruing after entry of a judgment against the insured;

    c.  Expenses incurred in seeking recovery against a third party;

    d.  Attorney's fees for a claim or "suit";

    e.  Court and other specific items of expense such as:

        (1)  Medical examinations to determine the extent of our liability;

        (2) Expert medical or other testimony;

        (3) Laboratory and x-ray;

        (4) Autopsy;

        (5) Stenographic;

        (6) Witnesses and summonses

        (7) Copies of documents;

        (8) Undercover investigations; and

        (9) Credit reporting agency services.

2.  "Damages" means:

    a.  Those sums that he insured becomes legally obligated to pay because of "bodily injury", "property damage" or "personal and advertising injury";

    b.  Those sums we pay for medical expenses under COVERAGE C MEDICAL PAYMENTS; and

    c.  "Allocated loss adjustment expenses".

CG 79 11 03 06

ALL 90-05297-03 01 191
05-22-19
PAGE 003 of 003

O1T18ORG

00140



COMMERCIAL GENERAL LIABILITY

EARLIER NOTICE OF CANCELLATION AND NON-RENEWAL
PROVIDED BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

SCHEDULE

Number of Days Notice:    90

1.  For any statutorily permitted reason other than nonpayment of
    premium, the number of days for notice of cancellation, as provided
    in either Paragraph 2. of the CANCELLATION Common Policy Condition or
    as amended by an applicable state cancellation endorsement, is
    increased to the number of days shown in the Schedule above.

2.  The number of days for notice of nonrenewal, as provided in either
    Condition 9. When We Do Not Renew of SECTION IV or as amended by an
    applicable state nonrenewal endorsement, is increased to the number
    of days shown in the Schedule above.

CG 80 09 12 04

ALL 90-05297-03 01 191
05-22-19
PAGE 001

O1T18ORG

00141

EXHIBIT A - PAGE 53

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
**CG 80 12 01 18**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INCIDENTAL MEDICAL MALPRACTICE

This endorsement modifies the coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The definition of "bodily injury" of **Section V – Definitions** is amended to include injury arising out of the rendering or failure to render medical services to persons by an individual such as, but not limited to, a physician, dentist, nurse, emergency medical technician, paramedic, first responder, or a member of an emergency response team who is employed by you to provide such services.

Paragraph **2.a.(1)(d)** of **Section II – Who Is An Insured** is replaced in its entirety by the following:

**(d)** Arising out of his or her providing or failing to provide medical services, unless the individual is employed by you to provide such services.

This insurance does not apply:

1. If you are engaged in the business or occupation of providing medical services; or

2. To liability assumed in a contract or agreement.

**CG 80 12 01 18**
ALL 90-05297-03 01 191

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**Page 1 of 1**
05/22/2019

00001 0000000007 19143 0 N          A1CCA036-5203-44D2-A1FB-5946EAC42247



COMMERCIAL GENERAL LIABILITY

---

### AMENDATORY ENDORSEMENT - EXTENDED PROPERTY DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion a. under Paragraph 2., EXCLUSIONS of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE is replaced by the following:

This insurance does not apply to:

a.  Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

CG 80 13 12 04

---

ALL 90-05297-03 01 191
05-22-19
PAGE 001

01T180RG

00143



COMMERCIAL GENERAL LIABILITY

AMENDATORY ENDORSEMENT - BROAD KNOWLEDGE OF OCCURRENCE, CLAIM OR SUIT

This endorsement modifies insurance provided under the following Coverage Part:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Under SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, Condition 2. Duties In The Event of Occurrence, Offense, Claim or Suit is amended by the addition of the following:

Knowledge of an "occurrence", offense, claim or "suit" by an agent or "employee" of any insured or receipt of any demand, notice, summons or other legal paper in connection with a claim or "suit" by any agent or "employee" of any insured shall not in itself constitute knowledge of the named insured or receipt of the named insured, unless a partner, member, manager, "executive officer" or director shall have received such demand, notice, summons or legal paper.

CG 80 14 12 04

ALL 90-05297-03 01 191
05-22-19
PAGE 001

01T180RG

00144

POLICY NUMBER: 90-05297-03                                    **COMMERCIAL GENERAL LIABILITY**
                                                              **CG 80 16 01 18**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OWNED, NON-OWNED AND HIRED WATERCRAFT

This endorsement modifies the coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

### SCHEDULE

| **Number of feet long:** |
| --- |
| 50 |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

Paragraph **(2)** of Exclusion **g. Aircraft, Auto Or Watercraft** of **Section I – Bodily Injury And Property Damage Liability** is replaced in its entirety by the following:

This exclusion does not apply to:

(2)  An owned, non-owned or hired watercraft that is:

   (a) Less than the number of feet long indicated in the schedule above; and

   (b) Not being used to carry persons or property for a charge.

**CG 80 16 01 18**                                              **Page 1 of 1**
ALL 90-05297-03 01 191                                          05/22/2019

00001 0000000008 19143 0 N            1D347B68-F87B-482B-BC20-4106B2A647E5

EXHIBIT A - PAGE 57



COMMERCIAL GENERAL LIABILITY

## ADDITIONAL INSURED - AUTOMATIC STATUS WHEN REQUIRED BY CONTRACT OR AGREEMENT WITH YOU

A.  Section II - Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.  Your acts or omissions; or

2.  The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

B.  The type and amount of insurance provided the additional insured does not exceed that required by the written contract or agreement, subject to your policy provisions and limits of liability.  The most we will pay on behalf of the additional insured is the lesser of the amount payable under Section III - Limits Of Insurance or the amount of insurance required by the contract or agreement.

C.  Notwithstanding any requirement, term or condition of any contract or agreement with respect to which this endorsement may pertain, the insurance afforded to the additional insured is subject to all the terms, exclusions and conditions of the Commercial General Liability Coverage Part to which this endorsement is attached.

CG 80 18 12 04

ALL 90-05297-03 01 191
05-22-19
PAGE 001

00146

OIT18ORG

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
CG 80 21 01 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS/EXPOSURES

This endorsement modifies the coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

If in your representations to us you unintentionally failed to disclose all hazards and exposures subject to this insurance, we shall not deny any coverage under this policy because of such oversight. Upon discovery of such oversight, you may be required to pay an additional premium.

---

**CG 80 21 01 18**
ALL 90-05297-03 01 191

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 1 of 1**
05/22/2019

00001· 0000000009 19143 0 N          45B9AC15-56F0-4930-9532-8F4D6B82E8E0

EXHIBIT A - PAGE 59



COMMERCIAL GENERAL LIABILITY

## EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., EXCLUSIONS of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY and Paragraph 2., EXCLUSIONS of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:

This insurance does not apply to:

1.  "Bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by the actual, alleged or threatened:

    a.  Inhalation of, ingestion of or physical exposure to "asbestos";

    b.  Use of "asbestos" in construction or manufacture of any goods, products or structures;

    c.  Removal of "asbestos" from any goods, products or structures;

    d.  Manufacture, sale, transport, storage or disposal of "asbestos"; or

    e.  Discharge, dispersal, seepage, migration, release or escape of "asbestos".

2.  Any loss, cost or expense arising out of any:

    a.  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "asbestos"; or

    b.  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "asbestos".

As used herein, "asbestos" means not only the natural fibrous mineral forms of impure magnesium silicate, but also any material, good, product or structure of which it is a part.

CG 88 08 12 04

ALL 90-05297-03 01 191
05-22-19
PAGE 001

01T180RG

00148

EXHIBIT A - PAGE 60

IL 00 21 09 08

## NUCLEAR ENERGY LIABILITY EXCLUSION
## ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY
> COMMERCIAL EXCESS/UMBRELLA LIABILITY COVERAGE PART

1.  The insurance does not apply:

    A.  Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

IL 00 21 09 08

Copyright, ISO Properties, Inc., 2007

ALL 90-05297-03 01 191
05-22-19
PAGE 001 of 003

01T180RG

00104



### NUCLEAR ENERGY LIABILITY EXCLUSION
### ENDORSEMENT
### (Broad Form) - CONTINUED

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property threat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

IL 00 21 09 08

Copyright, ISO Properties, Inc., 2007

ALL 90-05297-03 01 191
05-22-19
PAGE 002 of 003

00105



## NUCLEAR ENERGY LIABILITY EXCLUSION
## ENDORSEMENT
### (Broad Form) - CONTINUED

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL 00 21 09 08

Copyright, ISO Properties, Inc., 2007

ALL 90-05297-03 01 191
05-22-19
PAGE 003 of 003

O1T18ORG

00106

IL 02 83 11 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WISCONSIN CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation.

   If this policy has been in effect for less than 60 days and is not a renewal policy, we may cancel for any reason.

   If this policy has been in effect for 60 days or more or is a renewal of a policy we issued, except as provided in Paragraph **7.** below, we may cancel this policy only for one or more of the following reasons:

   a. The policy was obtained by material misrepresentation;

   b. There has been a substantial change in the risk we originally assumed, except to the extent that we should have foreseen the change or considered the risk in writing the policy;

   c. There have been substantial breaches of contractual duties, conditions or warranties; or

   d. Nonpayment of premium.

   If this policy has been in effect for 60 days or more or is a renewal of a policy we issued, the notice of cancellation will state the reason for cancellation.

B. The following is added to the **Cancellation** Common Policy Condition:

   7. **Anniversary Cancellation**

   If this policy is written for a term of more than one year or has no fixed expiration date, we may cancel this policy for any reason by mailing or delivering to the first Named Insured written notice of cancellation at least 60 days before the anniversary date of the policy. Such cancellation will be effective on the policy's anniversary date.

   We may cancel this policy because of the termination of an insurance marketing intermediary's contract with us only if the notice of cancellation contains an offer to continue the policy with us if we receive a written request from the first Named Insured prior to the date of cancellation.

IL 02 83 11 18
ALL 90-05297-03 01 191

© Insurance Services Office, Inc., 2018

**Page 1 of 3**
05/22/2019

1   00002 0000000004 19143 0 N          7B8A96AB-AAEF-484F-9305-EFBA8A72E4D1

C. The following applies to the:

Capital Assets Program (Output Policy) Coverage Part

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

Crime And Fidelity Coverage Part

Equipment Breakdown Coverage Part

Farm Coverage Part

1. We may rescind this policy because of the following:

   a. Misrepresentation made by you or on your behalf in the negotiation for or procurement of this Coverage Part, if the person knew or should have known that the representation was false;

   b. Breach of affirmative warranty made by you or on your behalf in the negotiation for or procurement of this Coverage Part;

   c. Failure of a condition before a loss if such failure exists at the time of loss; or

   d. Breach of a promissory warranty if such breach exists at the time of loss.

2. We may not rescind this policy:

   a. For the reasons in Paragraphs **C.1.a.** and **C.1.b.** unless:

      (1) We rely on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive; or

      (2) The facts misrepresented or falsely warranted contribute to the loss.

   b. For the reasons in Paragraphs **C.1.c.** and **C.1.d.** unless such failure or breach:

      (1) Increases the risk at the time of loss; or

      (2) Contributes to the loss.

3. If we elect to rescind this policy, we will notify the first Named Insured of our intention within 60 days after acquiring knowledge of sufficient facts to constitute grounds for rescission.

D. The following are added and supersede any other provisions to the contrary:

   1. **Nonrenewal**

      a. If we elect not to renew this policy we will mail or deliver written notice of nonrenewal to the first Named Insured's last mailing address known to us. We may elect not to renew for any reason; the notice will state the reason for nonrenewal. We will mail or deliver the notice at least 60 days before the expiration date of this policy.

      We need not mail or deliver the notice if:

      (1) You have insured elsewhere;

      (2) You have accepted replacement coverage;

      (3) You have requested or agreed to nonrenewal of this policy; or

      (4) This policy is renewed in an affiliate in compliance with WIS. STAT. § 631.39; or

      (5) This policy is expressly designated as nonrenewable.

      b. We may refuse to renew this policy because of the termination of an insurance marketing intermediary's contract with us only if the notice of nonrenewal contains an offer to renew the policy with us if we receive a written request from the first Named Insured prior to the renewal date.

      c. If you fail to pay the renewal or continuation premium by the premium due date, this policy will terminate on the policy expiration or anniversary date, if we have:

         (1) Given you written notice of the renewal or continuation premium not more than 75 days nor less than 10 days prior to the due date of the premium; and

         (2) Stated clearly in the notice the effect of nonpayment of premium by the due date.

   2. **Anniversary Alteration**

      If this policy is written for a term of more than one year or has no fixed expiration date, we may alter the terms or premiums of this policy by mailing or delivering written notice of less favorable terms or premiums to the first Named Insured's last mailing address known to us. We will mail, by first class mail, or deliver this notice at least 60 days prior to the anniversary date.

      If we notify the first Named Insured within 60 days prior to the anniversary date, the new terms or premiums will not take effect until 60 days after the notice was mailed or delivered. The notice will include a statement of the first Named Insured's right to cancel. The first Named Insured may elect to cancel the policy at any time during the 60-day period, in accordance with Paragraph **1.** of the Cancellation Common Policy Condition. If the first Named Insured elects to cancel the policy during the 60-day period, return premiums or additional premium charges will be calculated proportionately on the basis of the old premiums.

© Insurance Services Office, Inc., 2018

EXHIBIT A - PAGE 65

**3. Renewal With Altered Terms**

If we elect to renew this policy but on less favorable terms or at higher premiums, we will mail or deliver written notice of the new terms or premiums to the first Named Insured's last mailing address known to us. We will mail, by first class mail, or deliver this notice at least 60 days prior to the renewal date.

If we notify the first Named Insured within 60 days prior to the renewal date, the new terms or premiums will not take effect until 60 days after the notice was mailed or delivered. The notice will include a statement of the first Named Insured's right to cancel. The first Named Insured may elect to cancel the renewal policy at any time during the 60-day period, in accordance with Paragraph **1.** of the Cancellation Common Policy Condition. If the first Named Insured elects to cancel the renewal policy during the 60-day period, return premiums or additional premium charges will be calculated proportionately on the basis of the old premiums.

We need not mail or deliver this notice if the only change adverse to you is a premium increase that:

**a.** Is less than 25% and is generally applicable to the class of business to which this policy belongs; or

**b.** Results from a change based on your action that alters the nature or extent of the risk insured against, including but not limited to a change in the classification or the units of exposure, or increased policy coverage.

**E. Special Provision - Cancellation And Nonrenewal**

With respect to insurance provided under the Commercial Automobile Coverage Part, we will not cancel or refuse to renew Liability Coverage wholly or partially because of age, sex, residence, race, color, creed, religion, national origin, ancestry, marital status or occupation of anyone who is an insured.

---

**IL 02 83 11 18**
ALL 90-05297-03 01 191

© Insurance Services Office, Inc., 2018

**Page 3 of 3**
05/22/2019

3   00002 0000000004 19143 0 N          7B8A96AB-AAEF-484F-9305-EFBA8A72E4D1

EXHIBIT A - PAGE 66



THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

NOTICE OF CANCELLATION - CERTIFICATE HOLDERS

This endorsement modifies the coverage provided under the following:

BUSINESSOWNERS COVERAGE FORM
COMMERCIAL AUTOMOBILE COVERAGE PARTS
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PARTS
COMMERCIAL EXCESS/UMBRELLA LIABILITY COVERAGE FORM
EMPLOYMENT RELATED PRACTICES LIABILITY
POLLUTION LIABILITY COVERAGE
ERRORS AND OMISSIONS COVERAGE FORM

In the event we can cancel this policy, we shall endeavor to also mail to
the person(s) or organization(s) listed in the Schedule for this endorsement,
advance written notice of cancellation.

This notification of cancellation of the policy is intended as a courtesy
only.  Our failure to provide such notification to the person(s) or
organization(s) shown in the Schedule will not extend any policy cancel-
lation date nor impact or negate any cancellation of the policy.  This
endorsement does not entitle the person(s) or organization(s) listed or
described in the Schedule below to any benefit, rights or protection
under this policy.

Failure by us to provide this notice of cancellation to the person(s)
or organization(s) listed or described in the Schedule below will not
impose liability of any kind upon us.

Any of these provisions that conflict with a law that controls the notice
of cancellation of the insurance in this endorsement is changed by this
statement to comply with the law.

SCHEDULE


Person(s) or Organization(s) including mailing address:

11818 AIRLINE DRIVE, LLC
3200 WILCREST DRIVE, SUITE 430
HOUSTON, TX  77042








All other terms and conditions of this policy remain unchanged.


IL 70 58 02 14


ALL 90-05297-03 01 191
05-22-19
PAGE 001

O1T18ORC

00151

EXHIBIT A - PAGE 67



POLICY NUMBER: 90-05297-03

### General Liability Premium & Rate Endorsement

IT IS AGREED THAT THE PREMIUM FOR THE POLICY SHALL BE COMPUTED IN
ACCORDANCE WITH THE FOLLOWING SCHEDULE:

SCHEDULE

| COVERAGE | PREMIUM BASE (SALES) | RATE PER $1,000 OF SALES | ANNUAL PREMIUM |
|---|---|---|---|
| GENERAL LIABILITY | $844,380,202 | $ 0.518 | $437,389.00 |
| PER LAUNDROMAT LOCATION | 14 | $ 915.00 | $ 12,810.00 |
| | | TOTAL | $450,199.00 |

SALES ARE DEFINED AS 1.) NORTH AMERICA (PRODUCTS MANUFACTURED IN
U.S. AND SOLD IN U.S. AND CANADA) PLUS 2.) PRODUCTS MANUFACTURED IN
THE U.S. AND SOLD INTERNATIONALLY (EXCLUDING CANADA WHICH IS INCLUDED
IN NORTH AMERICA, AND INTERCOMPANY SALES TO BELGIUM).

TOTAL PRODUCTS REVENUE FROM PRODUCTS SHIPPED IN THE U.S., AND FROM THE
U.S. EXCLUDES FOREIGN SALES WHICH ARE FOR PRODUCTS MADE AND SOLD IN
OTHER COUNTRIES, INCLUDING BELGIUM.

SALES ARE SUBJECT TO FINAL AUDIT IN ACCORDANCE WITH THE CONDITIONS
OF THE CGL POLICY.

NA GL SPEC58 0116

ALL 90-05297-03 01 191
PAGE 001
05-22-19
#01

O1T18ORG

00110



POLICY NUMBER: 90-05297-03

PERSONAL INJURY AMENDED

IT IS AGREED THAT SECTION V - DEFINITIONS, PART 14, IS AMENDED TO ADD:

H.   HUMILIATION

IT IS FURTHER AGREED THAT EXCL. 2. E. OF SECTION I, COVERAGE B,
DOES APPLY TO THIS COVERAGE.

SPEC01 0786

ALL 90-05297-03 01 191
PAGE 001
05-22-19
    #01

OITIBORG

00111

EXHIBIT A - PAGE 69



# IMPORTANT NOTICE

## What You Should Know About Our Protection of Your Privacy

Protecting the personal information of the individuals we serve is a priority for Sentry Insurance. We collect, retain and use personal information about individuals for the purpose of serving their insurance needs and providing services to them.

This notice describes how we handle personal information of the individuals we serve. It is only for your information. No action on your part is needed.

If you have questions regarding this notice, please write to Corporate Compliance/Privacy, 1800 North Point Drive, Stevens Point, WI 54481.

## What kinds of information are collected and disclosed?

The types of information we may collect about you include:

- Information you provide on applications or other forms, or in your verbal responses to our questions. This may include identifying information such as name, address and information about your assets and income.
- Information about your transactions with us including policies purchased and premium payment history.
- Information we receive from a consumer reporting agency that indicates your credit worthiness and credit history.
- Information we collect from you as part of the claims process.

We do not sell customer lists or any personal information regarding our customers.

We only disclose nonpublic personal information about customers or former customers to other affiliated or nonaffiliated third parties as permitted or required by law. We may share personal financial information about you between affiliated companies within the Sentry Insurance Group in order to make additional services available to you (e.g. auto insurance customers may receive information about life insurance products, and vice versa).

For those clients of Point Insurance Agency, LLC, Florists' Insurance Service Inc. and/or the Parker Stevens agencies, these agencies may disclose your nonpublic personal information to nonaffiliated insurance companies as reasonably necessary to provide you with insurance products and services.

## How do we safeguard your privacy?

- We maintain physical, electronic and procedural safeguards to protect your personal financial information.
- We restrict access to nonpublic personal financial data to those associates who need to know that information in order to provide products or services to you.
- We communicate to associates in writing the importance of protecting confidential information.
- We may amend our privacy policies at any time. If we do, we will inform you in writing.

This notice applies to each of the following companies. Companies may not be licensed in all states.

| | | |
|---|---|---|
| Sentry Insurance a Mutual Company | Parker Stevens Agency, L.L.C. | Sentry Equity Services, Inc. |
| Dairyland County Mutual Insurance Company of Texas | Parker Stevens Insurance Agency of Massachusetts, Inc. | Sentry Life Insurance Company |
| Dairyland Insurance Company | Patriot General Insurance Company | Sentry Life Insurance Company of New York |
| Middlesex Insurance Company | Peak Property and Casualty Insurance Corporation | Sentry Lloyds of Texas |
| Parker Assurance Ltd. | | Sentry Select Insurance Company |
| Parker Centennial Assurance Company | Point Insurance Agency, LLC | Viking Insurance Company of Wisconsin |
| Parker Services, L.L.C. | Sentry Casualty Company | |
| Florists' Insurance Services Inc. | Florists' Mutual Insurance Company | Florists' Insurance Company |

45-8

O1T76230   4/2/2018

01126

# EXHIBIT B

# CHUBB®    *Chubb Commercial Excess And Umbrella Insurance*

## *Premium Bill*

| | | | |
|---|---|---|---|
| *Policy Period* | MAY 5, 2019 | *To* | MAY 5, 2020 |
| *Effective Date* | MAY 5, 2019 | | |
| *Policy Number* | 9364-95-73 | | |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC | | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | | |
| *Date Issued* | May 09, 2019 | | |
| *Producer* | MARSH USA, INC. | | |

**THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY**

PLEASE SEND PAYMENT TO AGENT OR BROKER, IF APPLICABLE

| *Coverage* | *Commission Rate* | *Premium* |
|---|---|---|
| | ▆▆▆▆▆ | ▆▆▆▆▆▆ |
| COMMERCIAL UMBRELLA | | |
| *Total* | | ▆▆▆▆▆▆ |

**Portion of total premium attributable for Terrorism and statutory standard fire where applicable is: $0.00**

---

*Form 07-10-0542 (Ed. 10-06)*        *Premium Bill*

EXHIBIT B - PAGE 1

**CHUBB**®

## *IMPORTANT NOTICE TO POLICYHOLDERS TERRORISM RISK INSURANCE ACT*

This Important Notice is being provided with your policy to further satisfy the disclosure requirements of the Terrorism Risk Insurance Act.

At the time you received the written offer for this policy, we provided you with an Important Notice to Policyholders indicating that the insurance provided in your policy for losses caused by certain acts of terrorism (as defined in the Terrorism Risk Insurance Act) would be partially reimbursed by the United States of America, pursuant to the formula set forth in the Terrorism Risk Insurance Act. In addition, as required by the Terrorism Risk Insurance Act, we:

• indicated that we would make available insurance for such losses in the same manner as we provide insurance for other types of losses;

• specified the premium we would charge, if any, for providing such insurance; and

• except to the extent prohibited by law, gave you the opportunity to reject such insurance and have a terrorism exclusion, sublimit or other limitation included in your policy.

This Important Notice refers back to that Important Notice and provides information about your decision and the manner in which your policy has been subsequently modified.

If:

• You rejected terrorism insurance under the Terrorism Risk Insurance Act, your policy includes the appropriate amendatory endorsement(s).

• You did not reject terrorism insurance under the Terrorism Risk Insurance Act, the premium charged for your policy, including that portion applicable to terrorism insurance under the Terrorism Risk Insurance Act, is shown in your policy. To the extent your policy includes a limitation on terrorism insurance, it has been modified so that such limitation does not apply to terrorism insurance under the Terrorism Risk Insurance Act.

Please carefully review your policy and the Important Notice previously provided to you for further details. Please remember that only the terms of your policy establish the scope of your insurance protection.

**Please note that if your policy**:

• *provides commercial property insurance in a jurisdiction that has a statutory standard fire policy, the premium we charge for terrorism insurance under the Terrorism Risk Insurance Act, includes an amount attributable to the insurance provided pursuant to that standard fire policy. Rejection of such statutory insurance is legally prohibited*.

• *is a workers compensation policy, rejection of insurance for terrorism is legally prohibited*.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year , the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

---



## *IMPORTANT NOTICE TO POLICYHOLDERS*

**This Important Notice is not your policy. Please read your policy carefully to determine your rights, duties, and what is and what is not covered. Only the provisions of your policy determine the scope of your insurance  protection.**

**THIS IMPORTANT NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON YOUR INSURANCE COVERAGE DUE TO COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS.**

**PLEASE READ THIS NOTICE CAREFULLY.**

Various trade or economic sanctions and other laws or regulations prohibit us from providing insurance in certain circumstances. For example, the United States Treasury Department's Office of Foreign Asset Control (OFAC) administers and enforces economic and trade sanctions and places restrictions on transactions with foreign agents, front organizations, terrorists, terrorists organizations, and narcotic traffickers. OFAC acts pursuant to Executive Orders of the President of the United States and specific legislation, to impose controls on transactions and freeze foreign assets under United States jurisdiction. (To learn more about OFAC, please refer to the United States Treasury's web site at http://www.treas.gov/ofac.)

To the extent that you or any other insured, or any person or entity claiming the benefits of this insurance has violated any applicable sanction laws, this insurance will not apply.

We have added a condition or section that applies to the entire policy called Compliance With Applicable Trade Sanctions, which stipulates that your insurance policy does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

---



# *WISCONSIN POLICYHOLDER INFORMATION NOTICE*

## KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

**PROBLEMS WITH YOUR INSURANCE?** — If you are having problems with your insurance company or agent, do not hesitate to contact the insurance company or agent to resolve your problem.

**Chubb Group of Insurance Companies**
**202B Hall's Mill Road,**
**Whitehouse Station, NJ 08889**
**1-800-252-4670**

You can also contact the **OFFICE OF THE COMMISSIONER OF INSURANCE**, a state agency which enforces Wisconsin's insurance laws, and file a complaint.  You  can  contact  the  **OFFICE OF   THE COMMISSIONER OF INSURANCE** by contacting:

Office of the Commissioner of Insurance
Complaints Department
P.O. Box 7873
Madison, WI 53707-7873
1-800-236-8517
608-266-0103



## *POLICYHOLDER  NOTICE*

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers"). Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478. Additional information may be available from your producer.


Thank you for choosing Chubb.

---

*Form 99-10-0872 (Ed. 6-07)*        *Policyholder Notice*                                                                 *Page 1 of 1*

EXHIBIT B - PAGE 5

# CHUBB® *Chubb Commercial Excess And Umbrella Insurance*

## *Declarations*

*Chubb Group of Insurance Companies*
*202B Hall's Mill Road,*
*Whitehouse Station, NJ 08889*

*Named Insured and Mailing Address*

ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC
P.O. BOX 990
RIPON, WI 54971

**Policy Number**      9364-95-73

*Issued by the stock insurance company indicated below, herein called the company.*

**FEDERAL INSURANCE COMPANY**

*Producer No.*  380083 / 0007984

*Incorporated under the laws of* INDIANA

*Producer*      MARSH USA, INC.
1166 AVE OF THE AMERICAS
NEW YORK, NY 10036-0000

## Policy Period

From:   MAY 5, 2019            To:   MAY 5, 2020
12:01 A.M. standard time at the Named Insured's mailing address shown above.

## Premium

████████████

## Limits of Insurance

| | |
|---|---|
| Excess Coverage Other Aggregate Limit (as applicable) | $25,000,000 |
| Umbrella Coverages Aggregate Limit | $25,000,000 |
| Products Completed Operations Aggregate Limit | $25,000,000 |
| Advertising Injury and Personal Injury Aggregate Limit | $25,000,000 |
| Each Occurrence Limit | $25,000,000 |

## Authorization

In Witness Whereof, the company issuing this policy has caused this policy to be signed by its authorized officers.

**FEDERAL INSURANCE COMPANY**

*Secretary*

*President*

Authorized Representative

May 09, 2019

Chubb. Insured.℠

*Chubb Commercial Excess And Umbrella Insurance*

*Form 07-02-2315 (Ed. 2-09)*            *Declarations*            EXHIBIT B - PAGE 6 *Page 1 of 1*

# CHUBB®

202B Hall's Mill Road, Whitehouse Station, New Jersey 08889

TO INSURANCE DEPARTMENT

State of:       WISCONSIN

Submitted by:       FEDERAL INSURANCE COMPANY

**ADDRESS ANY COMMENTS  TO:**
**State Filing Department**
**Chubb**
**P.O. Box 1650**
**202B Hall's Mill Road**
**Whitehouse Station, N.J. 08889-1650**

## (a) RATE SUBMISSION

Date:       May 09, 2019
Policy No:       9364-95-73
Branch:       NEW YORK CITY
Dept:       EUD

1. Name of Insured:       ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC
2. Address:       P.O. BOX 990
RIPON, WI 54971
3. Business of Insured:       COMMERCIAL LAUNDRY EQUIPMENT

4. Forms of Coverage to be Specially Rated:       COMMERCIAL UMBRELLA LIABILITY

5. Policy Period:       MAY 5, 2019       to       MAY 5, 2020

6. Effective Date of Special Rate:       MAY 5, 2019

7. Limit of Liability and Premium:

| | |
|---|---|
| Excess Coverage Other Aggregate Limit (as applicable) | $25,000,000 |
| Umbrella Coverage Aggregate Limit | $25,000,000 |
| Products Completed Operations Aggregate Limit | $25,000,000 |
| Advertising Injury & Personal Injury Aggregate Limit | $25,000,000 |
| Each Occurrence Limit | $25,000,000 |
| Annual Premium | $206,431.00 |

8. Self Insured Retention:       $10,000

9. Information in Support of Such Rates:

Commercial Umbrella Liability is being written over the Limits of Liability specified on the Schedule of Underlying Insurance. Please refer to the Schedule of Underlying Insurance for details.

The premium for the policy is determined by applying a factor to the premium for the underlying policy. The factor used is from a range based on an underwriting assessment of the exposure ranging from low hazard to high hazard. If ILFs (increased limits factors) are applied, the ILFs are similarly determined based upon the underwriting assessment of the exposure.

Submitted by:       FEDERAL INSURANCE COMPANY

Signed:       _Paul J. Krump_       Title:       President
Paul J.Krump

Form EU-UM-0074 (Rev.10-12)

EXHIBIT B - PAGE 7

**CHUBB**®    *Chubb Commercial Excess And Umbrella Insurance*

## Schedule Of Underlying Insurance

*Effective Date:*        MAY 5, 2019

*Policy Number:*        9364-95-73

*Insured:*        ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC

| **Description** | **Limits** |
|---|---|

### Employers Liability

| *Insurer:* | SENTRY INSURANCE A MUTUAL COMPANY | | |
|---|---|---|---|
| *Policy No.:* | 90-05297-01 | | *Coverage B - Employer's Liability* |
| *Policy Period:* | 05/05/2019 | | *Bodily Injury By Accident* |
| *to:* | 05/05/2020 | $1,000,000 | *Each Accident* |
| | | | *Bodily Injury By Disease* |
| | | $1,000,000 | *Policy Limit* |
| | | $1,000,000 | *Each Employee* |

### Commercial General Liability

| *Insurer:* | SENTRY INSURANCE A MUTUAL COMPANY | | |
|---|---|---|---|
| *Policy No.:* | 90-05297-03 | $2,000,000 | *Each Occurrence* |
| *Policy Period:* | 05/05/2019 | $5,000,000 | *General Aggregate* |
| *to:* | 05/05/2020 | $2,000,000 | *Products/Completed Operations Aggregate* |
| Occurrence | | $2,000,000 | *Personal and Advertising Injury (aggregate when applicable)* |

### Automobile Liability

| *Insurer:* | SENTRY INSURANCE A MUTUAL COMPANY | | |
|---|---|---|---|
| *Policy No.:* | 90-05297-04 | $1,000,000 | *Each Accident* |
| *Policy Period:* | 05/05/2019 | | |
| *to:* | 05/05/2020 | | |

*Chubb Commercial Excess and Umbrella Insurance*
*Form 07-02-0922 (Rev. 7-01)*        *Schedule Of Underlying Insurance*        *Page 1 of 4*

EXHIBIT B - PAGE 8

# CHUBB®   *Chubb Commercial Excess And Umbrella Insurance*

## *Schedule Of Underlying Insurance*

*Effective Date:*     MAY 5, 2019

*Policy Number:*     9364-95-73

*Insured:*     ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC

| *Description* | *Limits* | |
|---|---|---|

### *Employee Benefits Liability*

| | | | |
|---|---|---|---|
| *Insurer:* | SENTRY CASUALTY COMPANY | | |
| *Policy No.:* | 90-05297-03 | $2,000,000 | *Each Occurrence* |
| *Policy Period:* | 05/05/2019 | | |
| *to:* | 05/05/2020 | $2,000,000 | *Aggregate* |

Occurrence

### *Foreign Employer's Liability*

| | | | |
|---|---|---|---|
| *Insurer:* | GREAT NORTHERN INSURANCE COMPANY | | |
| *Policy No.:* | ON FILE WITH COMPANY | $2,000,000 | *Each Accident* |
| *Policy Period:* | 05/05/2019 | | |
| *to:* | 05/05/2020 | $2,000,000 | *Each Policy* |
| | | $2,000,000 | *Each Employee* |

Occurrence

*Chubb Commercial Excess and Umbrella Insurance*
*Form 07-02-0922 (Rev. 7-01)*     *Schedule Of Underlying Insurance*     *Page 2 of 4*

EXHIBIT B - PAGE 9

**CHUBB**®    *Chubb Commercial Excess And Umbrella Insurance*

## Schedule Of Underlying Insurance

*Effective Date:*     MAY 5, 2019

*Policy Number:*     9364-95-73

*Insured:*     ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC

| Description | | Limits | |
|---|---|---|---|

### Foreign General Liability

| | | | |
|---|---|---|---|
| *Insurer:* | GREAT NORTHERN INSURANCE COMPANY | | |
| *Policy No.:* | ON FILE WITH COMPANY | $2,000,000 | *Each Occurrence* |
| *Policy Period:* | 05/05/2019 | | |
| *to:* | 05/05/2020 | $2,000,000 | *Aggregate* |
| | | $2,000,000 | *Personal and Advertising Injury (aggregate when applicable)* |
| Occurrence | | $1,000,000 | *Products/Completed Operations Aggregate* |

EBL Retro Date: 03-01-2007

### Non-Owned & Hired Auto Liability

| | | | |
|---|---|---|---|
| *Insurer:* | GREAT NORTHERN INSURANCE COMPANY | | |
| *Policy No.:* | ON FILE WITH COMPANY | $1,000,000 | *Each Accident* |
| *Policy Period:* | 05/05/2019 | | |
| *to:* | 05/05/2020 | | |

Occurrence

**CHUBB**®   *Chubb Commercial Excess And Umbrella Insurance*

### Schedule Of Underlying Insurance

*Effective Date:*         MAY 5, 2019

*Policy Number:*         9364-95-73

*Insured:*         ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC

| *Description* | *Limits* |
|---|---|

## Non-Owned & Hired Auto Liability

*Insurer:*         SENTRY INSURANCE A MUTUAL COMPANY

| *Policy No.:*         90-05297-08 | $1,000,000 | *Each Accident* |
|---|---|---|

*Policy Period:*  05/05/2019

          *to:*  05/05/2020

Occurrence

Mass.

**Authorization**         All other terms and conditions remain unchanged.

*Authorized Representative* _____

May 09, 2019

**⊏HUBB**®    ***Chubb Commercial Excess And Umbrella Insurance***

*Schedule Of Forms*

| | | |
|---|---|---|
| *Policy Period* | MAY 5, 2019 | *To*   MAY 5, 2020 |
| *Effective Date* | MAY 5, 2019 | |
| *Policy Number* | 9364-95-73 | |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | |
| *Date Issued* | May 09, 2019 | |

Form Number

*As of the effective date printed above, this is the Schedule Of Forms applicable to this policy:*

| | | |
|---|---|---|
| PREMIUM BILL | 07-10-0542 | (10/06) |
| PREMIUM BILL | 07-10-0542I | (10/06) |
| IMPORTANT NOTICE TO POLICYHOLDERS-TRIA 2002 | 99-10-0732 | (01/15) |
| IMPORTANT NOTICE - OFAC | 99-10-0792 | (09/04) |
| WISCONSIN IMPORTANT NOTICE CONTACT INFO | 99-10-0800 | (06/04) |
| AOD IMPORTANT POLICYHOLDER NOTICE | 99-10-0872 | (06/07) |
| COMMERCIAL EXCESS AND UMBRELLA DECLARATIONS | 07-02-2315 | (02/09) |
| SCHEDULE OF UNDERLYING INSURANCE | 07-02-0922 | (07/01) |
| CHUBB COMMERCIAL EXCESS & UMBRELLA INSURANCE | 07-02-0815 | (07/01) |
| COMPLIANCE WITH APPLICABLE TRADE SANCTIONS | 07-02-1988 | (02/04) |
| COVERAGE-CRISIS ASSISTANCE EXCESS AND UMB | 07-02-2440 | (12/10) |
| COND - CIVIL UNIONS OR DOMESTIC PARTNERSHIPS | 07-02-2483 | (03/12) |
| CARE, CONTROL OR CUSTODY - POLICY EXCLUSION | 07-02-0837 | (07/01) |
| FOREIGN LIABILITY EXCL. BI/PD/AI/PI COV. B | 07-02-0861 | (07/01) |
| EXCLUSION OF CERTIFIED ACTS OF TERRORISM | 07-02-1958 | (01/15) |
| DEDUCTIBLE/UMBRELLA COV B | 07-02-2113 | (09/02) |
| POL EXCL-INFO LAWS INCL UNAUT OR UNSOL COMMUN | 07-02-2172 | (01/13) |
| COV B EXCL-INTELLECTUAL PROP LAWS OR RIGHTS | 07-02-2420 | (05/10) |
| CRISIS ASSISTANCE SERVICE PROVIDERS | 07-02-2455 | (12/10) |
| POLICY EXCL-LOSS OF USE OF ELECTRONIC DATA | 07-02-2500 | (05/12) |
| EXCL UMB COV B-ACCES/DISCL/CONFID-PERS INFO | 07-02-2614 | (03/17) |
| COVERAGE B EXCLUSION - WAR | 07-02-2735 | (03/17) |

**CHUBB®**   *Chubb Commercial Excess And Umbrella Insurance*

## Table Of Contents

| Section | Page No. |
|---|---|
| *Coverage/Excess Follow-Form Coverage A* | *3* |
| *Coverages/Umbrella Coverage B* | *3* |
| *Investigation, Defense And Settlements* | *5* |
| *Supplementary Payments* | *5* |
| *Coverage Territory* | *6* |
| *Who Is An Insured/Excess Follow-Form Coverage A* | *6* |
| *Who Is An Insured/Umbrella Coverage B* | *6* |
| *Limits Of Insurance* | *8* |
| *When Excess Follow-Form Coverage A Applies (Drop Down)* | *10* |
| *Exclusions/Excess Follow-Form Coverage A* | *10* |
| *Exclusions/Umbrella Coverage B* | *11* |
| *Policy Exclusions* | *17* |
| *Conditions* | *19* |
| *Definitions/Umbrella Coverage B* | *25* |
| *Policy Definitions* | *29* |

*THIS PAGE INTENTIONALLY LEFT BLANK*

**CHUBB**®    ***Chubb Commercial Excess And Umbrella Insurance***

## Contract

Please read the entire policy carefully. The terms and conditions of this insurance include the various sections of this contract: Coverages; Investigation, Defense And Settlements; Supplementary Payments; Coverage Territory; Who Is An Insured; Limits Of Insurance; When Excess Follow-Form Coverage A Applies (Drop Down); Exclusions; Conditions and Definitions, as well as the Declarations and any Endorsements and Schedules made a part of this insurance.

Throughout this contract the words "you" and "your" refer to the Named **Insured** shown in the Declarations and other persons or organizations qualifying as a Named **Insured** under this contract. The words "we," "us" and "our" refer to the Company providing this insurance.

In addition to the Named **Insured,** other persons or organizations may qualify as **insureds**. Those persons or organizations and the conditions under which they qualify are identified in the Who Is An Insured section of this contract.

Words and phrases that appear in **bold** print have special meanings and are defined in the Definitions section of this contract.

---

*Coverage/*
*Excess Follow-Form*
*Coverage A*

Subject to all of the terms and conditions applicable to Excess Follow-Form Coverage A, we will pay, on behalf of the **insured,** that part of **loss** to which this coverage applies, which exceeds the applicable **underlying limits**.

This coverage applies only if the triggering event that must happen during the policy period of the applicable **underlying insurance** happens during the policy period of this insurance.

This coverage will follow the terms and conditions of **underlying insurance** described in the Schedule Of Underlying Insurance, unless a term or condition contained in this coverage:

•       differs from any term or condition contained in the applicable **underlying insurance;** or

•       is not contained in the applicable **underlying insurance**.

With respect to such exceptions described above, the terms and conditions contained in this coverage will apply, to the extent that such terms and conditions provide less coverage than the terms and conditions of the applicable **underlying insurance**.

This coverage does not apply to any part of **loss** within **underlying limits,** or any related costs or expenses.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

---

*Coverages/*
*Umbrella Coverage B*

*Bodily Injury And*
*Property Damage*
*Liability Coverage*

Subject to all of the terms and conditions applicable to Umbrella Coverage B, we will pay, on behalf of the **insured, loss** by reason of liability:

•       imposed by law; or

•       assumed in an **insured contract;**

---

### Coverages/
### Umbrella Coverage B

*Bodily Injury And Property Damage Liability Coverage (continued)*

for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

This coverage applies only to such **bodily injury** or **property damage** that occurs during the policy period.

Damages for **bodily injury** include damages claimed by a person or organization for care or loss of services resulting at any time from the **bodily injury**.

This coverage does not apply to any part of:

A.  **loss** to which **underlying insurance** would apply, regardless of whether or not:

    1.  **underlying insurance** is available; and

    2.  the applicable **underlying limits** have been exhausted;

B.  **loss** to which **underlying limits** apply; or

C.  any costs or expenses related to **loss** as described in paragraphs A. or B. above.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

*Advertising Injury And Personal Injury Liability Coverage*

Subject to all of the terms and conditions applicable to Umbrella Coverage B, we will pay, on behalf of the **insured, loss** because of liability:

•  imposed by law; or

•  assumed in an **insured contract;**

for **advertising injury** or **personal injury** to which this coverage applies.

This coverage applies only to such **advertising injury** or **personal injury** caused by an offense that is first committed during the policy period.

This coverage does not apply to any part of:

A.  **loss** to which **underlying insurance** would apply, regardless of whether or not:

    1.  **underlying insurance** is available; and

    2.  the applicable **underlying limits** have been exhausted;

B.  **loss** to which **underlying limits** apply; or

C.  any costs or expenses related to **loss** as described in paragraphs A. or B. above.

We have no obligation under this insurance with respect to any claim or **suit** settled without our consent.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

**CHUBB®**  *Chubb Commercial Excess And Umbrella Insurance*

| | |
|---|---|
| ***Investigation, Defense And Settlements*** | Subject to all of the terms and conditions of this insurance, we will have the right and duty to defend the **insured:** |

• under Excess Follow-Form Coverage A, against a **suit** in connection with **loss** to which such coverage applies, if the applicable **underlying limits** have been exhausted by payment of judgments, settlements or related costs or expenses (if such costs or expenses reduce such limits); or

• under Umbrella Coverage B, against a **suit** to which such coverage applies, even if such **suit** is false, fraudulent or groundless.

We have no duty to defend any person or organization against any claim or **suit:**

• to which this insurance does not apply; or

• if any other insurer has a duty to defend.

When we have the duty to defend, we may, at our discretion, investigate any occurrence or offense and settle any claim or **suit**. In all other cases, we may, at our discretion, participate in the investigation, defense and settlement of any occurrence, offense, claim or **suit**.

Our duty to defend any person or organization ends when we have used up the applicable Limit Of Insurance.

***Supplementary Payments***

Subject to all of the terms and conditions of this insurance, under Excess Follow-Form Coverage A or Umbrella Coverage B:

A. we will pay, with respect to a claim we investigate or settle, or a **suit** against an **insured** we defend:

    1. the expenses we incur.

    2. the cost of:

        a. bail bonds; or

        b. bonds required to:

            (1) appeal judgments; or

            (2) release attachments;

    but only for bond amounts within the available Limit Of Insurance. We do not have to furnish these bonds.

    3. reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of such claim or **suit**, including actual loss of earnings up to $1000 a day because of time off from work.

    4. costs taxed against the **insured** in the **suit,** except any:

        a. attorney fees or litigation expenses; or

        b. other loss, cost or expense;

    in connection with any injunction or other equitable relief.

    5. prejudgment interest awarded against the **insured** on that part of a judgment we pay. If we make an offer to pay the applicable Limit Of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

EXHIBIT B - PAGE 17

| **Supplementary Payments** *(continued)* | 6.    interest on the full amount of a judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit Of Insurance. |

B.    Supplementary Payments does not include any fine or other penalty.

C.    Supplementary Payments will not reduce the Limits Of Insurance.

Our obligation to make these payments ends when we have used up the applicable Limit Of Insurance.

---

## Coverage Territory

**Excess Follow-Form Coverage A**

With respect to Excess Follow-Form Coverage A, this insurance applies anywhere that the applicable **underlying insurance** applies.

**Umbrella Coverage B**

With respect to Umbrella Coverage B, this insurance applies anywhere.

## Who Is An Insured/ Excess Follow-Form Coverage A

With respect to Excess Follow-Form Coverage A, the following persons and organizations qualify as **insureds:**

• the Named **Insured** shown in the Declarations; and

• other persons or organizations qualifying as an insured in **underlying insurance,** but not beyond the extent of any limitation imposed under any contract or agreement.

## Who Is An Insured/ Umbrella Coverage B

With respect to Umbrella Coverage B, the following persons and organizations qualify as **insureds**.

**Sole Proprietorships**

If you are an individual, you and your spouse are **insureds;** but you and your spouse are **insureds** only with respect to the conduct of a business of which you are the sole owner.

If you die:

• persons or organizations having proper temporary custody of your property are **insureds;** but they are **insureds** only with respect to the maintenance or use of such property and only for acts until your legal representative has been appointed; and

• your legal representatives are **insureds;** but they are **insureds** only with respect to their duties as your legal representatives. Such legal representatives will assume your rights and duties under this insurance.

**Partnerships Or Joint Ventures**

If you are a partnership (including a limited liability partnership) or a joint venture, you are an **insured**. Your members, your partners and their spouses are **insureds;** but they are **insureds** only with respect to the conduct of your business.

# ⊏⊦⊔⊟⊟® *Chubb Commercial Excess And Umbrella Insurance*

### *Who Is An Insured/*
### *Umbrella Coverage B*
*(continued)*

| | |
|---|---|
| *Limited Liability Companies* | If you are a limited liability company, you are an **insured**. Your members and their spouses are **insureds;** but they are **insureds** only with respect to the conduct of your business. Your managers are **insureds;** but they are **insureds** only with respect to their duties as your managers. |
| *Other Organizations* | If you are an organization (including a professional corporation) other than a partnership, joint venture or limited liability company, you are an **insured**. Your directors and **officers** are **insureds;** but they are **insureds** only with respect to their duties as your directors or **officers**. Your stockholders and their spouses are **insureds;** but they are **insureds** only with respect to their liability as your stockholders. |
| *Employees* | Your **employees** are **insureds;** but they are **insureds** only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. |
| *Volunteers* | Persons who are volunteer workers for you are **insureds;** but they are **insureds** only for acts within the scope of their activities for you and at your direction. |
| *Real Estate Managers* | Persons (other than your **employees**) or organizations while acting as your real estate managers are **insureds;** but they are **insureds** only with respect to their duties as your real estate managers. |

*Lessors Of Equipment*

Persons or organizations from whom you lease equipment are **insureds;** but they are **insureds** only with respect to the maintenance or use by you of such equipment and only if you are contractually obligated to provide them such insurance as is afforded by this contract.

However, no such person or organization is an **insured** with respect to any:

- damages arising out of their sole negligence; or
- **occurrence** that occurs, or offense that is committed, after the equipment lease ends.

*Lessors Of Premises*

Persons or organizations from whom you lease premises are **insureds;** but they are **insureds** only with respect to the ownership, maintenance or use of that particular part of such premises leased to you and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.

However, no such person or organization is an **insured** with respect to any:

- damages arising out of their sole negligence;
- **occurrence** that occurs, or offense that is committed, after you cease to be a tenant in the premises; or
- structural alteration, new construction or demolition operations performed by or on behalf of them.

EXHIBIT B - PAGE 19

## Who Is An Insured/ Umbrella Coverage B
*(continued)*

*Subsidiary Or Newly Acquired Or Formed Organizations*

If there is no other insurance available, the following organizations will qualify as named **insureds**:

• a subsidiary organization of the first named **insured** shown in the Declarations of which, at the beginning of the policy period and at the time of loss, such first named **insured** controls, either directly or indirectly, more than fifty (50) percent of the interests entitled to vote generally in the election of the governing body of such organization; or

• a subsidiary organization of the first named **insured** shown in the Declarations that such first named **insured** acquires or forms during the policy period, if at the time of loss such first named **insured** controls, either directly or indirectly, more than fifty (50) percent of the interests entitled to vote generally in the election of the governing body of such organization.

*Limitations On Who Is An Insured*

With respect to Umbrella Coverage B, the following limitations apply to Who Is An Insured.

A. Except to the extent provided under the Subsidiary Or Newly Acquired Or Formed Organizations provision, no person or organization is an **insured** with respect to the conduct of any person or organization that is not shown as a named **insured** in the Declarations.

B. No person or organization is an **insured** with respect to the:

    1. ownership, maintenance or use of any assets; or

    2. conduct of any person or organization whose assets, business or organization;

you acquire, either directly or indirectly, for any:

• **bodily injury** or **property damage** that occurred; or

• **advertising injury** or **personal injury** arising out of an offense first committed;

in whole or in part, before you, directly or indirectly, acquired such assets, business or organization.

C. No person or organization is an **insured** with respect to the conduct of any partnership (including any limited liability partnership), joint venture or limited liability company that is not shown as a named **insured** in the Declarations.

## Limits Of Insurance

With respect to all coverages under this contract, the Limits Of Insurance shown in the Declarations and the rules below fix the most we will pay, regardless of the number of:

• **insureds;**

• claims made or **suits** brought;

• persons or organizations making claims or bringing **suits;**

• vehicles involved; or

• coverages provided in this contract.

**CHUBB®**   *Chubb Commercial Excess And Umbrella Insurance*

| | |
|---|---|
| ***Limits Of Insurance***<br>*(continued)* | The aggregate limits apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months (starting with the beginning of the policy period shown in the Declarations), provided the applicable aggregate limits in **underlying insurance** apply in such manner. If the aggregate limits in **underlying insurance** do not so apply, the applicable aggregate limits of this insurance will apply to the entire policy period and not separately to any portion (whether annual or otherwise) thereof. |
| | If the policy period is extended after issuance, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance. |

***Excess Coverage Other Aggregate Limit***

Subject to the Each Occurrence Limit, the Excess Coverage Other Aggregate Limit is the most we will pay for the sum of **loss** under Excess Follow-Form Coverage A, except **loss:**

- included in the products-completed operations hazard;
- arising out of advertising injury or personal injury; or
- otherwise covered by **underlying insurance,** but to which no aggregate limit in such **underlying insurance** applies.

The Excess Coverages Other Aggregate Limit will apply separately to **loss** in the same manner as each aggregate limit so applies in each coverage or policy described in the Schedule Of Underlying Insurance.

***Umbrella Coverages Aggregate Limit***

Subject to the Each Occurrence Limit, the Umbrella Coverages Aggregate Limit is the most we will pay for the sum of **loss** under Umbrella Coverages, except **loss**:

- included in the **products-completed operations hazard;** or
- arising out of **advertising injury** or **personal injury**.

***Products–Completed Operations Aggregate Limit***

Subject to the Each Occurrence Limit, the Products-Completed Operations Aggregate Limit is the most we will pay for the sum of **loss** included in the products-completed operations hazard, even if such **loss** is or otherwise would be covered in whole or in part under more than one coverage.

***Advertising Injury And Personal Injury Aggregate Limit***

The Advertising Injury And Personal Injury Aggregate Limit is the most we will pay for the sum of **loss** for advertising injury and personal injury, even if such **loss** is or otherwise would be covered in whole or in part under more than one coverage.

***Each Occurrence Limit***

The Each Occurrence Limit is the most we will pay for the sum of **loss** arising out of any one occurrence, even if such **loss** is or otherwise would be covered in whole or in part under more than one coverage.

Any amount paid for **loss** will reduce the amount of the applicable aggregate limit available for any other payment.

If the applicable aggregate limit has been reduced to an amount that is less than the Each Occurrence Limit, the remaining amount of such aggregate limit is the most that will be available for any other payment.

EXHIBIT B - PAGE 21

| | |
|---|---|
| ***When Excess Follow-Form Coverage A Applies (Drop Down)*** | Subject to all of the terms and conditions of this insurance, with respect to Excess Follow-Form Coverage A, if the applicable **underlying limits** are: |

- reduced by payment of judgments, settlements or related costs or expenses (if such costs or expenses reduce such limits), Excess Follow-Form Coverage A will drop down to apply in excess of the remaining amount of the applicable **underlying limits;** or

- exhausted by payment of judgments, settlements or related costs or expenses (if such costs or expenses reduce such limits), Excess Follow-Form Coverage A will apply in the same manner as the applicable **underlying insurance** would have applied but for such exhaustion.

| | |
|---|---|
| ***Exclusions/ Excess Follow-Form Coverage A*** | With respect to Excess Follow-Form Coverage A, the following exclusions apply. |
| *Pollution* | A.   This insurance does not apply to any liability or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants,** other than as described in paragraph C. below. |

B.   Paragraph A. above does not apply to:

1.   bodily injury or property damage included in the products-completed operations hazard;

2.   bodily injury or property damage:

   a.   caused by the escape of operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts;

   b.   if sustained within a building and caused by the release of gaseous irritants or contaminants from materials brought into that building, in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

   c.   resulting from your other ongoing contracting operations;

3.   bodily injury if sustained within a building and caused by the escape of gaseous irritants or contaminants from equipment used to heat that building;

4.   bodily injury or property damage caused by heat, smoke or fumes from a **hostile fire;** or

5.   bodily injury or property damage resulting from the ownership, maintenance or use of an auto.

C.   This insurance does not apply to any liability or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants:**

1.   which are or were at any time transported, handled, stored, disposed of, processed or treated as waste by or for any:

   a.   **insured;** or

   b.   person or organization for whom any **insured** may be legally responsible.

2.   at or from any premises, site or location:

   a.   which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste; or

⊏ H ⊔ ⊔ B ®   *Chubb Commercial Excess And Umbrella Insurance*

*Exclusions/*
*Excess Follow-Form*
*Coverage A*

*Pollution*
*(continued)*

      b.    on which any **insured** or any contractor or subcontractor working directly or indirectly on any **insured**'s behalf is performing operations, if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**.

D.    This insurance does not apply to any loss, cost or expense arising out of any:

    1.    request, demand, order, or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants;** or

    2.    claim or proceeding by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

Paragraph D. above does not apply to the liability for damages, for property damage, that the **insured** would have in the absence of such request, demand, order or regulatory or statutory requirement, or such claim or proceeding by or on behalf of a governmental authority.

This exclusion applies regardless of whether or not the pollution was accidental, expected, gradual, intended, preventable or sudden.

*Obligations Of Underlying Insurance*

This insurance does not apply to any liability or loss, cost or expense for which the liability or obligation under **underlying insurance** is by law unlimited.

*Underlying Insurance Exclusions*

Notwithstanding anything to the contrary set forth in any other provision of this contract, this insurance does not apply to any liability or loss, cost or expense to which the terms and conditions of **underlying insurance** do not apply.

*Exclusions/*
*Umbrella Coverage B*
*Bodily Injury/*
*Property Damage*

With respect to Umbrella Coverage B, Bodily Injury And Property Damage Liability Coverage, the following exclusions apply.

*Aircraft: Owned Or Rented Without Crew*

This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use (use includes operation and **loading or unloading**) or entrustment to others of any aircraft owned or operated by or loaned or rented to any **insured**.

This exclusion does not apply to an aircraft that is:

•    loaned or rented to you with a paid, trained crew; and

•    not owned, in whole or in part, by any **insured**.

***Exclusions/***
***Umbrella Coverage B***
***Bodily Injury/***
***Property Damage***
*(continued)*

| | |
|---|---|
| *Autos: U.S.A., Canada Or Puerto Rico* | This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use (use includes operation and **loading or unloading**) or entrustment to others of any **auto** owned or operated by or loaned or rented to any **insured**. |
| | This exclusion does not apply to **bodily injury** or **property damage** caused by an **occurrence** that takes place outside of the United States of America (including its possessions or territories), Canada and Puerto Rico. |

| | |
|---|---|
| *Damage To Impaired Property Or Property Not Physically Injured* | This insurance does not apply to **property damage** to: |

- **impaired property;** or
- property that has not been physically injured;

arising out of any:

- defect, deficiency, inadequacy or dangerous condition in **your product** or **your work;** or
- delay or failure by you or anyone acting on your behalf to perfom a contract or agreement in accordance with its terms and conditions.

This exclusion does not apply to the loss of use of other tangible property resulting from sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

| | |
|---|---|
| *Damage To Insureds Property* | This insurance does not apply to **property damage** to any property: |

- owned by you; or
- of any **insured,** that is in the care, control or custody of any other **insured**.

| | |
|---|---|
| *Damage To Your Product* | This insurance does not apply to **property damage** to **your product** arising out of it or any part of it. |

| | |
|---|---|
| *Damage To Your Work Or Related Property* | This insurance does not apply to **property damage** to: |

- **your work** arising out of it or any part of it;
- that particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the **property damage** arises out of those operations; or
- that particular part of any property that must be restored, repaired or replaced because your **work** was incorrectly performed on it.

**⊏HUBB**®    ***Chubb Commercial Excess And Umbrella Insurance***

***Exclusions/***
***Umbrella Coverage B***
***Bodily Injury/***
***Property Damage***
(continued)

| | |
|---|---|
| *Expected Or Intended Injury* | This insurance does not apply to **bodily injury** or **property damage** arising out of an act that: |

- is intended by the **insured;** or

- would be expected from the standpoint of a reasonable person in the circumstances of the **insured;**

to cause **bodily injury** or **property damage,** even if the actual **bodily injury** or **property damage** is of a different degree or type than intended or expected.

This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or tangible property.

---

*Loss In Progress*

This insurance does not apply to **bodily injury** or **property damage** that is a change, continuation or resumption of any **bodily injury** or **property damage** known by you, prior to the beginning of the policy period, to have occurred.

**Bodily injury** or **property damage** will be deemed to be known by you:

A.  if such injury or damage is known by, or should have been known from the standpoint of a reasonable person in the circumstances of:

  1.  you;

  2.  any of your directors, managers, members, **officers** (or their designees) or partners (whether or not an **employee**); and

B.  when any person described in paragraph A. above:

  1.  reports all, or any part, of any such injury or damage to us or any other insurer;

  2.  receives a claim or a demand for damages because of any such injury or damage; or

  3.  becomes aware that any such injury or damage has occurred or has begun to occur.

---

*Watercraft: Owned*

This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use (use includes operation and **loading or unloading**) or entrustment to others of any watercraft owned or operated by or loaned or rented to any **insured**.

This exclusion does not apply to a watercraft:

- while ashore on premises owned by or rented to you; or

- that is not owned, in whole or in part, by any **insured**.

---

| | |
|---|---|
| ***Exclusions/ Umbrella Coverage B Advertising Injury/ Personal Injury*** | With respect to Umbrella Coverage B, Advertising Injury And Personal Injury Liability Coverage, the following exclusions apply. |

*Breach Of Contract*

This insurance does not apply to **advertising injury** or **personal injury** arising out of breach of contract.

*Continuing Offenses*

This insurance does not apply to **advertising injury** or **personal injury** that arises out of that part of an offense that continues or resumes after the later of the end of the policy period of:

A.   this insurance; or

B.   a subsequent, continuous renewal or replacement of this insurance, that:

    1.   is issued to you by us or by an affiliate of ours;

    2.   remains in force while the offense continues; and

    3.   would otherwise apply to **advertising injury** and **personal injury**.

*Crime Or Fraud*

This insurance does not apply to **advertising injury** or **personal injury** arising out of any criminal or fraudulent conduct committed by or with the consent or knowledge of the **insured**.

*Expected Or Intended Injury*

This insurance does not apply to **advertising injury** or **personal injury** arising out of an offense, committed by or behalf of the **insured,** that:

•   is intended by such **insured;** or

•   would be expected from the standpoint of a reasonable person in the circumstances of such **insured;**

to cause injury.

*Failure To Conform To Representations Or Warranties*

This insurance does not apply to **advertising injury** or **personal injury** arising out of the failure of goods, products or services to conform with any electronic, oral, written or other representation or warranty of durability, fitness, performance, quality or use.

*Internet Activities*

This insurance does not apply to **advertising injury** or **personal injury** arising out of:

•   controlling, creating, designing or developing of another's Internet site;

•   controlling, creating, designing, developing, determining or providing the content or material of another's Internet site;

•   controlling, facilitating or providing, or failing to control, facilitate or provide, access to the Internet or another's Internet site; or

•   publication of content or material on or from the Internet, other than material developed by you or at your direction.

*Prior Offenses*

This insurance does not apply to **advertising injury** or **personal injury** arising out of any offense first committed before the beginning of the policy period.

**⊏HUBB**®    ***Chubb Commercial Excess And Umbrella Insurance***

*Exclusions/*
*Umbrella Coverage B*
*Advertising Injury/*
*Personal Injury*
*(continued)*

| | |
|---|---|
| *Publications With Knowledge Of Falsity* | This insurance does not apply to **advertising injury** or **personal injury** arising out of any electronic, oral, written or other publication of material by or with the consent of the **insured:**<br><br>• with knowledge of its falsity; or<br><br>• if a reasonable person in the circumstances of such **insured** would have known such material to be false. |

| | |
|---|---|
| *Wrong Description Of Prices* | This insurance does not apply to **advertising injury** or **personal injury** arising out of the wrong description of the price of goods, products or services. |

*Exclusions/*
*Umbrella Coverage B*
*Bodily Injury/*
*Property Damage/*
*Advertising Injury/*
*Personal Injury*

With respect to Umbrella Coverage B, Bodily Injury And Property Damage Liability Coverage and Advertising Injury And Personal Injury Liability Coverage, the following exclusions apply.

| | |
|---|---|
| *Employee Or Worker Injury* | A.  This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** sustained by an **employee** or **temporary worker** of the **insured** arising out of and in the course of:<br><br>   1.  employment by the **insured;** or<br><br>   2.  performing duties related to the conduct of the **insured**'s business.<br><br>B.  This insurance does not apply to **bodily injury, property damage, personal injury** or **advertising injury** sustained by the brother, child, parent, sister or spouse of such injured person, as a consequence of any injury or damage described in paragraph A. above.<br><br>This exclusion applies:<br><br>• whether the **insured** may be liable as an employer or in any other capacity; and<br><br>• to any obligation to share damages with or repay someone else who must pay damages because of any injury or damage described in paragraphs A. or B. above. |

| | |
|---|---|
| *Enhancement, Maintenance Or Prevention Expenses* | This insurance does not apply to any loss, cost or expense incurred by you or others for any:<br><br>A.  enhancement or maintenance of any property; or<br><br>B.  prevention of any injury or damage to any:<br><br>   1.  person or organization; or<br><br>   2.  property you own, rent or occupy. |

*Exclusions/*
*Umbrella Coverage B*
*Bodily Injury/*
*Property Damage/*
*Advertising Injury/*
*Personal Injury*
(continued)

| | |
|---|---|
| *Intellectual Property Laws Or Rights* | This insurance does not apply to any actual or alleged **bodily injury, property damage, advertising injury** or **personal injury** arising out of, giving rise to or in any way related to any actual or alleged: |

- assertion; or

- infringement or violation;

by any person or organization (including any **insured**) of any **intellectual property law or right,** regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.

This exclusion applies, unless such injury:

- is caused by an offense described in the definition of **advertising injury;** and

- does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any **intellectual property law or right,** other than one described in the definition of **advertising injury**.

| | | |
|---|---|---|
| *Pollution* | A. | This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**. |
| | B. | This insurance does not apply to any loss, cost or expense arising out of any: |

      1.   request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants;** or

      2.   claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

This exclusion applies regardless of whether or not the pollution was accidental, expected, gradual, intended, preventable or sudden.

| | |
|---|---|
| *Recall Of Products, Work Or Impaired Property* | This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: |

- **your product;**

- **your work;** or

- **impaired property;**

# ⊏⊢⊔⊔⊟® *Chubb Commercial Excess And Umbrella Insurance*

**Exclusions/
Umbrella Coverage B
Bodily Injury/
Property Damage/
Advertising Injury/
Personal Injury**

| | |
|---|---|
| *Recall Of Products, Work Or Impaired Property (continued)* | if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. |

---

*Policy Exclusions*

With respect to all coverages under this contract, the following exclusions apply.

*Asbestos*

A. This insurance does not apply to any liability or loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **asbestos**.

B. This insurance does not apply to any loss, cost or expense arising out of any:

  1. request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **asbestos;** or

  2. claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **asbestos**.

---

*Coverages/ Laws, Various*

This insurance does not apply to any liability or loss, cost or expense or obligation of any **insured** under any:

- medical expenses or payments coverage;

- no-fault law;

- personal injury protection coverage;

- underinsured or uninsured financial responsibility law;

- workers' compensation, disability benefits or unemployment compensation law; or

- similar coverage or law.

---

*Employee Retirement Income Security Laws*

This insurance does not apply to any liability or loss, cost or expense or obligation of any **insured** under the United States of America Employees' Retirement Income Security Act (E.R.I.S.A.) of 1974 or any similar law, as now constituted or hereafter amended.

---

*Employment-Related Practices*

A. This insurance does not apply to any liability or loss, cost or expense in connection with any damages sustained at any time by any person, whether or not sustained in the course of employment by any **insured**, arising out of any employment-related act, omission, policy, practice or representation directed at such person, occurring in whole or in part at any time, including any:

  1. arrest, detention or imprisonment;

---

## Policy Exclusions

| | |
|---|---|
| *Employment-Related Practices (continued)* | |

2.  breach of any express or implied covenant;

3.  coercion, criticism, humiliation, prosecution or retaliation;

4.  defamation or disparagement;

5.  demotion, discipline, evaluation or reassignment;

6.  discrimination, harassment or segregation;

7.  a.  eviction; or

    b.  invasion or other violation of any right of occupancy;

8.  failure or refusal to advance, compensate, employ or promote;

9.  invasion or other violation of any right of privacy or publicity;

10.  termination of employment; or

11.  other employment-related act, omission, policy, practice, representation or relationship in connection with any **insured** at any time.

B.  This insurance does not apply to any liability or loss, cost or expense in connection with any damages sustained at any time by the brother, child, parent, sister or spouse of such person at whom any employment-related act, omission, policy, practice or representation is directed, as described in paragraph A. above, as a consequence thereof.

This exclusion applies:

•  whether the **insured** may be liable as an employer or in any other capacity; and

•  to any obligation to share damages with or repay someone else who must pay damages because of any of the foregoing.

*Nuclear Energy*

A.  This insurance does not apply to any liability or loss, cost or expense:

1.  with respect to which any **insured** under this policy also has status as an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would have had status as an insured under any such policy but for its termination upon exhaustion of its limit of insurance; or

2.  arising out of the **nuclear hazardous properties** of **nuclear material** and with respect to which:

    a.  any person or organization is required to maintain financial protection pursuant to the United States of America Atomic Energy Act of 1954, or any law amendatory thereof; or

    b.  the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.  This insurance does not apply to any liability or loss, cost or expense arising out of the **nuclear hazardous properties** of **nuclear material**:

1.  if the **nuclear material:**

    a.  is at any **nuclear facility** owned by, or operated by or on behalf of, any **insured;**

# ⊏H⊔BB® *Chubb Commercial Excess And Umbrella Insurance*

## *Policy Exclusions*

*Nuclear Energy*
*(continued)*

b.  has been discharged or dispersed therefrom; or is contained in **nuclear spent fuel** or **nuclear waste** at any time transported, handled, stored, disposed of, processed, treated, possessed or used by or on behalf of any **insured;** or

2.  in any way related to the furnishing by any **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**. But if such facility is located within the United States of America (including its possessions or territories) or Canada, this subparagraph 2. applies only to **nuclear property damage** to such **nuclear facility** and any property thereat.

## *Conditions*

With respect to all coverages under this contract, the following conditions apply.

*Appeals*

We may, at our discretion, initiate or participate in an appeal of a judgment, if such judgment may result in a payment under this insurance.

If we initiate or participate in an appeal, we will pay our costs of the appeal. But in no case will the amount we pay for **loss** exceed the Limits Of Insurance.

*Audit Of Books And Records*

We may audit your books and records as they relate to this insurance at any time during the term of this policy and up to three years afterwards.

*Bankruptcy*

Bankruptcy or insolvency of the **insured** or of the **insured'**s estate will not relieve us of our obligations under this insurance.

*Cancellation*

The first named **insured** may cancel this policy or any of its individual coverages at any time by sending us a written request or by returning the policy and stating when thereafter cancellation is to take effect.

We may cancel this policy or any of its individual coverages at any time by sending to the first named **insured** a notice sixty (60) days, or twenty (20) days in the event of non-payment of premium, in advance of the cancellation date. Our notice of cancellation will be mailed to the first named **insured**'s last known address and will indicate the date on which coverage is terminated. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

The earned premium will be computed on a pro rata basis. Any unearned premium will be returned as soon as practicable.

*Changes*

This policy can only be changed by a written endorsement that becomes part of this policy. The endorsement must be signed by one of our authorized representatives.

*Compliance By Insureds*

We have no duty to provide coverage under this policy unless you and any other involved **insured** have fully complied with all of the terms and conditions of the policy.

## *Conditions*
*(continued)*

| | |
|---|---|
| *Conformance* | Any terms of this insurance which are in conflict with the applicable statutes of the State in which this policy is issued are amended to conform to such statutes. |

*Disclosures And Representations*

We have issued this insurance:

• Based upon representations you made to us; and

• in reliance upon your representatives.

Unintentional failure of an employee of the **insured** to disclose a hazard or other material information will not violate this condition, unless an officer (whether or not an employee) of any **insured** or an officer's designee knows about such hazard or other material information.

*Duties In The Event Of Occurrence, Offense, Claim Or Suit*

A. You must see to it that we and any insurers of **underlying insurance** are notified as soon as practicable of any occurrence or offense that may result in a claim, if the claim may involve us or other insurers. To the extent possible, notice should include:

  1. how, when and where the occurrence or offense happened;

  2. the names and addresses of any injured persons and witnesses; and

  3. the nature and location of any injury or damage arising out of the occurrence or offense.

  Notice of an occurrence or offense is not notice of a claim.

B. If a claim is made or **suit** is brought against any **insured,** you must:

  1. immediately record the specifics of the claim or **suit** and the date received;

  2. notify us and any other insurers as soon as practicable; and

  3. see to it that we receive written notice of the claim or **suit** as soon as practicable.

C. You and any other involved **insured** must:

  1. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit;**

  2. authorize us to obtain records and other information;

  3. cooperate with us and any other insurers in the:

    a. investigation or settlement of the claim; or

    b. defense against the **suit;** and

  4. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of loss to which this insurance may also apply.

D. No **insureds** will, except at that **insured's** own cost, make any payment, assume any obligation or incur any expense without our consent.

E. Notice given by or on behalf of:

  1. the **insured;**

---

*Chubb Commercial Excess And Umbrella Insurance*

EXHIBIT B - PAGE 32

**⊏HUBB**®    *Chubb Commercial Excess And Umbrella Insurance*

## Conditions

**Duties In The Event Of Occurrence, Offense, Claim Or Suit**
*(continued)*

2.    the injured person; or

3.    any other claimant;

to a licensed agent of ours with particulars sufficient to identify the **insured** shall be deemed notice to us.

F.    Knowledge of an occurrence or offense by an agent or employee of the **insured** will not constitute knowledge by the **insured,** unless an officer (whether or not an employee) of any **insured** or an officer's designee knows about such occurrence or offense.

G.    Failure of an agent or employee of the **insured,** other than an officer (whether or not an employee) of any **insured** or an officer's designee, to notify us of an occurrence or offense which such person knows about will not affect the insurance afforded to you.

H.    If a claim or loss does not reasonably appear to involve either this insurance or any **underlying insurance,** but it later develops into a claim or loss to which this insurance applies, the failure to report it to us will not violate this condition, provided the **insured** gives us immediate notice as soon as the **insured** is aware that this insurance may apply to such claim or loss.

**First Named Insured**

The person or organization first named in the Declarations is primarily responsible for payment of all premiums. The first named **insured** will act on behalf of all other named **insureds** for the giving and receiving of notice of cancellation or nonrenewal and the receiving of any return premiums that become payable under this policy.

**Inspections And Surveys**

We may:

•    make inspections and surveys at any time;

•    give you reports on the conditions we find; and

•    recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

•    are safe or healthful; or

•    comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization, which makes insurance inspections, surveys, reports or recommendations for us.

**Joint Duties In Non-Admitted Jurisdictions**

With respect to an occurrence, offense, claim or **suit,** to which this insurance applies, that arises in a **non-admitted jurisdiction:**

A.    we have no duty to defend any person or organization against any claim or **suit;** but we may, at our discretion, assume control of or participate in any investigation, defense, settlement or recovery proceedings.

B.    you and any other **insured** must:

---

## *Conditions*

| | |
|---|---|
| *Joint Duties In Non-Admitted Jurisdictions (continued)* | 1. make such investigation, defense or settlement as we deem reasonable; |

1. make such investigation, defense or settlement as we deem reasonable;

2. obtain our approval for any payment; and

3. effect approved payments to others, in accordance with the terms and conditions of this insurance.

C. we will reimburse funds to the **insured** for payments approved by us for:

1. **loss;** and

2. expenses and other payments; to which this insurance applies.

D. we will make those reimbursements:

1. in a jurisdiction that is mutually acceptable; and

2. until we have used up the applicable Limits Of Insurance.

---

*Legal Action Against Us*

No person or organization has a right under this insurance to:

- join us as a party or otherwise bring us into a **suit** seeking damages from an **insured;** or

- sue us on this insurance unless all of the terms and conditions of this insurance have been fully complied with.

A person or organization may sue us to recover on an **agreed settlement** or on a final judgment against an **insured** obtained after an actual:

- trial in a civil proceeding; or

- arbitration or other alternative dispute resolution proceeding;

but we will not be liable for damages that are not payable under the terms and conditions of this insurance or that are in excess of the applicable Limits Of Insurance.

---

*Maintenance Of Underlying Insurance And Underlying Limits*

We have issued this insurance in reliance upon representations made by you about **underlying insurance** and **underlying limits**. You must see to it that:

- **underlying insurance** is and remains valid and in full force and effect.

- **underlying insurance** will not be cancelled, non-renewed or rescinded without replacement by coverage to which we agree.

- the terms and conditions of **underlying insurance** will not materially change, unless we agree otherwise.

- the terms and conditions of renewals or replacements of **underlying insurance,** shown in the Schedule Of Underlying Insurance, will be materially the same as the prior coverage, unless we agree otherwise.

- the **underlying limits** are and remain available, regardless of any bankruptcy, insolvency or other financial impairment of any insurer or any other person or organization.

- the **underlying limits,** shown in the Schedule Of Underlying Insurance, will not be reduced or exhausted, except for the reduction or exhaustion by payment of judgments, settlements or related costs or expenses (if such costs or expenses reduce such limits).

**⊏ H ⊔ ⊟ ⊟**®   ***Chubb Commercial Excess And Umbrella Insurance***

## *Conditions*

| | |
|---|---|
| *Maintenance Of Underlying Insurance And Underlying Limits* *(continued)* | Failure to comply with this condition will not invalidate this insurance. But in the case of any such failure, our obligation or liability will not exceed that which would have applied absent any failure to comply with this condition.<br><br>You must notify us as soon as practicable if any **underlying insurance** is no longer valid or in full force or effect. |
| *Other Insurance* | If other valid and collectable insurance is available to the **insured** for loss we would otherwise cover under this insurance, our obligations are limited as follows.<br><br>This insurance is excess over any **other insurance,** whether primary, excess, contingent or on any other basis.<br><br>We will have no duty to defend the **insured** against any **suit** if any provider of any other insurance has a duty to defend such **insured** against such **suit**.<br><br>We will pay only our share of the amount of **loss**, if any, that exceeds the sum of the total:<br><br>• amount that all **other insurance** would pay for loss in the absence of this insurance; and<br><br>• of all deductible and self-insured amounts under all **other insurance**.<br><br>This insurance is not subject to the terms or conditions of any **other insurance**. |
| *Separation Of Insureds* | Except with respect to the Limits Of Insurance, and any rights or duties specifically assigned in this insurance to the first named **insured,** this insurance applies:<br><br>• as if each named **insured** were the only named **insured;** and<br><br>• separately to each **insured** against whom claim is made or **suit** is brought. |
| *Titles Of Paragraphs* | The titles of the various paragraphs of this policy and endorsements, if any, attached to this policy are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provisions to which they relate. |
| *Transfer Of Rights And Duties* | Your rights and duties under this insurance may not be transferred without our written consent. However, if you die, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative, or to anyone having temporary custody of your property until your legal representative has been appointed. |
| *Transfer Or Waiver Of Rights Of Recovery Against Others* | We will waive the right of recovery we would otherwise have had against another person or organization for loss to which this insurance applies, provided the **insured** has waived their rights of recovery against such person or organization in a contract or agreement that is executed before loss.<br><br>To the extent that the **insured'**s rights to recover all or part of any payment made under this insurance have not been waived, those rights are transferred to us. The **insured** must do nothing after loss to impair them. At our request, the **insured** will bring **suit** or transfer those rights to us and help us enforce them. |

---

## *Conditions*

| | |
|---|---|
| *Transfer Or Waiver Of Rights Of Recovery Against Others* (continued) | Any amount recovered will be apportioned as follows: |

- first, we shall receive all amounts recovered until we have been fully reimbursed for all amounts we have incurred, including costs or expenses of such recovery proceedings.

- Then, you are entitled to claim for any further amount recovered.

---

*When We Do Not Renew*

If we decide not to renew this policy, we will mail or deliver to the first named **insured** stated in the Declarations written notice of the nonrenewal not less than sixty (60) days before the expiration date. If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice.

---

☐☐☐☐☐☐® **Chubb Commercial Excess And Umbrella Insurance**

| | |
|---|---|
| ***Definitions/*** *** Umbrella Coverage B*** | **WITH RESPECT TO UMBRELLA COVERAGE B, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW.** |
| *Advertisement* | **Advertisement** means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services. |
| | **Advertisement** does not include any e-mail address, Internet domain name or other electronic address or metalanguage. |
| *Advertising Injury* | **Advertising injury** means injury, other than **bodily injury, property damage** or **personal injury,** sustained by a person or organization and caused by an offense of infringing, in that particular part of your **advertisement** about your goods, products or services, upon their: |
| | • copyrighted **advertisement;** or |
| | • registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title**.** |
| *Auto* | **Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include mobile equipment. |
| *Bodily Injury* | **Bodily injury** means physical: |
| | • injury; |
| | • sickness; or |
| | • disease; |
| | sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it. |
| *Employee* | **Employee** includes a **leased worker**. **Employee** does not include a **temporary worker**. |
| *Impaired Property* | **Impaired property** means tangible property, other than **your product** or **your work,** that cannot be used or is less useful because: |
| | • it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or |
| | • you have failed to fulfill the terms or conditions of a contract or agreement; |
| | if such property can be restored to use by: |
| | • the repair, replacement, adjustment or removal of **your product** or **your work;** or |
| | • your fulfilling the terms or conditions of the contract or agreement. |

| | |
|---|---|
| ***Definitions/*** <br> ***Umbrella Coverage B*** <br> *(continued)* | **WITH RESPECT TO UMBRELLA COVERAGE B, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW.** |
| *Insured Contract* | **Insured contract** means an oral or written contract or agreement pertaining to your business, in which you assume the tort liability of another person or organization to pay damages, to which this insurance applies, sustained by a third person or organization, provided the injury or damage occurs, or is caused by an offense that is first committed, after the execution of such contract or agreement. |
| *Intellectual Property Law Or Right* | **Intellectual property law or right** means any: <br><br> • certification mark, copyright, patent or trademark (including collective or service marks); <br><br> • right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information; <br><br> • other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or <br><br> • other judicial or statutory law concerning piracy, unfair competition or other similar practices. |
| *Leased Worker* | **Leased worker** means a person leased to a party by a labor leasing firm, in a contract or agreement between such party and the labor leasing firm, to perform duties related to the conduct of the party's business.  **Leased worker** does not include a **temporary worker**. |
| *Loading Or Unloading* | **Loading or unloading**: <br><br> A. means the handling of property: <br><br>   1. after it is moved from the place where it is accepted for movement into or onto an aircraft, **auto** or watercraft; <br><br>   2. while it is in or on an aircraft, **auto** or watercraft; or <br><br>   3. while it is being moved from an aircraft, **auto** or watercraft to the place where it is finally delivered. <br><br> B. does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, **auto** or watercraft. |
| *Occurrence* | **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. |
| *Officer* | **Officer** means a person holding any of the officer positions created by an organization's charter, constitution, by-laws or any other similar governing document. |

# CHUBB®    *Chubb Commercial Excess And Umbrella Insurance*

| | |
|---|---|
| ***Definitions/*** ***Umbrella Coverage B*** *(continued)* | **WITH RESPECT TO UMBRELLA COVERAGE B, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW.** |

*Personal Injury*

**Personal injury** means injury, other than **bodily injury, property damage** or **advertising injury,** caused by an offense of:

A. false arrest, false detention or other false imprisonment;

B. malicious prosecution;

C. wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if commited by or on behalf of its landlord, lessor or owner;

D. electronic, oral, written or other publication of material that:

    1. libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or

    2. violates a person's right of privacy;

E. discrimination, harrassment or segregation based on a person's protected human characteristics as established by law.

*Products-Completed Operations Hazard*

**Products-completed operations hazard:**

A. includes all **bodily injury** and **property damage** taking place away from premises owned or occupied by or loaned or rented to you and arising out of **your product** or **your work,** except:

    1. products that are still in your physical possession; or

    2. work that has not yet been completed or abandoned.

    **Your work** will be deemed completed when:

- all of the work called for in your contract or agreement has been completed.

- all of the work to be performed at the site has been completed, if your contract or agreement calls for work at more than one site.

- that part of the work completed at a site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

B. does not include **bodily injury** or **property damage** arising out of:

    1. the transportation of property, unless the injury or damage results from a condition in or on a vehicle not owned or operated by or loaned or rented to you and that condition was created by the **loading or unloading** of that vehicle by any **insured**;

    2. the existence of tools, uninstalled equipment or abandoned or unused materials; or

| | |
|---|---|
| ***Definitions/***<br>***Umbrella Coverage B*** | **WITH RESPECT TO UMBRELLA COVERAGE B, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW.** |

*Products-Completed Operations Hazard (continued)*

    3.    products or operations for which the classification in our rules indicates that such products or operations are not subject to the Products-Completed Operations Aggregate Limits Of Insurance.

*Property Damage*

**Property damage** means:

•   physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

•   loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Tangible property does not include any software, data or other information that is in electronic form.

*Temporary Worker*

**Temporary worker** means a person who is furnished to a party to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

*Your Product*

**Your product:**

A.    means any:

    1.    goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        a.    you;

        b.    others trading under your name; or

        c.    a person or organization whose assets or business you have acquired; and

    2.    containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

B.    includes:

    1.    representations or warranties made at any time with respect to the durability, fitness, performance, quality or use of **your product;** and

    2.    the providing of or failure to provide instructions or warnings.

C.    does not include vending machines or other property loaned or rented to or located for the use of others but not sold.

*Your Work*

**Your work:**

A.    means any:

    1.    work or operations performed by:

        a.    you or on your behalf; or

        b.    a person or organization whose assets or business you have acquired; and

**⊏ H ∪ B B**®    *Chubb Commercial Excess And Umbrella Insurance*

| | |
|---|---|
| *Definitions/*<br>*Umbrella Coverage B* | **WITH RESPECT TO UMBRELLA COVERAGE B, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW.** |

*Your Work*
*(continued)*

    2.    materials, parts or equipment furnished in connection with such work or operations.

B.    includes:

    1.    representations or warranties made at any time with respect to the durability, fitness, performance, quality or use of **your work;** and

    2.    the providing of or failure to provide instructions or warnings.

---

*Policy Definitions*    **WITH RESPECT TO ALL COVERAGES UNDER THIS CONTRACT, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW.**

*Agreed Settlement*    **Agreed settlement** means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative.

*Asbestos*    **Asbestos** means asbestos in any form, including its presence or use in any alloy, by-product or other material or waste. Waste includes material to be recycled, reconditioned or reclaimed.

*Hostile Fire*    **Hostile fire** means one, which becomes uncontrollable or breaks out from where it was intended to be.

*Insured*    **Insured** means a person or an organization qualifying as an **insured** in the Who Is An Insured sections of this contract.

*Loss*    **Loss:**

•    means damages that the **insured** becomes legally obligated to pay because of injury or damage.

•    does not include sums properly deducted for recoveries or salvage.

*Non-Admitted Jurisdiction*    **Non-admitted jurisdiction** means any jurisdiction where we are:

•    not licensed or permitted by law to issue insurance; or

•    prevented by law or otherwise from investigating, defending or settling an occurrence, offense, claim or **suit**.

---

| | |
|---|---|
| ***Policy Definitions***<br>*(continued)* | **WITH RESPECT TO ALL COVERAGES UNDER THIS CONTRACT, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW.** |

*Nuclear Facility*

**Nuclear facility** means any:

A.   **nuclear reactor;**

B.   equipment or device designed or used for:

    1.   separating the isotopes of plutonium or uranium;

    2.   processing or utilizing **nuclear spent fuel;** or

    3.   handling, processing or packaging **nuclear waste;**

C.   equipment or device used for the processing, fabricating or alloying of **nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than:

    1.   twenty-five (25) grams of plutonium or uranium 233, or any combination thereof: or

    2.   two-hundred-fifty (250) grams of uranium 235; or

D.   structure, basin, excavation, premises or place prepared or used for the storage or disposal of **nuclear waste;**

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

---

*Nuclear Hazardous Properties*

**Nuclear hazardous properties** include radioactive, toxic or explosive properties.

---

*Nuclear Material*

**Nuclear material** means **by-product material, source material** or **special nuclear material**.

**By-product material, source material** and **special nuclear material** have the meanings given them in the United States of America Atomic Energy Act of 1954 or in any law amendatory thereof.

---

*Nuclear Property Damage*  **Nuclear property damage** includes all forms of radioactive contamination of property.

---

*Nuclear Reactor*

**Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

---

*Nuclear Spent Fuel*

**Nuclear spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

---

**CHUBB**®    *Chubb Commercial Excess And Umbrella Insurance*

| | |
|---|---|
| *Policy Definitions*<br>*(continued)* | **WITH RESPECT TO ALL COVERAGES UNDER THIS CONTRACT, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW.** |

*Nuclear Waste*

**Nuclear waste** means any waste material:

• containing **nuclear material,** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and

• resulting from the operation by any person or organization of any **nuclear facility** described in subparagraphs A. or B. of the definition of **nuclear facility**.

*Other Insurance*

**Other insurance** means any insurance affording coverage that this insurance would also afford. **Other insurance** includes any type of self-insurance or other mechanism arranged for funding of **loss**.

**Other insurance** does not include **underlying insurance** or insurance negotiated specifically to apply in excess of this insurance.

*Pollutants*

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*Suit*

**Suit** means a civil proceeding in which damages, to which this insurance applies, are sought. **Suit** includes an arbitration or other dispute resolution proceeding in which such damages are sought and to which the **insured** must submit or does submit with our consent.

*Underlying Insurance*

**Underlying insurance** means the coverages for the hazards described in the Schedule Of Underlying Insurance and the next renewal or replacement insurance thereof.

*Underlying Limits*

**Underlying limits** means the sum of amounts:

A. shown for the hazards described in the Schedule Of Underlying Insurance, consisting of amounts:

    1. available under applicable **underlying insurance;** and

    2. any **insured** must pay because **underlying insurance,** as represented by you, is not available, regardless of the reason;

B. available under any applicable antecedent, renewal or replacement of **underlying insurance;**

C. of any allocation, deductible, participation, retention or other self-insurance applicable to the insurance described in paragraphs A. and B. above; and

D. any reinstatement of limits or supplemental or other limits available under the insurance described in paragraphs A. and B. above.

| | |
|---|---|
| *Policy Definitions* | **WITH RESPECT TO ALL COVERAGES UNDER THIS CONTRACT, WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW.** |

*Underlying Limits*
*(continued)*

If amounts available under the applicable **underlying insurance,** described in the Schedule Of Underlying Insurance, are greater or less than the amount, shown in such Schedule, then the greater of such amounts shall apply in the computation of **underlying limits**.

**CHUBB**®    *Chubb Commercial Excess And Umbrella Insurance*

*Endorsement*

| | |
|---|---|
| *Policy Period* | MAY 5, 2019    *To*   MAY 5, 2020 |
| *Effective Date* | MAY 5, 2019 |
| *Policy Number* | 9364-95-73 |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | May 09, 2019 |

---

Under Conditions, the following condition is added to the policy:

*Conditions*

*Compliance With
Applicable Trade
Sanctions*

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

All other terms and conditions remain unchanged.

*Authorized Representative* _____

May 09, 2019

---

*Chubb Commercial Excess And Umbrella Insurance*    *Compliance With Applicable Trade Sanctions*
*Form 07-02-1988 (Rev. 2-04)*    *Endorsement*    *Page 1 of 1*

EXHIBIT B - PAGE 45

**CHUBB®**   *Chubb Commercial Excess And Umbrella Insurance*

*Endorsement*

| | | | |
|---|---|---|---|
| *Policy Period* | MAY 5, 2019 | *To* | MAY 5, 2020 |
| *Effective Date* | MAY 5, 2019 | | |
| *Policy Number* | 9364-95-73 | | |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC | | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | | |
| *Date Issued* | May 09, 2019 | | |

### SCHEDULE A

Limits Of Insurance

Crisis Assistance For Excess And Umbrella Aggregate Limit:

The lesser of:

• 3% of the Each Occurrence Limit shown in the Declarations as of the inception date of this policy; or

• $300,000.

***Coverage/Crisis Assistance For Excess And Umbrella***

A section titled Coverage/Crisis Assistance For Excess And Umbrella is added to this contract.

Subject to all of the terms and conditions of this insurance, we will pay on behalf of the **insured crisis assistance expenses** up to the amount of the Crisis Assistance For Excess And Umbrella Aggregate Limit, shown in Schedule A, arising out of a **crisis event** that first commences during the policy period of this insurance.

A **crisis event** will be deemed to first commence at the time during the policy period of this insurance when you notify us in accordance with the Special Duties In The Event Of A Crisis Event provision of this Endorsement.

A **crisis event** will be deemed to end one hundred and eighty (180) days after the date of notice of the **crisis event** was given to us by you or when the Crisis Assistance For Excess And Umbrella Aggregate Limit shown in this Endorsement is exhausted, whichever occurs first.

Any payment of **crisis assistance expenses** that we make under the coverage provided by this Endorsement will not be an acknowledgement of coverage under this insurance.

## Limits Of Insurance

Under Limits Of Insurance, the following provision is added.

### Crisis Assistance For Excess And Umbrella Aggregate Limit

The Crisis Assistance For Excess And Umbrella Aggregate Limit shown in Schedule A is the most we will pay for **crisis assistance expenses**.

The Crisis Assistance For Excess And Umbrella Aggregate Limit:

• applies to the entire policy period shown in the Declarations and not separately to any portion (whether annual or otherwise) thereof;

• will not be reinstated or increased; and

• will not reduce any other limits under this policy.

## Conditions

Under Conditions, the following conditions are added.

### Special Duties In The Event Of A Crisis Event

You must see to it that within twenty-four (24) hours of a **crisis event:**

A.    one of the **crisis assistance service providers** is notified by telephone; and

B.    we are notified. To the extent possible, notice should include:

1.    how, when and where the **crisis event** took place;

2.    the names and addresses of any injured persons and witnesses;

3.    the nature and location of any injury or damage arising out of the **crisis event;** and

4.    the reason why the event is likely to involve injury or damage covered by this policy and involve significant adverse regional or national media coverage.

### Other Crisis Assistance Insurance

If you have **other insurance** that provides coverage for crisis assistance also covered by this insurance, then this insurance will be considered excess insurance over and above the amount payable by such **other insurance**.

## Policy Definitions

Under Policy Definitions, the following definitions are added.

### Crisis Assistance Expenses

**Crisis assistance expenses** means the following expenses incurred by the **insured** during a **crisis event** to which this insurance applies which are reasonable, necessary and directly attributable to that **crisis event:**

• expenses to secure the scene of a **crisis event;**

• fees charged by a **crisis assistance service provider** shown in Schedule B for professional service or advice;

• funeral or related service expenses;

• psychological or grief counseling expenses;

• temporary living expenses;

**CHUBB**®    *Chubb Commercial Excess And Umbrella Insurance*

## *Endorsement*

| | |
|---|---|
| *Effective Date* | MAY 5, 2019 |
| *Policy Number* | 9364-95-73 |

---

### *Policy Definitions*

*Crisis Assistance Expenses (continued)*

- travel expenses; and
- any other expenses approved by us.

---

*Crisis Assistance Service Provider*

**Crisis assistance service provider** means any firm:

A.  shown in Schedule B; or

B.  for which we, at our sole discretion, have provided written approval prior to the **crisis event** as evidenced in an endorsement to this policy,

and which is hired by you.

We reserve the right to modify the list of firms shown in Schedule B without notice.

---

*Crisis Event*

**Crisis event** means an event that you reasonably believe has resulted, or may result, in:

A.  damages covered by this policy that are in excess of any applicable:

    1.  **underlying limits** listed on the Schedule Of Underlying Limits;

    2.  retained limits; and/or

    3.  **other insurance;** and

B.  significant adverse regional or national media coverage.

---

### *Schedule B*

Crisis Assistance Service Providers:

Please see listing of Crisis Assistance Service Providers on www.chubb.com.

We do not provide or make any representations or warranties in connection with the services provided by the firm(s) listed above.

All other terms and conditions remain unchanged.

Authorized Representative

May 09, 2019

---

**CHUBB**®    *Chubb Commercial Excess And Umbrella Insurance*

## Endorsement

| | |
|---|---|
| *Policy Period* | MAY 5, 2019     *To*   MAY 5, 2020 |
| *Effective Date* | MAY 5, 2019 |
| *Policy Number* | 9364-95-73 |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | May 09, 2019 |

Under Conditions, the following condition is added.

**Conditions**

*Civil Unions Or Domestic Partnerships*

All references in the policy to "spouse" include a party to a civil union or domestic partnership recognized under the applicable law of the jurisdiction having authority.

All other terms and conditions remain unchanged.

*Authorized Representative*

May 09, 2019

---

EXHIBIT B - PAGE 49

# CHUBB®    *Chubb Commercial Excess And Umbrella Insurance*

## *Endorsement*

| | | | |
|---|---|---|---|
| *Policy Period* | MAY 5, 2019 | *To*   MAY 5, 2020 | |
| *Effective Date* | MAY 5, 2019 | | |
| *Policy Number* | 9364-95-73 | | |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC | | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | | |
| *Date Issued* | May 09, 2019 | | |

---

Under Policy Exclusions, the following exclusion is added:

**Policy Exclusions**

*Care, Control Or Custody*

This insurance does not apply to property damage to property described below, if the property is in the care, control or custody of the **insured**.

Description of Property:

Real and personal property

All other terms and conditions remain unchanged.

*Authorized Representative*

May 09, 2019

---

EXHIBIT B - PAGE 50

# CHUBB®  *Chubb Commercial Excess And Umbrella Insurance*

## *Endorsement*

| | |
|---|---|
| *Policy Period* | MAY 5, 2019        *To*   MAY 5, 2020 |
| *Effective Date* | MAY 5, 2019 |
| *Policy Number* | 9364-95-73 |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | May 09, 2019 |

---

**Exclusions/ Umbrella Coverage B Bodily Injury/ Property Damage/ Advertising Injury/ Personal Injury**

Under Exclusions/Umbrella Coverage B Bodily Injury/Property Damage/Advertising Injury/Personal Injury, the following exclusion is added:

*Foreign Liability*

This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of an **occurrence** outside the United States of America, its territories or possessions, Canada or Puerto Rico.

All other terms and conditions remain unchanged.

*Authorized Representative*

May 09, 2019

---

*Chubb Commercial Excess And Umbrella Insurance*    *Exclusions/Umbrella Coverage B – Foreign Liability*
*Form 07-02-0861 (Rev. 7-01)*    *Endorsement*    *Page 1 of 1*

EXHIBIT B - PAGE 51

**CHUBB**®    *Chubb Commercial Excess And Umbrella Insurance*

## Endorsement

| | | | |
|---|---|---|---|
| *Policy Period* | MAY 5, 2019 | *To* | MAY 5, 2020 |
| *Effective Date* | MAY 5, 2019 | | |
| *Policy Number* | 9364-95-73 | | |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC | | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | | |
| *Date Issued* | May 09, 2019 | | |

---

A new section titled Terrorism Provisions is added to the end of this contract.

**Terrorism Provisions**

*Certified Act Of Terrorism Exclusion*

This insurance does not apply to any loss, cost or expense arising, directly or indirectly, out of a **certified act of terrorism**.

---

*Application Of Other Exclusions*

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy, such as losses excluded by the Nuclear Energy exclusion.

---

A new section titled Terrorism Definitions is added.

**Terrorism Definitions**

*Certified Act Of Terrorism*

**Certified act of terrorism** means any act that is certified by the Secretary of the Treasury of the United States to be an act:

A. of terrorism, a violent act or an act that is dangerous to human life, property or infrastructure; and

B. that results in damage:

    1. within the **United States;** or

    2. outside of the **United States** in the case of:

        a. an air carrier or vessel as described in the **terrorism law;** or

        b. the premises of a mission of the United States of America,

which was committed by an individual or individuals as part of an effort to:

• coerce the civilian population; or

• influence the policy or affect the conduct of the Government,

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*

EXHIBIT B - PAGE 52

of the **United States**.

## Terrorism Definitions

| | |
|---|---|
| *Certified Act Of Terrorism (continued)* | **Certified act of terrorism** does not include an act that: |
| | • is committed as part of the course of a war declared by the Congress of the **United States;** or |
| | • does not result in property and casualty insurance losses that exceed $5 million in the aggregate and are attributable to all types of insurance subject to the **terrorism law**. |
| *State* | **State** means any state of the United States of America, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands, and any territory or possession of the United States of America. |
| *Terrorism Law* | **Terrorism law** means the Terrorism Risk Insurance Act of 2002 as amended. |
| *United States* | **United States** means: |
| | • a **state;** and |
| | • the territorial sea and the continental shelf of the United States of America, as described in the **terrorism law**. |

All other terms and conditions remain unchanged.

Authorized Representative

May 09, 2019

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*

EXHIBIT B - PAGE 53

**CHUBB**®    ***Chubb Commercial Excess And Umbrella Insurance***

*Endorsement*

| | | |
|---|---|---|
| *Policy Period* | MAY 5, 2019 | *To*   MAY 5, 2020 |
| *Effective Date* | MAY 5, 2019 | |
| *Policy Number* | 9364-95-73 | |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | |
| *Date Issued* | May 09, 2019 | |

*SCHEDULE*

Deductible:    $10,000

*Deductible/*
*Umbrella Coverage B*

The following section, titled Deductible/Umbrella Coverage B, is added to this contract.

Umbrella Coverage B applies only to that part of **loss** which exceeds the amount of the Deductible shown in the Schedule above.

The **insureds** are obligated to pay the amounts of **loss,** to which Umbrella Coverage B would otherwise apply, up to the amounts of such Deductible. The **insureds** are required to pay the amounts of the Deductible, as incurred.

The Deductible applies separately to:

• **bodily injury** and **property damage** caused by each **occurrence**.

• **advertising injury** sustained by each person or organization.

• **personal injury** sustained by each person or organization.

The terms and conditions of this insurance, including those with respect to:

• our right and duty to defend the **insured;** and

• your duties in the event of **occurrence,** offense, claim or **suit;**

continue to apply, regardless of the application of any Deductible.

*Deductible/*
*Umbrella Coverage B*
*(continued)*

We may, at our discretion, pay any part of the Deductible to effect settlement of any claim or **suit** and, upon notification of such action taken, the first named **insured** shown in the Declarations shall promptly reimburse us in full for any part of the Deductible and related costs and expenses paid by us. Failure to promptly reimburse us shall be deemed an event of nonpayment of premium.

The Deductible will not reduce the Limits Of Insurance.

All other terms and conditions remain unchanged.

*Authorized Representative*

May 09, 2019

---

**CHUBB**®    *Chubb Commercial Excess And Umbrella Insurance*

## *Endorsement*

| | | | |
|---|---|---|---|
| *Policy Period* | MAY 5, 2019 | *To* | MAY 5, 2020 |
| *Effective Date* | MAY 5, 2019 | | |
| *Policy Number* | 9364-95-73 | | |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC | | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | | |
| *Date Issued* | May 09, 2019 | | |

Under Policy Exclusions, the following exclusion is added to this policy and replaces any similar exclusion contained therein:

**Policy Exclusions**

*Information Laws, Including Unauthorized Or Unsolicited Communications*

This insurance does not apply to any liability or loss, cost or expense arising out of any actual, alleged or threatened violation of:

• the United States of America CAN – SPAM Act of 2003 (or any law amendatory thereof) or any similar regulatory or statutory law in any other jurisdiction;

• the United States of America Telephone Consumer Protection Act (TCPA) of 1991 (or any law amendatory thereof) or any similar regulatory or statutory law in any other jurisdiction;

• the United States of America Fair Credit Reporting Act (FCRA) (or any law amendatory thereof including the Fair and Accurate Credit Transactions Act (FACTA)) or any similar regulatory or statutory law in any other jurisdiction; or

• any other regulatory or statutory law in any jurisdiction that addresses, limits or prohibits the collecting, communicating, disposal, dissemination, distribution, monitoring, printing, publication, recording, sending or transmitting of content, information or material.

All other terms and conditions remain unchanged.

*Authorized Representative*

May 09, 2019

---

EXHIBIT B - PAGE 56

**CHUBB®**    *Chubb Commercial Excess And Umbrella Insurance*

*Endorsement*

| | | | |
|---|---|---|---|
| *Policy Period* | MAY 5, 2019 | *To*  MAY 5, 2020 | |
| *Effective Date* | MAY 5, 2019 | | |
| *Policy Number* | 9364-95-73 | | |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC | | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | | |
| *Date Issued* | May 09, 2019 | | |

Under Exclusions/Umbrella Coverage B Bodily Injury/Property Damage/Advertising Injury/Personal Injury, the exclusion titled Intellectual Property Laws Or Rights is deleted and replaced by the following.

**Exclusions/Umbrella Coverage B Bodily Injury/ Property Damage/ Advertising Injury/ Personal Injury**

*Intellectual Property Laws Or Rights*

A. This insurance does not apply to any **bodily injury, property damage, advertising injury** or **personal injury** arising out of, giving rise to or in any way related to any actual, alleged or threatened:

1. assertion; or

2. infringement or violation;

by any person or organization (including any **insured**) of any **intellectual property law or right**.

B. Further, this insurance does not apply to the entirety of all allegations in any claim or **suit**, if such claim or **suit** includes an allegation of or a reference to an infringement or violation of any **intellectual property law or right,** even if this insurance would otherwise apply to any part of the allegations in the claim or **suit**.

C. This exclusion applies unless the only infringement or violation of an **intellectual property law or right** is an offense described in the definition of **advertising injury** to which this insurance applies.

---

Under Definitions/Umbrella Coverage B, the definitions titled Intellectual Property Law Or Right is deleted and replaced by the following.

***Definitions/Umbrella Coverage B***

*Intellectual Property Law Or Right*

**Intellectual property law or right** means any:

• certification mark, copyright, patent or trademark (including collective or service marks);

• right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;

• other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or

• other judicial or statutory law concerning piracy, passing off or similar practices.

All other terms and conditions remain unchanged.

Authorized Representative

May 09, 2019

---

*Chubb Commercial Excess And Umbrella Insurance*        *Coverage B Exclusion – Intellectual Property Laws Or Rights*

*Form 07-02-2420 (Ed. 5-10)*        *Endorsement*        *Page 2 of 2*

EXHIBIT B - PAGE 58

**⊏HUBB®**   ***Chubb Commercial Excess And Umbrella Insurance***

## *Endorsement*

| | |
|---|---|
| *Policy Period* | MAY 5, 2019   *To*   MAY 5, 2020 |
| *Effective Date* | MAY 5, 2019 |
| *Policy Number* | 9364-95-73 |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | May 09, 2019 |

Under Coverage Crisis Assistance For Excess And Umbrella, Policy Definitions, **Crisis Assistance Service Provider** is amended to include the following firm(s).

### *Policy Definitions*

*Crisis Assistance Service Provider*

A crisis management firm or, at the insured's discretion, another services provider with crisis management capabilities.

We do not provide or make any representations or warranties in connection with the services provided by the firm(s) listed above.

All other terms and conditions remain unchanged.

*Authorized Representative* _____

May 09, 2019

**CHUBB®**    ***Chubb Commercial Excess And Umbrella Insurance***

*Endorsement*

| | | | |
|---|---|---|---|
| *Policy Period* | MAY 5, 2019 | *To*  MAY 5, 2020 | |
| *Effective Date* | MAY 5, 2019 | | |
| *Policy Number* | 9364-95-73 | | |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC | | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | | |
| *Date Issued* | May 09, 2019 | | |

---

**Policy Exclusions**

*Loss Of Use Of Electronic Data*

Under Policy Exclusions, the following exclusion is added.

This insurance does not apply to any liability or loss, cost or expense arising out of any:

- corruption of;
- inability to access;
- inability to manipulate;
- loss of; or
- other injury or damage to or loss of use of;

any software, data or other information that is in electronic form.

This exclusion does not apply to:

- bodily injury; or
- physical injury to tangible property, including resulting loss of use of that property.

All other terms and conditions remain unchanged.

Authorized Representative _____

May 09, 2019

---

**CHUBB**®     ***Chubb Commercial Excess And Umbrella Insurance***

*Endorsement*

| | | | |
|---|---|---|---|
| *Policy Period* | MAY 5, 2019 | *To* | MAY 5, 2020 |
| *Effective Date* | MAY 5, 2019 | | |
| *Policy Number* | 9364-95-73 | | |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC | | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | | |
| *Date Issued* | May 09, 2019 | | |

*Exclusions/Umbrella Coverage B Bodily Injury/Property Damage/ Advertising Injury/ Personal Injury*

Under Exclusions/Umbrella Coverage B Bodily Injury/Property Damage/Advertising Injury/Personal Injury, the following exclusion is added:

*Access To Or Disclosure Of Confidential Or Personal Information*

This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of any access to or disclosure of any person's or organization's confidential or personal information, including any patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of non-public information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

All other terms and conditions remain unchanged.

*Authorized Representative*

May 09, 2019

Chubb Commercial Excess And Umbrella Insurance
Form 07-02-2614 (Ed. 3-17)

*Exclusions – Umbrella Coverage B – Access To Or Disclosure Of Confidential Or Personal Information*
*Endorsement*     *Page 1 of 1*

EXHIBIT B - PAGE 61

# CHUBB®  *Chubb Commercial Excess And Umbrella Insurance*

## *Endorsement*

| | | | |
|---|---|---|---|
| *Policy Period* | MAY 5, 2019 | *To* | MAY 5, 2020 |
| *Effective Date* | MAY 5, 2019 | | |
| *Policy Number* | 9364-95-73 | | |
| *Insured* | ALLIANCE LAUNDRY HOLDINGS, LLC D/B/A ALLIANCE LAUNDRY SYSTEMS, LLC | | |
| *Name of Company* | FEDERAL INSURANCE COMPANY | | |
| *Date Issued* | May 09, 2019 | | |

Under Exclusions/Umbrella Coverage B Bodily Injury/Property Damage/Advertising Injury/Personal Injury, the following exclusion is added.

***Exclusions/ Umbrella Coverage B Bodily Injury/ Property Damage/ Advertising Injury/ Personal Injury***

*War*

This insurance does not apply to any **bodily injury, property damage, advertising injury** or **personal injury** arising, directly or indirectly, out of:

- war, including undeclared or civil war;

- warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

- insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of the foregoing.

All other terms and conditions remain unchanged.

*Authorized Representative* _____

*Date* May 09, 2019

---

**EXHIBIT C**



877-528-7878

**800 SUPERIOR AVENUE EAST, 21ST FLOOR**

**CLEVELAND, OH 44114**

# Wesco Insurance Company

INSURANCE IS PROVIDED BY
THE COMPANY DESIGNATED ON THE
DECLARATIONS PAGE
(A Stock Insurance Company)

THIS POLICY CONSISTS OF:
    -- DECLARATIONS
    -- COMMON POLICY CONDITIONS
    -- ONE OR MORE COVERAGE PARTS, and
    -- APPLICABLE FORMS AND ENDORSEMENTS

EXHIBIT C - PAGE 1

This page intentionally left blank

EXHIBIT C - PAGE 2

## Read Your Policy Carefully

This policy is a legal contract between you and us.  The information on this page is not the insurance contract and only the actual policy provisions will control.  The policy sets forth in detail the rights and obligations of both you and us.  **It is therefore important that you read your policy carefully.**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of the policy.

This policy is signed by the President and Secretary of the insurance company and, if required by State law, this policy shall not be valid unless countersigned on the Declaration page by its authorized representative.

President                               Secretary

ILSIGDEC-A 0414

EXHIBIT C - PAGE 3

This page intentionally left blank

EXHIBIT C - PAGE 4



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

## COMMERCIAL COMMON POLICY DECLARATIONS SUMMARY PAGE

| **Policy Number** WPP1827846 00 | **Policy Period** | **From:** 8/25/2019 **To:** 8/25/2020 |
|---|---|---|
| | | 12:01 A.M. Standard Time at the Name Insured's Address |

**Transaction**
New Business

| **Named Insured and Address** | **Producer:** 48732 |
|---|---|
| Taylor Houseman Inc | DLS Insurance Services Corporation - PIIB |
| 162 Harbor Ct | P.O. Box 505 |
| Pittsburg CA 94565 | Knightsen CA 94548 |
| | **Telephone:** (925) 513-1123 |

| **Business Description** | **Type of Business** | **Auditable** ☒ | **Non-Auditable** ☐ |
|---|---|---|---|
| Washing Machine Distributor/Installation - Commercial | Organization Including a Corporation | **Audit Period** | Annual |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

**COVERAGE PART DESCRIPTION**                                                      **PREMIUM**

Commercial Fire
General Liability

**Policy Premium**
**Deposit Premium (if applicable)**
**Taxes and Surcharges**
**Total Deposit Premium**
(Includes Taxes, Surcharges, and applicable Terrorism Premium)

**FORMS AND ENDORSEMENTS\***

See Forms and Endorsements Schedule

**\*Entry optional if above in common policy declarations schedule**

THESE DECLARATIONS TOGETHER WITH THE COVERAGE DECLARATIONS, COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

| 9/10/2019 | |
|---|---|
| **Date** | **Signature of Authorized Representative** |

EXHIBIT C - PAGE 5

This page intentionally left blank

EXHIBIT C - PAGE 6



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1827846 00
**Named Insured:**
Taylor Houseman Inc

## COMMERCIAL COMMON POLICY DECLARATIONS
## LOCATION SUMMARY

**Premises # 1**
162 Harbor Ct
Pittsburg CA 94565

Issued Date: 9/10/2019

ILLOCSUM 0414

EXHIBIT C - PAGE 7

This page intentionally left blank

EXHIBIT C - PAGE 8



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1827846 00
**Named Insured:**
Taylor Houseman Inc

## COMMERCIAL COMMON POLICY DECLARATIONS
## SUB-LOCATION ADDRESS SCHEDULE

**Premises # 1 Building # 1**
162 Harbor Ct Pittsburg CA 94565
Appliance Sales/Installation

Issued Date: 9/10/2019

ILSUBLASCH 0414

Page 3 of 15

EXHIBIT C - PAGE 9

This page intentionally left blank

EXHIBIT C - PAGE 10



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

# COMMERCIAL GENERAL LIABILITY COVERAGE DECLARATIONS

| **Policy Number** WPP1827846 00 | **Policy Period** | **From:** 8/25/2019   **To:** 8/25/2020 |
|---|---|---|
| | | 12:01 A.M. Standard Time at the Name Insured's Address |

**Transaction**
New Business

| **Named Insured and Address** | **Producer:** 48732 |
|---|---|
| Taylor Houseman Inc | DLS Insurance Services Corporation - PIIB |
| 162 Harbor Ct | P.O. Box 505 |
| Pittsburg CA 94565 | Knightsen CA 94548 |
| | **Telephone:** (925) 513-1123 |

| **Business Description** | **Type of Business** | **Audit Period** |
|---|---|---|
| Washing Machine Distributor/Installation - Commercial | Organization Including a Corporation | Annual |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

## LIMITS OF INSURANCE

| | |
|---|---:|
| General Aggregate Limit (Other than Products-Completed Operations) | $2,000,000 |
| Products - Completed Operations Aggregate Limit | $2,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Personal and Advertising Injury Limit | $1,000,000 |
| Medical Expense Limit, any one person | $5,000 |
| Damage to Premises Rented to You Limit, any one premises | $100,000 |

## AMENDED LIMITS OF LIABILITY

Refer to attached schedule, if any.

## LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY

Refer to attached schedule.

## CLASSIFICATIONS

Refer to attached schedule, if any.

**TOTAL PREMIUM FOR THIS COVERAGE PART** ▮▮▮▮▮

**FORMS AND ENDORSEMENTS***

See Forms and Endorsements Schedule

***Entry optional if shown in common policy declarations.**

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY DECLARATIONS, COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

| 9/10/2019 | *Jeffrey Ford* |
|---|---|
| *Date* | *Signature of Authorized Representative* |

EXHIBIT C - PAGE 11

This page intentionally left blank

EXHIBIT C - PAGE 12



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1827846 00
**Named Insured:**
Taylor Houseman Inc

## COMMERCIAL GENERAL LIABILITY COVERAGE DECLARATIONS
## EXTENSION OF DECLARATIONS

**LOCATION OF PREMISES**

Location of All Premises You Own, Rent or Occupy:

1
162 Harbor Ct
Pittsburg CA 94565

**PREMIUM**

| Location | Classification | Code No. | Exposure | Basis | Rate Premises Ops | Rate Prod/Comp Ops. | Advanced Premium Premises Ops. | Advanced Premium Prod/Comp Ops. |
|---|---|---|---|---|---|---|---|---|
| 1 | | 91150 | 675,918 | p | 6.670 | 27.051 | ███ | ███ |
| | Appliances and Accessories  - installation, servicing or repair  - commercial | | | | | | | |
| 1 | | 12391 | 5,674,526 | s | 0.168 | 0.222 | | |
| | Electrical Equipment Distributors | | | | | | | |
| | | 92100 | 28 Employees | T | | | | |
| | Employee Benefits Liability | | | | | | | |
| | Expansion Endorsement | | | | | | | |
| All | | | | | | | ███ | |
| | Terrorism | | | | | | | |

**Extension of Declarations – Total Advance Annual Premium**   ███

Issued Date: 9/10/2019

GLDEC 0414

This page intentionally left blank

EXHIBIT C - PAGE 14



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

## EMPLOYEE BENEFITS LIABILITY COVERAGE DECLARATIONS

| **Policy Number** WPP1827846 00 | **Policy Period** | **From:** 8/25/2019 **To:** 8/25/2020 |
|---|---|---|
| | | 12:01 A.M. Standard Time at the Name Insured's Address |

**Transaction**
New Business

| **Named Insured and Address** | **Producer:** 48732 |
|---|---|
| Taylor Houseman Inc | DLS Insurance Services Corporation - PIIB |
| 162 Harbor Ct | P.O. Box 505 |
| Pittsburg CA 94565 | Knightsen CA 94548 |
| | **Telephone:** (925) 513-1123 |

| **Business Description** | **Type of Business** | **Audit Period** |
|---|---|---|
| Washing Machine Distributor/Installation - Commercial | Organization Including a Corporation | Annual |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### LIMITS OF INSURANCE AND DEDUCTIBLE

| | |
|---|---|
| Aggregate Limit | $2,000,000 |
| Each Employee Limit | $1,000,000 |
| Deductible | $1,000 Each Employee |

### RETROACTIVE DATE

This insurance does not apply to negligent acts, Errors or Omissions which occur before the Retroactive Date, if any, shown below.

**Retroactive Date:** 8/25/2019

(Enter date or "None" if no Retroactive Date applies.)

### EMPLOYEES BENEFITS PROGRAMS

Covered Employee Benefits Programs other than those listed in Section V, DEFINITIONS

### PREMIUM COMPUTATION

| Estimated Number of Employees | Rate Per Employee | Estimated Premium | Minimum Premium |
|---|---|---|---|
| 28 | INCL | ████████ | ██████ |

### FORMS AND ENDORSEMENTS*

See Forms and Endorsements Schedule

**\*Entry optional if shown in common policy declarations.**

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY DECLARATIONS, COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

_9/10/2019_
***Date***

*(signature)*
***Signature of Authorized Representative***

EXHIBIT C - PAGE 15

This page intentionally left blank

EXHIBIT C - PAGE 16



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

# COMMERCIAL PROPERTY COVERAGE DECLARATIONS

| **Policy Number** WPP1827846 00 | **Policy Period** | **From:** 8/25/2019 **To:** 8/25/2020 |
|---|---|---|
| | | 12:01 A.M. Standard Time at the Name Insured's Address |

**Transaction**
New Business

| **Named Insured and Address** | **Producer:** 48732 |
|---|---|
| Taylor Houseman Inc | DLS Insurance Services Corporation - PIIB |
| 162 Harbor Ct | P.O. Box 505 |
| Pittsburg CA 94565 | Knightsen CA 94548 |
| | **Telephone:** (925) 513-1123 |

| **Business Description** | **Type of Business** | **Audit Period** |
|---|---|---|
| Washing Machine Distributor/Installation - Commercial | Organization Including a Corporation | Annual |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**DESCRIPTION OF PREMISES**
   Refer to attached schedule.

**COVERAGES PROVIDED**
   Refer to attached schedule, if any.

**OPTIONAL COVERAGES**
   Refer to attached schedule, if any.

**MORTGAGEES AND ADDITIONAL INTERESTS**
   Refer to attached schedule, if any.

**TOTAL PREMIUM FOR THIS COVERAGE PART** ███████

**FORMS AND ENDORSEMENTS***

See forms and Endorsements Schedule

***Entry optional if shown in common policy declarations.**

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY DECLARATIONS, COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

_____9/10/2019_____
*Date*

_____
*Signature of Authorized Representative*

CPDEC 0414                                                                 Page 7 of 15

EXHIBIT C - PAGE 17

This page intentionally left blank

EXHIBIT C - PAGE 18



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1827846 00
**Named Insured:**
Taylor Houseman Inc

## COMMERCIAL PROPERTY
## DESCRIPTION OF PREMISES

| Loc. No. | Bldg. No. | Occupancy | Construction | Class | Prot. | Terr. | EQ Class. | EQ Terr. |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | Appliances and Accessories – installation, service and/or repair only – Commercial | Frame (Code 1) | 0922 | 3 | 075 | | |

Issued Date: 9/10/2019

CPDECB 0414

Page 8 of 15

EXHIBIT C - PAGE 19

This page intentionally left blank

EXHIBIT C - PAGE 20

Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1827846 00
**Named Insured:**
Taylor Houseman Inc

# COMMERCIAL PROPERTY
# DESCRIPTION OF COVERAGES PROVIDED

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Blanket Coverage | Covered Causes of Loss | Coinsurance* | Deductible |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Building | $2,107,040 | | Special | 90% | $2,500 |
| 1 | 1 | Personal Property Of The Insured | $895,537 | | Special | 90% | $2,500 |
| 1 | 1 | Business Income including Rental Value with Extra Expense – ALS 12M | ALS for 12 Months | | Special | N/A | |
| 1 | 1 | Ordinance Or Law Combined B And C | $200,000 | | Special | | $2,500 |

*IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT

Issued Date: 9/10/2019

CPDECC 0414

EXHIBIT C - PAGE 21

This page intentionally left blank

EXHIBIT C - PAGE 22



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1827846 00
**Named Insured:**
Taylor Houseman Inc

# COMMERCIAL PROPERTY
# DESCRIPTION OF OPTIONAL COVERAGES PROVIDED

| Loc. No. | Bldg. No. | Coverage | Effective Date | Expiration Date | Agreed Value | Valuation* Bldg. | Valuation* Pers. Prop. | Valuation* Incl "Stock" | Inflation Guard Bldg. | Inflation Guard Pers. Prop. | Indemnity Monthly Limit | Indemnity Extended Period | Indemnity Maximum Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | Building | | | | RC | | | | | | | |
| 1 | 1 | Personal Property Of The Insured | | | | | RC | X | | | | | |
| 1 | 1 | Business Income including Rental Value with Extra Expense – ALS 12M | | | | | | | | | | | |
| 1 | 1 | Ordinance Or Law Combined B And C | | | | | | | | | | | |

\* RC - Replacement Cost
FRC - Functional Replacement Cost
ACV - Actual Cash Value

Issued Date: 9/10/2019

CPDECD 0414

This page intentionally left blank

EXHIBIT C - PAGE 24



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1827846 00
**Named Insured:**
Taylor Houseman Inc

# COMMERCIAL PROPERTY
# SUPPLEMENTAL DECLARATIONS

LOCATION SCHEDULE PREMIUM CHARGES:

| Loc No. | Bldg No. | Coverage | Covered Causes of Loss | Premium |
|---|---|---|---|---|
| 1 | 1 | Building | Special Including Theft | ███ |
| 1 | 1 | Personal Property Of The Insured | Special Including Theft | |
| 1 | 1 | Business Income including Rental Value with Extra Expense – ALS 12M | Special Including Theft | |
| 1 | 1 | Ordinance Or Law Combined B And C | Special Including Theft | |
| 1 | | Equipment Breakdown | | |
| | | | **Location 1 Total** | ███ |

Total for All Locations: ███

OTHER PROPERTY COVERAGE PREMIUM CHARGES:

| Coverage | Premium |
|---|---|
| Expanded Inland Marine Electronic Data Processing | ███ |
| Expanded Property Expanded Property | |
| Expanded Crime Forgery Or Alteration | |
| Expanded Crime Employee Theft | |
| Expanded Inland Marine Accounts Receivable | |
| Expanded Inland Marine Signs - Any One Occurrence | |
| Expanded Crime Inside The Premises - Theft Of Money And Securities | |
| Expanded Crime Outside The Premises | |
| Identity Recovery | |
| Equipment Breakdown Policy Charge | |
| Terrorism | |
| **Total Other Property:** | ███ |

**Total Property Premium Charges:** ███
(Excludes Taxes and Surcharges)

Issued Date: 9/10/2019

CPDECF 0414

This page intentionally left blank

EXHIBIT C - PAGE 26



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1827846 00
**Named Insured:**
Taylor Houseman Inc

## COMMERCIAL COMMON POLICY DECLARATIONS
## POLICY INTEREST SCHEDULE

CF MORTGAGEE
MORTGAGEE
Wells Fargo Bank, National Assn, Bus Banking
PO BOX 659713
MACT7422-012
San Antonio, TX 78265
Units (Loc - Bldg): 1-1

Issued Date: 9/10/2019

ILPISCH 0414

EXHIBIT C - PAGE 27

This page intentionally left blank

EXHIBIT C - PAGE 28



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1827846 00
**Named Insured:**
Taylor Houseman Inc

## COMMERCIAL COMMON POLICY DECLARATIONS
## INSTALLMENT SCHEDULE

The period covered by this installment payment provision is from <u>8/25/2019</u> to <u>8/25/2020</u> beginning and ending at 12:01 AM standard time at the address of the insured.

## PREMIUM SUMMARY

The premium is due on the following dates:

| <u>Date</u> | <u>Amount</u> |
|---|---|
| 9/26/2019 |  |
| 10/25/2019 | |
| 11/25/2019 | |
| 12/25/2019 | |
| 1/25/2020 | |
| 2/25/2020 | |
| 3/25/2020 | |
| 4/25/2020 | |
| 5/25/2020 | |

This policy may be subject to premium adjustment per policy terms.

Issued Date: 9/10/2019

ILINSCH 0414

This page intentionally left blank

EXHIBIT C - PAGE 30



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1827846 00
**Named Insured:**
Taylor Houseman Inc

## COMMERCIAL COMMON POLICY DECLARATIONS
## FORMS AND ENDORSEMENTS SCHEDULE

| Coverage | Form Number | Edition Date | Title |
|---|---|---|---|
| CF | 311216 | 04/17 | COMMERCIAL PROPERTY EXPANDED COVERAGE |
| CF | 311220 | 07/10 | EQUIPMENT BREAKDOWN COVERAGE |
| CG | 330729 | 10/13 | COMMERCIAL GENERAL LIABILITY COVERAGE EXPANSION ENDORSEMENT (NON-CONTRACTORS) |
| CG | CG0001 | 04/13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG | CG0435 | 12/07 | EMPLOYEE BENEFITS LIABILITY COVERAGE |
| CG | CG2107 | 05/14 | EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY |
| CG | CG2109 | 06/15 | EXCLUSION - UNMANNED AIRCRAFT |
| CG | CG2147 | 12/07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG | CG2149 | 09/99 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG | CG2167 | 12/04 | FUNGI OR BACTERIA EXCLUSION |
| CG | CG2170 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG | CG2176 | 01/15 | EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM |
| CG | CG2186 | 12/04 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |
| CG | CG3234 | 01/05 | CALIFORNIA CHANGES |
| CM | CM0001 | 09/04 | COMMERCIAL INLAND MARINE CONDITIONS |
| CM | CM0028 | 01/13 | SIGNS COVERAGE FORM |
| CM | CM0066 | 01/13 | ACCOUNTS RECEIVABLE COVERAGE FORM |
| CF | CP0010 | 10/12 | BUILDING AND PERSONAL PROPERTY COVERAGE |
| CF | CP0030 | 10/12 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |
| CF | CP0090 | 07/88 | COMMERCIAL PROPERTY CONDITIONS |
| CF | CP0140 | 07/06 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| CF | CP0299 | 06/07 | CANCELLATION CHANGES |
| CF | CP0411 | 10/12 | PROTECTIVE SAFEGUARDS |
| CF | CP0449 | 12/05 | CALIFORNIA CHANGES – REPLACEMENT COST |
| CF | CP1030 | 10/12 | CAUSES OF LOSS-SPECIAL FORM |
| CF | CP1540 | 06/07 | CALIFORNIA - CIVIL AUTHORITY CHANGE(S) |
| CF | CP990088 | 04/17 | BUSINESS INCOME COVERAGE PROVIDED ON AN ACTUAL LOSS SUSTAINED BASIS (ALS) |
| CR | CR0021 | 11/15 | COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED FORM) |
| IL | IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IL | IL0021 | 09/08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |

Issued Date: 9/10/2019

ILFORMSCH 0414

This page intentionally left blank

EXHIBIT C - PAGE 32



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1827846 00
**Named Insured:**
Taylor Houseman Inc

# COMMERCIAL COMMON POLICY DECLARATIONS
# FORMS AND ENDORSEMENTS SCHEDULE

| Coverage | Form Number | Edition Date | Title |
|---|---|---|---|
| IL | IL0102 | 05/05 | CALIFORNIA CHANGES – ACTUAL CASH VALUE |
| IL | IL0103 | 09/07 | CALIFORNIA CHANGES – ACTUAL CASH VALUE |
| IL | IL0104 | 09/07 | CALIFORNIA CHANGES |
| IL | IL0270 | 09/12 | CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL |
| IL | IL0935 | 07/02 | EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES |
| IL | IL0952 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IL | IL0985 | 01/15 | DISCLOSURE PURSUANT TO TERRORISM RISK |
| IL | IL990034 | 09/14 | IDENTITY RECOVERY COVERAGE |
| IL | IL990044 | 01/17 | ASBESTOS EXCLUSION |
| IL | IL990048 | 01/17 | EXCLUSION - LEAD |
| IL | ILN018 | 09/03 | CALIFORNIA FRAUD STATEMENT |
| CM | IM2009 | 01/12 | AMENDATORY ENDORSEMENT CALIFORNIA |
| CM | IM7200 | 10/02 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE PART |

Issued Date: 9/10/2019

ILFORMSCH 0414

EXHIBIT C - PAGE 33

This page intentionally left blank

EXHIBIT C - PAGE 34

WPP1827846 00

8/25/2019          8/25/2020

Taylor Houseman Inc

## NOTICE TO POLICYHOLDERS

## FOR USE WHEN POLICY DOES NOT INCLUDE FORMS:
## CP 990076 EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT
## OR
## CP 990077 EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT
## (SUB-LIMIT FORM)

## EARTHQUAKE COVERAGE IS NOT INCLUDED

We are providing notification as to whether or not your policy provides coverage for earth movement resulting from human activities such as mining, explosives and oil and gas exploration.

Subject to all policy provisions, the coverage provided by this policy IS NOT intended to cover property or liability loss resulting from Earthquakes.  Earthquake coverage is optional and available to purchase by endorsement.  Earthquakes resulting from oil and gas activities as follows are not covered by any Earthquake endorsement:

   a.  extracting oil or gas from below the earth's surface by any process, including but not limited to hydraulic fracturing or drilling; or

   b.  injecting or inserting any substance, including but not limited to, water and wastewater, below the earth's surface for any purpose;

   c.  storage of any substance, including but not limited to, water and wastewater below the earth's surface for any purpose;

   d.  Any combination of a. – c. above.

EXHIBIT C - PAGE 35

This page intentionally left blank

EXHIBIT C - PAGE 36

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

EXHIBIT C - PAGE 37

This page intentionally left blank

EXHIBIT C - PAGE 38

AGENCY CUSTOMER ID: _____

 **INSURANCE SUPPLEMENT - STANDARD FIRE POLICY ONLY**

| AGENCY | CARRIER | NAIC CODE |
|---|---|---|
| DLS Insurance Services Corporation - PIIB | Wesco Insurance Company | 25011 |
| **POLICY NUMBER** | **APPLICANT / NAMED INSURED** | |
| WPP1827846 00 | Taylor Houseman Inc | |

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

In this state, a terrorism exclusion makes an exception for (and thereby provides coverage for) fire losses resulting from an act of terrorism.  Therefore, if you reject this offer of terrorism coverage, that rejection does not apply to fire losses resulting from an act of terrorism.  Coverage for such fire losses will be provided in your policy.  The additional premium just for such fire coverage is stated below.  If you reject the offer described above for terrorism coverage, this premium is due.

### Acceptance or Rejection of Terrorism Insurance Coverage

[X]  I hereby elect to purchase terrorism coverage for a prospective premium of $ ███████████_____ .

[ ]  I hereby decline to purchase terrorism coverage for certified acts of terrorism.  I understand that an **exclusion** of certain terrorism losses will be made part of the policy.

If you decline this offer, the premium for terrorism (fire only) coverage is $ ██████_____ .

| _____ | _____ | _____ |
|---|---|---|
| **Policyholder / Applicant's Signature** | **Print Name** | **Date** |
| _____ | _____ | _____ |
| **Policyholder / Applicant's Signature** | **Print Name** | **Date** |
| _____ | _____ | _____ |
| **Policyholder / Applicant's Signature** | **Print Name** | **Date** |
| | | _____ |
| | | **Effective Date** |

**Includes copyrighted material of the National Association of Insurance Commissioners, with its permission.**

ACORD 62 US (2015/01)                                              © 2003-2015 ACORD CORPORATION.  All rights reserved.
**The ACORD name and logo are registered marks of ACORD**

EXHIBIT C - PAGE 39

This page intentionally left blank

EXHIBIT C - PAGE 40

**Wesco Insurance Company**
**800 Superior Avenue E. 21ˢᵗ Floor**
**Cleveland, Ohio 44114**

9/10/2019

Taylor Houseman Inc
162 Harbor Ct
Pittsburg CA 94565

Re: WPP1827846 00

Dear Insured,

California Department of Insurance regulations require each Property and Casualty insurance company doing business in the State of California to report certain information as part of a "Community Service Statement". This information is being requested of all individuals and businesses who applied for new policies of insurance this year.

While we are required to make this request of you, your participation in this survey is completely voluntary. We do, however, encourage you to participate.

Your response, along with the responses of all other participants who purchased business insurance with us this year, will be combined and reported as a total to the Department of Insurance. Your response will not be seen by any person deciding the acceptability or the price of your insurance coverage.

If your coverage is presently written with another insurance company, this letter is not an offer to quote or issue a policy for you.

---

The following statement is required by the Department of Insurance:

This information is requested by the State of California in order to monitor the insurer's compliance with the law. All applicants are requested to voluntarily provide the following information.

No such information shall be used for purposes of underwriting or rating any policyholder.

---

SURVEY

**Please indicate the number of individuals of each race/national origin and gender who have ownership of your business.**

_____ Male African-American                      _____ Female African-American
_____ Male American Indian or Alaskan Native     _____ Female American Indian or Alaskan Native
_____ Male Asian/Pacific Islander                _____ Female Asian/Pacific Islander
_____ Male Latino                                _____ Female Latino
_____ Male White                                 _____ Female White
_____ Male Other                                 _____ Female Other

If you do not wish to provide this information to the Department of Insurance, please check here _____

Please return the completed survey to us at the address shown at the top of this letter or fax it to us at: 800-487-9654.

DN990005CA 2015

EXHIBIT C - PAGE 41

This page intentionally left blank

EXHIBIT C - PAGE 42

# POLICYHOLDER DISCLOSURE NOTICE

# LEAD EXCLUSION

This notice does NOT form a part of your insurance contract.  No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. This notice is designed to alert you to coverage changes when the following exclusionary endorsement is attached to your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy (including its endorsements) and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL**.

Your policy is being issued with the following endorsement:

IL990048 Exclusion – Lead

### SUMMARY

**Exclusion – Lead**

This endorsement excludes liability coverage for "Bodily Injury", "Property Damage", "Personal and Advertising Injury" or "Medical Payments" because of liability, alleged liability or "occurrence" resulting from, caused by, arising out of or in any way connected with the existence, removal, testing, or exposure to lead.  Coverage for investigation or defense is excluded under this endorsement.

Please refer to the "Exclusion – Lead" endorsement for further details.

EXHIBIT C - PAGE 43

This page intentionally left blank

EXHIBIT C - PAGE 44

# NOTICE TO POLICYHOLDERS

# ASBESTOS EXCLUSION

This notice does NOT form a part of your insurance contract. No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. This notice is designed to alert you to coverage changes when the following exclusionary endorsement is attached to your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy (including its endorsements) and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL**.

Your policy is being issued with the following endorsement:

IL990044 Exclusion – Asbestos

### SUMMARY

**Exclusion – Asbestos**

This endorsement excludes liability coverage for "Bodily Injury", "Property Damage", "Personal and Advertising Injury" or "Medical Payments" because of liability arising out of, resulting from, caused by or contributed to by asbestos or exposure to asbestos or its use. Also excluded are damages, loss, cost or expense arising out of assessing the presence, absence or amount or effects of asbestos; identifying, sampling, testing, detecting, cleaning up, monitoring, removing, containing, treating, detoxifying, abating, disposing or mitigating asbestos, or supervision, instructions, recommendations, warnings or advice regarding any of the above which had been given or should have been given. Coverage for investigation or defense is also excluded under this endorsement.

Please refer to the "Exclusion – Asbestos" endorsement for further details.

EXHIBIT C - PAGE 45

This page intentionally left blank

EXHIBIT C - PAGE 46

## KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

### AmTrust Underwriting Service

In the event you need to contact someone about this insurance for any reason, please contact your agent.  If no agent was involved in the sale of this insurance, or if you have additional questions, you may contact the Amtrust Policyholder Service Office at:

### Complaint Information

If you have been unable to contact or obtain satisfaction from the insurance company or your agent, you may contact the California Department of Insurance.

**AMTRUST POLICYHOLDER SERVICE OFFICE**
AmTrust North America
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114
Telephone: 877.528.7878
Fax: 800.487.9654

**\*CALIFORNIA DEPARTMENT OF INSURANCE**
Consumer Services Division
300 S. Spring St., South Tower
Los Angeles, CA 90013
1.800.927.4357

*The Department of Insurance requests they be contacted only after discussions with the Insurer, or your Agent or other representative, or both, have failed to produce a satisfactory resolution to the problem.  This notice is provided in compliance with Section 510 of the California Insurance Code.

> Written correspondence is preferable so that a record of your inquiry is maintained.  When contacting your agent, insurance company or the California Department of Insurance, have your policy number available.

## AmTrust Claims Service

AmTrust's claims staff has an average of 20+ years of experience and provides effective management of claims. Some of the benefits for our customers include a toll-free 24/7 centralized call center staffed by special claims operators; adjusters specialized by claim types, field adjusters to provide direct assistance at loss locations and a highly qualified panel of defense attorneys.

### Information Required for All Claims Reported

- Name of the insured and policy number
- Date, time and place of accident
- Description of accident or incident
- Name, phone and/or email of person making the report

Refer to our Website for additional information on reporting a claim
Website: https://amtrustgroup.com/small-business-insurance/claims/claim-center/report-claim

| **Workers' Compensation (All States)** | **Other than Workers' Compensation (All States)** |
|---|---|
| First Report of Claim: | First Report of Claim: |
| Phone: 866.272.9267 | Phone: 866.272.9267 |
| Fax: 775.908.3724 or 877.669.9140 | Fax: 877.207.3961 |
| Email: amtrustclaims@qrm-inc.com | Email: anaclaimsreporting@amtrustgroup.com |
| Claims Status: 888.239.3909 | Claims Status: 888.239.3909 |

Agents: Send ACORD Notice of Loss to anaclaimsreporting@amtrustgroup.com

| **Employment Practices Liability, Cyber Liability and Data Breach Response Claims for Small Business (All States)** | |
|---|---|
| Paul Poppish, VP Claims | Phone: 312.803.4630 |
| Amtrust North America | 888.239.3909 ext 394630 |
| 233 N. Michigan Avenue, Suite 1200 | Fax: 312.781.0423 |
| Chicago, IL 60603 | Paul.Poppish@amtrustgroup.com |

EXHIBIT C - PAGE 47

This page intentionally left blank

EXHIBIT C - PAGE 48

# IDENTITY RECOVERY COVERAGE
# NOTICE TO POLICYHOLDERS

No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL**.

Identity Recovery Coverage is included in your policy for the additional annual charge of $10.00.  Following are the highlights provided by this coverage.

## SUMMARY OF THE COVERAGE

**Identity Recovery Coverage**

We will provide the Case Management Service and Expense Reimbursement Coverage if an identity theft involving the personal identity of an individual person who is the sole proprietor of the insured business and their spouse or domestic partner, current partners of a partnership, or all individuals having an ownership position of 20% or more of a corporation or other organization.

**Case Management Service**

Case Management Service provides an Identity Recovery Case Manager to assist with communications for re-establishing the integrity of the personal identity of the insured. This includes, written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**Expense Reimbursement**

Expense Reimbursement provides reimbursement of necessary and reasonable identity recovery expenses incurred as a direct result of the identity theft.

We appreciate the opportunity to provide this coverage to you and are pleased you have chosen us to serve you. Please contact your agent with any questions you may have regarding your policy.

This page intentionally left blank

EXHIBIT C - PAGE 50

9/10/2019

Dear Policyholder,

In an effort to provide AmTrust customers with a variety of billing options, the below fee structure will be applied to your new policy.

This fee structure helps customers to meet payment due dates, ensures that valid and properly funded payments are submitted, and provides an incentive for paid-in-full options.

**Our fee structure is as follows:**

| Fee Title | Fee Amount | Description |
| --- | --- | --- |
| Returned Payment Fee | $25 | A returned payment fee applied to any returned payment. |
| Late Fee | $20 | Late fee applied if payment not received on or before payment due date. |
| Installment Fee | $15 | A "paper" billing fee that is assessed for each mailed installment invoice. Excludes down payment and annual payment plans. Fee is billed at the account level. |
| Reinstatement Fee | $50 | Fee applied upon reinstatement of a non-payment cancellation. |
| EFT Fee | $3 | An "electronic" billing fee that is assessed for each ACH Direct Debit transaction. Fee is billed at the account level. |

*Fee amount may vary by state and program of business

For policyholders who choose to pay their annual premium on installments, we plan to implement an installment fee, which will be displayed on your renewal invoice.

Thank you for your attention. If you have any questions, feel free to contact our Customer Service Department at 877.528.7878.

We value you as a policyholder and appreciate the opportunity to serve you.

Sincerely,

AmTrust North America
Customer Service Department

EXHIBIT C - PAGE 51

This page intentionally left blank

EXHIBIT C - PAGE 52

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# COMMERCIAL PROPERTY EXPANDED COVERAGE

## SCHEDULE OF COVERAGES

☒  **Section I – Expanded Property Coverage**
Building and Personal Property Coverage Form – CP 00 10
Causes of Loss – Special Form – CP 10 30

$  ▮▮▮▮▮

---

☒  **Section II – Expanded Inland Marine Coverage**

**Limit of
Insurance**

$   50,000   Accounts Receivable  (CM 00 66)
$   50,000   Electronic Data Processing Equipment Coverage (IM 7200)
$   15,000   Signs – Any One Occurrence (CM 00 28)

$  ▮▮▮▮

---

☒  **Section III – Expanded Crime Coverage** *(Loss Sustained)* **(CR 00 21)**

**Limit of
Liability**        **Insuring Agreements**
$   25,000   **1.**  Employee Theft
$   25,000   **2.**  Forgery Or Alteration
$   10,000   **3.**  Inside The Premises – Theft Of Money And Securities
$   10,000   **5.**  Outside The Premises

$  ▮▮▮▮

---

☐  **Section IV - Expanded Business Income Coverage**

**Limit of
Liability**

$                 Business Income And Extra Expense (CP 00 30)
$   100,000   Business Income From Dependent Properties (CP 15 08)

$  ▮▮▮

---

**Total Commercial Property Expanded Coverage Premium**    $  ▮▮▮▮

EXHIBIT C - PAGE 53

# <u>SECTION I - EXPANDED PROPERTY COVERAGE</u>
COMMERCIAL PROPERTY EXPANDED COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM – CP 00 10
CAUSES OF LOSS – SPECIAL FORM – CP 10 30

## CP 00 10 – BUILDING AND PERSONAL PROPERTY COVERAGE FORM
The Building And Personal Property Coverage Form is modified as follows:

**A. Coverage**

    **2. Property Not Covered**

        The following is added to Paragraph **2. Property Not Covered:**

        **r. Spoilage of "Perishable Property" While Located:**
            **(1)** On buildings;
            **(2)** In the open; or
            **(3)** In vehicles.

    **4. Additional Coverages**

        **a. Debris Removal**

        Paragraph **(4)** is replaced with the following:

        **(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

            **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

            **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

            Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

        The following is added:

        We will pay your expenses to remove windblown debris of property not covered from your described premises.

        The most we will pay for loss or damage under this extension is $5,000.

        **c. Fire Department Service Charge**
        The first paragraph in **4.c.** is replaced by the following:
        When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000, unless a higher limit is shown in the Declarations, for your liability for fire department service charges. No deductible applies to this Additional Coverage.

EXHIBIT C - PAGE 54

**d.  Pollutant Clean-up And Removal**
The third paragraph is replaced by the following:
The most we will pay under this Additional Coverage for each described premises is $25,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

The following are added to **4. Additional Coverages**:

**g.  Fire Extinguisher Recharge**

**(1)**  We will pay:

    **(a)**  The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

    **(b)**  For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)**  No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)**  The most we will pay under this Additional Coverage is $2,500.

No deductible applies to this Additional Coverage.

**h.  Arson Reward**
In the event loss to your covered property is of a suspicious nature, we will pay a $10,000 reward to an individual or individuals provided:

**(1)**  The individual or individuals report the suspected arsonist to local law enforcement officials; and

**(2)**  The arsonist is apprehended, brought to trial, and convicted of arson to your Covered Property.

The most we will pay for a loss, annually under this provision is $10,000, regardless of the number of individuals giving information.

No deductible applies to this Additional Coverage.

**i.  Spoilage**

**(1)  Covered Property**
Covered Property means "perishable stock" at the described premises owned by you or by others that is in your care, custody or control.

The most we will pay for the Additional Coverage of Spoilage is $25,000.

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $500. We will then pay the amount of loss or damage in excess of that Deductible, up to $25,000. No other deductible in this policy applies to the spoilage coverage.

EXHIBIT C - PAGE 55

**(2)** Paragraph **A.5. Coverage Extensions** does not apply to Spoilage.

**(3) Valuation:**
We will determine the value of finished "perishable stock" in the event of loss or damage at:

**(a)** The selling price, as if no loss or damage had occurred;

**(b)** Less discounts and expenses you otherwise would have had.

**j.   Inventory Or Appraisal Cost**
We will pay up to $5,000 for expenses incurred by the insured, at the company's request, to assist in the determination of the amount of covered loss such as taking inventory and having appraisals done.

**k.   Brands And Labels**

**(1)** If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

**(a)** Stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**(b)** Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

**(2)** We will pay reasonable costs you incur to perform the activity described in **(1)(a)** and **(1)(b)** above.  But the total we will pay for these costs and the value of the damaged property will not exceed $2,500.

**l.   Utility Services – Direct Damage**

**(1) Coverage**
We will pay for loss of or damage to Covered Property described in the policy, caused by an interruption in utility service to the described premises.  The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss to the property described in Paragraph **(3)** and is located off the described premises.

**(2) Exception**
Coverage for loss or damage to Covered Property does not apply to loss or damage to electronic data, including destruction or corruption of electronic data.  The term electronic data has the meaning set forth in the Building and Personal Property Coverage Form.

**(3) Utility Services**

**(a) Water Supply Services,** meaning the following types of property supplying water to the described premises:
**(i)**  Pumping stations; and
**(ii)** Water mains.

**(b) Communication Supply Services,** meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:
**(i)**  Communication transmission lines, including optic fiber transmission lines;
**(ii)** Coaxial cables; and
**(iii)** Microwave radio relays except satellites.

EXHIBIT C - PAGE 56

It does not include overhead transmission lines.

**(c) Power Supply Services,** meaning the following types of property supplying electricity, steam or gas to the described premises:
  **(i)** Utility generating plants;
  **(ii)** Switching stations;
  **(iii)** Substations;
  **(iv)** Transformers; and
  **(v)** Transmission lines.
  It does not include overhead transmission lines.

**(d) Spoilage**

  **(i)** Breakdown or Contamination, meaning:

    **1)** Change in temperature or humidity resulting from mechanical breakdown or failure of refrigerating, cooling or humidity control apparatus or equipment, only while such equipment or apparatus is at the described premises; and

    **2)** Contamination by the refrigerant

  **(ii)** Power Outage, meaning:

    **1)** Change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

  The most we will pay for loss or damage under this provision is $50,000.  This limit does not increase the Limit of Insurance stated in the Declarations.

**m. Fine Arts**

**(1) Coverage**
  We will pay up to $10,000 in any one occurrence to cover direct physical loss or damage to property defined as "Fine Arts" caused by a Covered Cause of Loss.

**(2) Perils Insured Against**
  We will cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded by the Property Causes of Loss – Special Form.
  We will not pay for loss caused by processing of or work upon the covered property including repairs or restoration. We will not pay for any reduction in the value of damaged property after the damage has been repaired.

**(3) Valuation**
  In the event of loss or damage, we will pay the actual cash value of the item, subject to the limitation of any one occurrence.  The actual cash value will be the price the insured paid for the item or the value as determined by an appraisal of the item not more than 360 days prior to the date of loss or damage.
  In no event will the actual cash value exceed the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practical.

**(4) Definitions**

  **(a)** "Fine Arts" means paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, "antique" furniture; '"antique" jewelry; bric-a-brac; porcelains, and similar property of rarity, historical value or artistic merit.

EXHIBIT C - PAGE 57

**(b)** "Antique" means an object having value because its:
    **(i)** craftsmanship is in the style or fashion of former times; and
    **(ii)** age is 100 years old or older.

**n. Ordinance Or Law Coverage**

**(1) Application Of Coverage**

The Coverage provided by this extension of coverage applies only if both **(1)(a)** and **(1)(b)** are satisfied and are then subject to the qualifications set forth in **(1)(c).**

**(a)** The ordinance or law:
    **(i)** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises shown on the Declarations; and
    **(ii)** Is in force at the time of the loss.
    Coverage applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this Additional Coverage.

**(b)**
    **(i)** The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or

    **(ii)** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

    **(iii)** But if the building sustains direct physical damage that is not covered under this policy and such damage is the subject of the ordinance or law, then there is no coverage even if the building has also sustained covered direct physical damage.

**(c)** In the situation described in **(1)(b)(ii)** above, we will not pay the full amount of loss otherwise payable under the terms of coverage of this Extension of Coverage. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

[Section **(7)** of this Ordinance or Law Extension Coverage provides an example of this procedure.]

However, if the covered direct physical damage, alone, would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverage **A, B** or **C** of this Additional Coverage.

**(2)** We will not pay under Coverage **A, B** or **C** of this endorsement for:

**(a)** Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

EXHIBIT C - PAGE 58

**(3) Coverage**

**(a) Coverage A – Coverage For Loss To The Undamaged Portion Of The Building**
With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

Coverage **A** is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage **A** does not increase the Limit of Insurance.  This is not additional insurance.

**(b) Coverage B – Demolition Cost Coverage**
With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

**(c) Coverage C – Increased Cost Of Construction Coverage**
With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:
**(i)** Repair or reconstruct damaged portions of that building; and/or
**(ii)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;
when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:
**(i)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.
**(ii)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

**(4) Loss Payment**

The following Loss Payment provision is subject to the apportionment procedures set forth in Section **(1)(c)** Ordinance Or Law Coverage:

When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**(a)** If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:
**(i)** The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or
**(ii)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**(b)** If the Replacement Cost Coverage Option applies and the property is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:
**(i)** The actual cash value of the building at the time of loss; or

EXHIBIT C - PAGE 59

**(ii)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**(5) Combined Limit of Insurance For Coverages B and C**

The most we will pay for the total of all covered losses for Demolition Cost and Increased Cost of Construction is the Combined Limit of Insurance for Coverage **B** and **C** of $50,000. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

**(a)** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

**(b)** With respect to the Increased Cost of Construction:

**(i)** We will not pay for the increased cost of construction:

**1)** Until the property is actually repaired or replaced, at the same or another premises; and

**2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(ii)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

**(iii)** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**(6)** The terms of this Extension of Coverage applies separately to each described building.

**(7)** Under this Extension Coverage we will not pay for loss due to any ordinance or law that:

**(a)** You were required to comply with before the loss, even if the building was undamaged; and

**(b)** **You** failed to comply with.

**(8)** Example of Proportionate Loss Payment for Ordinance Or Law Coverage Losses (procedure as set forth in Section **(1)(c)** of this Additional Coverage.)

Assume:
- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss
- The building has a value of $200,000
- Total direct physical damage to building: $100,000
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value
- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000

Step **1:**

EXHIBIT C - PAGE 60

Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 ÷ $100,000 = .30

Step **2:**

Apply that proportion to the Ordinance or Law loss.

**o.** Discharge From Sewer, Drain Or Sump (Not Flood Related)

**(1)** We will pay for direct physical loss or damage to Covered Property, caused by or resulting from discharge of water or waterborne material from a sewer, drain or sump located on the described premises, provided such discharge is not induced by flood or flood-related conditions.

The aforementioned references to flood include surface water, waves (including tidal wave and tsunami), tides, tidal water, and overflow of any body of water, including storm surge.

For the purpose of this coverage, the term drain includes a roof drain and related fixtures.

**(2)** We will pay for business income loss and/or extra expense in accordance with the terms of the Coverage Form applicable to such premises under your policy, when such loss or expense arises out of the direct physical loss or damage described in Paragraph **(1)**

**(3)** There is no coverage if:

**(a)** The discharge results from an insured's failure to perform routine maintenance or repair necessary to keep a sewer or drain or a sump, sump pump or related equipment free from obstruction and in proper working condition. This limitation does not apply to sudden mechanical breakdown of a sump pump or its related equipment, provided the breakdown is not the result of an insured's negligence; or

**(b)** Sump pump failure is caused by or results from failure of power, unless this policy is endorsed to cover power failure affecting the described premises.

**(4)** To the extent that the Water Exclusion might conflict with the coverage provided under this endorsement, the Water Exclusion does not apply to such coverage.

**(5)** We will not pay the cost of repairing or replacing a sewer, drain, sump, sump pump or any related parts or equipment.

The most we will pay for Discharge from Sewer, Drain or Sump in any policy year is **$10,000**, unless a higher amount is shown in the Declarations

**5. Coverage Extensions**

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

The last paragraph is replaced with the following:
The most we will pay for loss or damage under this Extension is $1,000,000 at each building.

**(2) Your Business Personal Property**

EXHIBIT C - PAGE 61

The last paragraph in **(2)(a)** is replaced with the following:
The most we will pay for loss or damage under this Extension is $500,000 at each building.

**(3)  Period Of Coverage**

Paragraph **(b)** is replaced with the following:

**(b)** 90 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**b.  Personal Effects And Property Of Others**

The last paragraph is replaced with the following:

The most we will pay for loss or damage under this Extension is $25,000 at each described premise.  Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c.  Valuable Papers And Records – (Other Than Electronic Data)**

Paragraph **(4)** is replaced by the following:

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $25,000. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d.  Property Off-premises**

Paragraph (3) is replaced by the following:

**(3)** The most we will pay for loss or damage under this Extension is $15,000.

**e.  Outdoor Property**

The first paragraph is amended to include the following:

**(1)** Retaining walls above ground, walkways, patios;

**(2)** Outdoor lighting fixtures (but excluding the breakage of glass parts except as a direct result of fire or lighting), street and traffic signs, and awnings;

**(3)** Wiring, and wiring for masts or towers, for radio, television or satellite dishes;

**(4)** The cost of excavation, grading or backfilling;

**(5)** Foundations of buildings, structures, boilers or machinery if their foundations are below:
**(a)** The lowest basement floor; or
**(b)** The surface of the ground, if there is not a basement;

**(6)** Underground pipes, flues and drains;

**(7)** Underground wiring for telephones and cable television;

EXHIBIT C - PAGE 62

The last paragraph is replaced with the following:

The most we will pay for loss or damage under this Extension is $25,000, but not more than $1,000 for any one tree, shrub or plant.  These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**C. Limits Of Insurance**

The following limit provision is added.

The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.  This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**1.** The 12 months immediately preceding the date the loss or damage occurs; or

**2.** The period of time you have been in business as of the date the loss or damage occurs.

**F. Additional Conditions**

Additional Conditions do not apply to Spoilage.

**G.  Optional Coverages**

Optional Coverages do not apply to Spoilage.

**H. Definitions**

Add the following:

**4.** **"Perishable Stock"** means personal property:

   **a.** Maintained under controlled conditions for its preservation; and

   **b.** Susceptible to loss or damage if the controlled conditions change

## CP 10 30 – CAUSES OF LOSS – SPECIAL FORM
The Causes Of Loss – Special Form is modified as follows:

**B. Exclusions**

The following is added to Exclusion **B.1.a**:

**a. Ordinance Or Law**

The following provision is added to this exclusion:

The Ordinance or Law Exclusions do not apply to coverages in **n. Ordinance Or Law,** above.

The following is added to Exclusion **B.1.e**:

**e. Utility Services**

The Utility exclusion provision in the Causes of Loss – Special Form applies, except for any provisions as provided in Section **A.4.l.** Utility Services – Direct Damage above.

EXHIBIT C - PAGE 63

**Spoilage**

Paragraph **B. Exclusions** is replaced by the following for Spoilage Coverage Only:

Only the following Exclusions contained in paragraph **B.1.** of the Causes of Loss Special Form applicable to this Expanded Coverage Part apply to Spoilage Coverage:

**b.** EARTH MOVEMENT;

**c.** GOVERNMENTAL ACTION;

**d.** NUCLEAR HAZARD;

**f.** WAR AND MILITARY ACTION; and

**g.** WATER.

The following Exclusions are added:

We will not pay for loss or damage caused by or resulting from:

**a.** The disconnection of any refrigerating, cooling or humidity control system from the source of power.

**b.** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

**c.** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

**(1)** Lack of fuel; or

**(2)** Governmental order.

**d.** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

**e.** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

The following is added to Exclusion **B. 2.d. (7)**:

**(d)** Except as provided in Additional Coverages **A.3. Covered Causes Of Loss** for   Spoilage above.

**F.   Additional Coverage Extensions**

**1.   Property In Transit**

Paragraph **F.1.a.** is amended as follows:

**a.** You may extend the insurance provided by this Coverage Part to your personal property in transit while:
**(1)** In or on a motor vehicle you own, lease, or operate; or
**(2)** Shipped at your own risk;
between points in the coverage territory.

Paragraph **F.1.c.** is replaced as follows:

EXHIBIT C - PAGE 64

**c.** The most we will pay for loss or damage under this Extension is $25,000.

EXHIBIT C - PAGE 65

# SECTION II - EXPANDED INLAND MARINE COVERAGE
## COMMERCIAL PROPERTY EXPANDED COVERAGE

**THERE IS NO COVERAGE** under **SECTION II** unless so indicated by a ⊠ preceding **SECTION II** in the **SCHEDULE OF COVERAGES on Page 1 of this endorsement**.

The most we will pay for loss or damage in any one occurrence is the applicable **Limit of Insurance** shown in **Section II – Expanded Inland Marine Coverage** of the **SCHEDULE OF COVERAGES.**

The following forms are attached**:**

ACCOUNTS RECEIVABLE COVERAGE FORM – CM 00 66
ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM– IM 7200
SIGNS COVERAGE FORM – CM 00 28
COMMERCIAL INLAND MARINE CONDITIONS – CM 00 01

This endorsement modifies insurance provided under:

ACCOUNTS RECEIVABLE COVERAGE FORM – CM 00 66
ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM– IM 7200
SIGNS COVERAGE FORM – CM 00 28

## CM 00 66 – ACCOUNTS RECEIVABLE COVERAGE FORM

This Accounts Receivable Coverage Form is modified as follows:

**C. Limits Of Insurance**

This paragraph is replaced with the following:

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the SCHEDULE OF COVERAGES.

No deductible applies.

## IM 7200 – ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM

This Electronic Data Processing Equipment Coverage Form is modified as follows:

**A. HOW MUCH WE PAY**

   **1. Insurable Interest**

   The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the SCHEDULE OFCOVERAGES.

   We do not cover more than your insurable interest in any property.

   **3. Deductible**

   We will pay only that part of your loss over the deductible amount of $1,000 or the deductible amount indicated in the Inland Marine Schedule if it is higher for any one occurrence.

## CM 00 28 – SIGNS COVERAGE FORM

This Signs Coverage Form is modified as follows:

**C. Limits Of Insurance**

This paragraph has been replaced with the following:

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the SCHEDULE OF COVERAGES.

EXHIBIT C - PAGE 66

# <u>SECTION III - EXPANDED CRIME COVERAGE</u>
COMMERCIAL PROPERTY EXPANDED COVERAGE FORM

**<u>THERE IS NO COVERAGE</u> under SECTION III unless so indicated by a ⊠ preceding SECTION III in the SCHEDULE OF COVERAGES on Page 1 of this endorsement**.

The most we will pay for loss or damage in any one occurrence is the applicable **Limit of Insurance** shown in **Section III – Expanded Crime Coverage** of the **SCHEDULE OF COVERAGES.**

The following form is attached:

COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED) – CR 00 21

This endorsement modifies insurance provided under:

COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED) – CR 00 21

## CR 00 21 - COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED FORM)

This Commercial Crime Coverage Form (Loss Sustained Form) is modified as follows:

**A. Insuring Agreements**

The first Paragraph is replaced by the following:

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the SCHEDULE OF COVERAGES and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the policy, except as provided in Condition **E.1.k.** or **E.1.l.,** which is "discovered" by you during the Policy Period shown in the policy or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.g.**:

Paragraph **A. 5**. Outside the Premises is amended by the following:

**5. Outside The Premises**

Paragraph **c.** is added:

**c.** In regards to **a.** and **b.** we will pay only for the amount of loss that you can not recover:

**(i)** Under your contract with the armored motor vehicle; and

**(ii)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**B. Limits Of Insurance**

This paragraph has been replaced with the following:

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the SCHEDULE OF COVERAGES.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

For losses covered under this Expanded Coverage Form for Crime (Loss Sustained Form) Paragraph **C. Deductible** is replaced.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds $500 or the deductible amount shown in the Declarations for Crime if it is a higher deductible.  We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

EXHIBIT C - PAGE 67

# SECTION IV - EXPANDED BUSINESS INCOME COVERAGE
COMMERCIAL PROPERTY EXPANDED COVERAGE FORM

**THERE IS NO COVERAGE** under SECTION IV unless so indicated by a ⊠ **preceding SECTION IV in the SCHEDULE OF COVERAGES on Page 1 of this endorsement**.

The most we will pay for loss or damage in any one occurrence is the applicable **Limit of Insurance** shown in **Section IV – Expanded Business Income Coverage** of the **SCHEDULE OF COVERAGES.** The following forms are attached.

    BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM – CP 00 30
    BUSINESS INCOME FROM DEPENDENT PROPERTIES – BROAD FORM – CP 15 08

This endorsement modifies insurance provided under:
    BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM – CP 00 30
    BUSINESS INCOME FROM DEPENDENT PROPERTIES – BROAD FORM – CP 15 08

## CP 00 30 - BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

The Business Income (And Extra Expense) Coverage Form is modified as follows:

**A. Coverage**

    **5. Additional Coverages**

        **c. Extended Business Income**

        Paragraph **(1)(b)(ii)** is amended as follows:

        **(ii)** 180 consecutive days after the date determined in **(1)(a)** above.

    **6. Coverage Extension**

    **Newly Acquired Locations**

    Paragraph **c.** is replaced with the following:

    **c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

        (1) This policy expires;

        (2) 180 days expire after you acquire or begin to construct the property; or

        (3) You report values to us.

    We will charge you additional premium for values reported from the date you acquire the property.  This Extension is additional insurance.

    The Additional Condition, Coinsurance, does not apply to this Extension.

EXHIBIT C - PAGE 68

**B.   Limits Of Insurance**

The first paragraph is replaced with the following:

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the SCHEDULE OF COVERAGES.

## CP 15 08 – BUSINESS INCOME FROM DEPENDENT PROPERTIES – BROAD FORM

The Business Income From Dependent Properties – Broad Form is modified as follows:

Paragraph **A.** is replaced as follows:

**A.**   We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by or resulting from direct physical loss of or damage to "dependent property" caused by or resulting from a Covered Cause of Loss. However, coverage under this endorsement does not apply when the only loss to "dependent property" is loss or damage to electronic data, including destruction or corruption of electronic data. If the "dependent property" sustains loss or damage to electronic data and other property, coverage under this endorsement will not continue once the other property is repaired, rebuilt, or replaced. The term electronic data has the meaning set forth in the Business Income (And Extra Expense) Coverage Form.

Paragraph **B.** is replaced as follows:

**B.   Limits Of Insurance**

1.   The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the SCHEDULE OF COVERAGES.

2.   The provisions of the Business Income Coverage Form with respect to direct physical loss or damage at the described premises will apply to **(A)** Contributing Locations, **(B)** Recipient Locations, **(C)** Manufacturing Locations and **(D)** Leader Locations as entered in the Business Income From Dependent Properties – Broad Form.

EXHIBIT C - PAGE 69

# SECTION V – COMMERCIALPROPERTY EXPANDED COVERAGE
COMMERCIAL PROPERTY EXPANDED COVERAGE FORM

## LIMITATIONS AND EXCLUSIONS

**The following Limitations and Exclusions are in addition to those found in the BUILDING AND PERSONAL PROPERTY COVERAGE FORM and the CAUSES OF LOSS – SPECIAL FORM, at the described premises shown in the DECLARATIONS or found elsewhere in this endorsement.**

**A. PROPERTY OF OTHERS**

We will not pay for loss or damage to the following Property Of Others:

**1.** Property insured, which has been in your custody for a period in excess of six (6) months, except as may be otherwise specifically provided; and

**2.** Autos, which mean land motor vehicles, licensed and designed for travel on public roads but does not include mobile equipment.

**B. LIMITS OF INSURANCE**

It is agreed and understood that if a coverage does not specifically show a limit per Location, Building, or Premises then it is on a per policy basis.

**C. DEDUCTIBLE**

As this endorsement is an expansion of other coverage forms, the deductible for those coverage lines applies unless otherwise noted.

**D. ADDITIONAL CONDITIONS**

The following conditions apply in addition to the Additional Conditions in the Building and Personal Property Coverage Form or the Commercial Property Conditions Form.

**1. Conflict Of Provisions**

When not in conflict with the provisions of this endorsement, all of the conditions of the policy to which this endorsement is attached, shall apply.

**2. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the claim, loss or damage sustained.

**3. Valuation**

Where not otherwise indicated, we shall not pay beyond the actual cash value of the property at the time of the loss or damage occurs. The loss or damage shall be ascertained or estimated according to such actual cash value and shall in no event exceed what it would cost to repair or replace with the same material of like kind and quality.

EXHIBIT C - PAGE 70

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CAUSES OF LOSS-- BASIC FORM
CAUSES OF LOSS-- BROAD FORM
CAUSES OF LOSS-- SPECIAL FORM

A.  The following is added as an Additional Coverage to the Causes of Loss— Basic Form, Broad Form or Special Form.

**Additional Coverage-- Equipment Breakdown**
The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below.

**1.** We will pay for direct physical damage to Covered Property that is the direct result of an "accident." As used in this Additional Coverage, "accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

    **a.** mechanical breakdown, including rupture or bursting caused by centrifugal force;

    **b**. artificially generated electrical, magnetic or electromagnetic energy, including electric arcing, that damages, disturbs, disrupts or otherwise interferes with any electrical or electronic wire, device, appliance, system or network.

    **c.** explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

    **d.** loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

    **e.** loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

**2.** Unless otherwise shown in a Schedule, the following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

    **a.** **Expediting Expenses**
    With respect to your damaged Covered Property, we will pay the reasonable extra cost to:
    **(1)** make temporary repairs; and
    **(2)** expedite permanent repairs or permanent replacement.
    The most we will pay for loss or expense under this coverage is $100,000 unless otherwise shown in a Schedule.

    **b.** **Hazardous Substances**
    We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.  This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in 2.c.(1)(b) below. As used in this coverage, additional costs mean those beyond what would have been

**31-1220 07 10**        Includes Copyrighted Material of Insurance Services, Inc.        **Page 1 of 6**
Used with permission

EXHIBIT C - PAGE 71

payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $100,000 unless otherwise shown in a Schedule.

**c.    Spoilage**

**(1)**    We will pay:

**(a)**    for physical damage to "perishable goods" due to spoilage;

**(b)**    for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

**(c)**    any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

**(2)**    If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident," less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Valuation condition.

The most we will pay for loss, damage or expense under this coverage is $100,000 unless otherwise shown in a Schedule.

**d.    Data Restoration**

We will pay for your reasonable and necessary cost to research, replace and restore lost "data."

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $100,000 unless otherwise shown in a Schedule.

**e**.    **Service Interruption**

**(1)**    Any insurance provided for Business Income, Extra Expense or Spoilage is extended to apply to your loss, damage or expense caused by the interruption of utility services. The interruption must result from an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

**(2)**    We will not pay for any loss of Business Income you sustain that results from the interruption of utility services during the first 24 hours following the "accident." However, if a deductible is shown in a Schedule as provided for in paragraph B.1. below, or if the "period of restoration" begins more than 24 hours after the time of the direct physical damage for Business Income, then that deductible or time period will apply instead of the 24 hours provided for in this paragraph.

**(3)**    The most we will pay in any "one accident" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense or Spoilage, except that if a limit is shown in a Schedule for Service Interruption, that limit will apply to Business Income and Extra Expense loss under this coverage.

**f.    Business Income and Extra Expense**

Any insurance provided under this coverage part for Business Income or Extra Expense is extended to the coverage provided by this endorsement. However, if a deductible is shown in a Schedule, then as respects Equipment Breakdown coverage, the "period of restoration" will begin immediately after the "accident," and the deductible shown in the Schedule will apply.

The most we will pay for loss or expense under this coverage is the applicable limit for Business Income and Extra Expense, unless otherwise shown in a Schedule.

3. **EXCLUSIONS**

All exclusions in the Causes of Loss form apply except as modified below and to the extent that coverage is specifically provided by this Additional Coverage Equipment Breakdown.

**a.** The following exclusions are modified:
**(1)** If the Causes of Loss -- Basic Form or Causes of Loss – Broad Form applies, the following is added to Exclusion B.2.: Depletion, deterioration, corrosion, erosion, wear and tear, or other gradually developing conditions. However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident."
**(2)** The following is added to Exclusion B.1.g.:
However, if electrical "covered equipment" requires drying out because of Water as described in g.(1) through g.(3) above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.
**(3)** If the Causes of Loss—Special Form applies, as respects this endorsement only, the last paragraph of Exclusion B.2.d. is deleted and replaced with the following:
But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in an "accident," we will pay for the loss, damage or expense caused by that "accident."
**b.** The following exclusions are added:
**(1)** We will not pay for loss, damage or expense caused by or resulting from:
**(a)** a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment; or
**(b)** any of the following:
**(i)** defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind; or
**(ii)** misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.
However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident."
**(2)** With respect to Service Interruption coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specifically provided in A.1.c. above); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.
**(3)** With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for any increase in loss resulting from an agreement between you and your customer or supplier.
**(4)** We will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident": Any mold, fungus, mildew or yeast, including any spores or toxins produced by or emanating from such mold, fungus, mildew or yeast. This includes, but is not limited to, costs arising from clean up, removal, or abatement of such mold, fungus, mildew or yeast, spores or toxins. However, this exclusion does not apply to spoilage of personal property that is "perishable goods," to the extent that spoilage is covered under Spoilage coverage.
**(5)** We will not pay for any loss or damage to animals.

4. **DEFINITIONS**

The following definitions are added:

    **a.**    "Boilers and vessels" means:
        **(1)**    Any boiler, including attached steam, condensate and feedwater piping; and
        **(2)**    Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.
        This term does not appear elsewhere in this endorsement, but may appear in a Schedule.

    **b.**    "Covered equipment"
        **(1)**    "Covered equipment" means, unless otherwise specified in a Schedule, Covered Property:
            **(a)**    that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or
            **(b)**    which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.
        **(2)**    None of the following is "covered equipment":
            **(a)**    structure, foundation, cabinet, compartment or air supported structure or building;
            **(b)**    insulating or refractory material;
            **(c)**    sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;
            **(d)**    water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;
            **(e)**    "vehicle"or any equipment mounted on a "vehicle";
            **(f)**    satellite, spacecraft or any equipment mounted on a satellite or spacecraft;
            **(g)**    dragline, excavation or construction equipment; or
            **(h)**    equipment manufactured by you for sale.

    **c.**    "Data" means information or instructions stored in digital code capable of being processed by machinery.

    **d.**    "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

    **e.**    "Media" means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

    **f.**    "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

    **g.**    "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

    **h.**    "Production machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. However, "production machinery" does not mean any fired or unfired pressure vessel other than a cylinder containing a movable plunger or piston.
        This term does not appear elsewhere in this endorsement, but may appear in a Schedule.

    **i.**    "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power.  "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester. However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

**B.**   The Building and Personal Property Coverage Form is modified as follows.
    The definitions stated above also apply to section B. of this endorsement.

    **1.  DEDUCTIBLE**

EXHIBIT C - PAGE 74

The deductible in the Declarations applies unless a separate Equipment Breakdown deductible is shown in a Schedule. If a separate Equipment Breakdown deductible is shown, the following applies.

Only as regards Equipment Breakdown Coverage, provision D. DEDUCTIBLE is deleted and replaced with the following:

**a.    Deductibles for Each Coverage**
**(1)**    Unless the Schedule indicates that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."
**(2)**    We will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the Schedule.
We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.
**(3)**    If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.
**b.    Direct and Indirect Coverages**
**(1)**    Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Schedule.
**(2)**    Unless more specifically indicated in the Schedule:
(a)    Indirect Coverages Deductibles apply to Business Income and Extra Expense loss; and
(b)    Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.
**c.    Application of Deductibles**
**(1)**    Dollar Deductibles
We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable Deductible shown in the Schedule. We will then pay the amount of loss, damage or expense in excess of the applicable Deductible or Deductibles, up to the applicable Limit of Insurance.
**(2)**    Time Deductible
If a time deductible is shown in the Schedule, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.
**(3)**    Multiple of Average Daily Value (ADV)
If a deductible is expressed as a number times ADV, that amount will be calculated as follows:
The ADV (Average Daily Value) will be the Business Income (as defined in any Business Income coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" occurred, divided by the number of working days in that period. No reduction shall be made for the Business Income not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Business Income value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration."
The number indicated in the Schedule will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.
**(4)**    Percentage of Loss Deductibles

EXHIBIT C - PAGE 75

If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

## 2.  CONDITIONS

The following conditions are in addition to the Conditions in the Building and Personal Property Coverage Form, the Commercial Property Conditions and the Common Policy Conditions.

**a.    Suspension**
Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by mailing or delivering a written notice of suspension to:
**(1)**    your last known address; or
**(2)**    the address where the "covered equipment" is located.
Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment." If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**b.    Jurisdictional Inspections**
If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**c.    Environmental, Safety and Efficiency Improvements**
If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.  However, we will not pay more than 125% of what the cost would have been to replace with like kind and quality. This condition does not increase any of the applicable limits. This condition does not apply to any property to which Actual Cash Value applies.

**d.    Coinsurance**
If a coinsurance percentage is shown in a Schedule for specified coverages, the following condition applies.
We will not pay for the full amount of your loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, we will determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. We will then subtract the applicable deductible. The resulting amount, or the applicable limit, is the most we will pay. We will not pay for the remainder of the loss. Coinsurance applies separately to each insured location.

The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Insurance in the Declarations unless otherwise shown in a Schedule. Coverage provided under this endorsement does not provide an additional amount of insurance.

**POLICY NUMBER:** WPP1827846 00

**COMMERCIAL GENERAL LIABILITY**
**33-0729 10-13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# COMMERCIAL GENERAL LIABILITY COVERAGE EXPANSION ENDORSEMENT (NON-CONTRACTORS)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART – CG 00 01**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Additional Premium  $200**

**SECTION I – COVERAGES**
**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

2.   **Exclusions**

g.   **Aircraft, Auto Or Watercraft**

Paragraph **(2)** is replaced by the following:

(2)   A watercraft you do not own that is:

(a)   Less than 51 feet long; and

(b)   Not being used to carry persons or property for a charge.

This provision applies to any person, who with your consent, either uses or is responsible for the use of a watercraft. This insurance is excess over any other valid and collectible insurance available to the insured whether primary, excess, or contingent.

j.   **Damage To Property**

Paragraph **(2)** is not applicable.

(2)   This paragraph is deleted.

Paragraph **(4)** replaced with the following:

(4)   Personal property in the care, custody or control of the insured which exceeds $50,000 regardless of the number of:

(a)   Insureds

(b)   Claims made; or

(c)   Persons or organizations making claims

The most we will pay under this coverage is $50,000.  Our duty to pay and defend ends under this coverage when the coverage limit has been exhausted.

n.   **Recall Of Products, Work Or Impaired Property**
Replace with the following:

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)   "Your product";

**33-0729 10 13**          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 1 of 6**
Used with permission

EXHIBIT C - PAGE 77

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it, but this exclusion does not apply to "product recall expenses" that you incur for the "covered recall" of "your product".

This insurance does not apply to "Product Recall Expense" arising out of or resulting from:

**a.** Any product withdrawal initiated due to:

**(1)** The failure of "your products" to accomplish their intended purpose, including any breach of warranty of fitness, whether written or implied.  This exclusion does not apply if such failure has caused or is reasonably expected to cause "bodily injury" or physical damage to tangible property.

**(2)** Copyright, patent, trade secret or trademark infringements;

**(3)** Transformation of a chemical nature, deterioration or decomposition of "your product", except if it is caused by:

**(a)** An error in manufacturing, design, processing or transportation of "your product"; or

**(b)** "Product tampering"

**(4)** Expiration of the designated shelf life of "your product".

**b.** A "product withdrawal", initiated because of a "defect" in "your product" known to exist by the Named Insured or the Named Insured's "executive officers", prior to the inception date of this Coverage Form or prior to the time "your product" leaves your control or possession.

**c.** Recall of any specific products for which "bodily injury" or "property damage" is excluded under **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** by endorsement.

**d.** Recall of "your products" which have been banned from the market by an authorized government entity prior to the policy period.

**e.** The defense of a claim or "suit" against you for "product withdrawal expenses".

**f.** **COVERAGE A** does not apply to "product recall expense" arising out of any withdrawal or recall that occurred before you acquired or formed the organization.

We will not pay more than $100,000 annually for "product recall expense" incurred from all "Covered Recall" events covered during this policy term.

Replace the following paragraph:

Exclusion **c.** through **n.** do not apply to damage by "specific perils" to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to this coverage as described in Section **III –** Limits Of Insurance**.**

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**2. Exclusions**

Paragraph **e. Contractual Liability** is amended as follows:

**e.  Contractual Liability**

This paragraph is deleted.

**COVERAGE C – MEDICAL PAYMENTS**

Paragraph **1.a. (3)(b)** under **SECTION I – COVERAGE C – MEDICAL PAYMENTS** is replaced with the following:

**(b)** The expenses are incurred and reported to us within two years of the date of the accident; However, expenses reported to us after two years of the date of the accident will not be denied solely because of the late submission unless such late submission operates to prejudice our rights; and

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

Paragraph **1.b.** and **1.d.** under **SECTION I - SUPPLEMENTARY PAYMENTS – COVERAGE A AND B** is replaced with the following:

**b.** Up to $2,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $300 a day because of time off from work.

**SECTION II – WHO IS AN INSURED**

Paragraph **3.a.** is amended as follows:

**a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

However, provision **a.** above does not apply if the newly formed or acquired organization is excluded by either a provision of the Coverage Form or by endorsement.

The following is added under **SECTION II – WHO IS AN INSURED:**:

**4.** Organization over which you maintain ownership of more than 50% will be a Named Insured if there is no other similar insurance available to that organization; however

**a.** **COVERAGE A.** does not apply to "bodily injury" or "property damage" that occurred before you acquired   or formed the organization; and

**b.** **COVERAGE B.** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

If such organizations are not shown in the **DECLARATIONS,** you must report them to us within 180 days of inception date of the policy.

**5.** Any person or organization with whom you agreed, because of written contract or written agreement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendors business, subject to the following additional exclusions:

The insurance afforded the vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in the product made intentionally by the vendor;

**d.** Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer, and then repackaged in the original container;

**e.** Any failure to make such inspection, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the sale of the product;

**33-0729 10 13**          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 3 of 6**
Used with permission

EXHIBIT C - PAGE 79

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendors premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any thing or substance by or for the vendor.

This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into accompanying or containing such products.

**6.** Any person or organization to whom you are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to liability arising out of the maintenance or use of that part of any premises leased to you, including common or public areas about such premises if so required in the contract. However, no such person or organization is an insured with respect to:

**a.** Any "occurrence" that takes place after you cease to occupy those premises; or

**b.** Structural alterations, new construction or demolition operations performed by or on behalf of such insured.

**7.** Any person or organization granting a license to make, or distribute "your products" including "your products" which use the name or logo of grantor and to whom you are obligated by virtue of the written contract to provide insurance such as afforded by this policy, but only with respect to liability arising out of "your products".

## SECTION III – LIMITS OF INSURANCE

The following is added to Paragraph **2.** of **SECTION III – LIMITS OF INSURANCE**:

**d.** The General Aggregate Limit applies separately to each of your "locations".

For the purpose of this provision only, "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

Paragraph **6.** is replaced with the following:

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is replaced by a "Specific Perils" Limit which is the greater of:

**a.** $300,000; or

**b.** The amount shown in the **DECLARATIONS** for **Damage To Premises Rented To You Limit.**
The "Specific Perils" limit is the most we will pay under **COVERAGE A** for damages because of "property damage" to any one premises, while rented to you or temporarily occupied by you with permission of the owner.

However, provisions **a.** and **b.** above do not apply if any reference in the **DECLARATIONS** for **Damage to Premises Rented to You** is deleted from this policy either by the provisions of the Coverage Form or by endorsement.

The following is added under **SECTION III** – **LIMITS OF INSURANCE**:

**8. Product Recall Expense**

$100,000 is the most we will pay for all "product recall expenses" arising out of the same defect or deficiency.

**9. Professional Services**

Subject to provisions in **SECTION I – COVERAGES - COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY – 2. Exclusions r.** and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY – 2. Exclusions q.** the most we will pay for Professional Services is $50,000 each annual period.

EXHIBIT C - PAGE 80

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**

Replace paragraph **2.a.** with the following:

**a.**  You must see to it we are notified as soon as practicable of an "occurrence" or an offense, which may result in a claim.  Knowledge of an "occurrence" or an offense by your "employees" shall not, in itself, constitute knowledge to you unless any one of your partners, "executive officers", directors or insurance managers shall have actually received notice.  To the extent possible, notice should include:

   **(1)**  How, when and where the "occurrence" took place;

   **(2)**  The names and addresses of any injured persons and witnesses; and,

   **(3)**  The nature and location of any injury or damage arising out of the "occurrence" or offense.

The following is added to paragraph **2.** under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**e.**  Your rights afforded under this policy shall not be prejudiced if you fail to give us notice of an "occurrence", offense, claim or "suit", solely due to your reasonable and documented belief that the "bodily injury" or "property damage" is not covered under this policy.

**f.**  You must see to it that the following are done in the event of an actual or anticipated "covered recall" that may result in "product recall expense":

   **(1)**  Give us prompt notice of any discovery or notification that "your product" must be withdrawn or recalled.  Include a description of "your product" and the reason for withdrawal or recall.

   **(2)**  Cease any further release, shipment, consignment or any other method or distribution of like or similar products until it has been determined that all such products are free from defects that could be a cause of loss under this insurance.

**4.  Other Insurance**

The following is added to **Other Insurance** and supersedes any provision to the contrary with respects to the Commercial General Liability Coverage Part and Products/Completed Operations Liability Coverage Part.

**d.**  This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

   **(i)**  The additional insured is a Named Insured under such other insurance; and

   **(ii)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

**6.  Representations**

Replace with the following:

By accepting this policy, you agree:

   **a.**  The statements in the Declarations are accurate and complete;

   **b.**  Those statements are based upon representations you made to us; and

   **c.**  We have issued this policy in reliance upon your representations.

Any knowledge of an error or omission in the description of, or failure to completely describe any premises or operations intended to be covered by the Coverage Form will not invalidate or affect coverage for these premises or operations.  You must report such error or omission to us as soon as practicable after its discovery.  However, this provision does not affect our right to collect additional premium or exercise our right to cancellation or non-renewal.

**8.  Transfer Of Rights Of Recovery Against Others To Us**

Replace with the following:

**33-0729 10 13**          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 5 of 6**
Used with permission

EXHIBIT C - PAGE 81

If the insured has rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.  However, if the insured has waived those rights to recover through a written contract or if "your work" was commenced under a letter of intent or work order, subject to a subsequent reduction to writing with customers whose customary contracts require a waiver, we waive any right to recovery we may have under this Coverage Form.

## SECTION V – DEFINITIONS

Paragraph **3.** of **SECTION V – DEFINITIONS** is replaced with the following:

**3.**  "Bodily Injury" means injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from "bodily injury", sickness or disease**.**

The following definitions are added:

**23.**  "Covered recall," means:

  **a.**  A product recall made necessary because you determine that the product recall is necessary; or

  **b.**  An authorized government entity has ordered you to conduct a product recall.

**24.**  "Product recall expense" means necessary and reasonable expenses for:

  **a.**  Costs of notification;

  **b.**  Costs of stationery, envelopes, production of announcements and postage or facsimiles;

  **c.**  Costs of overtime paid to your regular non-salaried employees and costs incurred by your employees, including costs of transportation and accommodations;

  **d.**  Costs of computer time;

  **e.**  Costs of hiring independent contractors and other temporary employees;

  **f.**  Costs of transportation, shipping or packaging

  **g.**  Costs of warehouse or storage space; or

  **h.**  Costs of proper disposal of "your products", or products that contain "your products", that can not be reused, not exceeding your purchase price or your cost to produce the products;

**25.**  "Specific Peril" means fire; lightning; explosion or leakage from fire sprinkler extinguishing equipment.

**26.**  "Professional services" means:

  **a.**  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

  **b.**  Supervisory or inspection activities performed as part of any related architectural or engineering activities.

All other policy wording not specifically changed, modified, or replaced by this endorsement wording remains in effect.

**Page 6 of 6**           Includes copyrighted material of Insurance Services Office, Inc.,           **33-0729 10 13**
Used with permission

EXHIBIT C - PAGE 82

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

EXHIBIT C - PAGE 83

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

　**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

　**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

　**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

　**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

　**(a)** Employment by the insured; or

　**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © Insurance Services Office, Inc., 2012

EXHIBIT C - PAGE 84

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

EXHIBIT C - PAGE 85

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

EXHIBIT C - PAGE 86

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

    © Insurance Services Office, Inc., 2012    **CG 00 01 04 13**

EXHIBIT C - PAGE 88

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012

EXHIBIT C - PAGE 89

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

EXHIBIT C - PAGE 90

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © Insurance Services Office, Inc., 2012

EXHIBIT C - PAGE 91

**2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by;

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

    you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

  **c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

  **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Medical expenses under Coverage **C;**

  **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  **c.** Damages under Coverage **B.**

 © Insurance Services Office, Inc., 2012

EXHIBIT C - PAGE 92

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

EXHIBIT C - PAGE 93

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

EXHIBIT C - PAGE 94

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

 © Insurance Services Office, Inc., 2012

EXHIBIT C - PAGE 95

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

 © Insurance Services Office, Inc., 2012

EXHIBIT C - PAGE 96

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

  **(a)** Snow removal;

  **(b)** Road maintenance, but not construction or resurfacing; or

  **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  **(1)** Products that are still in your physical possession; or

  **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

  **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      (2) The providing of or failure to provide warnings or instructions.

   © Insurance Services Office, Inc., 2012   **CG 00 01 04 13**

EXHIBIT C - PAGE 98

POLICY NUMBER: WPP1827846 00

**COMMERCIAL GENERAL LIABILITY**
**CG 04 35 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Limit Of Insurance | | Each Employee Deductible | Premium |
|---|---|---|---|---|
| **Employee Benefits Programs** | $ 1,000,000 | **each employee** | $ 1000 | ██████ |
| | $ 2,000,000 | **aggregate** | | |
| **Retroactive Date:** | 8/25/2019 | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to damages only if:

**(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

**(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

**(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

**c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**CG 04 35 12 07**

© ISO Properties, Inc., 2006

**Page 1 of 6**

EXHIBIT C - PAGE 99

**(2)** When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments – Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Employee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II – Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

---

**CG 04 35 12 07**               © ISO Properties, Inc., 2006               **Page 2 of 6**

EXHIBIT C - PAGE 100

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D. For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

(1) Insureds;

(2) "Claims" made or "suits" brought;

(3) Persons or organizations making "claims" or bringing "suits";

(4) Acts, errors or omissions; or

(5) Benefits included in your "employee benefit program".

b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

(1) An act, error or omission; or

(2) A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

c. The terms of this insurance, including those with respect to:

(1) Our right and duty to defend any "suits" seeking those damages; and

(2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the deductible amount.

d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

E. For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

EXHIBIT C - PAGE 101

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

EXHIBIT C - PAGE 102

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

    **a.** This endorsement is canceled or not renewed; or

    **b.** We renew or replace this endorsement with insurance that:

        **(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

        **(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

    **a.** The "employee benefit programs" insured;

    **b.** Previous types and amounts of insurance;

    **c.** Limits of insurance available under this endorsement for future payment of damages; and

    **d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

    **a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

    **b.** Handling records in connection with the "employee benefit program"; or

    **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

H. For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

COMMERCIAL GENERAL LIABILITY
CG 21 07 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

CG 21 07 05 14 © Insurance Services Office, Inc., 2013 **Page 1 of 1**

EXHIBIT C - PAGE 105

This page intentionally left blank

EXHIBIT C - PAGE 106

COMMERCIAL GENERAL LIABILITY
CG 21 09 06 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g.  Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

CG 21 09 06 15                © Insurance Services Office, Inc., 2014                **Page 1 of 2**

EXHIBIT C - PAGE 107

(e) "Bodily injury" or "property damage" arising out of:

(i) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(ii) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Unmanned Aircraft**

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

**a.** The use of another's advertising idea in your "advertisement"; or

**b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to the **Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

 © Insurance Services Office, Inc., 2014 **CG 21 09 06 15**

EXHIBIT C - PAGE 108

POLICY NUMBER: WPP1827846 00

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**CG 21 47 12 07**          © ISO Properties, Inc., 2006          **Page 1 of 1**

EXHIBIT C - PAGE 109

This page intentionally left blank

EXHIBIT C - PAGE 110

**COMMERCIAL GENERAL LIABILITY**
**CG 21 49 09 99**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of,  "pollutants".

**CG 21 49 09 99**          Copyright, Insurance Services Office, Inc.,  1998          **Page 1 of 1**

EXHIBIT C - PAGE 111

This page intentionally left blank

EXHIBIT C - PAGE 112

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

---

**CG 21 67 12 04**                    © ISO Properties, Inc.,  2003                    **Page 1 of 1**     ☐

EXHIBIT C - PAGE 113

This page intentionally left blank

EXHIBIT C - PAGE 114

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**CG 21 70 01 15**          © Insurance Services Office, Inc., 2015          **Page 1 of 1**

EXHIBIT C - PAGE 115

This page intentionally left blank

EXHIBIT C - PAGE 116

COMMERCIAL GENERAL LIABILITY
CG 21 76 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

This page intentionally left blank

EXHIBIT C - PAGE 118

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

  **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

  **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

  **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

  **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

  **3.** A reinforced or unreinforced base coat;

  **4.** A finish coat providing surface texture to which color may be added; and

  **5.** Any flashing, caulking or sealant used with the system for any purpose.

 © ISO Properties, Inc., 2003

EXHIBIT C - PAGE 119

This page intentionally left blank

EXHIBIT C - PAGE 120

**COMMERCIAL GENERAL LIABILITY**
**CG 32 34 01 05**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

 © ISO Properties, Inc., 2004
EXHIBIT C - PAGE 121

This page intentionally left blank

EXHIBIT C - PAGE 122

COMMERCIAL INLAND MARINE
CM 00 01 09 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties In The Event Of Loss

You must see that the following are done in the event of loss or damage to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the loss or damage. Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the loss or damage occurred.

4. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

5. You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

   Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

7. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

8. Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

10. Cooperate with us in the investigation or settlement of the claim.

### D. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### E. Loss Payment

1. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

2. We will not pay you more than your financial interest in the Covered Property.

3. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

4. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

    © ISO Properties, Inc.,  2003

EXHIBIT C - PAGE 123

**5.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss if you have complied with all the terms of this Coverage Part and:

  **a.** We have reached agreement with you on the amount of the loss; or

  **b.** An appraisal award has been made.

**6.** We will not be liable for any part of a loss that has been paid or made good by others.

### F. Other Insurance

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

### G. Pair, Sets Or Parts

  **1. Pair Or Set**

  In case of loss or damage to any part of a pair or set we may:

  **a.** Repair or replace any part to restore the pair or set to its value before the loss or damage; or

  **b.** Pay the difference between the value of the pair or set before and after the loss or damage.

  **2. Parts**

  In case of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

### H. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

### I. Reinstatement Of Limit After Loss

The Limit of Insurance will not be reduced by the payment of any claim, except for total loss or damage of a scheduled item, in which event we will refund the unearned premium on that item.

### J. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property.

**2.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

  **a.** Someone insured by this insurance; or

  **b.** A business firm:

    **(1)** Owned or controlled by you; or

    **(2)** That owns or controls you.

This will not restrict your insurance.

## GENERAL CONDITIONS

### A. Concealment, Misrepresentation Or Fraud

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

### B. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### C. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all the terms of this Coverage Part; and

**2.** The action is brought within 2 years after you first have knowledge of the direct loss or damage.

---

**CM 00 01 09 04**                © ISO Properties, Inc.,  2003                **Page 2 of 3**

EXHIBIT C - PAGE 124

**D. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**E. Policy Period, Coverage Territory**

We cover loss or damage commencing:

**1.** During the policy period shown in the Declarations; and

**2.** Within the coverage territory.

**F. Valuation**

The value of property will be the least of the following amounts:

**1.** The actual cash value of that property;

**2.** The cost of reasonably restoring that property to its condition immediately before loss or damage; or

**3.** The cost of replacing that property with substantially identical property.

In the event of loss or damage, the value of property will be determined as of the time of loss or damage.

---

This page intentionally left blank

EXHIBIT C - PAGE 126

WPP1827846 00

**COMMERCIAL INLAND MARINE**
**CM 00 28 01 13**

# SIGNS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning.

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss.

**1.** Covered Property, as used in this Coverage Form, means:

**a.** Your signs; and

**b.** Similar property of others in your care, custody or control.

**2. Property Not Covered**

Covered Property does not include contraband, or property in the course of illegal transportation or trade.

**3. Covered Causes Of Loss**

Covered Causes of Loss means direct physical loss or damage to Covered Property except those causes of loss listed in the Exclusions.

**4. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs **a.** through **c.**

**a.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**b.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**(1)** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**(2)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**(3)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation;

**(4)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(a)** A cause of loss listed in Paragraph **(1)** or **(2);**

**(b)** One or more of the following causes of loss: fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; earthquake; all only as insured against in this Coverage Form;

**(c)** Weight of people or personal property; or

**(d)** Weight of rain that collects on a roof.

**c.** This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this Coverage Form.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Governmental Action**

Seizure or destruction of property by order of governmental authority.

CM 00 28 01 13    © Insurance Services Office, Inc., 2011    **Page 1 of 4**

EXHIBIT C - PAGE 127

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

**b. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this Coverage Form.

**c. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Exclusions **B.1.a.** through **B.1.c.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Delay, loss of use, loss of market or any other consequential loss.

**b.** Breakage during transportation, or breakage during installation, repairing or dismantling.

But we do insure against such loss or damage caused directly by fire, lightning, or by accident to the vehicle carrying the property if these causes of loss would be covered under this Coverage Form.

**c.** Dishonest or criminal act (including theft) committed by:

**(1)** You, any of your partners, employees (including temporary employees and leased workers), officers, directors, trustees, or authorized representatives;

**(2)** A manager or a member if you are a limited liability company; or

**(3)** Anyone else with an interest in the property, or their employees (including temporary employees and leased workers) or authorized representatives;

whether acting alone or in collusion with each other or with any other party.

This exclusion applies whether or not an act occurs during your normal hours of operation.

This exclusion does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**d.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology;

creating a short circuit or other electric disturbance within an article covered under this Coverage Form.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes, but is not limited to, electrical current, including arcing; electrical charge produced or conducted by a magnetic or electromagnetic field; pulse of electromagnetic energy; electromagnetic waves or microwaves.

But if artificially generated electrical, magnetic or electromagnetic energy, as described above, results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this Coverage Form.

This exclusion only applies to loss or damage to that article in which the disturbance occurs.

**e.** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

© Insurance Services Office, Inc., 2011

f. Unauthorized instructions to transfer property to any person or to any place.

g. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

h. Theft by any person (except carriers for hire) to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during your normal hours of operation.

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property wherever located.

d. Collapse, including any of the following conditions of property or any part of the property:

(1) An abrupt falling down or caving in;

(2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

(3) Any cracking, bulging, sagging, bending, leaning, settling, shrinking or expansion as such condition relates to Paragraph **(1)** or **(2).**

This Exclusion **d.** does not apply to the extent that coverage is provided under the Additional Coverage – Collapse or to collapse caused by one or more of the following: fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; earthquake; weight of people or personal property; weight of rain that collects on a roof.

e. Wear and tear, any quality in the property that causes it to damage or destroy itself, hidden or latent defect, gradual deterioration; mechanical breakdown; dampness, cold or heat.

## C. Limits Of Insurance

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

## D. Deductible

We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations. We will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

## E. Additional Conditions

The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

**1. Coverage Territory**

We cover property wherever located within:

a. The United States of America (including its territories and possessions);

b. Puerto Rico; and

c. Canada.

**2. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

We will not pay the full amount of any loss if the value of Covered Property, except property in transit, at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

    © Insurance Services Office, Inc., 2011

EXHIBIT C - PAGE 129

Instead, we will determine the most we will pay using the following steps:

**a.** Multiply the value of Covered Property, except property in transit, at the time of loss by the Coinsurance percentage;

**b.** Divide the Limit of Insurance of the property by the figure determined in Step **a.;**

**c.** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **b.;** and

**d.** Subtract the deductible from the figure determined in Step **c.**

We will pay the amount determined in Step **d.** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

© Insurance Services Office, Inc., 2011
**CM 00 28 01 13**

EXHIBIT C - PAGE 130

# ACCOUNTS RECEIVABLE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **E** – Definitions.

## A. Coverage

**1.** We will pay:

    **a.** All amounts due from your customers that you are unable to collect;

    **b.** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

    **c.** Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

    **d.** Other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from Covered Causes of Loss to your records of accounts receivable.

**2. Property Not Covered**

Coverage does not apply to:

    **a.** Records of accounts receivable in storage away from the "premises" shown in the Declarations; or

    **b.** Contraband, or property in the course of illegal transportation or trade.

**3. Covered Causes Of Loss**

Covered Causes of Loss means direct physical loss or damage to your records of accounts receivable except those causes of loss listed in the Exclusions.

**4. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in Paragraphs **a.** through **c.**

    **a.** For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

    **b.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

        **(1)** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

        **(2)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

        **(3)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation;

        **(4)** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

            **(a)** A cause of loss listed in Paragraph **(1)** or **(2);**

            **(b)** One or more of the following causes of loss: fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; earthquake; all only as insured against in this Coverage Form;

            **(c)** Weight of people or personal property; or

            **(d)** Weight of rain that collects on a roof.

EXHIBIT C - PAGE 131

**c.** This Additional Coverage – Collapse will not increase the Limits of Insurance provided in this Coverage Form.

**5. Coverage Extension**

**Removal**

If you give us written notice within 10 days of removal of your records of accounts receivable because of imminent danger of loss or damage, we will pay for loss or damage while they are:

**a.** At a safe place away from your "premises"; or

**b.** Being taken to and returned from that place.

This Coverage Extension is included within the Limit of Insurance applicable to the "premises" from which the records of accounts receivable are removed.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

**b. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this Coverage Form.

**c. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Exclusions **B.1.a.** through **B.1.c.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Delay, loss of use, loss of market or any other consequential loss.

**b.** Dishonest or criminal act (including theft) committed by:

**(1)** You, any of your partners, employees (including temporary employees and leased workers), officers, directors, trustees, or authorized representatives;

**(2)** A manager or a member if you are a limited liability company; or

**(3)** Anyone else with an interest in the property, or their employees (including temporary employees and leased workers) or authorized representatives;

whether acting alone or in collusion with each other or with any other party.

This exclusion applies whether or not an act occurs during your normal hours of operation.

This exclusion does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**c.** Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**d.** Bookkeeping, accounting or billing errors or omissions.

**e.** Electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

**(1)** Programming errors or faulty machine instructions;

**(2)** Faulty installation or maintenance of data processing equipment or component parts;

EXHIBIT C - PAGE 132

**(3)** An occurrence that took place more than 100 feet from your "premises"; or

**(4)** Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct loss or damage caused by lightning.

**f.** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**g.** Unauthorized instructions to transfer property to any person or to any place.

**h.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**i.** Theft by any person (except carriers for hire) to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during your normal hours of operation.

**3.** We will not pay for loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**4.** We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property wherever located.

**d.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinking or expansion as such condition relates to Paragraph **(1)** or **(2).**

This Exclusion **d.** does not apply to the extent that coverage is provided under the Additional Coverage – Collapse or to collapse caused by one or more of the following: fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; earthquake; weight of people or personal property; weight of rain that collects on a roof.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

**D. Additional Conditions**

**1. Determination Of Receivables**

General Condition **F. Valuation** in the Commercial Inland Marine Conditions is replaced by the following:

**a.** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage, the following method will be used:

**(1)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(2)** Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

EXHIBIT C - PAGE 133

**b.** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(1)** The amount of the accounts for which there is no loss or damage;

**(2)** The amount of the accounts that you are able to reestablish or collect;

**(3)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(4)** All unearned interest and service charges.

**2. Recoveries**

The following is added to Loss Condition **H. Recovered Property** in the Commercial Inland Marine Conditions:

You will pay us the amount of all recoveries you receive for loss or damage paid by us. But any recoveries in excess of the amount we have paid belong to you.

**3.** The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

**a. Coverage Territory**

We cover records of accounts receivable:

**(1)** Within your "premises"; and

**(2)** Away from your "premises" while in transit or within premises of others if those premises are located or the transit is within:

**(a)** The United States of America (including its territories and possessions);

**(b)** Puerto Rico; and

**(c)** Canada.

**b. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

We will not pay the full amount of any loss if the value of all accounts receivable, except those in transit, at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for Coverage Applicable At All Locations.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of all accounts receivable, except those in transit, at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance for Coverage Applicable At All Locations by the figure determined in Step **(1);** and

**(3)** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

This condition will not apply to records of accounts receivable in transit, interest charges, excess collection expenses or expenses to reestablish your records of accounts receivable.

**c. Protection Of Records**

Whenever you are not open for business, and except while you are actually using the records, you must keep all records of accounts receivable in receptacles that are described in the Declarations.

**E. Definitions**

"Premises" means that interior portion of the building at the address shown in the Declarations that you occupy for your business.

EXHIBIT C - PAGE 134

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

© Insurance Services Office, Inc., 2011

EXHIBIT C - PAGE 135

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

   **(1)** The lowest basement floor; or

   **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

   **(1)** Are licensed for use on public roads; or

   **(2)** Are operated principally away from the described premises.

   This paragraph does not apply to:

      **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

© Insurance Services Office, Inc., 2011

EXHIBIT C - PAGE 136

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4),** we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

EXHIBIT C - PAGE 137

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4).** Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

EXHIBIT C - PAGE 139

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

    © Insurance Services Office, Inc., 2011

EXHIBIT C - PAGE 140

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

EXHIBIT C - PAGE 141

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011

EXHIBIT C - PAGE 142

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

**(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Building 1: | $ | 60,000 |
| Limit of Insurance – Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100

– 250

$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | | |
|---|---|---|
| Loss to Building 1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building 2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable – Building 1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable – Building 2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | $ | 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

EXHIBIT C - PAGE 144

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

 © Insurance Services Office, Inc., 2011

EXHIBIT C - PAGE 145

h. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

© Insurance Services Office, Inc., 2011

EXHIBIT C - PAGE 146

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

## F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

### Example 1 (Underinsurance)

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step **(1)**:  $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $100,000 ÷ $200,000 = .50

Step **(3)**: $40,000 x .50 = $20,000

Step **(4)**: $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

### Example 2 (Adequate Insurance)

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

EXHIBIT C - PAGE 147

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:    The value of the property is:

| | |
|---|---:|
| Building at Location 1: | $  75,000 |
| Building at Location 2: | $ 100,000 |
| Personal Property at Location 2: | $  75,000 |
| | $ 250,000 |

The Coinsurance percentage for it is:    90%

| | |
|---|---:|
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $ 180,000 |
| The Deductible is: | $    1,000 |

The amount of loss is:

| | |
|---|---:|
| Building at Location 2: | $  30,000 |
| Personal Property at Location 2: | $  20,000 |
| | $  50,000 |

Step **(1):**  $250,000 \times 90\% = \$225,000$

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):**  $180,000 \div \$225,000 = .80$

Step **(3):**  $50,000 \times .80 = \$40,000$

Step **(4):**  $40,000 - \$1,000 = \$39,000$

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

    © Insurance Services Office, Inc., 2011    CP 00 10 10 12

EXHIBIT C - PAGE 148

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| If: | The applicable Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3),** subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

EXHIBIT C - PAGE 149

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011
**CP 00 10 10 12**

EXHIBIT C - PAGE 150

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

EXHIBIT C - PAGE 151

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

EXHIBIT C - PAGE 152

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

**(a)** Used in the construction, alterations or additions; or

**(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

EXHIBIT C - PAGE 153

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

EXHIBIT C - PAGE 154

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

EXHIBIT C - PAGE 155

**3. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

**(1)** The Net Income of the business before the direct physical loss or damage occurred;

**(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

**(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

We will reduce the amount of your:

**(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**a.** We have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

**a.** The Net Income (Net Profit or Loss before income taxes), and

**b.** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

EXHIBIT C - PAGE 156

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**(1)** Prepaid freight – outgoing;

**(2)** Returns and allowances;

**(3)** Discounts;

**(4)** Bad debts;

**(5)** Collection expenses;

**(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

**(7)** Cost of merchandise sold (including transportation charges);

**(8)** Cost of other supplies consumed (including transportation charges);

**(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

**(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

**(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

When:   The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been:      $ 400,000

The Coinsurance percentage is:      50%

The Limit of Insurance is:      $ 150,000

The amount of loss is:      $ 80,000

Step **(1):** $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

When:   The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been:      $ 400,000

The Coinsurance percentage is:      50%

The Limit of Insurance is:      $ 200,000

The amount of loss is:      $ 80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1. Maximum Period Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

EXHIBIT C - PAGE 157

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

**(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

**(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

**(1)** The Limit of Insurance, multiplied by

**(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | The Limit of Insurance is: | $ 120,000 |
|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |
| | ($120,000 x 1/4 = $30,000) | |
| | If, in this example, the actual amount of loss is: | |
| | Days 1–30: | $ 40,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 90,000 |
| | We will pay: | |
| | Days 1–30: | $ 30,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

**a.** To activate this Optional Coverage:

**(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

**(a)** During the 12 months prior to the date of the Work Sheet; and

**(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

**(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

**(a)** The Coinsurance percentage shown in the Declarations; multiplied by

**(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

**b.** The Additional Condition, Coinsurance, is suspended until:

**(1)** 12 months after the effective date of this Optional Coverage; or

**(2)** The expiration date of this policy;

whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

**Example**

| When: | The Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1):** $100,000 \div $200,000 = .50

Step **(2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

EXHIBIT C - PAGE 158

**F. Definitions**

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   **a.** Your business activities occurring at the described premises; and

   **b.** The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   **a.** Begins:

      **(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      **(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   **b.** Ends on the earlier of:

      **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      **(2)** The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      **(1)** Regulates the construction, use or repair, or requires the tearing down, of any property; or

      **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   **a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   **b.** Continuing normal operating expenses incurred in connection with that premises, including:

      **(1)** Payroll; and

      **(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   **a.** The slowdown or cessation of your business activities; or

   **b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

EXHIBIT C - PAGE 159

This page intentionally left blank

EXHIBIT C - PAGE 160

WPP1827846 00

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

1. We cover loss or damage commencing:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

2. The coverage territory is:

   a. The United States of America (including its territories and possessions);

   b. Puerto Rico; and

   c. Canada.

EXHIBIT C - PAGE 161

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    **a.** Someone insured by this insurance;

    **b.** A business firm:

        **(1)** Owned or controlled by you; or

        **(2)** That owns or controls you; or

    **c.** Your tenant.

This will not restrict your insurance.

EXHIBIT C - PAGE 162

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

EXHIBIT C - PAGE 163

This page intentionally left blank

EXHIBIT C - PAGE 164

**COMMERCIAL PROPERTY**
**CP 02 99 06 07**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CANCELLATION CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

The following is added to the **Cancellation** Common Policy Condition:

If any one of the following conditions exists at any building that is Covered Property in this policy, we may cancel this Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least five days before the effective date of cancellation.

**A.** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

**1.** Seasonal unoccupancy;

**2.** Buildings in the course of construction, renovation or addition; or

**3.** Buildings to which the Vacancy Permit endorsement applies.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

**B.** After damage by a covered cause of loss, permanent repairs to the building:

**1.** Have not started; and

**2.** Have not been contracted for,

within 30 days of initial payment of loss.

**C.** The building has:

**1.** An outstanding order to vacate;

**2.** An outstanding demolition order;

**3.** Been declared unsafe by governmental authority.

**D.** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**E.** Failure to:

**1.** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

**2.** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

© ISO Properties, Inc., 2007                **Page 1 of 1**    ☐

EXHIBIT C - PAGE 165

This page intentionally left blank

EXHIBIT C - PAGE 166

POLICY NUMBER: WPP1827846 00

**COMMERCIAL PROPERTY**
**CP 04 11 10 12**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|:---:|:---:|:---:|
| 1 | 1 | P-1 |
| | | |
| | | |
| **Protective Safeguards "P-9" Description:** | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to the Commercial Property **Conditions:**

**Protective Safeguards**

**1.** As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

**2.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" Automatic Sprinkler System,** including related supervisory services.

Automatic Sprinkler System means:

**a.** Any automatic fire protective or extinguishing system, including connected:

  **(1)** Sprinklers and discharge nozzles;

  **(2)** Ducts, pipes, valves and fittings;

  **(3)** Tanks, their component parts and supports; and

  **(4)** Pumps and private fire protection mains.

**b.** When supplied from an automatic fire protective system:

  **(1)** Non-automatic fire protective systems; and

  **(2)** Hydrants, standpipes and outlets.

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

**"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

**a.** Hood:

**b.** Grease removal device;

**c.** Duct system; and

**d.** Wet chemical fire extinguishing equipment.

**"P-9",** the protective system described in the Schedule.

**CP 04 11 10 12**          © Insurance Services Office, Inc., 2011          **Page 1 of 2**

EXHIBIT C - PAGE 167

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss – Basic Form
Causes Of Loss – Broad Form
Causes Of Loss – Special Form
Mortgageholders Errors And Omissions Coverage Form
Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

**1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

**2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

# CALIFORNIA CHANGES – REPLACEMENT COST

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** An "open policy" is a policy under which the value of Covered Property is not fixed at policy inception, but is determined at the time of loss in accordance with policy provisions on valuation. The term "open policy" does not apply to Covered Property that is subject to an Agreed Value clause or similar clause that establishes an agreed value prior to loss, unless such clause has expired.

**B.** Under an "open policy", when the Replacement Cost Optional Coverage (Replacement Cost) is shown as applicable in the Declarations, that Coverage is replaced by the following:

**Replacement Cost**

**1.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of the applicable Coverage Form.

**2.** This Optional Coverage does not apply to:

   **a.** Personal property of others;

   **b.** Contents of a residence;

   **c.** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

   **d.** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**3.** We will not pay on a replacement cost basis for any loss or damage until the lost or damaged property is actually repaired or replaced. Prior to such repair or replacement, and in accordance with the terms of the applicable Loss Payment conditions in this policy, we will pay the actual cash value of the lost or damaged property as described in Paragraph **4.** below. If the actual cash value does not exhaust the applicable Limit of Insurance, we will then pay the difference between the actual cash value and the replacement cost, provided that the repair or replacement is completed:

   **a.** Within 12 months after our payment of the actual cash value; or

   **b.** Within 24 months after our payment of the actual cash value if the loss or damage relates to a state of emergency as described in Section 8558 of the Government Code;

unless we extend the time period for good cause.

The foregoing provisions do not constitute a waiver of our right to deny the claim for any valid reason or to restrict payment in cases of suspected fraud.

**4.** Actual cash value is determined as follows:

   **a.** In the event of a total loss to a building or structure, actual cash value is calculated as the Limit of Insurance applicable to that building or structure or the fair market value of the building or structure, whichever is less.

EXHIBIT C - PAGE 169

**b.** In the event of a partial loss to a building or structure, actual cash value is calculated as **b.1.** or **b.2.,** whichever is less:

  **1.** The amount it would cost to repair, rebuild or replace the property less a fair and reasonable deduction for physical depreciation of the components of the building or structure that are normally subject to repair or replacement during its useful life. Physical depreciation is based upon the condition of the property at the time of the loss;

  **2.** The Limit of Insurance applicable to the property.

**c.** In the event of a partial or total loss to Covered Property other than a building or structure, actual cash value is calculated as **c.1.** or **c.2.,** whichever is less:

  **1.** The amount it would cost to repair or replace the property less a fair and reasonable deduction for physical depreciation, based on the condition of the property at the time of loss;

  **2.** The Limit of Insurance applicable to the property.

**5.** With respect to tenants' improvements and betterments, the following also apply:

**a.** If the property is not repaired or replaced, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Condition of the applicable Coverage Form.

**b.** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repair or replacement.

**6.** We will not pay more for loss or damage on a replacement cost basis than the least of **a., b.** or **c.,** subject to **7.** below:

**a.** The Limit of Insurance applicable to the lost or damaged property;

**b.** The cost to replace the lost or damaged property with other property:

  **1.** Of comparable material and quality; and

  **2.** Used for the same purpose; or

**c.** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **6.b.** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**7.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**C. Extension Of Replacement Cost To Personal Property Of Others**

**1.** Under an "open policy", when the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **B.2.a.** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**2.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

EXHIBIT C - PAGE 170

COMMERCIAL PROPERTY
CP 10 30 10 12

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

  **a. Ordinance Or Law**

  The enforcement of or compliance with any ordinance or law:

  **(1)** Regulating the construction, use or repair of any property; or

  **(2)** Requiring the tearing down of any property, including the cost of removing its debris.

  This exclusion, Ordinance Or Law, applies whether the loss results from:

    **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

    **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

  **b. Earth Movement**

  **(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

  **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

  **(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

  **(a)** Airborne volcanic blast or airborne shock waves;

  **(b)** Ash, dust or particulate matter; or

  **(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a), (5)(b)** and **(5)(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

EXHIBIT C - PAGE 171

c. **Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

d. **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e. **Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

(1) Originates away from the described premises; or

(2) Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

f. **War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. **Water**

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

h. **"Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

    © Insurance Services Office, Inc., 2011    **CP 10 30 10 12**

EXHIBIT C - PAGE 172

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

 © Insurance Services Office, Inc., 2011 CP 10 30 10 12

EXHIBIT C - PAGE 174

4. **Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

a. **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused by or resulting from:

(a) Damage or destruction of "finished stock"; or

(b) The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

(2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(3) Any increase of loss caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

(4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(5) Any other consequential loss.

b. **Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

(a) Your cancelling the lease;

(b) The suspension, lapse or cancellation of any license; or

(c) Any other consequential loss.

c. **Legal Liability Coverage Form**

(1) The following exclusions do not apply to insurance under this Coverage Form:

(a) Paragraph **B.1.a.** Ordinance Or Law;

(b) Paragraph **B.1.c.** Governmental Action;

(c) Paragraph **B.1.d.** Nuclear Hazard;

(d) Paragraph **B.1.e.** Utility Services; and

(e) Paragraph **B.1.f.** War And Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

(a) **Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

(i) Your assumption of liability was executed prior to the accident; and

(ii) The building is Covered Property under this Coverage Form.

(b) **Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

EXHIBIT C - PAGE 175

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(2)** Changes in or extremes of temperature;

**(3)** Disease;

**(4)** Frost or hail; or

**(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(1)** Glass; or

**(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

    © Insurance Services Office, Inc., 2011

EXHIBIT C - PAGE 176

3. The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

   However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

      **(1)** A cause of loss listed in **2.a.** or **2.b.;**

      **(2)** One or more of the "specified causes of loss";

      **(3)** Breakage of building glass;

      **(4)** Weight of people or personal property; or

      **(5)** Weight of rain that collects on a roof.

3. This **Additional Coverage – Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

EXHIBIT C - PAGE 177

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

**h.** Retaining walls; and

**i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

**(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

**(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

**b.** The personal property which collapses is inside a building; and

**c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

**a.** A "specified cause of loss" other than fire or lightning; or

**b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

**a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

**b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

**c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

© Insurance Services Office, Inc., 2011

CP 10 30 10 12

EXHIBIT C - PAGE 178

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

**a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

© Insurance Services Office, Inc., 2011

EXHIBIT C - PAGE 179

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

**G. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

 © Insurance Services Office, Inc., 2011 **CP 10 30 10 12**

EXHIBIT C - PAGE 180

WPP1827846 00

# CALIFORNIA - CIVIL AUTHORITY CHANGE(S)

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM

**SCHEDULE**

| Prem. No. | Bldg. No. | Schedule Part A<br>Radius | Schedule Part B<br>Coverage Period |
|---|---|---|---|
| 1 | 1 | | |
| | | | |
| | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

**A. Amendment of Radius To Three Miles And Option For More Than Three Miles**

The Additional Coverage - Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in California, such one-mile radius is replaced by three miles or by the number of miles indicated in Part **A** of the Schedule, subject to all other provisions of that Additional Coverage. If there is no entry in Part **A** of the Schedule, the three-mile radius applies, subject to all other provisions of the Additional Coverage - Civil Authority.

**B. Coverage Period Option**

Under the Additional Coverage - Civil Authority, the four-week coverage period is replaced by the number of days indicated in Part **B** of the Schedule, subject to all other provisions of that Additional Coverage. If there is no entry in Part **B** of the Schedule, the four-week coverage period continues to apply, subject to all other provisions of the Additional Coverage - Civil Authority.

**C.** This endorsement does not increase the applicable Limit of Insurance.

EXHIBIT C - PAGE 181

This page intentionally left blank

EXHIBIT C - PAGE 182

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME COVERAGE PROVIDED ON AN ACTUAL LOSS SUSTAINED BASIS (ALS)

This endorsement modifies insurance provided under the following:

    BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
    BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM

The following is added at the end of the first paragraph of **B. Limits Of Insurance**.

If the phrase "ALS for 12 months" is shown as the Limit of Insurance, we will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage.  We will only pay for payroll expenses for 60 days following the date of direct physical loss or damage, unless a different number of days is shown in the Declarations.

Payroll expense includes:

1.  Payroll;
2.  Special compensation such as bonuses and other incentive compensation;
3.  Employee benefits, if directly related to payroll;
4.  FICA payments you pay;
5.  Union Dues you pay; and
6.  Workers' Compensation premiums.

EXHIBIT C - PAGE 183

This page intentionally left blank

EXHIBIT C - PAGE 184

CRIME AND FIDELITY
CR 00 21 11 15

# COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED FORM)

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is or is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F. Definitions.**

## A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit Of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Condition **E.1.k.** or **E.1.l.,** which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.g.:**

### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

### 2. Forgery Or Alteration

a. We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

(1) Made or drawn by or drawn upon you; or

(2) Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

b. If you are sued for refusing to pay any instrument covered in Paragraph **2.a.,** on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay for such legal expenses is in addition to the Limit of Insurance applicable to this Insuring Agreement.

### 3. Inside The Premises – Theft Of Money And Securities

We will pay for:

a. Loss of "money" and "securities" inside the "premises" or "financial institution premises":

(1) Resulting directly from "theft" committed by a person present inside such "premises" or "financial institution premises"; or

(2) Resulting directly from disappearance or destruction.

b. Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

c. Loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of, or unlawful entry into, those containers.

### 4. Inside The Premises – Robbery Or Safe Burglary Of Other Property

We will pay for:

a. Loss of or damage to "other property":

(1) Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

(2) Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

EXHIBIT C - PAGE 185

**b.** Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

**c.** Loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5. Outside The Premises**

We will pay for:

**a.** Loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**b.** Loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer And Funds Transfer Fraud**

**a.** We will pay for:

**(1)** Loss resulting directly from a fraudulent:

**(a)** Entry of "electronic data" or "computer program" into; or

**(b)** Change of "electronic data" or "computer program" within;

any "computer system" owned, leased or operated by you, provided the fraudulent entry or fraudulent change causes, with regard to Paragraphs **6.a.(1)(a)** and **6.a.(1)(b):**

**(i)** "Money", "securities" or "other property" to be transferred, paid or delivered; or

**(ii)** Your account at a "financial institution" to be debited or deleted.

**(2)** Loss resulting directly from a "fraudulent instruction" directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that account.

**b.** As used in Paragraph **6.a.(1),** fraudulent entry or fraudulent change of "electronic data" or "computer program" shall include such entry or change made by an "employee" acting, in good faith, upon a "fraudulent instruction" received from a computer software contractor who has a written agreement with you to design, implement or service "computer programs" for a "computer system" covered under this Insuring Agreement.

**7. Money Orders And Counterfeit Money**

We will pay for loss resulting directly from your having, in good faith, accepted in exchange for merchandise, "money" or services:

**a.** Money orders issued by any post office, express company or "financial institution" that are not paid upon presentation; or

**b.** "Counterfeit money" that is acquired during the regular course of business.

**B. Limit Of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit Of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

**1.** This insurance does not cover:

**a. Acts Committed By You, Your Partners Or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

**(1)** You; or

**(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons.

EXHIBIT C - PAGE 186

b.  **Acts Committed By Your Employees Learned Of By You Prior To The Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of such "theft" or dishonest act prior to the Policy Period shown in the Declarations.

c.  **Acts Committed By Your Employees, Managers, Directors, Trustees Or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

  **(1)** Whether acting alone or in collusion with other persons; or

  **(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

d.  **Confidential Or Personal Information**

Loss resulting from:

  **(1)** The disclosure or use of another person's or organization's confidential or personal information; or

  **(2)** The disclosure of your confidential or personal information. However, this Paragraph **1.d.(2)** does not apply to loss otherwise covered under this insurance that results directly from the use of your confidential or personal information.

For the purposes of this exclusion, confidential or personal information includes, but is not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

e.  **Data Security Breach**

Fees, costs, fines, penalties and other expenses incurred by you which are related to the access to or disclosure of another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

f.  **Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

g.  **Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

  **(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property";

  **(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance; or

  **(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

h.  **Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

i.  **Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

j.  **Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

k.  **Virtual Currency**

Loss involving virtual currency of any kind, by whatever name known, whether actual or fictitious including, but not limited to, digital currency, crypto currency or any other type of electronic currency.

l.  **War And Military Action**

Loss or damage resulting from:

  **(1)** War, including undeclared or civil war;

EXHIBIT C - PAGE 187

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** Insuring Agreement **A.1.** does not cover:

**a. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**b. Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c. Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.** Insuring Agreements **A.3.**, **A.4.** and **A.5.** do not cover:

**a. Accounting Or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c. Fire**

Loss or damage resulting from fire, however caused, except:

**(1)** Loss of or damage to "money" and "securities"; and

**(2)** Loss from damage to a safe or vault.

**d. Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e. Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semitrailers or equipment and accessories attached to them.

**f. Transfer Or Surrender Of Property**

**(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "financial institution premises":

**(a)** On the basis of unauthorized instructions; or

**(b)** As a result of a threat including, but not limited to:

**(i)** A threat to do bodily harm to any person;

**(ii)** A threat to do damage to any property;

**(iii)** A threat to introduce a denial of service attack into any "computer system";

**(iv)** A threat to introduce a virus or other malicious instruction into any "computer system" which is designed to damage, destroy or corrupt "electronic data" or "computer programs" stored within the "computer system";

**(v)** A threat to contaminate, pollute or render substandard your products or goods; or

**(vi)** A threat to disseminate, divulge or utilize:

**i.** Your confidential information;

**ii.** Confidential or personal information of another person or organization; or

**iii.** Weaknesses in the source code within any "computer system".

 © Insurance Services Office, Inc., 2015 CR 00 21 11 15

EXHIBIT C - PAGE 188

**(2)** However, this exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g. Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h. Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone else acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.** Insuring Agreement **A.6.** does not cover:

**a. Authorized Access**

Loss resulting from a fraudulent:

**(1)** Entry of "electronic data" or "computer program" into; or

**(2)** Change of "electronic data" or "computer program" within;

any "computer system" owned, leased or operated by you by a person or organization with authorized access to that "computer system", except when covered under Insuring Agreement **A.6.b.**

**b. Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**c. Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**d. Fraudulent Instructions**

Loss resulting from an "employee" or "financial institution" acting upon any instruction to:

**(1)** Transfer, pay or deliver "money", "securities" or "other property"; or

**(2)** Debit or delete your account;

which instruction proves to be fraudulent, except when covered under Insuring Agreement **A.6.a.(2)** or **A.6.b.**

**e. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

**E. Conditions**

The following conditions apply in addition to the Common Policy Conditions:

**1. Conditions Applicable To All Insuring Agreements**

**a. Additional Premises Or Employees**

If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" is not required, and no additional premium will be charged for the remainder of the Policy Period shown in the Declarations.

**b. Concealment, Misrepresentation Or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**(1)** This insurance;

**(2)** The property covered under this insurance;

**(3)** Your interest in the property covered under this insurance; or

**(4)** A claim under this insurance.

© Insurance Services Office, Inc., 2015

**c. Consolidation – Merger Or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

**(1)** You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

**(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**d. Cooperation**

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**e. Duties In The Event Of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property", you must:

**(1)** Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities;

**(2)** Give us a detailed, sworn proof of loss within 120 days;

**(3)** Cooperate with us in the investigation and settlement of any claim;

**(4)** Produce for our examination all pertinent records;

**(5)** Submit to examination under oath at our request and give us a signed statement of your answers; and

**(6)** Secure all of your rights of recovery against any person or organization responsible for the loss and do nothing to impair those rights.

**f. Employee Benefit Plans**

The "employee benefit plans" shown in the Declarations (hereinafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**, subject to the following:

**(1)** If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator is responsible for selecting a Limit of Insurance for Insuring Agreement **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required under ERISA as if each Plan were separately insured.

**(2)** With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(3)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(4)** If two or more Plans are insured under this insurance, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** Of commingled "money", "securities" or "other property" of two or more Plans;

resulting directly from an "occurrence", will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required under ERISA for each Plan bears to the total of those limits.

**(5)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

 © Insurance Services Office, Inc., 2015

EXHIBIT C - PAGE 190

g.  **Extended Period To Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

(1)  No later than one year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(2)  No later than one year from the date of that cancellation with regard to any "employee benefit plan".

h.  **Joint Insured**

(1)  If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

(2)  If any Insured, or partner, "member", "manager", officer, director or trustee of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

(3)  An "employee" of any Insured is considered to be an "employee" of every Insured.

(4)  If this insurance or any of its coverages are cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

(a)  No later than one year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(b)  No later than one year from the date of that cancellation with regard to any "employee benefit plan".

(5)  We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

(6)  Payment by us to the first Named Insured for loss sustained by any Insured, or payment by us to any "employee benefit plan" for loss sustained by that Plan, shall fully release us on account of such loss.

i.  **Legal Action Against Us**

You may not bring any legal action against us involving loss:

(1)  Unless you have complied with all the terms of this insurance;

(2)  Until 90 days after you have filed proof of loss with us; and

(3)  Unless brought within two years from the date you "discovered" the loss.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

j.  **Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

k.  **Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**

(1)  **Loss Sustained Partly During This Insurance And Partly During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

(a)  Partly during the Policy Period shown in the Declarations; and

(b)  Partly during the policy period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest;

and this insurance became effective at the time of cancellation of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the policy period(s) of the prior insurance.

**(2) Loss Sustained Entirely During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the policy period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest, we will pay for the loss, provided:

(a) This insurance became effective at the time of cancellation of the prior insurance; and

(b) The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the policy period(s) of any other prior insurance.

**(3)** In settling loss under Paragraphs **k.(1)** and **k.(2):**

(a) The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

(b) We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this insurance, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other Deductible Amount that may have been applicable to the loss.

**(4)** The following examples demonstrate how we will settle losses subject to this condition:

**Example Number 1**

The Insured sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B.**

**Policy A**

The current policy. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

**Policy B**

Issued prior to Policy **A.** Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

**Settlement Of Loss**

The amount of loss sustained under Policy **A** is $2,500 and under Policy **B,** $7,500.

The highest single Limit of Insurance applicable to this entire loss is $50,000 written under Policy **A.** The Policy **A** Deductible Amount of $5,000 applies. The loss is settled as follows:

(a) The amount of loss sustained under Policy **A** ($2,500) is settled first. The amount we will pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).

(b) The remaining amount of loss sustained under Policy **B** ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy **A** of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we will pay for this loss is $5,000.

**Example Number 2**

The Insured sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B.**

**Policy A**

The current policy. Written at a Limit of Insurance of $125,000 and a Deductible Amount of $10,000.

    © Insurance Services Office, Inc., 2015    CR 00 21 11 15

EXHIBIT C - PAGE 192

### Policy B

Issued prior to Policy **A.** Written at a Limit of Insurance of $150,000 and a Deductible Amount of $25,000.

#### Settlement Of Loss

The amount of loss sustained under Policy **A** is $175,000 and under Policy **B,** $75,000.

The highest single Limit of Insurance applicable to this entire loss is $150,000 written under Policy **B.** The Policy **A** Deductible Amount of $10,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($175,000) is settled first. The amount we will pay is the Policy **A** Limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000, which is greater than the $125,000 policy limit.

**(b)** The remaining amount of loss sustained under Policy **B** ($75,000) is settled next. The amount we will pay is $25,000 (i.e., $150,000 Policy **B** limit - $125,000 paid under Policy **A** = $25,000).

The most we will pay for this loss is $150,000.

### Example Number 3

The Insured sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies **A, B, C** and **D.**

#### Policy A

The current policy. Written at a Limit of Insurance of $1,000,000 and a Deductible Amount of $100,000.

#### Policy B

Issued prior to Policy **A.** Written at a Limit of Insurance of $750,000 and a Deductible Amount of $75,000.

#### Policy C

Issued prior to Policy **B.** Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

#### Policy D

Issued prior to Policy **C.** Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

### Settlement Of Loss

The amount of loss sustained under Policy **A** is $350,000; under Policy **B,** $250,000; under Policy **C,** $600,000; and under Policy **D,** $800,000.

The highest single Limit of Insurance applicable to this entire loss is $1,000,000 written under Policy **A.** The Policy **A** Deductible Amount of $100,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($350,000) is settled first. The amount we will pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

**(b)** The amount of loss sustained under Policy **B** ($250,000) is settled next. The amount we will pay is $250,000 (no deductible is applied).

**(c)** The amount of loss sustained under Policy **C** ($600,000) is settled next. The amount we will pay is $500,000, the policy limit (no deductible is applied).

**(d)** We will not make any further payment under Policy **D,** as the maximum amount payable under the highest single Limit of Insurance applying to the loss of $1,000,000 under Policy **A** has been satisfied.

The most we will pay for this loss is $1,000,000.

**I. Loss Sustained During Prior Insurance Not Issued By Us Or Any Affiliate**

**(1)** If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the policy period of any prior cancelled insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we will pay for the loss under this insurance, provided:

**(a)** This insurance became effective at the time of cancellation of the prior insurance; and

**(b)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

**(2)** In settling loss subject to this condition:

**(a)** The most we will pay for the entire loss is the lesser of the Limits of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior cancelled insurance.

**(b)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under the prior cancelled insurance.

**(3)** The insurance provided under this condition is subject to the following:

**(a)** If loss covered under this condition is also partially covered under Condition **E.1.k.,** the amount recoverable under this condition is part of, not in addition to, the amount recoverable under Condition **E.1.k.**

**(b)** For loss covered under this condition that is not subject to Paragraph **l.(3)(a),** the amount recoverable under this condition is part of, not in addition to, the Limit of Insurance applicable to the loss covered under this insurance and is limited to the lesser of the amount recoverable under:

**(i)** This insurance as of its effective date; or

**(ii)** The prior cancelled insurance had it remained in effect.

**m. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1) Primary Insurance**

When this insurance is written as primary insurance, and:

**(a)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit Of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance covering the same loss other than that described in Paragraph **m.(1)(a),** we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**(2) Excess Insurance**

**(a)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

**(b)** However, if loss covered under this insurance is subject to a deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance**.**

**n. Ownership Of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease;

**(2)** That is held by you in any capacity; or

**(3)** For which you are legally liable, provided you were liable for the property prior to the time the loss was sustained.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**o. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

 © Insurance Services Office, Inc., 2015 CR 00 21 11 15

EXHIBIT C - PAGE 194

**p. Recoveries**

  **(1)** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or by you, shall be applied net of the expense of such recovery:

    **(a)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

    **(b)** Second, to us in satisfaction of amounts paid in settlement of your claim;

    **(c)** Third, to you in satisfaction of any Deductible Amount; and

    **(d)** Fourth, to you in satisfaction of any loss not covered under this insurance.

  **(2)** Recoveries do not include any recovery:

    **(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

    **(b)** Of original "securities" after duplicates of them have been issued.

**q. Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**r. Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**s. Valuation – Settlement**

The value of any loss for purposes of coverage under this insurance shall be determined as follows:

  **(1) Money**

Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

    **(a)** At face value in the "money" issued by that country; or

    **(b)** In the United States of America dollar equivalent, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

  **(2) Securities**

Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

    **(a)** Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

    **(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

      **(i)** Market value of the "securities" at the close of business on the day the loss was "discovered"; or

      **(ii)** Limit of Insurance applicable to the "securities".

  **(3) Property Other Than Money And Securities**

    **(a)** Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

      **(i)** The Limit of Insurance applicable to the lost or damaged property;

      **(ii)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

      **(iii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

 © Insurance Services Office, Inc., 2015

EXHIBIT C - PAGE 195

**(b)** We will not pay on a replacement cost basis for any loss or damage to property covered under Paragraph **s.(3)(a):**

    **(i)** Until the lost or damaged property is actually repaired or replaced; and

    **(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(c)** We will, at your option, pay for loss or damage to such property:

    **(i)** In the "money" of the country in which the loss or damage was sustained; or

    **(ii)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage was sustained, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

**(d)** Any property that we pay for or replace becomes our property.

**2. Conditions Applicable To Insuring Agreement A.1.**

  **a. Termination As To Any Employee**

This Insuring Agreement terminates as to any "employee":

**(1)** As soon as:

    **(a)** You; or

    **(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you; or

**(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in Territory Condition **E.1.q.** for a period of not more than 90 consecutive days.

**3. Conditions Applicable To Insuring Agreement A.2.**

  **a. Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

  **b. Electronic And Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

  **c. Proof Of Loss**

You must include with your proof of loss any instrument involved in that loss or, if that is not possible, an affidavit setting forth the amount and cause of loss.

  **d. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.q.** does not apply to Insuring Agreement **A.2.**

**4. Conditions Applicable To Insuring Agreements A.4. And A.5.**

  **a. Armored Motor Vehicle Companies**

Under Insuring Agreement **A.5.,** we will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

  **b. Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

**(1)** Precious metals, precious or semiprecious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

 © Insurance Services Office, Inc., 2015 **CR 00 21 11 15**

EXHIBIT C - PAGE 196

**(2)** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**5. Conditions Applicable To Insuring Agreement A.6.**

**a. Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**b. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.q.** does not apply to Insuring Agreement **A.6.**

**F. Definitions**

**1.** "Computer program" means a set of related electronic instructions, which direct the operation and function of a computer or devices connected to it, which enable the computer or devices to receive, process, store or send "electronic data".

**2.** "Computer system" means:

**a.** Computers, including Personal Digital Assistants (PDAs) and other transportable or handheld devices, electronic storage devices and related peripheral components;

**b.** Systems and applications software; and

**c.** Related communications networks;

by which "electronic data" is collected, transmitted, processed, stored or retrieved.

**3.** "Counterfeit money" means an imitation of "money" which is intended to deceive and to be taken as genuine.

**4.** "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

**5.** "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

**6.** "Electronic data" means information, facts, images or sounds stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software) on data storage devices, including hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**7.** "Employee":

**a.** Means:

**(1)** Any natural person:

**(a)** While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any dishonest act committed by the "employee";

**(b)** Whom you compensate directly by salary, wages or commissions; and

**(c)** Whom you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent "employee", as defined in Paragraph **7.a.(1),** who is on leave; or

**(b)** To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you;

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary "employee" as defined in Paragraph **7.a.(2);**

**(4)** Any natural person who is:

**(a)** A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; or

**(b)** Your director or trustee while that person is engaged in handling "money", "securities" or "other property" of any "employee benefit plan";

**(5)** Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained by you as a consultant while performing services for you;

**(6)** Any natural person who is a guest student or intern pursuing studies or duties;

**(7)** Any natural person employed by an entity merged or consolidated with you prior to the effective date of this insurance; and

**(8)** Any natural person who is your "manager", director or trustee while:

**(a)** Performing acts within the scope of the usual duties of an "employee"; or

**(b)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

**b.** Does not mean:

Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **7.a.**

**8.** "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and that is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**9.** "Financial institution" means:

**a.** With regard to Insuring Agreement **A.3.:**

**(1)** A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution; or

**(2)** An insurance company.

**b.** With regard to Insuring Agreement **A.6.:**

**(1)** A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution;

**(2)** An insurance company; or

**(3)** A stock brokerage firm or investment company.

**c.** Other than Insuring Agreements **A.3.** and **A.6.,** any financial institution.

**10.** "Financial institution premises" means the interior of that portion of any building occupied by a "financial institution" as defined in Paragraph **F.9.a.**

**11.** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**12.** "Fraudulent instruction" means:

**a.** With regard to Insuring Agreement **A.6.a.(2):**

**(1)** A computer, telefacsimile, telephone or other electronic instruction directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that "transfer account", which instruction purports to have been issued by you, but which in fact was fraudulently issued by someone else without your knowledge or consent; or

**(2)** A written instruction (other than those covered under Insuring Agreement **A.2.**) issued to a "financial institution" directing the "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that "transfer account", through an electronic funds transfer system at specified times or under specified conditions, which instruction purports to have been issued by you, but which in fact was issued, forged or altered by someone else without your knowledge or consent.

**b.** With regard to Insuring Agreement **A.6.b.:**

A computer, telefacsimile, telephone or other electronic, written or voice instruction directing an "employee" to enter or change "electronic data" or "computer programs" within a "computer system" covered under the Insuring Agreement, which instruction in fact was fraudulently issued by your computer software contractor.

**13.** "Manager" means a natural person serving in a directorial capacity for a limited liability company.

**14.** "Member" means an owner of a limited liability company represented by its membership interest who, if a natural person, may also serve as a "manager".

EXHIBIT C - PAGE 198

15. "Messenger" means you, or your relative, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

16. "Money" means:

   a. Currency, coins and bank notes in current use and having a face value;

   b. Traveler's checks and money orders held for sale to the public; and

   c. In addition, includes:

      (1) Under Insuring Agreements **A.1.** and **A.2.,** deposits in your account at any "financial institution"; and

      (2) Under Insuring Agreement **A.6.,** deposits in your account at a "financial institution" as defined in Paragraph **F.9.b.**

17. "Occurrence" means:

   a. Under Insuring Agreement **A.1.:**

      (1) An individual act;

      (2) The combined total of all separate acts whether or not related; or

      (3) A series of acts whether or not related;

      committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

   b. Under Insuring Agreement **A.2.:**

      (1) An individual act;

      (2) The combined total of all separate acts whether or not related; or

      (3) A series of acts whether or not related;

      committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

   c. Under all other Insuring Agreements:

      (1) An individual act or event;

      (2) The combined total of all separate acts or events whether or not related; or

      (3) A series of acts or events whether or not related;

      committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

18. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include "computer programs", "electronic data" or any property specifically excluded under this insurance.

19. "Premises" means the interior of that portion of any building you occupy in conducting your business.

20. "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

   a. Caused or threatened to cause that person bodily harm; or

   b. Committed an obviously unlawful act witnessed by that person.

21. "Safe burglary" means the unlawful taking of:

   a. Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

   b. A safe or vault from inside the "premises".

22. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

   a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

   but does not include "money".

23. "Theft" means the unlawful taking of property to the deprivation of the Insured.

24. "Transfer account" means an account maintained by you at a "financial institution" from which you can initiate the transfer, payment or delivery of "money" or "securities":

   a. By means of computer, telefacsimile, telephone or other electronic instructions; or

   b. By means of written instructions (other than those covered under Insuring Agreement **A.2.**) establishing the conditions under which such transfers are to be initiated by such "financial institution" through an electronic funds transfer system.

25. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

 © Insurance Services Office, Inc., 2015

This page intentionally left blank

EXHIBIT C - PAGE 200

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

EXHIBIT C - PAGE 201

This page intentionally left blank

EXHIBIT C - PAGE 202

POLICY NUMBER: WPP1827846 00

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

---

IL 00 21 09 08                 © ISO Properties, Inc., 2007                 **Page 1 of 2**   ☐

EXHIBIT C - PAGE 203

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007
**IL 00 21 09 08**    ❑

EXHIBIT C - PAGE 204

IL 01 02 05 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

With respect to an "open policy", the following are added to any provision which uses the term actual cash value:

**A.** In the event of a total loss to a building or structure, actual cash value is calculated as the lesser of the following:

  **1.** The Limit of Insurance applicable to that building or structure; or

  **2.** The fair market value of the building or structure.

**B.** In the event of a partial loss to a building or structure, actual cash value is calculated as the lesser of the following:

  **1.** The amount it would cost to repair, rebuild or replace the property less a fair and reasonable deduction for physical depreciation of the components of the building or structure that are normally subject to repair or replacement during its useful life. Physical depreciation is based upon the condition of the property at the time of the loss; or

  **2.** The Limit of Insurance applicable to the property.

**C.** In the event of a partial or total loss to Covered Property other than a building or structure, actual cash value is calculated as the lesser of the following:

  **1.** The amount it would cost to repair or replace the property less a fair and reasonable deduction for physical depreciation, based on the condition of the property at the time of loss; or

  **2.** The Limit of Insurance applicable to the property.

**D.** An "open policy" is a policy under which the value of Covered Property is not fixed at policy inception, but is determined at the time of loss in accordance with policy provisions on valuation. The term "open policy" does not apply to Covered Property that is subject to an Agreed Value clause or similar clause that establishes an agreed value prior to loss, unless such clause has expired.

IL 01 02 05 05                    © ISO Properties, Inc., 2005                    **Page 1 of 1**    ☐

EXHIBIT C - PAGE 205

This page intentionally left blank

EXHIBIT C - PAGE 206

# CALIFORNIA CHANGES – ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

EXHIBIT C - PAGE 207

This page intentionally left blank

EXHIBIT C - PAGE 208

IL 01 04 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL
> COVERAGES, CONDITIONS, DEFINITIONS
> FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
> FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM
> STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following with respect to loss ("loss") or damage caused by fire:

We do not provide coverage to the insured ("insured") who, whether before or after a loss ("loss"), has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** That insured's ("insured's") interest in the Covered Property; or

**4.** A claim under this Coverage Part or Coverage Form.

**C.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following with respect to loss ("loss") or damage caused by a Covered Cause of Loss other than fire:

This Coverage Part is void if any insured ("insured"), whether before or after a loss ("loss"), has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** An insured's ("insured's") interest in the Covered Property; or

**4.** A claim under this Coverage Part or Coverage Form.

**D.** Except as provided in **E.,** the **Appraisal** Condition is replaced by the following:

If we and you disagree on the value of the property or the amount of loss ("loss"), either may make written request for an appraisal of the loss ("loss"). If the request is accepted, each party will select a competent and impartial appraiser. Each party shall notify the other of the appraiser selected within 20 days of the request. The two appraisers will select an umpire. If they cannot agree within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss ("loss"). If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**E.** The Appraisal Condition in:

**1.** Business Income (And Extra Expense) Coverage Form **CP 00 30;** and

**2.** Business Income (Without Extra Expense) Coverage Form **CP 00 32;**

---

**IL 01 04 09 07**                   © ISO Properties, Inc., 2006                   **Page 1 of 2**

EXHIBIT C - PAGE 209

is replaced by the following:

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written request for an appraisal of the loss. If the request is accepted, each party will select a competent and impartial appraiser. Each party shall notify the other of the appraiser selected within 20 days of the request. The two appraisers will select an umpire. If they cannot agree within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

EXHIBIT C - PAGE 211

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

  **(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

  **(b)** Continuation of the policy coverage would:

    **(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

    **(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

**(1)** Accepted an offer of earthquake coverage; or

**(2)** Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

EXHIBIT C - PAGE 212

**C.** The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

**1.** Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

**2. Residential Property**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below.

**b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

**(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

**(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

**(3)** We have:

**(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

**(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

**c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority, that included an earthquake policy premium surcharge.

**d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

**3.** We are not required to send notice of nonrenewal in the following situations:

**a.** If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

EXHIBIT C - PAGE 213

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.,** to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

EXHIBIT C - PAGE 214

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

    **a.** Any of the following, whether belonging to any insured or to others:

      **(1)** Computer hardware, including microprocessors;

      **(2)** Computer application software;

      **(3)** Computer operating systems and related software;

      **(4)** Computer networks;

      **(5)** Microprocessors (computer chips) not part of any computer system; or

      **(6)** Any other computerized or electronic equipment or components; or

    **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

    **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

    **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

EXHIBIT C - PAGE 215

This page intentionally left blank

EXHIBIT C - PAGE 216

IL 09 52 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

IL 09 52 01 15 © Insurance Services Office, Inc., 2015 **Page 1 of 1**

EXHIBIT C - PAGE 217

This page intentionally left blank

EXHIBIT C - PAGE 218

WPP1827846 00

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| |
|---|
| **SCHEDULE – PART I** |
| **Terrorism Premium (Certified Acts)**  ▉▉▉▉ |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| Commercial Property Coverage Part<br>Commercial General Liability Coverage Part |
| **Additional information, if any, concerning the terrorism premium:** |
| **SCHEDULE – PART II**<br>**Federal share of terrorism losses**       81**% Year: 20** 19<br>(Refer to Paragraph **B.** in this endorsement.)<br><br>**Federal share of terrorism losses**       80**% Year: 20** 20<br>(Refer to Paragraph **B.** in this endorsement.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

EXHIBIT C - PAGE 219

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

EXHIBIT C - PAGE 220

# IDENTITY RECOVERY COVERAGE
## IDENTITY THEFT CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT

The following is added as an Additional Coverage.  If this is being endorsed onto a multi-section form, it is added to the Property section:

**IDENTITY RECOVERY COVERAGE**

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met:

1.  There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this policy; and

2.  Such "identity theft" is first discovered by the "identity recovery insured" during the policy period for which this Identity Recovery coverage is applicable; and

3.  Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured."

If all three of the requirements listed above have been met, then we will provide the following to the "identity recovery insured":

1.  **Case Management Service**
    Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

2.  **Expense Reimbursement**
    Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft."

This coverage is additional insurance.

**EXCLUSIONS**

The following additional exclusions apply to this coverage:

We do not cover loss or expense arising from any of the following.

1.  The theft of a professional or business identity.

2.  Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any authorized representative of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

3.  An "identity theft" that is not reported in writing to the police.

**LIMITS**

Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement coverage.

Expense Reimbursement coverage is subject to a limit of $15,000 annual aggregate per "identity recovery insured." Regardless of the number of claims, this limit is the most we will pay for the total of all loss or expense arising out of all "identity thefts" to any one "identity recovery insured" which are first discovered by the "identity recovery insured" during a 12-month period starting with the beginning of the present annual policy period. If an "identity theft" is first discovered in one policy period and continues into other policy periods, all loss and expense arising from such "identity theft" will be subject to the aggregate limit applicable to the policy period when the "identity theft" was first discovered.

EXHIBIT C - PAGE 221

Legal costs as provided under item d. of the definition of "identity recovery expenses" are part of, and not in addition to, the Expense Reimbursement coverage limit.

Item e. (Lost Wages) and item f. (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to a sublimit of $5,000. This sublimit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

Item g. (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

Item h. (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expenses Reimbursement coverage limit. Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

## DEDUCTIBLE

Case Management Service is not subject to a deductible.

Expense Reimbursement coverage is subject to a deductible of $100. Any one "identity recovery insured" shall be responsible for only one deductible under this Identity Recovery Coverage during any one policy period.

## CONDITIONS

The following additional conditions apply to this coverage:

**A. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-877-645-7434**.

The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

1. Information and advice for how to respond to a possible "identity theft"; and

2. Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity recovery expenses."

**B. Services**

The following conditions apply as respects any services provided by us or our designees to any "identity recovery insured" under this endorsement:

1. Our ability to provide helpful services in the event of an "identity theft" depends on the cooperation, permission and assistance of the "identity recovery insured."

2. All services may not be available or applicable to all individuals. For example, "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

3. We do not warrant or guarantee that our services will end or eliminate all problems associated with an "identity theft" or prevent future "identity thefts."

EXHIBIT C - PAGE 222

**DEFINITIONS**

With respect to the provisions of this endorsement only, the following definitions are added:

1. **"Identity Recovery Case Manager"** means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured." This includes, with the permission and cooperation of the "identity recovery insured," written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

2. **"Identity Recovery Expenses"** means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft":

   a. Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft."

   b. Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft."

   c. Costs for credit reports from established credit bureaus.

   d. Fees and expenses for an attorney approved by us for the following:

      (1) The defense of any civil suit brought against an "identity recovery insured."

      (2) The removal of any civil judgment wrongfully entered against an "identity recovery insured."

      (3) Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

      (4) Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

      (5) The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured."

   e. Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

   f. Actual costs for supervision of children or elderly or infirm relatives or dependants of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured."

   g. Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured."

   h. Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft."

      (1) Such costs include:

         (A) Costs by the "identity recovery insured" to recover control over his or her personal identity.

         (B) Deductibles or service fees from financial institutions.

      (2) Such costs do not include:

         (A) Costs to avoid, prevent or detect "identity theft" or other loss.

         (B) Money lost or stolen.

         (C) Costs that are restricted or excluded elsewhere in this endorsement or policy.

3. **"Identity Recovery Insured"** means the following:

   a. When the business insured under this policy is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the insured business and their spouse or domestic partner.

   b. When the entity insured under this policy is a partnership, the "identity recovery insureds" are the current partners.

EXHIBIT C - PAGE 223

    c.   When the entity insured under this policy is a corporation or other organization, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

        (1)  The chief executive of the insured entity; or

        (2)  As respects a religious institution, the senior ministerial employee.

An "identity recovery insured" must always be an individual person. The entity insured under this policy is not an "identity recovery insured."

4.   **"Identity Theft"** means the fraudulent use of the social security number or other method of identifying an "identity recovery insured." This includes fraudulently using the personal identity of an "identity recovery insured" to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

All other provisions of this policy apply.

EXHIBIT C - PAGE 224

WPP1827846 00

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS

The Exclusion Section of the Liability Coverage provided under this policy is amended to add the following:

**Asbestos**

A.   This insurance does not apply to any loss of, "bodily injury," "property damage," or "personal and advertising injury"" arising out of the actual, alleged or suspected:

   1.   Ingestion, inhalation, absorption, presence or exposure or threat of exposure to asbestos in any form, or goods, products containing any form of asbestos;

   2.   Use of any form of asbestos in constructing or manufacturing any good, product or structure;

   3.   Removal of any form of asbestos from any good, product or structure; or

   4.   The manufacture, intellectual development, sale, transportation, storage, or disposal of asbestos or goods or products containing any form of asbestos.

B.   We will not pay:

   1.   Loss, cost or expense, including but not limited to defense costs, claim expenses, bonds or fees arising out of any request, demand, or order that any insured or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, or mitigate; or in any way respond to or assess the effects of asbestos; or repair, replace or improve any property as a result of such effects; or

   2.   Loss, cost or expense arising out of any claim or "suit" by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, or mitigating; or in any way responding to or assessing the effects of asbestos; or repairing, replacing or improving any property as a result of such effects.

C.   This exclusion applies whether or not:

   1.   Such loss, cost or expense was caused by the instigation of, or with the direct or indirect involvement of any Named Insured, the Named Insured's employees, Additional Insureds or other persons on the Named Insured's premises or worksite at any time.

   2.   Such loss, cost or expense was caused by or arising out of the failure at any time of any Named Insured, the Named Insured's employees, Additional Insureds, or other persons on any Named Insured's premises or worksite to supervise or keep the premise or worksite in a safe condition.

EXHIBIT C - PAGE 225

This page intentionally left blank

EXHIBIT C - PAGE 226

POLICY NUMBER: WPP1827846 00

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – LEAD

The Exclusion Section of the Liability Coverage provided under this policy is amended to add the following:

**Lead**

A.    Any injury or damage arising out of the actual, alleged, threatened, or suspected:

   1.    Ingestion, inhalation, absorption, presence, or threat of exposure to lead in any form, or goods or, products containing lead in any form;

   2.    Use of lead in any form in constructing or manufacturing any good, product or structure;

   3.    Removal of lead in any form from any good, product or structure;

   4.    Discharge, dispersal, seepage, migration, release or escape of lead in any form; or

   5.    Manufacture, intellectual development, sale, transportation, storage or disposal of lead in any form, or goods or products containing lead in any form.

B.    Any loss, cost or expense arising out of any:

   1.    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, lead in any form;

   2.    Claim or suit by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, or mitigating, or in any way responding to, or assessing the effects of lead in any form, or the repair, replacement or improvement of any property as a result of such effects;

C.    Paragraph B. applies whether or not such loss, cost or expense:

   1.    Was caused by the instigation of, or with the direct or indirect involvement of, any Named Insured, the Named Insured's employees, additional insureds or other persons on the insured's premises or worksite at any time; or

   2.    Arises out of the failure at any time of any Named Insured, the Named Insured's employees, additional insureds or other persons on any Named Insured's premises or worksite to supervise or keep the premise or worksite in a safe condition.

D.    Fines or penalties imposed by a governmental authority because of or in connection with any activity, event, condition or circumstance contained or described in A., B., or C. above.

IL990048 0117                                                                                                 Page 1 of 1

EXHIBIT C - PAGE 227

This page intentionally left blank

EXHIBIT C - PAGE 228

# CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

EXHIBIT C - PAGE 229

This page intentionally left blank

EXHIBIT C - PAGE 230

AAIS
IM 2009 01 12
Page 1 of 2

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## CALIFORNIA

1. Under Perils Excluded, Criminal, Fraudulent, Dishonest, Or Illegal Acts is amended to include the following:

   However, with respect to a covered loss caused by fire, this exclusion does not apply to an insured who did not cooperate with or contribute to the act that caused such loss.

   Subject to all other "terms" of this policy, "our" payment to an insured who did not cooperate in or contribute to the act that caused the loss may be limited to that person's insurable interest in the property, less any payment made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

2. In all coverage forms except the Builders' Risk - Rehabilitation And Renovation Form, under Valuation, Actual Cash Value, if applicable, is amended to include the following:

   a. The actual cash value of covered property will be determined as:

      1) the amount it would cost to repair, rebuild, or replace the lost, damaged, or destroyed property less a fair and reasonable deduction for physical depreciation; or
      2) the "limit" applicable to that property at the time of the loss;

      whichever is less.

   b. The condition of the property at the time of the loss is the basis for determining the amount of physical depreciation. The expense of labor necessary to repair, rebuild, or replace covered property is not a component of physical depreciation.

   c. a. and b. above do not apply to property subject to Agreed Amount valuation "terms" or an item of property specifically scheduled with a value applicable to such item.

3. In the Builders' Risk - Rehabilitation And Renovation Form, under Valuation, Existing Building, Actual Cash Value, if applicable, is amended to include the following:

   a. The actual cash value of covered property will be determined as:

      1) the amount it would cost to repair, rebuild, or replace the lost, damaged, or destroyed property less a fair and reasonable deduction for physical depreciation; or
      2) the "limit" applicable to that property at the time of the loss;

      whichever is less.

   b. The condition of the property at the time of the loss is the basis for determining the amount of physical depreciation. The expense of labor necessary to repair, rebuild, or replace covered property is not a component of physical depreciation.

   c. a. and b. above do not apply to property subject to Stated Value valuation "terms" or an item of property specifically scheduled with a value applicable to such item.

4. In the Builders' Risk - Rehabilitation And Renovation Form, under Valuation, Building Materials is deleted and replaced by the following:

   **Building Materials** --

   a. **Actual Cash Value** -- The value of "building materials" will be based on the actual cash value at the time of loss (less a fair and reasonable deduction for physical depreciation).

Copyright, American Association of Insurance Services, Inc., 2012

EXHIBIT C - PAGE 231

**AAIS**
**IM 2009 01 12**
**Page 2 of 2**

b.  **Actual Cash Value Means** -- The actual cash value of "building materials" means:

1)  the actual cash value of "building materials" means:

    a)  the necessary and reasonable cost of materials (less a fair and reasonable deduction for physical depreciation) and labor incurred to repair or replace the part of the covered "building materials" that sustains direct physical loss or damage;

    b)  the reasonable overhead and profit related to the covered "building materials" that sustains direct physical loss or damage but not to exceed the overhead and profit being charged for the "rehabilitation or renovation project" in accordance with the construction contracts; and

2)  other related construction costs and expenses that are re-incurred to repair or replace the part of "building materials" that sustain direct physical loss or damage, but only if such costs have been included as part of the "limit" for a covered "rehabilitation or renovation project".

5.  Under How Much We Pay, Insurance Under More Than One Policy is deleted and replaced by the following:

**Insurance Under More Than One Policy** --

"You" may have another policy covering identical risks, whether or not both policies are subject to the same "terms", such insurers are liable to make loss payment as described below. In the event "you" have double insurance, and incur:

a.  a total or constructive total loss, "we" will pay "our" share of the covered loss if that policy has the same effective date as this policy. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

    However, if there is a total or constructive loss and that policy has an effective date other than the effective date on this policy, "we" will pay according to the effective dates on the policies. This policy will be primary to any policy with an effective date after the effective date of this policy. This policy will be excess over any policy with an effective date before the effective date of this policy.

b.  a partial loss, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

**IM 2009 01 12**

Copyright, American Association of Insurance Services, Inc., 2012

EXHIBIT C - PAGE 232

**AAIS**
**IM 7200 10 02**
**Page 1 of 19**

# ELECTRONIC DATA PROCESSING
# EQUIPMENT COVERAGE PART
## SCHEDULED LIMITS

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Electronic Data Processing - Equipment Coverage Part. This coverage is also subject to the "schedule of coverages" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "schedule of coverages".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "schedule of coverages".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Computer hacking" means an unauthorized intrusion:

   a. by an individual or group of individuals, whether employed by "you" or not, into "hardware", "software", Web site, or a computer network; and

   b. that results in but is not limited to:

      1) deletion, destruction, generation, or modification of "software";
      2) alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";
      3) observation, scanning, or copying of "data records", "programs and applications", and "proprietary programs";
      4) damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware", "Web site server", or "media" used with "hardware" or "Web site server"; or
      5) denial of access to or denial of services from "your" "hardware", "Web site server", or "your" computer network.

4. "Computer virus" means the introduction of any malicious, self-replicating electronic data processing code or other code:

   a. into "hardware", "software", or "Web site server"; and

   b. that is intended to result in, but is not limited to:

      1) deletion, destruction, generation, or modification of "software";
      2) alteration, contamination, corruption, degradation, or destruction of the integrity, quality, or performance of "software";
      3) damage, destruction, inadequacy, malfunction, degradation, or corruption of any "hardware", "Web site server", or "media" used with "hardware" or "Web site server"; or
      4) denial of access to or denial of services from "your" "hardware", "Web site server", or "your" computer network.

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 233

**AAIS**
**IM 7200 10 02**
**Page 2 of 19**

5. "Data records" means files, documents, and information in an electronic format and that are stored on "media".

6. "Electrical disturbance" means electrical or magnetic damage, disturbance of electronic recordings, or erasure of electronic recordings.

7. "Flood" means flood, surface water, waves, tidal water, or the overflow of a body of water, all whether driven by wind or not. This includes spray that results from these whether driven by wind or not.

8. "Hardware" means a network of electronic machine components (microprocessors) capable of accepting instructions and information, processing the information according to the instructions, and producing desired results.

   a. **Hardware Includes** -- "Hardware" includes but is not limited to:

      1) mainframe and mid-range computers and network servers;
      2) personal computers and workstations;
      3) laptops, palmtops, notebook PCs, other portable computer devices and accessories including, but not limited to, multimedia projectors; and
      4) peripheral data processing equipment, including but not limited to, printers, keyboards, monitors, and modems.

   b. **Hardware Does Not Include** -- "Hardware" does not include:

      1) "software";
      2) "telecommunications equipment";
      3) "reproduction equipment";
      4) "protection and control systems"; and
      5) "off-site server" and "on-site server".

9. "Limit" means the amount of coverage that applies.

10. "Mechanical breakdown" means the malfunction or failure of moving or electronic parts, component failure, faulty installation, or blowout.

11. "Media" means processing, recording, or storage media used with "hardware". This includes but is not limited to films, tapes, cards, discs, drums, cartridges, or cells.

12. "Off-site server" means a server for "your" Web site:

   a. that is not at a premises described on the "schedule of coverages"; and

   b. that is being maintained and/or operated by an independent contractor acting as "your" Web host or "your" Internet service provider that is acting as "your" Web host.

13. "On-site server" means a server for "your" Web site:

   a. that is at a premises occupied by "you" and that is described on the "schedule of coverages"; and

   b. that is being maintained and/or operated by "you" or an independent contractor acting as "your" Web site consultant.

14. "Pollutant" means:

   a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including but not limited to acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and

   b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

15. "Power supply disturbance" means interruption of power supply, power surge, blackout, or brownout.

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 234

**AAIS**
**IM 7200 10 02**
**Page 3 of 19**

16. "Programs and applications" means operating programs and applications that "you" purchase and that are:

    a. stored on "media"; or

    b. pre-installed and stored in "hardware".

17. "Proprietary programs" means proprietary applications or programs that are developed in-house or that "you" had developed specifically for "you" and that are:

    a. stored on "media"; or

    b. installed and stored in "hardware".

18. "Protection and control systems" means:

    a. air conditioning equipment used exclusively in the operation of the "hardware";

    b. fire protection equipment used for the protection of the "hardware", including automatic and manual fire suppression equipment, and smoke and heat detectors; and

    c. uninterruptible power supply system, line conditioner, and voltage regulator.

19. "Reproduction equipment" means a network of equipment and software designed for the scanning, copying, storage, and retrieval of paper documents.

20. "Schedule of coverages" means:

    a. all pages labeled schedule of coverages or schedules which pertain to this coverage; and

    b. declarations or supplemental declarations which pertain to this coverage.

21. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation.

Sinkhole collapse does not include the value of the land or the cost of filling sinkholes.

22. "Software" means "media", "data records", "programs and applications", and "proprietary programs".

    Software does not mean "Web site software".

23. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

    Falling objects does not include loss to:

    a. personal property in the open; or

    b. to the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roofs or walls are first damaged by a falling object.

    Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

24. "Telecommunications equipment" means telephone components and equipment used for the transmission of communications.

    Telecommunications equipment includes but is not limited to:

    a. telephone switchgear (including PBX systems);

    b. telephone operating programs and related software;

    c. facsimile transmission equipment;

    d. video conferencing equipment; and

    e. other related telephone hardware (including computers dedicated to voice mail).

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 235

**AAIS**
**IM 7200 10 02**
**Page 4 of 19**

25. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

26. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow.

    Volcanic action does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

27. "Web site server" means "on-site server" and "off-site server".

28. "Web site software" means the following software that are used in "your" "Web site server":

    a. "media";

    b. "data records";

    c. programs and applications which means operating programs and applications that "you" purchase and that are stored on "media" or pre-installed and stored in "Web site servers"; and

    d. proprietary programs which means proprietary applications or programs that are developed in-house or that "you" had developed specifically for "you" and that are stored on "media" or installed and stored in "Web site servers".

## PROPERTY COVERED

"We" cover the following property unless the property is excluded or subject to limitations.

1. **Hardware** --

    a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "hardware" and similar property of others that is in "your" care, custody, or control.

    b. **Coverage Limitations** -- "We" only cover "hardware" and similar property of others:

        1) when a "limit" for "hardware" is indicated on the "schedule of coverages"; and
        2) while at a premises described on the "schedule of coverages".

2. **Software** --

    a. **Media, Programs, and Applications** --

        1) **Coverage** -- "We" cover direct physical loss caused by a covered peril to "media", "programs and applications", and similar property of others that is in "your" care, custody, or control.
        2) **Coverage Limitations** -- "We" only cover "media", "programs and applications", and similar property of others:

            a) when a "limit" for "media" and "programs and applications" is indicated on the "schedule of coverages"; and
            b) while at a premises described on the "schedule of coverages".

    b. **Data Records and Proprietary Programs** --

        1) **Coverage** -- "We" cover the cost of research or other expenses necessary to reproduce, replace, or restore lost files or codes on lost or damaged "data records", "proprietary programs", and similar property of others that is in "your" care, custody, or control.
        2) **Coverage Limitations** -- "We" only cover "data records", "proprietary programs", and similar property of others:

            a) when a "limit" for "data records" and "proprietary programs" is indicated on the "schedule of coverages";

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 236

**AAIS**
**IM 7200 10 02**
**Page 5 of 19**

b) while at a premises described on the "schedule of coverages"; and

c) if the cost of research or other expenses necessary to reproduce, replace, or restore lost files or codes are incurred due to a direct physical loss caused by a covered peril to "data records" and "proprietary programs".

3. **Web Site Server** --

   a. **On-Site Server** --

      1) **Server Coverage** -- "We" cover direct physical loss caused by a covered peril to an "on-site server".

      2) **Software Coverage** -- "We" also cover direct physical loss caused by a covered peril to the "Web site software" housed on an "on-site server".

      3) **Coverage Limitations** -- "We" only cover "on-site server" and "Web site software":

         a) when a "limit" for "on-site server" and "Web site software" is indicated on the "schedule of coverages"; and

         b) while at a premises described on the "schedule of coverages".

   b. **On-Site Server Coverage Under Hardware and Software** --

      1) **Coverage** -- If indicated on the "schedule of coverages", coverage for:

         a) an "on-site server" is provided as part of the coverage described under 1. Hardware; and

         b) the "Web site software" housed on an "on-site server" is provided as part of the coverage described under 2. Software.

2) **Coverage Limitations** --

   a) The "limits" applicable to Hardware and Software are not increased when coverage for "on-site server" and "Web site software" are included under the Hardware and Software coverage sections; and

   b) "we" only cover "on-site server" and "Web site software" while at a premises described on the "schedule of coverages".

c. **Off-Site Server** --

   1) **Server Coverage** -- "We" cover direct physical loss caused by a covered peril to an "off-site server" that "you":

      a) own; or

      b) lease and are contractually obligated to insure for loss or damage.

   2) **Software Coverage** -- "We" also cover direct physical loss caused by a covered peril to the "Web site software" housed on an "off-site server".

   3) **Coverage Limitation** -- "We" only cover "off-site server" and "Web site software" when a "limit" for "off-site server" and "Web site software" is indicated on the "schedule of coverages".

d. **Software Coverage Condition** -- "We" only cover "Web site software" if a duplicate or back-up of the "Web site software" is stored at a building that is at least 100 feet away from the premises where the "on-site server" or "off-site server" is being hosted.

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 237

**AAIS**
**IM 7200 10 02**
**Page 6 of 19**

## PROPERTY NOT COVERED

1. **Accounts, Bills, or Documents** -- "We" do not cover accounts, bills, evidences of debt, records, abstracts, deeds, manuscripts, program documentation, or other documents except those that are in "software" form and then only in that form.

2. **Checked Luggage** -- "We" do not cover loss resulting from theft or disappearance of a laptop, palmtop, notebook PC, or any portable computer while in transit as checked luggage.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Loaned, Leased, or Rented To Others** -- "We" do not cover property that "you" loan, lease, or rent to others.

5. **Money and Securities** -- "We" do not cover currency, food stamps, lottery tickets not held for sale, money, notes, or securities.

6. **Stock in Trade** -- "We" do not cover "your" stock in trade.

7. **Loss of Internet Service Provider or Web Host** -- "We" do not cover loss to "your" "Web site server" or "Web site software" that results from the bankruptcy, liquidation, or otherwise going out of business by "your" Internet service provider or Web host.

## COVERAGE EXTENSIONS

**Provisions That Apply To Coverage Extensions** -- The following Coverage Extensions indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Coverage Extension, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, the coverages provided below are part of and not in addition to the applicable "limit" for coverage described under Property Covered.

The "limit" provided under a Coverage Extension cannot be combined or added to the "limit" for any other Coverage Extension or Supplemental Coverage including a Coverage Extension or Supplemental Coverage that is added to this policy by endorsement.

The following coverage extensions are not subject to and not considered in applying coinsurance conditions.

1. **Debris Removal** --

   a. **Coverage** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril.

   b. **We Do Not Cover** -- This coverage does not include costs to:

      1) extract "pollutants" from land or water; or
      2) remove, restore, or replace polluted land or water.

   c. **Limit** -- "We" do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 238

**AAIS**
**IM 7200 10 02**
**Page 7 of 19**

d. **Additional Limit** -- "We" pay up to an additional $10,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

e. **You Must Report Your Expenses** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2. **Electrical and Power Supply Disturbance** -- "We" cover direct physical loss to covered property caused by:

a. "electrical disturbance"; or

b. "power supply disturbance".

3. **Emergency Removal** --

a. **Coverage** -- "We" pay for any direct physical loss to covered property while it is being moved or being stored to prevent a loss caused by a covered peril.

b. **Time Limitation** -- This coverage applies for up to 365 days after the property is first moved. Also, this coverage does not extend past the date on which this policy expires.

4. **Emergency Removal Expenses** --

a. **Coverage** -- "We" pay for "your" expenses to move or store covered property to prevent a loss caused by a covered peril.

b. **Time Limitation** -- This coverage applies for up to 365 days after the property is first moved. Also, this coverage does not extend past the date on which this policy expires.

c. **Limit** -- The most "we" pay in any one occurrence for expenses to move or store covered property to prevent a loss is $2,500.

d. **This Is A Separate Limit** -- The "limit" for Emergency Removal Expenses is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

5. **Fraud and Deceit** --

a. **Coverage** -- "We" cover theft of covered property when "you", "your" agents, customers, or consignees are fraudulently induced to part with the covered property:

1) to persons who falsely represent themselves as the proper persons to receive the property; or
2) by the acceptance of fraudulent bills of lading or shipping receipts.

b. **Limit** -- The most "we" pay in any one occurrence for theft of covered property under this Coverage Extension is $2,500.

6. **Mechanical Breakdown Coverage** -- "We" pay for loss to covered property caused by "mechanical breakdown".

## SUPPLEMENTAL COVERAGES

**Provisions That Apply To Supplemental Coverages** -- The following Supplemental Coverages indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 239

**AAIS**
**IM 7200 10 02**
**Page 8 of 19**

However, if no "limit" is indicated for a Supplemental Coverage, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, a "limit" for a Supplemental Coverage provided below is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

The "limit" available for coverage described under a Supplemental Coverage:

a.  is the only "limit" available for the described coverage; and

b.  is not the sum of the "limit" indicated for a Supplemental Coverage and the "limit" for coverage described under Property Covered.

The "limit" provided under a Supplemental Coverage cannot be combined or added to the "limit" for any other Supplemental Coverage or Coverage Extension including a Supplemental Coverage or Coverage Extension that is added to this policy by endorsement.

The following coverage extensions are not subject to and not considered in applying coinsurance conditions.

1.  **Acquired Locations** --

    a.  **Coverage** -- "We" cover direct physical loss caused by a covered peril to covered property at locations that "you" acquire during the policy period.

    b.  **Limit** -- "We" pay up to $500,000 for covered property at locations that "you" acquire.

    c.  **Time Limitation** -- This coverage applies for up to 60 days from the date "you" acquire the location or until "you" report the acquired location to "us", whichever occurs first.

However, this coverage does not go beyond the end of the policy period.

    d.  **Additional Premium** -- "You" must pay any additional premium due from the date "you" acquire the location.

2.  **Earthquake Coverage** -- If coverage is indicated on the "schedule of coverages", "we" cover direct physical loss caused by earthquake and volcanic eruption to covered property while at a premises described on the "schedule of coverages".

3.  **Flood Coverage** -- If coverage is indicated on the "schedule of coverages", "we" cover direct physical loss caused by "flood" to covered property while at a premises described on the "schedule of coverages".

4.  **Newly Purchased or Leased Hardware** --

    a.  **Coverage** -- "We" cover direct physical loss caused by a covered peril to additional "hardware" including pre-installed "programs and applications" that "you" purchase or lease during the policy period.

    b.  **Limit** -- The most that "we" pay for any loss under this additional coverage is the least of:

        1)  the actual cash value of the covered property; or
        2)  $500,000.

    c.  **Time Limitation** -- "We" extend coverage to the additional "hardware" that "you" purchase or lease for up to 60 days.

        This supplemental coverage will end when any of the following first occur:

        1)  this policy expires;
        2)  60 days after "you" obtain the additional "hardware"; or
        3)  "you" report the additional "hardware" to "us".

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 240

**AAIS**
**IM 7200 10 02**
**Page 9 of 19**

d. **Additional Premium** -- "You" must pay any additional premium due from the date "you" purchase or lease the additional "hardware".

5. **Off-Site Computers** --

a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to covered property in the custody of "you", "your" officers, "your" partners, or "your" employees, while:

1) at "your" residence or the residence of "your" officers, partners, or employees;
2) temporarily at a premises that is not described on the "schedule of coverages"; or
3) in transit between a:

a) residence or temporary premises; and
b) premises described on the "schedule of coverages".

b. **Limit** -- The most "we" pay in any one occurrence for loss to off-site covered property is $5,000.

6. **Pollutant Cleanup and Removal** --

a. **Coverage** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period.

b. **Time Limitation** -- The expenses to extract "pollutants" are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

c. **We Do Not Cover** -- "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants".

However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

d. **Limit** -- The most "we" pay for each location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12-month period of this policy.

7. **Property In Transit** --

a. **Coverage** -- "We" cover direct physical loss to covered property caused by a covered peril while in transit.

b. **Limit** -- The most "we" pay in any one occurrence for loss to covered property in transit is $10,000.

8. **Protection and Control Systems** --

a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "protection and control systems" while at a premises described on the "schedule of coverages".

b. **Limit** -- The most "we" pay in any one occurrence for loss to "protection and control systems" is $10,000.

9. **Recharge of Fire Extinguishing Equipment** --

a. **Coverage** -- "We" pay the expenses "you" incur to recharge "your" automatic fire extinguishing equipment or hand held fire extinguishing equipment when the equipment is discharged:

1) to fight a fire;
2) as a result of a covered peril; or
3) as a result of an accidental discharge.

b. **We Do Not Cover** -- "We" do not pay for "your" expenses to recharge equipment as a result of a discharge during testing or installation.

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 241

**AAIS**
**IM 7200 10 02**
**Page 10 of 19**

c. **Limit** -- The most "we" pay in any one occurrence for "your" expenses to recharge "your" fire extinguishing equipment is $15,000.

d. **Conditions For Replacing Rather Than Recharging** -- If it is less expensive to do so, "we" will pay "your" costs to replace "your" automatic fire extinguishing equipment or hand held fire extinguishing equipment rather than recharge the equipment.

10. **Reproduction Equipment** --

a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "reproduction equipment" while at a premises described on the "schedule of coverages".

b. **Limit** -- The most "we" pay in any one occurrence for loss to "reproduction equipment" is $10,000.

11. **Rewards** --

a. **Coverage** -- "We" pay for reward information that leads to a conviction for:

    1) arson,
    2) theft, or
    3) vandalism including, but not limited to, "computer hacking" and "computer virus".

    The conviction must involve a covered loss caused by arson, theft, or vandalism.

b. **Limit** -- The most "we" pay in any one occurrence for reward information is $2,500.

c. **Limit Is Not Increased By The Number of Persons Providing Information** -- The amount "we" pay is not increased by the number of persons involved in providing the information.

12. **Sewer Backup and Water Below the Surface** -- If coverage is indicated on the "schedule of coverages", "we" cover direct physical loss caused by:

a. water that backs up through a sewer or drain; or

b. water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a described premises.

13. **Software Storage** --

a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to duplicate and back-up "software" stored at a "software" storage location.

b. **Coverage Condition** -- Each "software" storage location must be in a separate building which is at least 100 feet away from a premises described on the "schedule of coverages".

c. **Limit** -- The most "we" pay in any one occurrence for loss to duplicate and back-up "software" is $50,000.

14. **Telecommunications Equipment** --

a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to "telecommunications equipment" while at a premises described on the "schedule of coverages".

b. **Limit** -- The most "we" pay in any one occurrence for loss to "telecommunications equipment" is $10,000.

15. **Virus and Hacking Coverage** --

a. **Coverage** -- "We" cover direct physical loss to covered "hardware", "software", "Web site server", and "Web site software" caused by a "computer virus" or by "computer hacking".

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 242

**AAIS**
**IM 7200 10 02**
**Page 11 of 19**

b. **We Do Not Cover** -- "We" do not cover:

1) loss of exclusive use of any "data records" or "proprietary programs" that have been copied, scanned, or altered;

2) loss of or reduction in economic or market value of any "data records" or "proprietary programs" that have been copied, scanned, or altered;

3) theft from "your" "data records" or "proprietary programs" of confidential information through the observation of the "data records" or "proprietary programs" by accessing covered "hardware", or "your" computer network without any alteration or other physical loss or damage to the records or programs. Confidential information includes, but is not limited to, customer information, processing methods, or trade secrets; and

4) except as provided under the Supplemental Income Coverages section of the Electronic Data Processing - Income Coverage Part (if attached to this policy), denial of access to or services from "your" "hardware", "your" computer network, or "your" Web site.

c. **Limits** -- The most "we" pay in any one occurrence under this Supplemental Coverage is $25,000.

The most "we" pay for all covered losses under this Supplemental Coverage during each separate 12-month period of this policy is $75,000.

## PERILS COVERED

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Earth Movement** -- Except as provided under Supplemental Coverages - Earthquake Coverage, "we" do not pay for loss caused by any earth movement (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano. Earth movement includes, but is not limited to: earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

"We" do cover direct loss by fire, explosion, or "volcanic action" resulting from either earth movement or eruption, explosion, or effusion of a volcano.

c. **Flood** -- Except as provided under Supplemental Coverages - Flood Coverage, "we" do not pay for loss caused by "flood". However, "we" do cover the resulting loss if fire, explosion, or sprinkler leakage results.

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 243

**AAIS**
**IM 7200 10 02**
**Page 12 of 19**

d. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

e. **Sewer Backup and Water Below the Surface** -- Except as provided under Supplemental Coverages - Sewer Backup and Water Below the Surface, "we" do not pay for loss caused by or resulting from:

1) water that backs up through a sewer or drain; or
2) water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a building or structure.

But if sewer backup and water below the surface results in fire, explosion, or sprinkler leakage, "we" cover the loss or damage caused by that fire, explosion, or sprinkler leakage.

f. **War and Military Action** -- "We" do not pay for loss caused by:

1) war, including undeclared war or civil war; or
2) a warlike action by a military force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
3) insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

With regard to any action that comes within the "terms" of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War and Military Action Exclusion will apply in place of the Nuclear Hazard Exclusion.

2. "We" do not pay for loss or damage that is caused by or results from one or more of the following:

a. **Computer Virus or Computer Hacking** -- Except as provided under Supplemental Coverages - Virus and Hacking Coverage, "we" do not pay for:

1) any direct or indirect loss or damage; or
2) loss of access, loss of use, or loss of functionality

caused by a "computer virus" or by "computer hacking".

b. **Criminal, Fraudulent, or Dishonest Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

1) "you";
2) others who have an interest in the property;
3) others to whom "you" entrust the property;
4) "your" partners, officers, directors, trustees, or joint adventurers; or
5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 244

**AAIS**
**IM 7200 10 02**
**Page 13 of 19**

c. **Loss of Use** -- "We" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market.

d. **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril".

"We" do pay for any resulting loss caused by a "specified peril".

e. **Temperature/Humidity** -- "We" do not pay for loss to covered property caused by:

1) dryness, dampness, humidity; or
2) changes in or extremes of temperature.

However, "we" do pay for loss to covered property that results from a direct physical loss, caused by a covered peril, to the air conditioning system that services covered "hardware".

f. **Voluntary Parting** -- Except as provided under Coverage Extensions - Fraud and Deceit, "we" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

3. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by a covered peril results, "we" will pay for the resulting loss.

a. **Contamination, Deterioration, Rust, or Corrosion** -- "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in covered property that causes it to damage or destroy itself.

This exclusion does not apply to loss caused by "mechanical breakdown".

b. **Wear and Tear or Obsolescence** -- "We" do not pay for loss caused by wear and tear, depreciation, or obsolescence.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

a. give "us" or "our" agent prompt notice, including a description of the property involved ("we" may request written notice); and

b. give notice to the police when the act that causes the loss is a crime.

2. **You Must Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

a. **Payment of Reasonable Costs** -- "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs.

b. **We Do Not Pay** -- "We" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3. **Proof of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

a. the time, place, and circumstances of the loss;

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 245

**AAIS**
**IM 7200 10 02**
**Page 14 of 19**

b.  other policies of insurance that may cover the loss;

c.  "your" interest and the interests of all others in the property involved, including all mortgages and liens;

d.  changes in title of the covered property during the policy period; and

e.  estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4.  **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5.  **Records** -- "You" must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6.  **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7.  **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8.  **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9.  **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

## VALUATION

1.  **Hardware and Web Site Servers** -- The following is the value of "hardware" and "Web site servers":

    a.  **Hardware and Servers That Are Replaced** -- The value of "hardware" and "Web site servers" that are replaced will be based on the cost of replacing the "hardware" and "Web site servers" with new equipment that is functionally comparable to the "hardware" and "Web site servers" that are being replaced.

    b.  **Hardware and Servers That Are Not Replaced** -- The value of "hardware" and "Web site servers" that are not repaired or replaced will be based on the actual cash value at the time of loss (with a deduction for depreciation).

    c.  **Partial Loss** -- In no event will "we" pay more than the reasonable cost of restoring partially damaged "hardware" and "Web site servers" to their condition directly prior to the damage.

2.  **Software** -- The following is the value of "software" and, for the purposes of determining valuation only, includes "Web site software":

    a.  **Programs and Applications** --

        1)  **Cost To Reinstall** -- The value of "programs and applications" will be based on the cost to reinstall the "programs or applications" from the licensed discs that were originally used to install the programs or applications.

        2)  **If The Original Discs Are Lost** -- If the original licensed discs are lost, damaged, or can no longer be obtained, the value of "programs and applications" will be based on the cost of the most current version of the "programs or applications".

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 246

**AAIS**
**IM 7200 10 02**
**Page 15 of 19**

b. **Proprietary Programs** --

1) **Cost of Reproduction** -- The value of "proprietary programs" will be based on the cost of reproduction from duplicate copies. The cost of reproduction includes, but is not limited to, the cost of labor to copy or transcribe from duplicate copies.

2) **If Duplicate Copies Do Not Exist** -- If duplicate copies do not exist, the value of "proprietary programs" will be based on the cost of research or other expenses necessary to reproduce, replace, or restore lost "proprietary programs".

c. **Data Records** --

1) **Cost of Reproduction** -- The value of "data records" will be based on the cost of reproduction from duplicate copies. The cost of reproduction includes, but is not limited to, the cost of labor to copy or transcribe from duplicate copies.

2) **If Duplicate Copies Do Not Exist** -- If duplicate copies do not exist, the value of "data records" will be based on the cost of research or other expenses necessary to reproduce, replace, or restore lost files, documents, and records.

d. **Media** -- The value of "media" will be based on the cost to repair or replace the "media" with material of the same kind or quality.

3. **Other Equipment** --

a. **Replacement Cost** -- The value of "telecommunications equipment", "reproduction equipment", and "protection and control systems" will be based on the replacement cost without any deduction for depreciation.

b. **Replacement Cost Limitation** -- The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment will not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

c. **Replacement Cost Does Not Apply Until Repair or Replacement** -- Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced.

d. **Time Limitation** -- "You" may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

4. **Pair or Set** --

a. **Reasonable Proportion of Value** --The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

b. **Provision Does Not Apply To Software** -- The Pair or Set provision does not apply to "software" that comes in sets. If part of a "software" set cannot be replaced, the loss is considered a total loss of the set.

5. **Loss To Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 247

**AAIS**
**IM 7200 10 02**
**Page 16 of 19**

## HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Earthquake Period** -- All earthquakes or volcanic eruptions that occur within a 168-hour period will be considered a single event. This 168-hour period is not limited by the policy expiration.

3. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "schedule of coverages" in any one occurrence.

   The deductible may be shown as either an amount or a percentage. When shown as a percentage, the deductible is that percentage of the value of the covered property at the time of the loss.

4. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 3., 5., 6., and 7. under How Much We Pay, "we" pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the "limit" that applies to the covered property.

5. **Coinsurance** --

   a. **When Coinsurance Applies** -- "We" only pay a part of the loss if the "limit" is less than the percentage of the value of the covered property that is indicated on the "schedule of coverages".

b. **How We Determine Our Part of The Loss** -- "Our" part of the loss is determined using the following steps:

   1) multiply the percent indicated on the "schedule of coverages" by the value of the covered property at the time of loss;
   2) divide the "limit" for covered property by the result determined in 5.a. above;
   3) multiply the total amount of loss, after the application of any deductible, by the result determined in 5.b. above.

   The most "we" pay is the amount determined in 5.c. above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

c. **If There Is More Than One Limit** -- If there is more than one "limit" indicated on the "schedule of coverages" for this coverage part, this procedure applies separately to each "limit".

d. **If There Is Only One Limit** -- If there is only one "limit" indicated on the "schedule of coverages" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

e. **When Coinsurance Does Not Apply** -- Conditions for coinsurance do not apply unless a coinsurance percentage is indicated on the "schedule of coverages".

6. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 248

**AAIS**
**IM 7200 10 02**
**Page 17 of 19**

7. **Insurance Under More Than One Policy** --

   a. **Proportional Share** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

   b. **Excess Amount** -- If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

## LOSS PAYMENT

1. **Loss Payment Options** --

   a. **Our Options** -- In the event of loss covered by this coverage form, "we" have the following options:

      1) pay the value of the lost or damaged property;
      2) pay the cost of repairing or replacing the lost or damaged property;
      3) rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or
      4) take all or any part of the property at the agreed or appraised value.

   b. **Notice of Our Intent To Rebuild, Repair, or Replace** -- "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** --

   a. **Adjustment and Payment of Loss** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy.

   b. **Conditions For Payment of Loss** -- An insured loss will be payable 30 days after:

      1) a satisfactory proof of loss is received, and
      2) the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3. **Property of Others** --

   a. **Adjustment And Payment of Loss To Property of Others** -- Losses to property of others may be adjusted with and paid to:

      1) "you" on behalf of the owner; or
      2) the owner.

   b. **We Do Not Have To Pay You If We Pay The Owner** -- If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 249

**AAIS**
**IM 7200 10 02**
**Page 18 of 19**

If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

The appraisers will then determine and state separately the amount of each loss.

The appraisers will also determine the value of covered property items at the time of the loss, if requested.

If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit To Others** -- Insurance under this coverage will not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

   a. **Your Death** -- On "your" death, "we" cover the following as an insured:

      1) the person who has custody of "your" property until a legal representative is qualified and appointed; or

      2) "your" legal representative.

   This person or organization is an insured only with respect to property covered by this coverage.

   b. **Policy Period Is Not Extended** -- This coverage does not extend past the policy period indicated on the declarations.

5. **Misrepresentation, Concealment, or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) "your" interest herein.

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payment;

   c. any recovery expenses incurred by either are reimbursed first;

   d. "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 250

**AAIS**
**IM 7200 10 02**
**Page 19 of 19**

e.  if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8.  **Restoration of Limits** -- Except as indicated under Virus and Hacking Coverage, a loss "we" pay under this coverage does not reduce the applicable "limits".

9.  **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

"You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

a.  all of the "terms" of this coverage have been complied with; and

b.  the suit has been brought within two years after "you" first have knowledge of the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

**IM 7200 10 02**

Copyright, American Association of Insurance Services, Inc., 2002

EXHIBIT C - PAGE 251

This page intentionally left blank

EXHIBIT C - PAGE 252

# EXHIBIT D

Adam Carlson (State Bar No. 257795)
Nick Casper (State Bar No. 244637)
**CASPER, MEADOWS, SCHWARTZ & COOK**
California Plaza
2121 North California Blvd., Suite 1020
Walnut Creek, CA 94596
Telephone:    (925) 947-1147
Facsimile:    (925) 947-1131

Attorneys for Plaintiff
JAURICE HUTSON

FILED
OCT 25 2024

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF CONTRA COSTA – UNLIMITED JURISDICTION**

| | |
|---|---|
| JAURICE HUTSON,<br><br>        Plaintiff,<br><br>      vs.<br><br>TAYLOR HOUSEMAN, INC., ALLIANCE LAUNDRY SYSTEMS, LLC, and Does 1 to 30,<br><br>        Defendants. | Case No. CIV MSC21-01940<br>Assigned for All Purposes to:<br>Hon. Danielle Douglas Dept. 18<br><br>**THIRD AMENDED COMPLAINT FOR DAMAGES**<br><br>**(1) Strict Products Liability**<br>**(2) Negligence**<br>**(3) Breach of Warranty**<br>**(4) Exemplary Damages**<br><br>Complaint Filed: September 15, 2021<br>Trial Date: October 22, 2024 |

**COMPLAINT AT LAW AND JURY DEMAND**

NOW COMES Plaintiff, JAURICE HUTSON, by and through his attorneys, Casper, Meadows, Schwartz & Cook, and for her complaint against Defendants ALLIANCE LAUNDRY SYSTEMS, LLC, and TAYLOR HOUSEMAN, INC., alleges:

## I. INTRODUCTION

1. Plaintiff JAURICE HUTSON suffered a serious injury to his dominant arm on November 8, 2019, when the drum of an industrial washing machine ("subject washing machine"), which had been manufactured by Defendant ALLIANCE LAUNDRY SYSTEMS, LLC ("ALLIANCE"), and sold by Defendant TAYLOR HOUSEMAN, INC. ("TAYLOR HOUSEMAN"), was spinning with the door open.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

1

EXHIBIT D - PAGE 1

2. Despite extensive medical care, including multiple surgeries, Plaintiff Jaurice Hutson has permanently lost the function of his dominant arm and will require assistance with Activities of Daily Living for the rest of his life. A treating physician, Board Certified in both Physical Medicine and Rehabilitation and Pain Management, has analogized the extent of his disability to be equivalent to an arm amputation.

3. The subject washing machine, a UNIMAC model UW60PVQU10001, was manufactured by Defendant ALLIANCE in May of 1998.

4. Defendant TAYLOR HOUSEMAN sold the subject washing machine to Shields Nursing Center in Richmond, California.

5. Defendant TAYLOR HOUSEMAN was the maintenance/servicing company for the subject washing machine for approximately 20 years.

6. When the washing machine was inspected after the incident the interlock, which is the most important safety feature, was observed to have loose nuts and bolts, attributable to a defective design, which was exacerbated by poor maintenance.

7. Discovery has revealed the subject washing machine's design was not properly safety tested, was sold with woefully deficient warnings, and was known to be problematic by engineers working for Defendant ALLIANCE. These engineers fixed problems with the subject washing machine's design during a redesign in 2011, but the corporation failed to address the numerous washing machines still in use around the country.

8. In addition, despite having the ability to inform their safety engineers of how individuals are getting injured while using washing machines, including their own, Defendant ALLIANCE has buried its head in the sand when it comes to other injury incidents and deliberately decided not to have their safety engineers be informed of this information.

## II. FACTUAL ALLEGATIONS

### A. NO EVIDENCE OF ANY SAFETY TESTING OF THE SUBJECT MODEL PERFORMED BY THE DEFENDANT ALLIANCE

9. Defendant ALLIANCE is and has always been aware of the risk of arm amputation if the drum to a washing machine is spinning with the door open.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL· (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

2

EXHIBIT D - PAGE 2

10.    Defendant ALLIANCE is aware of the importance of safety testing their products, particularly *durability* testing of the interlock system, which is the system designed to prevent arm amputations.

11.    Defendant ALLIANCE is aware owners of their washing machines keep them for 20-plus years, sometimes often 30-plus years. Not only is Defendant ALLIANCE aware of owners keeping washing machines for that amount of time, but they encourage owners of these products to keep them for as long as possible by offering a financial incentive award.

12.    The person most qualified on behalf of Defendant ALLIANCE to testify related to all safety tests conducted on the subject model washing machine admitted: he was unable to produce any evidence of testing performed by Defendant ALLIANCE and admitted, despite being under an obligation to search for and produce any relevant evidence, that there is none.

13.    The only evidence of any testing of the subject model by *any* entity relates to the model's certification to the UL 1206 Standard and CSA 53. However, as it pertains to durability testing, UL 1206 only requires 6,000 cycles to be performed, which according to Defendant ALLIANCE is only a little over one year's worth of cycles (or approximately 461 and ½ days). CSA 53 only requires 6 cycles, which is less than one-half of a day.

14.    Defendant ALLIANCE knows this is inadequate and deficient level testing of the most important safety feature of the machine because when they do perform testing they test to 48,000 cycles, or approximately ten years.

15.    Defendant ALLIANCE knows that it is imperative to maintain safety testing documents so that when there is a redesign or reason to inquire about a particular model, it is readily available for reference.

16.    The person most qualified on behalf of Defendant ALLIANCE to testify related to all safety tests conducted on the subject model washing machine admitted he does not know if records were destroyed. Failure to maintain safety testing documents is a deliberate indifference to the health and safety of users of their products as it may result in engineers overlooking the safety risks of a particular type of washing machine during a redesign or otherwise.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940                    3
THIRD AMENDED COMPLAINT FOR DAMAGES

17. Even if Defendant ALLIANCE performed testing of the subject washing machine, they deliberately chose to destroy these records. If the records were destroyed pursuant to a document retention policy, this amounts to corporate policy to destroy safety testing documents that may prevent serious injury or death to users of their products.

**B. DEFENDANT DECLINES TO TEST THE DURABILITY OF THE MOST IMPORTANT SAFETY FEATURE OF ITS PRODUCTS TO THE NUMBER OF CYCLES THEY ENCOURAGE OWNERS TO REACH**

18. Defendant ALLIANCE knows owners of their washing machines use them for decades.

19. Defendant ALLIANCE knows these washing machines often run continuously in locations such as hotels and nursing centers, and they estimate they will be used approximately 13 times per day.

20. Defendant ALLIANCE evens boasts about the 'longevity' of their products, encouraging owners to keep them as long as possible, offering a financial reward for doing so, for example when they held the Unimac Longevity Contest (https://unimac.com/longevity/). With that contest, they offered a $25,000 prize.

21. Defendant ALLIANCE knows that the interlock, which is the most important safety feature in terms of preventing arm amputations and injuries like that suffered by Plaintiff Jaurice Hutson, must remain durable throughout the life of the product.

22. Defendant ALLIANCE knows that if the interlock is not durable, fails, and does not withstand the number of cycles the product undergoes, an individual can suffer an arm amputation, serious injury or death.

23. Despite knowing owners are using their products daily for longer than ten years, they deliberately decide not to perform vital safety testing to ensure their products are safe for the entirety of the time an owner is highly like to use their product.

24. The only evidence of any testing of any UW model beyond ten years' worth of cycles did take place during the redesign in 2011. During that test, a vital part of the interlock, which is the most important safety feature to prevent an injury like that suffered by Plaintiff

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940    4
THIRD AMENDED COMPLAINT FOR DAMAGES

Jaurice Hutson, broke. Despite this, Defendant ALLIANCE did nothing to retest the product or warn owners of the UW model line that the interlock may break if used for longer than ten years.

C. **DELIBERATE DECISION TO NOT HAVE SAFETY ENGINEERS EVALUATE INJURY OCCURRENCES TO ENSURE THEIR PRODUCTS DO NOT INJURE USERS**

25.    Defendant ALLIANCE knows that one of the most important ways to evaluate how people get injured by a product is to evaluate how someone got injured using that product.

26.    Defendant ALLIANCE knows that engineers trained in safety and product design are qualified to evaluate an injury incident to determine if a similar occurrence can be prevented.

27.    Despite this, Defendant ALLIANCE siphons information related to injury incidents to their insurance company or attorney, and lets these individuals, not engineers, decide what to do with the information.

28.    Defendant ALLIANCE knows that they can investigate an incident as soon as they learn about it, knows that they could use the results of the investigation to evaluate injury risks, knows that they can thereafter act in response to prevent similar occurrences, yet they deliberately delay investigating incidents to figure out "what happened" until after a lawsuit has completed. Often lawsuits can last years, and during that time Defendant ALLIANCE can be preventing injuries to others using their products.

29.    Defendant ALLIANCE does not have any engineer trained in safety and product design compile information related to all known injury occurrences for washing machines, including ones manufactured by their company, to evaluate commonalities of injuries.

30.    Had Defendant ALLIANCE done so, they would have observed an obvious common pattern: individuals are inserting their hands/arms into the basket while the drum is spinning. With this information it would have been obvious to them that their warnings, including those on the subject washing machine, were not effective, and needed to be changed, which could have easily been done so by emailing a Field Bulletin with updated warnings.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N California Blvd,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

5

31.    Had Defendant ALLIANCE bolstered their warnings on the subject washing machine, it could have prevented the injury to Plaintiff JAURICE HUTSON, as it appears he likely reached his hand/arm into the basket while the drum was spinning.

32.    There were no warning signs on the front of the machine to warn Plaintiff JAURICE HUTSON of the risk of harm, including potential arm amputation if he reached his hand/arm into the basket while the drum was spinning.

## D. DELIBERATE INDIFFERENCE TO INDIVIDUALS SUFFERING INJURIES USING WASHING MACHINES, INCLUDING THEIR OWN PRODUCTS

33.    Defendant ALLIANCE has been, and continues to be, willfully ignorant of how individuals are getting injured while using washing machines in that they:

   a. Decline to require companies retailing and servicing their washing machines to inform them of injury occurrences, despite being in contract with those entities and easily being able to request this information. For example, had they required Clean Designs, a retailer/service company of their washing machines, to report to them injuries involving their products, they would have learned, in November 2017, approximately two years before Jaurice Hutson was injured, that the same model UniMac as the one that injured Jaurice, caused an arm amputation to Benjamin Heien. According to documents both publicly available and within the possession of Clean Designs, the incident occurred because the "latch and handle connections were worn," allowing the drum to spin with the door open and allowing Mr. Heien to access the basket. With this information, they could have likely prevented Jaurice's injury by learning that this specific model has an interlock with durability problems and has insufficient warnings to users related putting their arm/hand into the spinning basket. To the extent they needed to "figure out what happened," they could have easily contacted Shuan Huber, the employee of Clean Designs, who discovered the latch and handle connections to be worn.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

6

b. Decline to conduct even a modest amount of research into easily accessible public information, including but not limited to OSHA filings, lawsuits (including researching for cases filed against them, as their litigation claims list is missing numerous lawsuits that they were involved in involving serious personal injuries), National Electronic Injury Surveillance System (a statistically valid injury surveillance system that tracks how individuals are injured). For example, had they searched publicly available OSHA filings, they would have learned of the aforementioned incident involving an arm amputation to Benjamin Heien. According to documents publicly available and within the possession of Clean Designs, the incident occurred because the "latch and handle connections were worn," allowing the drum to spin with the door open and allowing Mr. Heien to access the basket.

c. Had Defendant ALLIANCE accessed the publicly available NEISS database, they would have learned that during the years 2003 through 2007 (the earliest years for which data is currently available online) that there were over 150 injury incidents per year resulting from reaching into a washing machine while the drum was moving, reiterating the importance of conspicuous warnings on the front of the machine related to inserting a hand/arm into the basket while the drum is spinning.

d. On December 12, 2018, an employee of Defendant ALLIANCE, Michael Besaw, who at the time was the individual responsible for handling injury claims for the corporation, was informed of an incident involving Michael Newell, who was injured as a young boy on an IPSO washing machine, a brand of Defendant ALLIANCE. Mr. Besaw was specifically informed that the boy received a settlement of approximately $9 million for the matter. Mr. Besaw deliberately chose to perform no research into the matter, despite being aware a young boy suffered an arm amputation using a washing machine. Nor did he instruct anyone from Defendant ALLIANCE to look into the matter, despite

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

7

EXHIBIT D - PAGE 7

likely being able to gain valuable information on how to prevent injury occurrences. Mr. Besaw decided the incident did not involve a washing machine manufactured by Defendant ALLIANCE and was therefore something to be ignored, even though the facts related to how individuals are injured while using washing machines are important to consider when manufacturing washing machines.

### E. FAILURE TO EVALUATE COMMONALITY OF INJURIES TO USERS OF THEIR WASHING MACHINES AND WASHING MACHINES MANUFACTURED BY OTHER COMPANIES

34.     Even with a cursory evaluation of injury incidents involving washing machines, including ones they manufacture, there is a clear theme – individuals get injured when they attempt entry into the basket while the drum is still spinning.

    a.  On January 13, 2016, Ailyn Egusquiza-Rodriguez suffered an arm amputation while using a UniMac front-loading washing machine. By October 19, 2018, *an engineer working for Defendant ALLIANCE* concluded it is "likely that the unit was still spinning at a high speed at the time that the door was opened" and Ms. Egusquiza-Rodriguez put her hand/arm in the basket.

    b.  On March 19, 2019, Roberto Giron while attempting to remove items from a UniMac front-loading washing machine, his arm got caught in the spinning basket and he suffered an arm amputation.

    c.  On August 31, 2000, while working at the Holiday Inn in Carrier Circle, New York, Marly Millard was injured when the drum to a Huebsch Model #37CGI dryer was spinning when the door was open.

    d.  In approximately 1993, Michael Newell, while using an IPSO washing machine, got his left arm entangled in sleeping bags because the drum to the machine was spinning with the door open. IPSO is a brand owned by Defendant ALLIANCE.

    e.  On July 24, 2011, Kimberly Pacy was using a UniMac front-loading washer and suffered fractures to both forearm bones when the drum to the machine was

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

8

spinning with the door open and her arm got tangled in sheets. *An engineer employed by Defendant ALLIANCE* was aware the incident likely occurred when Kimberly Pacy reached into the washing machine while the drum was still spinning.

f. On February 13, 2015, Nadege Simon was injured while using an IPSO washing machine. IPSO is a brand owned by Defendant ALLIANCE. This matter proceeded to trial, and *an employee of Defendant ALLIANCE* was aware the incident likely occurred when Ms. Simon attempted to put their hand into the machine while the drum was spinning.

g. On October 14, 2017, Benjamin Heien suffered an arm amputation when he reached into a washing machine and a sheet wrapped around his arm as the drum was spinning. This involved the same exact model washing machine as the one that caused injury to Plaintiff JAURICE, and it occurred because of the same defects.

h. On June 20, 2019, Vladimir Podobaycv suffered a comminuted intra-articular first metacarpal fracture, displaced fractures involving the dorsal base of the second through fourth metacarpals, and comminuted capitate fracture at the dorsal CMC joint. This occurred when the drum of a Primus model washing machine was spinning with the door open, and his right hand was caught on towels and his hand and arm were injured by the rotating drum. Primus is a brand owned by Defendant ALLIANCE.

i. Dating back to the early 2000s, the NEISS database injury shows that there were over 150 injury incidents per year resulting from reaching into a washing machine while the drum was moving.

///
///
///
///

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd,
Suite 1020
Walnut Creek, CA 94596
TEL (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

9

## F.  DEFENDANT ALLIANCE PROVIDED WOEFULLY DEFICIENT WARNINGS WITH THE SUBJECT WASHING MACHINE

35.    Defendant ALLIANCE knew that they needed to warn users to not attempt entry until the drum had stopped spinning, otherwise, users may end up suffering a serious injury such as an arm amputation or death.

36.    Defendant ALLIANCE knew that for a warning to serve its intended purpose, it should be conspicuous on the front and center of the product. Otherwise, it would be ineffective.

37.    In a conscious disregard for the users of its washing machines, Defendant ALLIANCE chose not to put a warning on the front of the subject washing machine to prevent someone like Plaintiff Jaurice Hutson from attempting entry before the basket had stopped.

38.    Defendant ALLIANCE has been confronted numerous times over the years with instances of their warnings related to attempting entry into the basket being deficient. They have faced numerous lawsuits stemming from individuals having their arms amputated.

39.    Despite being confronted with their deficiencies, learning of individuals attempting entry while the basket was still spinning, and having ample time to correct the warnings on the subject washing machine, they chose not to act.

40.    Defendant ALLIANCE knew they could have easily corrected the warnings on the subject washing machine, including sending updated warning parts to be placed on the front of the machine to Defendant TAYLOR HOUSEMAN, a company they are in contract with.

41.    Defendant ALLIANCE knew that the subject washing machine was designed in such a manner that for it to remain safe, it must be maintained regularly, even daily.

42.    Defendant ALLIANCE knew they needed to warn of the risk of serious injury if the product was not maintained.

43.    Despite knowing the likelihood of serious injury, such as an arm amputation, or death, they made a deliberate decision not to issue warnings to the owner of the product that to prevent injury or death they must maintain it regularly.

///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL· (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940                    10
THIRD AMENDED COMPLAINT FOR DAMAGES

44.     Warnings issued by Defendant ALLIANCE relating to maintenance, which was buried on page 55 of a 126-page manual, only warn of the possibility of 'accidents,' rather than injury.

45.     Defendant ALLIANCE knows how to warn about the risk of serious injury or death and knows that warnings of 'accidents' are materially different, and less effective in terms of warning of the risk of serious injury or death.

46.     Defendant ALLIANCE knew that the appropriate manner to warn of a risk of harm as serious as an arm amputation or death, such as failure to maintain the subject washing machine, was to place the warning front and center on the product itself.

47.     Defendant ALLIANCE's failed in numerous aspe as it relates to the use of warnings provided with the subject washing machine include the fact that the Person Most Qualified employee for Defendant ALLIANCE related to the warnings on the subject washing machine does not know what warning was placed on the front of the subject washing machine.

48.     At the time of the incident there was no warning on the front of the machine, evidence of Defendant ALLIANCE's failure to ensure individuals are alerted of known hazards and/or deficient durability testing of their warnings.

**G. A DIRECTOR OF ENGINEERING OF DEFENDANT ALLIANCE KNEW THE SUBJECT WASHING MACHINE WAS UNSAFE WHEN DEFENDANT ALLIANCE MANUFACTURED AND SOLD IT**

49.     Before 1998, Defendant ALLIANCE was trying to enter the marketplace for front-loading industrial washing machines.

50.     As a part of that process, a team of engineers, including Directors and Officers, evaluated the subject washing machine model, which at the time was being sold by a competitor.

///

///

///

///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940                    11
THIRD AMENDED COMPLAINT FOR DAMAGES

51.     After evaluating the subject washing machine model, these engineers determined that the washing machines being sold at the time, were not durable, were subject to tampering and/or improper servicing, and that the interlock, which is the most important safety feature to prevent arm amputation, needed to be improved to "reduce the risk that the appliance door will be opened during operation of the appliance."

52.     As a part of the process of evaluating the faulty design of the subject model, these engineers determined the design of an interlock should have several key components, including having the safety pin protrude upon activation of the cycle (rather than having it remain protruded during the closing of the door), having a narrow clearance between the latching mechanism and the remainder of the interlock parts (so that machine learns as early as possible if the door latch is misaligned), and having the safety pin interact directly with the door (so as to ensure the door is prevented from opening during a cycle). This new, safer, design was completed by a Director of Engineering of Defendant ALLIANCE by September 19, 1996.

53.     The engineers of Defendant ALLIANCE, therefore, knew of a safer alternative design several years before manufacturing the subject washing machine, but they decided to manufacture and sell it anyway.

54.     Approximately 13 years after manufacturing the subject washing machine Defendant ALLIANCE completed a redesign of the subject washing machine model, which, not surprisingly, implemented the various design features they knew of in 1996: including having the safety pin protrude upon activation of the cycle (rather than having it remain protruded during the closing of the door), having a narrow clearance between the latching mechanism and the remainder of the interlock parts (so that machine learns as early as possible if the door latch is misaligned), and having the safety pin interact directly with the door (so as to ensure the door is prevented from opening during a cycle).

55.     In March of 1998, Defendant ALLIANCE purchased the subject washing machine model from its competitor. There is no evidence Defendant ALLIANCE performed any safety testing of this model before selling it, despite being aware it is not durable, requires

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd,
Suite 1020
Walnut Creek, CA 94596
TEL (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.,* Case No. CIV MSC21-1940                    12
THIRD AMENDED COMPLAINT FOR DAMAGES

a high level of almost perfect maintenance, and aware the interlock may not prevent the appliance door from opening during operation, subjecting users to the risk of arm amputation or death.

56.    Only two months after purchasing the subject washing machine model, Defendant ALLIANCE manufactured the subject washing machine, and it eventually succumbed to the flaws identified in 1996, and caused serious injury to Plaintiff JAURICE HUTSON.

## H. THE SUBJECT WASHING MACHINE IS DEFECTIVELY DESIGNED IN NUMEROUS ASPECTS

57.    There are numerous ways the design was defective: the safety pin, designed to prevent *the door* from opening did not interact directly with *the door*; and, the safety pin did not protrude upon activation into a narrow clearance, ensuring the machine would know immediately if there were nuts/bolts loose, which is a key element of the design as it pertains to durability.

58.    Defendant ALLIANCE knew of these design flaws prior to manufacturing and selling the machine, evidenced by the patent filed in 1996 and the redesign they completed in 2011, which incorporated the changes identified in 1996.

59.    The technology for the different designs was available in 1996, two years before they manufactured the subject washing machine. In other words, there was no new technology developed after the subject washing machine was manufactured and the redesign was completed and placed on the market.

60.    Because of the severity of the harm at risk, the interlock needed to be designed to be failsafe, and Defendant ALLIANCE knew this.

61.    The subject design was not failsafe, and Defendant ALLIANCE knew this.

62.    Defendant ALLIANCE not only knew but intentionally designed the machine so that individuals could easily bypass the interlock, allowing the door to open during a cycle, which is a highly dangerous occurrence.

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.,* Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

13

63.    Defendant ALLIANCE instructed individuals on how to bypass the interlock during installation. Despite knowing that the interlock was not failsafe, they provided woefully deficient warnings regarding the risk of arm amputation, serious injury, or death if they put their arm or hand in the basket while the drum was spinning.

64.    The design related to the nut/bolt threading connection for the most important parts of the machine as it relates to preventing arm amputation or other serious injury or death, was so deficient that at the time of the inspection of the subject washing machine, one nut was very loose (rendering it ineffective to prevent injury) and one nut was completely missing (also ineffective to prevent injury).

65.    Defendant ALLIANCE knew of numerous ways to prevent this from occurring, including using Loctite gel, a Loctite patch, or a nyloc (nylon insert) nut. These are thread-locking mechanisms to prevent nuts from coming loose on vibrating machinery, such as the subject washing machine (and automobiles, so that brakes are effective throughout the life of the vehicle).

66.    These alternative safer designs cost approximately $.01, or up to $.20. In other words, a safer design costs pennies.

67.    The Person Most Qualified to testify on behalf of Defendant ALLIANCE as it pertains to the design of the subject washing machine and the identification of its parts admits that nyloc nuts were not used and has no idea whether Loctite was used on the nuts that eventually came loose on the subject washing machine. When these nuts, which were vital component parts of the interlock, the subject washing machine was rendered highly dangerous, and it was just a matter of time before someone was injured.

68.    The fact that the nuts were loose and missing is strong evidence Loctite was not used because simple engineering principles dictate Loctite will keep the nut/bolt connection indefinitely, absent intentional manipulation, of which there is no evidence.

69.    Defendant ALLIANCE designed the interlock, the most important safety feature of the washing machine, to be safe as it ages only if it is subject to daily maintenance.

///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940          14
THIRD AMENDED COMPLAINT FOR DAMAGES

70. Designing and selling a product Defendant ALLIANCE knew would be used for 20-plus years that requires *daily* maintenance of the most important safety feature is a de facto defective design. It is akin to requiring owners of motor vehicles to maintain their brakes daily.

71. Defendant ALLIANCE knows that under no circumstances should the drum to an industrial washing machine be spinning with the door open, which happened in the underlying incident, causing injury to Plaintiff JAURICE HUTSON.

72. Defendant ALLIANCE knew that owners of the subject washing machine model consists of nursing centers, hotels, and other entities that have no background in maintaining and servicing industrial washing machines, yet they expected these entities to perform vital safety checks to guarantee a user's arm is not amputated.

73. Defendant ALLIANCE provided unintelligible instructions for the daily maintenance protocol.

74. Defendant ALLIANCE knew that it was necessary to perform three procedures daily to ensure a user's arm is not amputated and placed instructions for these procedures on the Daily Maintenance Checklist, buried on page 55 of a 127 page manual.

75. These instructions are so unintelligible even the employee of Defendant ALLIANCE who testified on their behalf as the Person Most Qualified related to the manual testified he would be speculating if he were to try to explain what the manual meant as it pertains to step two of three.

76. The redesign was obvious. Not only did it includes several aspects of the patent filed in 1996, the individual who came up with the ultimate design used for the interlock explained it only took him one month to figure out. He does not hold an advanced degree in engineering. In other words, it was not a design that required years upon years of teams of engineers to come up.

77. The redesign is simple yet effective, and Defendant ALLIANCE should have implemented it before selling the subject UniMac model.

///

///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.,* Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

15

## I. THE SUBJECT WASHING MACHINE WAS POORLY MAINTAINED FOR 20 YEARS

78.     The subject washing machine was discovered to be in poor condition at the time of the incident, evidenced by the fact that highly important nuts, which are a part of the interlock system, were missing.

79.     The subject washing machine was in this condition because of its poor design, which was exacerbated by numerous years of deficient maintenance.

80.     At the time of the incident important parts were missing, including several nuts that were essential to the effectiveness of the interlock system, evidence of improper maintenance. Even though there was a short period of time Defendant TAYLOR HOUSEMAN had not serviced the washing machine before the incident, this does not explain there being vital nuts missing when the incident occurred. With proper maintenance the nuts should remain affixed for a substantial period of time and undoubtedly longer than the period of time it was not serviced.

81.     The conduct of Defendant TAYLOR HOUSEMAN, INC., as the maintenance company that had hands on the machine for 20 years, is a substantial factor in the washing machine being in the dangerous condition it was at the time of the incident, which resulted in serious injury to Plaintiff JAURICE HUTSON.

### III. COUNT I

### STRICT PRODUCTS LIABILITY

### MANUFACTURING DEFECT

### DESIGN DEFECT

### FAILURE TO WARN

### DEFENDANTS ALLIANCE LAUNDRY SYSTEMS AND

### TAYLOR HOUSEMAN, INC.

82.     Plaintiff incorporates by reference the previous paragraphs of the Complaint as if fully set forth herein.

///

CASPER, MEADOWS, SCHWARTZ & COOK 2121 N. California Blvd., Suite 1020 Walnut Creek, CA 94596 TEL (925) 947-1147 FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES                                          16

EXHIBIT D - PAGE 16

83. Defendants have a duty to place into the stream of commerce, design, manufacture, test, fill, label, distribute, market, promote, and sell products that are not defective, unsafe, and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

84. Defendants did in fact design, market, promote, supply, distribute and/or sell the subject washing machine.

85. Defendants expected the subject washing machine they were designing, manufacturing, marketing, promoting, supplying, distributing, and selling to reach, and it did in fact reach, consumers without substantial change in the condition.

86. At the time the subject washing machine left the possession of Defendants and the subject washing machine was in a defective, unsafe, and unreasonably dangerous condition.

87. Had Defendant adequately tested the subject washing machine and/or subject washing machine model they would have discovered it was not safe and likely to cause arm amputation, serious injury and/or death.

88. At all times relevant to this Complaint, Plaintiff Jaurice Hutson used the subject washing machine for its intended purpose.

89. The subject washing machine's failure to properly perform was caused by the product being defective.

90. An ordinary consumer expects that the drum of an industrial washing machine would not be spinning with the door open, as that is likely to result in arm amputation, serious injury, and/or death.

91. The drum of the subject washing machine was spinning with the door open, causing injury to Plaintiff JAURICE HUTSON.

92. Defendants are therefore liable under the Consumer Expectation Test for Strict Liability as it did not perform as safely as an ordinary consumer would have expected it to be used.

///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940                                    17
THIRD AMENDED COMPLAINT FOR DAMAGES

93. The design of the washing machine caused harm to Plaintiff JAURICE HUTSON and there were feasible, alternative, safer designs.

94. Even Defendant ALLIANCE knew of feasible, alternative, safer designs of the subject washing machine two years before it was manufactured.

95. Defendants are therefore liable under the Risk-Benefit Test for Strict Liability.

96. Plaintiff JAURICE HUTSON could not have discovered any defect in the subject washing machine through the exercise of due care.

97. As a direct and proximate result of the conduct of Defendants, as set forth herein, Plaintiff JAURICE HUTSON has suffered injuries and damages, as set forth below in this Complaint.

## IV. <u>COUNT II</u>

### <u>NEGLIGENCE</u>

### DEFENDANTS ALLIANCE LAUNDRY SYSTEMS AND

### TAYLOR HOUSEMAN, INC.

98. Plaintiff incorporates by reference the preceding paragraphs of the Complaint at Law as if fully set forth herein.

99. At all times relevant, it was the duty of Defendant to exercise due care in designing, manufacturing, assembling, labeling, marketing, promoting, supplying, distributing, selling, maintaining, and/or servicing the subject washing machine such that they would be reasonably safe for their intended use.

100. Defendant's negligence in the designing, manufacturing, assembling, labeling, marketing, promoting, supplying, distributing, selling, maintaining, and/or servicing of the subject washing machine to Plaintiff JAURICE HUTSON includes but is not limited to the following:

    a. Failure to properly safety test the subject washing machine model;

    b. Declining to test the durability of the most important safety feature of its product to the number of cycles they encourage owners to reach;

///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N California Blvd.
Suite 1020
Walnut Creek, CA 94596
TEL (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940    18
THIRD AMENDED COMPLAINT FOR DAMAGES

c. Deliberately deciding to not have safety engineers evaluate injury occurrences to ensure their products do not cause injuries;

d. Failure to evaluate the commonality of injuries to users of their washing machines and washing machines manufactured by other companies;

e. Providing woefully deficient warnings with the subject washing machine;

f. A Director of Engineering of Defendant ALLIANCE knew the subject washing machine was unsafe as he knew of a safer alternative design when Defendant ALLIANCE manufactured and sold it;

g. The subject washing machine is defectively designed in numerous aspects, which are vital to preventing arm amputations, serious injuries and/or death; and,

h. The subject washing machine was poorly maintained for 20 years.

101. Defendants knew or had reason to know that Plaintiff JAURICE HUTSON, as a member of the general public for whose use the subject washing machine was placed into interstate commerce, would be likely to use.

102. Prior to the incident set forth herein, Defendant was aware of the design defect.

103. Prior to the incident set forth herein, Defendant knew its warnings were deficient.

104. Defendant knew or reasonably should have known of the danger associated with the manner and circumstances of Plaintiff JAURICE HUTSON's foreseeable use of the subject washing machine, which danger would not be obvious to Plaintiff JAURICE HUTSON and other users of the product.

105. Plaintiff JAURICE HUTSON used the subject washing machine for its intended purpose and there was no other reasonable cause of the subject washing machine's failure to properly perform other than the product being defective and /or poorly maintained.

///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N California Blvd,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

19

EXHIBIT D - PAGE 19

106.    Plaintiff JAURICE HUTSON could not have discovered any defect in the subject washing machine through the exercise of due care.

107.    Defendants, as designer, manufacturer, assembler, labeler, marketer, promoter, supplier, distributor, seller, maintainers and/or servicers of washing machines are held to the level of knowledge of an expert in their field.

108.    Plaintiff JAURICE HUTSON did not have substantially the same knowledge regarding the dangers of the subject washing machine as the Defendants.

109.    As a direct and proximate result of the conduct of Defendants, as set forth herein, Plaintiff JAURICE HUTSON has suffered injuries and damages, as set forth below in this Complaint.

## V. COUNT III

## BREACH OF IMPLIED WARRANTY

## DEFENDANTS ALLIANCE LAUNDRY SYSTEMS AND

## TAYLOR HOUSEMAN, INC

110.    Plaintiff incorporates by reference the preceding paragraphs of the Complaint at Law as if fully set forth herein.

111.    Defendant impliedly warranted that the subject washing machine was safe, merchantable, and free of defects that would cause injury when being used in a reasonable and expected way.

112.    Plaintiff used the subject washing machine for its intended purpose and in a reasonably foreseeable manner.

113.    The subject washing machine used by Plaintiff did not conform with the implied warranty of merchantability in that the drum to the washing machine could spin when the door was open.

114.    As a direct and proximate result of the breach of the implied warranty of merchantability, as set forth herein, Plaintiff JAURICE HUTSON suffered the injuries and damages set forth in this Complaint.

///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N California Blvd,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940      20
THIRD AMENDED COMPLAINT FOR DAMAGES

## VI. COUNT IV

### BREACH OF EXPRESS WARRANTY

### DEFENDANTS ALLIANCE LAUNDRY SYSTEMS AND

### TAYLOR HOUSEMAN, INC

115. Plaintiff incorporates by reference the preceding paragraphs of the Complaint at Law as if fully set forth herein.

116. Defendant expressly warranted that the subject washing machine lid was safe for ordinary use and that the drum of the machine would not be spinning when the door was open.

117. The subject washing machine used by Plaintiff did not conform with the express warranty in that the drum was spinning with the door open.

118. As a direct and proximate result of the breach of the express warranty of merchantability, as set forth herein, Plaintiff JAURICE HUTSON suffered injuries and damages set forth in this Complaint.

### VII. COUNT V

### EXEMPLARY DAMAGES

### PUNITIVE DAMAGES

### DEFENDANT ALLIANCE LAUNDRY SYSTEMS

119. Plaintiff incorporates by reference the preceding paragraphs of the Complaint at Law as if fully set forth herein.

120. The acts and conduct of Defendant set forth above, were malicious, fraudulent, oppressive, intentional, willful, wanton, and in reckless disregard of the consequences. This conduct included, but was not limited to:

    a. Failure to properly safety test the subject washing machine model, and in fact, there is no evidence Defendant ALLIANCE performed any safety testing whatsoever when Defendant ALLIANCE knew that if they did not properly safety test the industrial washing machine model then users could suffer arm amputations, serious injuries and/or death;

///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES
21

b. Deliberately choosing not to test the durability of the most important safety feature of its product to the number of cycles they encourage owners to reach, when they know the adverse consequence of the failure of this safety feature will likely result in an arm amputation, serious injury and/or death;

c. Consciously and with reckless disregard for the safety of users of their washing machine, deciding to not have safety engineers evaluate injury occurrences to ensure their products do not cause injuries;

d. Deliberately choosing not to evaluate commonality of injuries to users of their washing machines and washing machines manufactured by other companies;

e. Providing woefully deficient warnings with the subject washing machine, when they know warnings can prevent arm amputations, serious injury and/or death;

f. Providing woefully deficient warnings related to the need for a high level of maintenance of the subject washing machine, when they knew such warnings were necessary to ensure users do not suffer an arm amputation, serious injury and/or death;

g. Providing woefully deficient warnings related to the risk of harm if someone put their arm/hand into the basket while it was moving, when they knew such warnings were necessary to ensure users do not suffer an arm amputation, serious injury and/or death;

h. Knowing the subject washing machine was unsafe when Defendant ALLIANCE manufactured and sold it, evidenced by the fact that one of their Directors of Engineering had evaluated the design and determined it to be unsafe when he came up with an alternative, safer, feasible design;

i. Manufacturing and selling the subject washing machine when it is defectively designed in numerous aspects, including characteristics which are vital to preventing arm amputations, serious injuries and/or death; and,

j. The subject washing machine was poorly maintained for 20 years.

///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N California Blvd,
Suite 1020
Walnut Creek, CA 94596
TEL (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

22

EXHIBIT D - PAGE 22

121. The intentional willful and wanton conduct of Defendant was conduct purposefully committed which Defendant must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly Plaintiff.

122. To this day Defendant has continued their conduct and behavior, as set forth in this civil action, in an intentional willful and wanton manner, against other persons who have these are continuing to use the subject washing machine model.

## VIII. DAMAGES FOR ALL CAUSES OF ACTION

123. As a direct and proximate result of the failure of the subject washing machine and the negligence, actions, inactions and omissions, of both Defendants and the intentional, willful, and wanton conduct of Defendant ALLIANCE, Plaintiff JAURICE HUTSON sustained injuries and damages, in excess of the jurisdictional amount of this court, exclusive of interest and costs, including, but not limited to:

    a. serious and permanent physical injuries;

    b. past and future pain, suffering, and mental anguish, in mind and in body;

    c. past and future physical disability;

    d. physical impairment;

    e. disfigurement;

    f. loss of enjoyment of life;

    g. past medical bills;

    h. future medical bills;

    i. punitive damages;

    j. such other damages as may be allowed by California law, and supported by the evidence; and,

    k. attorneys' fees and the costs and expenses of litigation as may be permitted by California law and the rules of this Court.

///

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

    23

EXHIBIT D - PAGE 23

## IX. <u>JURY DEMAND</u>

Plaintiff JAURICE HUTSON demands a trial by jury.

Respectfully submitted,

DATE: June 26, 2024

_____
Adam Carlson
CASPER, MEADOWS, SCHWARTZ & COOK
Attorney for Plaintiff

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N California Blvd,
Suite 1020
Walnut Creek, CA 94596
TEL (925) 947-1147
FAX (925) 947-1131

*Hutson vs. Taylor Houseman, Inc.*, Case No. CIV MSC21-1940
THIRD AMENDED COMPLAINT FOR DAMAGES

24