RAMIRO MORALES, # 167947
rmorales@mfrlegal.com
CHRISTINE M. FIERRO, # 191660
cfierro@mfrlegal.com
CANON T. YOUNG, # 189142
cyoung@mfrlegal.com
MORALES FIERRO & REEVES
1440 Maria Lane, Suite 200
Walnut Creek, CA  94596
Telephone:  (925) 288-1776
Facsimile:   (925) 288-1856

Attorneys for Third-Party Defendant
FEDERAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESCO INSURANCE COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SENTRY INSURANCE COMPANY, FORMERLY KNOWN AS SENTRY INSURANCE A MUTUAL COMPANY, a Wisconsin corporation,<br><br>Defendant,<br><br>EVANSTON INSURANCE COMPANY, an Illinois corporation, and FEDERAL INSURANCE COMPANY, a New Jersey corporation,<br><br>Third-Party Defendants.<br><br>_____<br>AND RELATED COUNTERCLAIM | CASE NO.: 3:25-cv-07584-WHO<br><br>**FEDERAL INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS SENTRY INSURANCE COMPANY'S THIRD-PARTY COMPLAINT**<br><br>[Filed with Request for Judicial Notice; Proposed Order]<br><br>Date: July 8, 2026<br><br>Time: 2:00 p.m.<br><br>Courtroom 2<br><br>Third-Party Complaint Filed:  March 24, 2026 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that that on July 8, 2026 at  2:00 p.m., in Courtroom 2 of the

above-entitled court, located at the Phillip Burton Federal Building & U.S. Courthouse, 450 Golden

Gate Avenue, San Francisco, CA 94102, Third-Party Defendant Federal Insurance Company

1

MOTION TO DISMISS                                                    3:25-CV-07584-WHO

("Federal") will, and hereby does, move this Court for an order dismissing the second and third causes of action in the Third-Party Complaint filed by Sentry Insurance Company ("Sentry") with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that they fail to state a claim upon which relief can be granted.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the pleadings and papers on file herein, the Request for Judicial Notice, and such other matters as may be presented to the Court at any hearing on this matter.

Dated:  May 22, 2026                      MORALES FIERRO & REEVES


By:    */s/Ramiro Morales*_____
　　　　RAMIRO MORALES
　　　　CHRISTINE M. FIERRO
　　　　CANON T. YOUNG
　　　　Attorneys for Third-Party Defendant
　　　　FEDERAL INSURANCE COMPANY

MOTION TO DISMISS                                      3:25-CV-07584-WHO

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I.   INTRODUCTION.................................................................................................................1

II.  BACKGROUND ..................................................................................................................2

III. ARGUMENT.........................................................................................................................4

      A.      Legal Standard ..............................................................................................4

      B.      The Basics Of Excess Insurance ...................................................................5

      C.      Because A Primary Carrier May Not Assert Equitable
              Indemnity Against An Excess Carrier, Sentry's Second
              Cause Of Action Fails...................................................................................5

      D.      Even If A Primary Carrier May Bring A Claim Against
              An Excess Carrier For Equitable Indemnity (It Cannot),
              Under The Facts Alleged In Sentry's Third-Party Complaint,
              Sentry's Equitable Indemnity Claim Fails.....................................................8

      E.      Sentry's Unjust Enrichment Claim Fails .....................................................11

      F.      Because Sentry's Cause Of Action For Equitable Indemnity
              Fails To State Claims Upon Which Relief May Be Granted,
              Its Request For Declaratory Relief Fails .....................................................12

IV.  CONCLUSION ...................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*,
No. 11-CV-05149 YGR, 2013 WL 594298 (N.D. Cal. Feb. 14, 2013) ........................................ 12

*Aerojet-General Corp. v. Commercial Union Ins. Co.*,
155 Cal. App. 4th 132 (2007) ................................................................................................ 5, 12

*Allied Prop. & Cas. Ins. Co. v. Dick Harris, Inc.*,
No. CIV. 2:13-00325 WBS, 2013 WL 2145961 (E.D. Cal. May 15, 2013) ................................ 13

*Am. Alternative Ins. Corp. v. Hudson Specialty Ins. Co.*,
938 F. Supp. 2d 908 (C.D. Cal. 2013) ...................................................................................... 7, 8

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007) ........................................................................... 4

*Certain Underwriters at Lloyd's of London v. Sup.Ct. (Powerine Oil Co., Inc.) (Powerine I),*
24 Cal. 4th 945 (2001) ........................................................................................................... 5, 12

*In re Colonial Mortg. Bankers Corp.*
324 F3d 12 (1st Cir. 2003) ........................................................................................................... 4

*Columbia Cas. Co. v. Fed. Ins. Co.*,
No. 13-CV-01014-HSG, 2015 WL 4734704 (N.D. Cal. Aug. 10, 2015) ..................................... 6,

*Com. Union Assurance Companies v. Safeway Stores, Inc.*,
26 Cal. 3d 912 (1980) .................................................................................................................. 5

*Cont'l Cas. Co. v. Nationwide Mut. Ins. Co.*,
No. CV1407326GWPLAX, 2014 WL 12607694 (C.D. Cal. Nov. 3, 2014) .................................. 7

*De La Cruz v. Tormey,*
582 F.2d 45 (9th Cir. 1978) .......................................................................................................... 4

*Diamond Heights Homeowners Assn. v. Nat'l Am. Ins. Co.*,
227 Cal. App. 3d 563 (Cal. Ct. App. 1991) .......................................................................... 8, 9, 10

*Fast Access Specialty Therapeutics, LLC v. UnitedHealth Grp., Inc.*,
532 F. Supp. 3d 956 (S.D. Cal. 2021) ....................................................................................... 12

*Fireman's Fund Ins. Co. v. Com. & Indus. Ins. Co.*,
No. C-98-1060VRW, 2000 WL 1721080 (N.D. Cal. Nov. 7, 2000) .............................................. 6

*Fireman's Fund Ins. Co. v. Maryland Cas*. Co.,
21 Cal.App.4th 1586, 26 Cal.Rptr.2d 762 (1994) ....................................................................... 7

*Fuller-Austin Insulation Co. v. Highlands Ins. Co.*,
135 Cal. App. 4th 958 (2006) ................................................................................................... 8, 9

*Lolicel (Pty) Ltd. v. Stanmar Int'l [USA] Inc.*,
No. 22CV926-LL-BGS, 2023 WL 3134599 (S.D. Cal. Apr. 27, 2023) ...................................... 13

*N. Am. Capacity Ins. Co. v. Claremont Liab. Ins. Co*.,
177 Cal. App. 4th 272 (2009) ....................................................................................................... 5

*Navarro v. Block,*
250 F.3d 729 (9th Cir. 2001) ........................................................................................................ 4

*Reliance Nat. Indem. Co. v. Gen. Star Indem. Co*.,
72 Cal.App.4th 1063 (1999) ......................................................................................................... 6

*RSUI Indem. Co. v. Discover P & C Ins. Co*.,
No. 2:13-CV-00960-TLN, 2013 WL 5375528 (E.D. Cal. Sept. 24, 2013) ................................... 7,

---

*Schwartz v. State Farm Fire & Cas. Co.*,
  88 Cal. App. 4th 1329 (2001) ................................................................................................ 10

*SEC v. Cross Fin. Services,*
  908 F. Supp. 718 (C.D. Cal. 1995) .......................................................................................... 4

*Shroyer v. New Cingular Wireless Services, Inc.*
  622 F.3d 1035 (9th Cir. 2010) ................................................................................................. 4

*Signal Companies, Inc. v. Harbor Ins. Co.*,
  27 Cal. 3d 359, 367 (1980) ...................................................................................................... 5

*Skilstaf, Inc. v. CVS Caremark Corp.*
  669 F3d 1005 (9th Cir. 2012) ................................................................................................... 4

*Starr Indem. & Liab. Co. v. Peerless Ins. Co.*,
  No. CV 15-643-JFW JCX, 2015 WL 3843526 (C.D. Cal. June 22, 2015) ...................................... 6

*Travelers Indem. Co. of Connecticut v. Hudson Ins. Co.*,
  442 F. Supp. 3d 1259 (E.D. Cal. 2020) ...................................................................................... 5

*Yu v. Designed Learned, Inc*,
  No. 3:15-CV-5345-LB, 2016 WL 7033978 (N.D. Cal. Dec. 2, 2016) ........................................... 13

**Statutes**

28 U.S.C. § 2201(a) .................................................................................................................... 13

Cal. Civ. Proc. Code § 386 ......................................................................................................... 10

F.R.C.P. Rule 12(b)(6)........................................................................................................... 1, 4, 5

**Other Authorities**

California Practice Guide: Insurance Litigation, 15:269 .................................................................. 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Sentry's Third-Party Complaint contains two causes of action against Federal: equitable indemnity and declaratory relief. In the equitable indemnity count, Sentry makes the remarkable claim that Federal, an excess carrier, would owe Sentry, a primary carrier, indemnity for sums Sentry could be required (in the present action) to pay under Sentry's own policy as a result of Sentry's own alleged misconduct in its handling of the insured's defense in the underlying action. Under California law, however, a primary carrier may not bring an equitable indemnity cause of action against an excess carrier. What is more, even if allowed (it is not), under the facts alleged here, Sentry's claim fails as a matter of law because, contrary to Sentry's assertions, Sentry was not precluded from agreeing to the subject settlement proposal because Federal did not consent to it. California law provides that the primary carrier alone owes the duty to defend, but with this duty comes the corresponding right to control the defense which extends to all aspects of the defense, including the negotiation of any settlement prior to trial. An excess carrier therefore does not have the power to veto a settlement proposal and the primary carrier need not obtain its consent under California law. Accordingly, Sentry's argument that it is owed indemnity because Federal did not provide consent fails as a matter of law and thus does not state a claim upon which relief can be granted.

Sentry's claim of unjust enrichment, which it sets forth as a purportedly "independent" basis of indemnity in the Third-Party Complaint's second count, also fails. Unjust enrichment requires an injustice and here, as to Federal, there is none. The only claim at issue is whether Sentry mishandled its claim. Federal is not responsible for Senty's alleged improper claims handling.

Sentry alleges that Federal had to pay less than Federal otherwise would have when Federal paid sums toward the settlement of a second insured that exceeded Sentry's policy limit because more money was available for Sentry as the primary carrier to contribute towards the settlement of that second insured under the Sentry policy given that Sentry had not used any of the funds from its policy to pay towards the settlement of the first insured. Therefore, according to Sentry, if Sentry is required to pay funds to the complainant (Plaintiff Wesco Insurance Company) in the present action

---

MOTION TO DISMISS                                                   3:25-CV-07584-WHO

to compensate the complainant for the settlement of the first insured, Federal would be unjustly enriched.

Sentry's convoluted theory is nonsense. Federal, just as it should have, satisfied the obligations of its excess policy by paying settlement amounts that exceeded Sentry's primary policy. An excess carrier satisfying its obligations under its policy cannot be held to be unjustly enriched because the primary carrier failed to fulfill its obligations to one insured and therefore had more funds available for a second insured.

Finally, because Sentry's indemnity claims do not state a claim upon which relief can be granted, Sentry's declaratory relief claim fails as well. Declaratory relief is not an independent cause of action. Declaratory relief is a procedural device for granting an equitable remedy and does not create any substantive rights or causes of action. Where, as here, a party's other claims do not state a claim upon which relief can be granted, a claim for declaratory relief does not lie.

Federal therefore requests that the Court grant its motion to dismiss with prejudice.

## II.    BACKGROUND

Senty Insurance Company filed a Third-Party Complaint ("TPC") in this matter on March 24, 2026. The TPC alleges that Sentry issued a primary commercial general liability policy to Alliance Laundry Systems LLC ("Alliance"), a company that manufactures industrial washers, which policy contains a $2,000,000 products-completed operations aggregate limit. Federal, according to the TPC, issued an umbrella insurance policy to Alliance which includes a $25,000,000 products-completed operations aggregate limit, *excess of the Sentry policy*. (TPC, ¶ 10.)

The TPC avers that Wesco Insurance Company, the Plaintiff and Counter-Defendant in this action, issued a primary policy to Taylor Houseman, Inc. ("Taylor"), a company that distributed, serviced and maintained the washers. The Wesco policy has general liability coverage containing a $1,000,000 per occurrence limit and a $2,000,000 products-completed operations aggregate limit. (TPC, ¶ 11.) The TPC also says that Evanston Insurance Company issued to Talyor an excess or umbrella policy excess to the Wesco policy containing at least $1,000,000 in applicable policy limits. (TPC, ¶ 12.)

2

MOTION TO DISMISS                                                  3:25-CV-07584-WHO

According to the TPC, the Sentry policy contains an additional insured endorsement providing that vendors of your (Alliance's) product are insureds with respect to bodily injury arising out of your product.  The endorsement excludes coverage for "any failure to make inspections, adjustment, tests or servicing" and for "installation, servicing or repair operations."  (TPC, ¶ ¶ 29 and 30.)

The TPC avers that Taylor sold Alliance washing machine to Shields Nursing Center in Richmond California and serviced it.  In November 2021, avers the TPC, a suit was filed by Jaurice Hutson against Taylor and Alliance which alleged that claimant was injured while working at Sheilds when he was using an Alliance washing machine served by Taylor for the twenty years prior to the accident.  The TPC avers that the underlying action alleged Taylor was negligent.

According to the TPC, Taylor was an insured under the Federal policy, as the Federal policy follows form to the Sentry policy and also provides that organizations qualifying as an insured in the underlying insurance are insureds.

The TPC avers that Sentry agreed to defend Taylor and Alliance in the underlying action.

A C.C.P. 998 Offer to Compromise, says the TPC, was issued by the claimant in the underlying action for $1,999,999.  The TPC alleges that at the time of the offer, Sentry's applicable aggregate limit of liability had been eroded through the payment of sums towards the resolution of other claims, and the policy's deductible also reduced the Sentry policy's limit of liability; the TPC asserts that, accordingly, the offer was in an amount in excess of the available Sentry policy limit. (TPC, ¶ 37.)

The TPC alleges that "[b]ecause the claims against Taylor and Alliance in the Underlying Action implicated the excess coverage provided by Federal, prior to the expiration of the Offer, Sentry sought the consent of Federal for Sentry to contribute toward a settlement in which Taylor could accept the Offer.  Federal did not provide its consent."  (TPC, ¶ 38.)

According to the TPC, because of the competing demands for the remaining Sentry policy limits, the fact that the offer exceeded those limits, and Federal's lack of consent, Sentry was "unable to agree to contribute toward the acceptance of the Offer."  (TPC, ¶ 39.)

///

MOTION TO DISMISS                                            3:25-CV-07584-WHO

The TPC maintains that Wesco agreed to pay $1,000,000 and Evanston $999,999 to meet the offer to Taylor.  (TPC, ¶ ¶ 40 and 41.)  According to the TPC, after claims against Taylor in the underlying action were resolved, Senty paid sums towards the settlement against Alliance which have exhausted its applicable limit.  (TPC, ¶ 42.)

The TPC notes that Wesco initiated the complaint in the present action against Sentry, seeking reimbursement of the 1,000,000 it paid towards the settlement.  (TPC, ¶ 43.)

The TPC contains two causes of action against Federal – Equitable Indemnity (second cause of action) and Declaratory Relief (third cause of action).

III.    **ARGUMENT**

A.    **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of claims for which the plaintiff fails to state a claim upon which relief can be granted.  A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *See De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir. 1978); *SEC v. Cross Fin. Services,* 908 F. Supp. 718, 726-727 (C.D. Cal. 1995).  Dismissal pursuant to Rule 12(b)(6) is proper "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Shroyer v. New Cingular Wireless Services, Inc.* 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001)).  To survive a Rule 12(b)(6) motion to dismiss, the facts alleged must state a "facially plausible" claim for relief.  *Shroyer v. New Cingular Wireless Services, Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010).  "[A] plaintiff s obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic  Corp. v. Twombly,* 550 U.S. 544, *555,* 127 S.Ct. 1955, 1964--65 (2007).

A matter that is properly the subject of judicial notice (FRE 201) may be considered along with the complaint when deciding a motion to dismiss for failure to state a claim.  *Skilstaf, Inc. v. CVS Caremark Corp*. 669 F3d 1005, 1016, fn. 9 (9th Cir. 2012); *In re Colonial Mortg. Bankers Corp*. 324 F3d 12, 16, 19 (1st Cir. 2003) (same).

/ / /

MOTION TO DISMISS                                                    3:25-CV-07584-WHO

### B . The Basics Of Excess Insurance

At core, Sentry as a primary insurer seeks to place responsibility for its alleged improper claims handling on Federal, an excess insurer. While the "legal positions" set forth by Sentry are addressed below, it is important to understand the excess insurance relationship as it informs why Sentry has lost its way.

Excess insurance "provides coverage after other identified insurance is no longer on the risk."  *N. Am. Capacity Ins. Co. v. Claremont Liab. Ins. Co*., 177 Cal. App. 4th 272, 290 (2009).  To invoke excess coverage, the policy limit of the primary insurance normally must be paid *pursuant to settlement or judgment* against the insured. *Certain Underwriters at Lloyd's of London v. Sup.Ct. (Powerine Oil Co., Inc.) (Powerine I),* 24 Cal. 4th 945, 960, (2001); *Aerojet-General Corp. v. Commercial Union Ins. Co.,*155 Cal. App. 4th 132, 136 (2007).  Thus, an excess insurer is *not* required to contribute before the underlying primary limits are actually exhausted even if put on notice that any settlement or judgment is likely to invade its excess coverage.  *Signal Companies, Inc. v. Harbor Ins. Co.*, 27 Cal. 3d 359, 367 (1980).  The primary insurer has no contractual relationship with the excess insurer and therefore owes no direct duty to protect the excess insurer's interests in negotiating a settlement of the injured party's claim.  *Com. Union Assurance Companies v. Safeway Stores, Inc.*, 26 Cal. 3d 912, 917 (1980).

### C. Because A Primary Carrier May Not Assert Equitable Indemnity Against An Excess Carrier, Sentry's Second Cause Of Action Fails

Under California law, where one carrier contends on equitable grounds that another carrier owes it sums that it incurred for a loss suffered by a common insured, there are generally three theories of recovery under which it may proceed:  equitable subrogation, equitable contribution, or equitable indemnification.  Distinguishing between these three theories of recovery is critical because "a claim brought under the wrong theory may fail as a matter of law." *Travelers Indem. Co. of Connecticut v. Hudson Ins. Co.*, 442 F. Supp. 3d 1259, 1268 (E.D. Cal. 2020).

In the instant matter, Sentry, a primary carrier, has brought claims against Federal, an excess carrier, under the theory of equitable indemnity.  But a primary carrier may not assert this equitable theory against an excess carrier.  Accordingly, Sentry's cause of action for equitable indemnity must be dismissed.

MOTION TO DISMISS                                             3:25-CV-07584-WHO

Equitable indemnity enables a party that has paid an obligation which was entirely the responsibility of another party to place the complete burden for the loss on that other party. *Fireman's Fund Ins. Co. v. Com. & Indus. Ins. Co.*, No. C-98-1060VRW, 2000 WL 1721080, at *3 (N.D. Cal. Nov. 7, 2000).  The elements of a cause of action for equitable indemnity are: (1) a showing of fault on the part of the indemnitor; and (2) resulting damages to the indemnitee for which the indemnitor is responsible.  *Starr Indem. & Liab. Co. v. Peerless Ins. Co.*, No. CV 15-643-JFW JCX, 2015 WL 3843526, at *5 (C.D. Cal. June 22, 2015).

Given the relationship between primary and excess carriers and the differences between primary and excess insurance, California law does not permit a primary insurer to bring an equitable indemnity claim against an excess insurer.  Thus in *Columbia Cas. Co. v. Fed. Ins. Co.*, No. 13-CV-01014-HSG, 2015 WL 4734704, at *5 (N.D. Cal. Aug. 10, 2015), the court notes that "in the insurance context, equitable indemnity applies in cases in which one party pays for a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party." *Columbia Cas. Co., supra* (internal quotes and citation omitted.)  However, observes the court, as a general rule, a "primary insurer is not entitled to indemnification from a third party's excess insurer." *Id.*, (internal quotes and citations omitted).

The court in *Columbia Casualty Co.* relied on among other things *Reliance Nat. Indem. Co. v. Gen. Star Indem. Co.*, 72 Cal.App.4th 1063 (1999).  *Reliance* upheld summary judgment against a primary insurer which sought contribution and indemnity from an excess insurer because "there is no contribution between a primary and an excess carrier." *Reliance, supra,*1078.  While *Reliance* focused on the difference between contribution and subrogation, as noted by the court in *Fireman's Fund Ins. Co. v. Com. & Indus. Ins. Co.*, No. C-98-1060VRW, 2000 WL 1721080, at *4 (N.D. Cal. Nov. 7, 2000) which analyzes *Reliance:*

> [t]he court [in *Reliance*] utilized the terms "contribution" and "indemnification" interchangeably and the plaintiff in the case sought 'complete indemnity' rather than just proportionate contribution. *Id*. at 1068.  Thus, the court's affirmance of summary judgment, albeit based on a finding that no "contribution" claim existed, implicitly held that the primary insurer's indemnification claim in the primary/excess insurer context was likewise not available.

MOTION TO DISMISS                                          3:25-CV-07584-WHO

In *Am. Alternative Ins. Corp. v. Hudson Specialty Ins. Co.*, 938 F. Supp. 2d 908, 917 (C.D. Cal. 2013), American Alternative Insurance Company ("AAIC") issued an excess policy covering the Minuteman Parking Company.  Hudson Insurance Company issued a primary policy covering Minuteman.   Hudson alleged, in a counterclaim, that AAIC unreasonably failed to settle an underlying personal injury action (in which a vehicle operated by a Minuteman employee struck a person in a parking area) when it was presented with pretrial settlement offers that were within its coverage limits.  Hudson alleged that AAIC was responsible for the defense costs Hudson incurred after AAIC failed to settle and for over $200,000 in judgment costs that Hudson paid as part of the final judgment.  *Am. Alternative Ins. Corp., supra,*  911.

Hudson alleged among other things a cause of action for equitable indemnity.  The court ruled that Hudson's cause of action "cannot stand."  *Am. Alternative Ins. Corp.*, supra, 917.  The court explained that based on "controlling case law," Hudson could not state a counterclaim for equitable indemnity against AAIC and thus it "fails as a matter of law."  *Id*.

Notably, numerous California cases do not even permit an excess carrier to assert a claim of equitable indemnity against a primary carrier even though the equities in that situation are crystal clear.  "Generally, excess insurers are limited to equitable subrogation when seeking reimbursement from a primary insurer and cannot proceed under a theory of equitable indemnity."  *RSUI Indem. Co. v. Discover P & C Ins. Co*., No. 2:13-CV-00960-TLN, 2013 WL 5375528, at *6 (E.D. Cal. Sept. 24, 2013), citing *Am. Alternative Ins. Corp. v. Hudson Specialty Ins. Co.*, No. EDCV 12–0622 JGB, 2013 WL 1389966, at *8–9 (C.D.Cal. Apr.3, 2013); *Commerce & Indus. Ins. Co.*, 2000 WL 1721080, at *5; and *Fireman's Fund Ins. Co. v. Maryland Cas*. Co., 21 Cal.App.4th 1586, 1600, 26 Cal.Rptr.2d 762 (1994) ("California cases which have upheld an excess insurer's right to sue a primary insurer have concluded such right devolves by subrogation to the insured's rights against the primary carrier, rather than by reason of some independent duty."); *Cont'l Cas. Co. v. Nationwide Mut. Ins. Co.*, No. CV1407326GWPLAX, 2014 WL 12607694, at *3 (C.D. Cal. Nov. 3, 2014).

As to a primary carrier asserting equitable indemnity against an excess carrier, no California case (either reported or available on Westlaw) has ever permitted such claim.  This theory of

MOTION TO DISMISS                                                    3:25-CV-07584-WHO

recovery simply does not fly here.  Accordingly, Sentry's cause of action for equitable indemnity fails to state a claim upon which relief can be granted and must be dismissed.

> **D.     Even If A Primary Carrier May Bring A Claim Against An Excess Carrier For Equitable Indemnity (It Cannot), Under The Facts Alleged In Sentry's Third-Party Complaint, Sentry's Equitable Indemnity Claim Fails**

In its Third-Party Complaint, Sentry contends that, to the extent it was obligated to contribute toward the satisfaction of the subject Offer to Compromise, it was "precluded from doing so by the lack of consent by Federal."  (TPC, ¶ 62.)  Sentry bases its claim for equitable indemnity on Federal's lack of consent.  According to Sentry, "Federal is primarily liable due to its failure to consent."  (TPC, ¶ 64.)

Sentry's claim fails.  As a matter of law, an excess carrier carrier's consent is not necessary for a primary carrier to contribute towards the satisfaction of a settlement.  *Diamond Heights Homeowners Assn. v. Nat'l Am. Ins. Co.*, 227 Cal. App. 3d 563 (Cal. Ct. App. 1991); *Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958 (2006).  Accordingly, an alleged lack of consent does not and cannot render an excess carrier primarily liable under a theory of equitable indemnity for payment of a loss by a primary carrier under the primary carrier's policy.  The very notion is preposterous on its face.  The suggestion that, by seeking consent, Sentry can somehow manufacture an obligation is simply wrong.

Tellingly, Wesco, in its complaint in the present action, did not sue Federal, but is seeking reimbursement *from Sentry* of the sums Wesco paid to settle the underlying action against Taylor.  If the present action determines that Wesco's claim is valid and that Sentry indeed owes Wesco these sums, the determination will be due to  Sentry's obligations under the Sentry policy and on Sentry's misconduct in its handling of the defense in the underlying action.  None of this has anything to do with Federal's independent obligation to its insured.  Sentry cannot shift its own obligations under its own policy as determined in the present action onto an excess carrier on the specious ground that the excess carrier did not provide consent to a settlement proposal.  The law does not allow a primary insurer, such as Sentry, to wash its hands of its obligations based on it asking a party with whom it has no contract for consent.  And the law is clear that an excess

MOTION TO DISMISS                                                            3:25-CV-07584-WHO

carrier's consent is not necessary for a primary carrier to contribute towards the satisfaction of a settlement. *Diamond Heights Homeowners Assn. v. Nat'l Am. Ins. Co.*, 227 Cal. App. 3d 563 (Cal. Ct. App. 1991).

In *Diamond Heights Homeowners Assn. v. Nat'l Am. Ins.,* a homeowners' association sued the developer and general contractor. A settlement included a large stipulated judgment to which three liability insurers (two primary and one excess) did not contribute. The association then brought suit against the three noncontributing insurers to satisfy the balance of the stipulated judgment. The excess insurer obtained summary judgment on coverage grounds. The appellate court reversed, framing the questions presented by the case as "[w]ere the primary insurers entitled to settle the case for an amount which invaded the excess coverage without the excess insurer's consent" and did the excess insurer have the right "to object to and therefore preclude any settlement which invaded excess coverage" thereby "compelling the primary insurer to continue the litigation and provide a defense through trial[.]. *Diamond Heights Homeowners Assn. v. Nat'l Am. Ins. Co*., 227 Cal. App. 3d 563, 580 (Cal. Ct. App. 1991).

The court noted that a primary insurer "alone owes a duty to provide and bear all costs of defense, with a corresponding right of control of defense." *Diamond Heights Homeowners Assn., supra*, 577 (emphasis added.) The court further noted that "the primary insurer may not as a matter of right tender the defense of the action to the excess carrier or otherwise relieve itself of the duty to defend[]" and "[t]he primary insurer's duty to defend is not extinguished until settlement or payment or judgment." *Id*. at 577. The primary carrier's "right of control extends to all aspects of the defense, **including the negotiation of any settlement prior to trial.**" *Id*. at 578 (emphasis added).

The court concluded that "a primary insurer may negotiate a good faith settlement of a claim in an amount which invades excess coverage, and that the primary insurer may enter into such settlement …*without the excess insurer's consent*[]." *Id*. at 580 (emphasis added).

And as stated in *Fuller-Austin Insulation Co. v. Highlands Ins. Co*., 135 Cal. App. 4th 958, 987 (2006), "[i]t would impose an unnecessary burden on primary insurers and parties to an

/ / /

MOTION TO DISMISS                                           3:25-CV-07584-WHO

underlying action to hold that an excess insurer has an absolute right to withhold its consent to a settlement[.]"

Accordingly, under California law, a primary insurer alone, as the defending carrier, has the corresponding right of control of all aspects of the defense, including the negotiation of any settlement prior to trial.  It is thus unnecessary for a primary carrier to obtain the consent of an excess carrier to settle, and the excess carrier does not have the power to veto a settlement. *Diamond Heights Homeowners Assn., supra*, 578, 580 (Cal. Ct. App. 1991).  To provide otherwise would hand control of the action over to the excess carrier, which California law does not permit.

Sentry has suggested that consent was necessary because Federal could have filed a lawsuit against Sentry alleging Federal was subrogated to a claim by Alliance that Sentry settled the underlying action on behalf of Taylor to the detriment of Alliance.  Leaving aside the issue of whether that is a correct statement of the law and that this hypothetical never happened, an insurer facing multiple claims on a limited pool of funds may protect itself without breaching its duty to either insured by filing an interpleader action.  Cal. Civ. Proc. Code § 386; California Practice Guide: Insurance Litigation, 15:269 ("Insurers facing conflicting claims for policy benefits may seek relief by filing an interpleader action.").

Sentry may contend that interpleader applies exclusively to claimants of policy proceeds, not to insureds.  Not so.  As noted in *Schwartz v. State Farm Fire & Cas. Co.*, 88 Cal. App. 4th 1329, 1341 (2001), an "insurer facing multiple claims on a limited pool of funds has at least two means of protecting itself without breaching its duty to either insured. The first is to seek a negotiated agreement among the insureds as to a fair apportionment of the pool of funds.  If that approach fails, an insurer may file an interpleader action as other insurers do when faced with multiple claimants to a single fund."   Nothing in California law limits an interpleader to claimants and prohibits one as to insureds.

Sentry may also contend that it had no time to file an interpleader as Offers to Compromise expire too quickly to allow an interpleader to resolve a dispute.  But that is both inaccurate and irrelevant.  It is inaccurate because here the Offer to Compromise was served on or about April 16, 2025 and, to facilitate settlement discussions, counsel for plaintiff in the underlying action extended

10

MOTION TO DISMISS                                                    3:25-CV-07584-WHO

the offer into August 2025.  Request for Judicial Noice, Exhibit A [Wesco Complaint in the present action], paragraph 16, and Exhibit B [Judgment and Offer to Compromise in underlying action].  Sentry could have filed the interpleader and either it or parties in the underlying action could have sought expedited review.  What is more, if Sentry had an abiding concern about disputed claims to the policy by two different insureds, it could have filed the interpleader irrespective of whether it would have been resolved before the expiration of the Offer to Compromise.  Finally, interpleader was even available to Sentry in the present action.  Wesco, a few days after filing the present action against Sentry, suggested to Sentry that Sentry interplead its limits to extricate itself from liability and wash its hands of this matter, which Sentry did not do.  Request for Judicial Notice, Exhibit C [Nielsen Declaration in support of Wesco Summary Judgment Motion in present action] paragraph 12.

In sum, Sentry's claim for equitable indemnity is based on the contention that it had to obtain Federal's consent for the Talor settlement.  That is false.  Accordingly, Sentry's claim fails as a matter of law and thus does not state a claim upon which relief can be granted.

**E.    Sentry's Unjust Enrichment Claim Fails**

In its cause of action for equitable indemnity, Sentry contends that unjust enrichment is an "entirely independent" basis for indemnity against Federal.

According to Sentry, the applicable limit of liability of the Sentry policy has been exhausted through the payment of claims toward the settlement of the underlying action with respect to Alliance.   Hence, avers Sentry, any amount that Sentry had contributed toward the settlement of the underlying action with respect to Taylor would have reduced the amount available for Sentry to contribute to the settlement claims against Alliance, "thereby increasing the amount that Federal would have had to contribute."  (TPC, ¶ 65.)

In other words, Sentry is contending that Federal had to pay less as to Alliance in the underlying action because Sentry had more funds available to pay Alliance since Sentry did not contribute towards the Taylor settlement.  Presumably, the amount of the extra funds would be the amount, if any, that Sentry is required to pay towards the Taylor settlement in the present action.  Sentry's logic overlooks that its alleged mishandling of its own obligations is the reason it was

MOTION TO DISMISS                                            3:25-CV-07584-WHO

sued.  Sentry ignores that the excess carrier has no obligation until actual exhaustion not based on what might have happened.  To invoke excess coverage, the policy limit of the primary insurance normally must be paid *pursuant to settlement or judgment* against the insured. *Certain Underwriters at Lloyd's of London v. Sup.Ct.* (Powerine Oil Co., Inc.) (Powerine I), 24 Cal. 4th 945, 960, (2001); *Aerojet-General Corp. v. Commercial Union Ins. Co.,*155 Cal. App. 4th 132, 136 (2007).  Unjust enrichment only exists where there is an injustice.  A claim for unjust enrichment requires "receipt of a benefit and unjust retention of the benefit at the expense of another." *Fast Access Specialty Therapeutics, LLC v. UnitedHealth Grp., Inc.*, 532 F. Supp. 3d 956, 970 (S.D. Cal. 2021).  (internal quote and cite omitted).  "Fundamental to a claim for unjust enrichment is the basic notion that a person is not permitted to profit *by his own wrong*." *ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*, No. 11-CV-05149 YGR, 2013 WL 594298, at *1 (N.D. Cal. Feb. 14, 2013) (internal quote and citation omitted).

Here, Federal has not been *unjustly* enriched.  Federal's policy is excess to that of Sentry. Essentially, according to Sentry, when Sentry exhausted its policy limit toward the payment of the Alliance settlement, Federal's policy came into effect and Federal met its obligations under the policy by contributing to the settlement.  The fact that Sentry had more funds available to pay for the Alliance settlement than Sentry would have had if Sentry had made payments toward the Taylor settlement is not the result of wrongdoing on the part of Federal.  Instead, it is the results of Sentry's own conduct and claim handling decisions.  And, plainly, Sentry's own conduct cannot be the grounds of an unjust enrichment.  Accordingly, Sentry's bizarre theory of unjust enrichment fails.

**F.    Because Sentry's Cause Of Action For Equitable Indemnity Fails To State Claims Upon Which Relief May Be Granted, Its Request For Declaratory Relief Fails**

Sentry's Third-Party Complaint contains a cause of action against Federal for declaratory relief, contending that if Sentry owes Wesco or Evanston any reimbursement, such reimbursement is the duty of Federal.

Declaratory relief is not an independent cause of action.  "Declaratory relief is a *procedural* device for granting an equitable remedy, it does not create any substantive rights or causes of

MOTION TO DISMISS                                                3:25-CV-07584-WHO

action." *Yu v. Designed Learned, Inc*, No. 3:15-CV-5345-LB, 2016 WL 7033978, at *3 (N.D. Cal. Dec. 2, 2016) (emphasis added) (internal brackets, quotes and cite omitted).  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  But for a court to grant declaratory relief, the "actual controversy" between the parties "must relate to a claim upon which relief can be granted."  *Lolicel (Pty) Ltd. v. Stanmar Int'l [USA] Inc.*, No. 22CV926-LL-BGS, 2023 WL 3134599, at *7 (S.D. Cal. Apr. 27, 2023) (internal cite omitted).  Accordingly, where a "plaintiff cannot state a claim for relief against defendant, its request for declaratory relief against defendant fails."  *Allied Prop. & Cas. Ins. Co. v. Dick Harris, Inc.*, No. CIV. 2:13-00325 WBS, 2013 WL 2145961, at *6–7 (E.D. Cal. May 15, 2013).

Here, as demonstrated above, Sentry's second cause of action against Federal does not state claims upon which relief can be granted.  The second cause of action is the only cause of action against Federal in the Third-Party Complaint, other than the one for declaratory relief.  Accordingly, Sentry's cause of action for declaratory relief likewise fails to state a claim upon which relief can be granted.

## IV.    CONCLUSION

For all the foregoing reasons, Sentry's Third-Party Complaint fails to state claims upon which relief can be granted against Federal.  Accordingly, Federal requests that the Third-Party Complaint be dismissed with prejudice.

Dated:  May 22, 2026                    MORALES FIERRO & REEVES


                                        By:    */s/Ramiro Morales*
                                               RAMIRO MORALES
                                               CHRISTINE M. FIERRO
                                               CANON T. YOUNG
                                               Attorneys for Third-Party Defendant
                                               FEDERAL INSURANCE COMPANY

MOTION TO DISMISS                                    3:25-CV-07584-WHO