UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESCO INSURANCE COMPANY,<br>Plaintiff,<br>v.<br>SENTRY INSURANCE COMPANY,<br>Defendant. | Case No. 25-cv-07584-WHO<br><br>**ORDER DENYING MOTION TO DISMISS THIRD PARTY COMPLAINT**<br><br>Re: Dkt. No. 80 |

In this insurance dispute, third-party defendant Federal Insurance Company ("Federal") moves to dismiss a third-party complaint ("TPC") filed by defendant and third-party plaintiff Sentry Insurance Company ("Sentry"). The issue is whether a primary insurer, like Sentry, can bring an equitable indemnity claim under California law against an excess insurer, like Federal. Case law is mixed, and California courts have acknowledged there is not controlling authority on this question. Resolution of this legal question is appropriate at summary judgment with a more complete record, not on a motion to dismiss. Sentry's TPC sufficiently alleges a claim for equitable indemnity and unjust enrichment. Federal's motion to dismiss is DENIED.

## BACKGROUND

### A. Factual Background[1]

Wesco, a Delaware corporation with its principal place of business in New York, issued a commercial insurance policy naming Taylor Houseman, Inc. ("Taylor") as an insured. Complaint ("Compl.") [Dkt. No. 1] ¶¶ 1, 6. Sentry, a Wisconsin corporation with its principal place of business in Wisconsin, issued a commercial insurance policy covering Taylor as an additional

[1] These facts come straight from Judge Hixson's well-considered Order at Dkt. 59.

insured party. *Id.* ¶¶ 2, 7–8. This matter arises from an underlying state court action that names Taylor as a defendant. *Id.* ¶ 5; Answer [Dkt. No. 28] ¶ 5; *see Jaurice Hutson v. Taylor Houseman, Inc. et al.*, Contra Costa Superior Court No. CIV MSC21-01940 (the "*Hutson* Action").

Overall, Wesco alleges that it suffered harm when Sentry refused to accept the Statutory Offer for Taylor in the *Hutson* Action and Wesco was forced to pay its excess limits toward satisfying the judgment against Taylor. Compl. ¶¶ 22–26. According to Wesco, Sentry was obligated to accept the Statutory Offer for Taylor as Taylor's primary insurer, and Wesco is now subrogated to the rights of Taylor as against Sentry. *Id.* ¶¶ 28–30.

**B. The Underlying Action and Insurance Policies**

Jaurice Hutson initiated the *Hutson* Action, alleging that on "November 8, 2019, he suffered serious injuries caused by a defective commercial washing machine made and distributed by" Alliance Laundry Holdings, LLC ("Alliance") and sold by Taylor. Compl. ¶ 5; *see* Sentry's Counterclaim ("Counterclaim") [Dkt. No. 29] Ex. C (the "*Hutson* Complaint"). Mr. Hutson alleged four causes of action against Taylor and Alliance: (1) strict products liability for manufacturing defect, design defect, and failure to warn; (2) negligence in, *inter alia*, design and maintenance; (3) breach of implied warranty; and (4) breach of express warranty. *Hutson* Complaint at 16–21. Mr. Hutson alleged that Taylor poorly maintained the subject washing machine for twenty years and that Taylor was negligent in "maintaining, and/or servicing of the subject washing machine." *Id.* at 16, 18–20.

Mr. Hutson served a Statutory Offer on Taylor under Cal. Code of Civil Procedure § 998 to allow judgment to be taken against Taylor in the amount of $1,999,999.99. Compl. ¶ 16; Counterclaim ¶ 49; *see* Counterclaim, Ex. G (the "Statutory Offer") [Dkt. No. 29 at 391]. The Statutory Offer was only to resolve the *Hutson* Action as to Taylor. Counterclaim ¶ 49. Wesco then "committed its excess limits of $1 million" for purposes of accepting the Statutory Offer. Compl. ¶ 23; *see also* Third-Party Complaint ("TPC") [Dkt. No. 60] ¶ 40 ("Wesco agreed to pay $1,000,000 to meet the Offer to Taylor."). Evanston agreed to pay $999,999.99 to meet the Statutory Offer to Taylor. TPC ¶ 41; *see also* Compl. ¶ 24 ("A non-party insurer committed to pay the additional sums needed to satisfy the judgment."). Taylor accepted the Statutory Offer to

United States District Court
Northern District of California

allow judgment to be taken against Taylor in the amount of $1,999,999.99. Compl. ¶ 24. Judgment was entered against Taylor in the *Hutson* Action in the amount of $1,999,999.99. *Id.* ¶ 25.

According to the Complaint and TPC, the *Hutson* Action implicates four insurance policies. Wesco issued a commercial insurance policy naming Taylor as an insured—the policy has a one-million-dollar limit. Compl. ¶ 6; *see* Counterclaim, Ex. B ("Wesco Policy") [Dkt. No. 29 at 85]. Evanston issued Taylor an excess or umbrella policy—the policy has at least a one-million-dollar limit. TPC ¶ 12. Sentry issued a commercial insurance policy naming Alliance as an insured that qualified Taylor as an additional insured party under the policy's Vendor Endorsement—the policy has a two-million-dollar limit. Compl. ¶¶ 7–8; *see* Counterclaim, Ex. A ("Sentry Policy") [Dkt. No. 29 at 11]. Alliance also has excess liability insurance through Federal—the policy has a twenty-five-million-dollar limit. Compl. ¶ 11. The Federal Policy also covers Taylor as an insured party. TPC ¶ 25; *see* Counterclaim, Ex. H ("Federal Policy") [Dkt. No. 29 at 398].

The parties dispute the order of coverage regarding the judgment against Taylor. Wesco alleges that "Sentry's coverage for [Taylor] was and is primary and Wesco's coverage for [Taylor] was and is excess." Compl. ¶ 10. Sentry alleges that Wesco's coverage for Taylor is primary. Counterclaim ¶¶ 8, 27, 30.

### C. Wesco's Allegations in the Complaint

Wesco alleges the following in the Complaint. Wesco issued to Taylor, "as named insured, a policy of commercial general liability insurance, no. WPP1827846 00, for the policy year August 25, 2019–2020, with per-occurrence limits of insurance of $1 million." Compl. ¶ 6.

As Taylor's primary insurer, Sentry agreed to defend Taylor in the *Hutson* Action. *Id.* ¶ 12. Sentry hired separate defense counsel to represent Taylor and Alliance—both counsel were supervised by the same Sentry claims adjuster. *Id.* ¶ 13.

Taylor's counsel "advised Sentry and Wesco that the value of the claims against [Taylor] in the underlying *Hutson* action exceeded the value of" the Statutory Offer. *Id.* ¶ 18. As Taylor's excess insurer, Wesco demanded that Sentry accept the Statutory Offer "within Sentry's limits on

or before the offer's expiration." *Id.* ¶ 19. In its demand letter, Wesco invited Sentry to share evidence that its limits were impaired. *Id.* ¶ 20. Sentry rejected Wesco's demand, did not provide evidence of impairment, and did not offer to pay any portion of Taylor's liability under the Statutory Offer. *Id.* ¶¶ 21–22. Sentry's actions threatened Taylor "with liability in excess of the Sentry policy limits." *Id.* ¶ 30.

At no point did Mr. Hutson's "demands for settlement against [Alliance] exceed or threaten to exceed the $25 million limits of Federal's excess policy, without considering Sentry's primary policy." *Id.* ¶ 17. Had Sentry accepted the Statutory Offer, "Sentry's named insured would have remained fully protected by its excess insurance coverage, thereby eliminating financial exposure to [Taylor] without prejudice to the interests of [Alliance]." *Id.* ¶ 34.

As Taylor's excess insurer, "Wesco should not have been required to pay out Wesco's limits of insurance on behalf of [Taylor] toward satisfaction of the judgment, in whole or in part[.]" *Id.* ¶ 33. Wesco therefore suffered damages in the amount of at least one million dollars for the amount that it paid toward satisfying the judgment against Taylor. *Id.* ¶¶ 31, 34.

### D. Sentry's Third Party Complaint

Sentry alleges the following in the TPC. Sentry issued "a primary commercial general liability policy" to Alliance with "a products-completed operations aggregate policy limit of $2,000,000." TPC ¶ 8, Ex. A. The Sentry Policy includes an each-occurrence deductible of $250,000. *Id.* ¶ 9. Alliance entered into an agreement with Taylor "under which Taylor agreed to indemnify and hold harmless Alliance from any and all claims and litigation arising out of or occasioned by the negligent, faulty or improper installation or repair of Alliance washers by Taylor or any of its customers." *Id.* ¶ 14.

Sentry agreed to defend Alliance in the *Hutson* Action and also agreed to defend Taylor, subject to a reservation of rights. *Id.* ¶¶ 26–27. Taylor waived its right to use independent counsel for its defense. *Id.* ¶ 28.

At the time of the Statutory Offer, "the Sentry Policy's applicable aggregate limit of liability had been eroded through the payment of sums towards the resolution of other claims." *Id.* ¶ 37. The Policy's deductible also reduced the limit of liability. *Id.* Sentry sought Federal's

United States District Court
Northern District of California

consent for Sentry to contribute toward the Statutory Offer, but Federal did not provide its consent. *Id.* ¶ 38. Sentry was unable to contribute to the Statutory Offer "[g]iven the competing demands for the remaining Sentry Policy limits, the fact that the Offer exceeded those limits, and the lack of consent by Federal." *Id.* ¶ 39. After claims in the *Hutson* Action were resolved against Taylor, Sentry paid sums toward the settlement of claims against Alliance, "which have exhausted [Sentry's] applicable limit of liability." *Id.* ¶ 42.

Evanston notified Sentry that it contends that Sentry owes Evanston reimbursement of the amount Evanston paid to resolve the *Hutson* Action for Taylor and that Evanston's claim for reimbursement "had priority over any claim made by Wesco." *Id.* ¶¶ 44–45.

"Sentry denies that it owes any sums to Wesco, Evanston, or any other entity regarding the sums paid to resolve" the *Hutson* Action. *Id.* ¶ 46. The Federal Policy is specifically excess to the Sentry Policy. *Id.* ¶ 10. The Evanston Policy is specifically excess to the Wesco Policy. *Id.* ¶ 12. Both the Wesco Policy and Evanston Policy insured Taylor's obligation to indemnify and hold harmless Alliance for the *Hutson* Action. *Id.* ¶¶ 20–21. The Wesco Policy "is the only primary policy that insures Taylor for negligence related to the installation, inspection, adjustment, testing, servicing or repair of the washer, or any other independent negligence of Taylor." *Id.* ¶ 32. And the Evanston Policy is the only excess policy that insures Taylor for negligence. *Id.* ¶33.

To the extent that Sentry has liability to Wesco or Evanston for their sums paid for Taylor in the *Hutson* Action, "Federal is primarily liable due to its failure to consent." *Id.* ¶ 64. In addition, any amount which Sentry owes Wesco or Evanston "represents an amount by which Federal has been unjustly enriched, in that Federal avoided contributing that amount toward the settlement of the claims against Alliance." *Id.* ¶ 66. This is because the Sentry Policy was exhausted through the *Hutson* Action; thus, any amount Sentry had contributed for Taylor "would have reduced the amount available for Sentry to contribute to the settlement claims against Alliance, thereby increasing the amount that Federal would have had to contribute." *Id.* ¶ 65.

### E. Procedural Background

The *Hutson* Action commenced on September 15, 2021, when Mr. Hutson filed a complaint in the Contra Costa Superior Court. *Hutson* Complaint at 1. On April 16, 2025, Mr.

United States District Court
Northern District of California

Hutson served the Statutory Offer on Taylor. Compl. ¶ 16. On August 12, 2025, Taylor's counsel accepted the Statutory Offer, allowing judgment to be taken against Taylor. *Id.* ¶ 24. On August 21, 2025, judgment was entered against Taylor in the *Hutson* Action. *Id.* ¶ 25.

On September 5, 2025, Wesco filed its complaint against Sentry, alleging three causes of action under California law: (1) Breach of Contract (In Subrogation); (2) Breach of Implied Covenant of Good Faith and Fair Dealing (In Subrogation); and (3) Declaratory Judgment. Compl. ¶¶ 27–35. Later, on December 17, 2025, Sentry filed an answer to the Complaint and filed counterclaims against Wesco for declaratory relief and equitable contribution. Dkt. Nos. 28–29. Wesco filed an answer to Sentry's counterclaims on January 21, 2026. Dkt. No. 33.

On February 17, 2026, Sentry filed a motion for leave to file a third-party complaint against Federal and Evanston. *See* Dkt. No. 42. Magistrate Judge Hixson granted Sentry's request on March 20, 2026. *See* Order Granting Defendant's Motion for Leave to File [Dkt. No. 59]. Sentry then filed its TPC on March 24, 2026. *See* TPC [Dkt. No. 60]. Federal moved to dismiss the DPC on May 22, 2026. *See* Motion to Dismiss Sentry's TPC ("Mot.") [Dkt. No. 80]. Sentry filed an opposition on June 5, 2026. *See* Opposition to Motion to Dismiss TPC ("Oppo.") [Dkt. No. 86]. Federal replied on June 12, 2026. *See* Reply in Support of Motion to Dismiss ("Repl.") [DKt. No. 90]. I heard oral argument on July 8, 2026.[2]

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a

[2] The parties stipulated on June 26, 2026 to dismiss Evanston from the TPC. Evanston is hereby DISMISSED with prejudice. This order only considers Sentry's TPC as applied to Federal.

plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiffs' allegations as true and "draw[s] all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001)).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. Equitable Indemnity

Sentry's second cause of action asserts that it is entitled to equitable indemnity from Federal. TPC ¶¶ 60–67. Specifically, Sentry claims that "to the extent [it] was obligated to contribute any amount towards satisfaction of the Offer, Sentry was precluded from doing so by the lack of consent by Federal." *Id.* ¶ 62. Federal now moves to dismiss the equitable indemnity claim on two independent grounds: that (1) California law does not recognize equitable indemnity claims against an excess carrier, and (2) even if it did, the facts in the TPC do not support Sentry's claim. Mot. at 5–11. I address each argument in turn.

#### A. Governing Law

"Under well-settled insurance principles, there are two levels of insurance coverage, primary and excess." *Reliance Nat. Indem. Co. v. Gen. Star Indem. Co.*, 72 Cal. App. 4th 1063,

United States District Court
Northern District of California

1076 (1999). Primary insurance is "insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability." *Id.* (quoting *Olympic Ins. Co. v. Emps. Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 597–98 (1981)). Excess coverage, by contrast, is "coverage whereby, under the terms of the policy, liability attaches *only after* a predetermined amount of primary coverage has been exhausted." *Id.* (emphasis added).

Equitable indemnity and equitable contribution are two distinct theories that an insurer may raise to recover losses in a dispute with another insurer. *See Travelers Indem. Co. of Connecticut v. Hudson Ins. Co.*, 442 F. Supp. 3d 1259, 1268 (E.D. Cal. 2020) (noting the three theories of recovery are (1) indemnity, (2) subrogation, and (3) contribution)). Traditional equitable indemnity is "premised on a joint legal obligation to another for damages," but "does not invariably follow fault." *Prince v. Pac. Gas & Elec. Co.*, 45 Cal. 4th 1151, 1158 (2009) (quoting *W. Steamship Lines, Inc. v. San Pedro Peninsula Hosp.*, 8 Cal.4th 100, 114 (1994)). "In the insurance context, equitable indemnity applies 'in cases in which one party pays for a debt for which another is primar[il]y liable and which in equity and good conscience should have been paid by the latter party.'" *Columbia Cas. Co. v. Fed. Ins. Co.*, No. 13-cv-01014-HSG, 2015 WL 4734704, at *5 (N.D. Cal. Aug. 10, 2015) (Gilliam, J.) (quoting *United Servs. Auto. Ass'n v. Alaska Ins. Co.*, 94 Cal. App. 4th 638, 644–45 (2001)). To plead a cause of action for equitable indemnity, a plaintiff must establish "(1) a showing of fault on the part of the indemnitor; and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible." *Starr Indem. & Liab. Co. v. Peerless Ins. Co.*, No. CV 15-643-JFW (JCx), 2015 WL 3843526, at *5 (C.D. Cal. June 22, 2015) (citing *Gouvis Eng'g v. Sup. Ct.*, 37 Cal. App. 4th 642, 646 (1995)).

Equitable contribution, by contrast, "arises only when all of the insurance carriers 'share the *same* level of obligation on the *same* risk as to the *same* insured.'" *Fireman's Fund Ins. Co. v. Commerce & Indus. Ins. Co.*, No. C-98-1060VRW, 2000 WL 1721080, at *3 (N.D. Cal. Nov. 7, 2000) (Walker, J.) (emphasis added) (quoting *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1294 n.4 (1998)). While equitable contribution is a "loss-sharing procedure,"

equitable indemnity is a "loss-shifting procedure." *Travelers Indem. Co. of Connecticut v. Navigators Specialty Ins. Co.*, 70 Cal. App. 5th 341, 362–63 (2021). In other words, equitable contribution is the "right to recover, not from the party *primarily* liable for the loss, but from a *co-obligor who shares such* liability with the party seeking contribution." *Reliance*, 72 Cal. App. 4th at 1078 (emphasis in original).

The parties agree that California law prohibits equitable contribution claims brought by a primary insurer against an excess insurer. Where the parties differ is whether the same prohibition applies to equitable indemnity claims. Federal says no. Mot. at 6. In its view, under California law a "primary insurer is not entitled to indemnification from a third party's excess insurer." *Id.*; *Columbia Cas. Co.*, 2015 WL 4734704, at *5 (quoting Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2000) ¶ 9:69.1, p. 9–20); *Reliance*, 72 Cal. App. 4th at 1063). While Federal recognizes that *Reliance* "focused on the difference between contribution and subrogation," it highlights caselaw suggesting that equitable indemnity also applies:

> The court [in *Reliance*] utilized the terms "contribution" and "indemnification" interchangeably and the plaintiff in the case sought 'complete indemnity' rather than just proportionate contribution. . . . Thus, the court's affirmance of summary judgment, albeit based on a finding that no "contribution" claim existed, implicitly held that the primary insurer's indemnification claim in the primary/excess insurer context was likewise not available.

Mot. at 6 (quoting *Fireman's Fund Ins. Co.*, 2000 WL 1721080, at *4).

Federal also notes that "numerous California cases do not even permit an excess carrier to assert a claim of equitable indemnity against a primary carrier even though the equities in that situation are crystal clear." *Id.* at 7 (citing *RSUI Indem. Co. v. Discover P & C Ins. Co.*, No. 2:13-cv-00960-TLN, 2013 WL 5375528, at *6 (E.D. Cal. Sept. 24, 2013) ("Generally, excess insurers are limited to equitable subrogation when seeking reimbursement from a primary insurer and cannot proceed under a theory of equitable indemnity."); and *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 21 Cal. App. 4th 1586, 1600 (1994) ("California cases which have upheld an excess insurer's right to sue a primary insurer have concluded such right devolves by subrogation to the insured's rights against the primary carrier, rather than by reason of some independent duty.")). And it maintains that "no California case . . .has ever permitted [a] claim" for a primary

carrier to assert equitable indemnity against an excess carrier. *Id.*

Sentry responds that Federal "conflat[es] . . . equitable contribution with equitable indemnity," and that Federal's caselaw only suggests that equitable *contribution* is unavailable between insurers at different levels. Oppo. at 8; *see, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Ins. Co. of the State of Pennsylvania*, No. 15-cv-02744-LHK, 2016 WL 1191808, at *7 (N.D. Cal. Mar. 28, 2016) (Koh, J.) ("[N]otwithstanding *Fireman's Fund II*, equitable indemnity is not equivalent to equitable contribution," and "unlike a claim for equitable contribution, a claim for equitable indemnity could be brought by an excess insurer against a primary insurer."). And because Sentry "does not seek to share a loss with Federal as a co-insurer at the same level," but rather to "shift loss to Federal on the ground that Federal should have borne the liability that Sentry is now being asked to pay," Sentry argues that this is a "textbook equitable indemnity claim" viable under California law. Oppo. at 8–9.

Sentry relies primarily on *Travelers Indemnity Co. of Connecticut v. Navigators Specialty Insurance Co.*, 70 Cal. App. 5th 341 (2021), for its position that equitable indemnity claims can be brought in California against insurers of different risk tiers. Sentry first points out that *Travelers* noted "[c]ase law and commentators [both] recognize that an equitable indemnity claim may be asserted in a dispute between insurance carriers." *Id.* at 362. It also notes that *Travelers* distinguished equitable indemnity as a "loss-shifting procedure" that "applies in cases in which one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party." *Id.* at 363. Ultimately, the court recognized that "an insurer may settle a claim against its insured without prejudice to its right to seek equitable indemnity from other insurers potentially liable on the same risk on the ground that, although the settling insurer's policy does not provide coverage, there is coverage under the other policies." *Id.* at 364.

In his order granting Sentry to file a third-party complaint, Judge Hixson agreed with Sentry. There, he noted:

> Sentry contends that its proposed indemnity claim against Federal is not foreclosed because California law does not limit equitable indemnity claims to as between traditional "joint tortfeasors." Reply

> at 5:14–6:9. The Court agrees. In California, equitable indemnity applies differently to disputes between insurance carriers than in other contexts. *The Travelers Indem. Co. of Connecticut v. Navigators Specialty Ins. Co.*, 70 Cal. App. 5th 341, 361–64 (2021). "Case law and commentators recognize that an equitable indemnity claim may be asserted in a dispute between insurance carriers, even though they are not joint tortfeasors." *Id.* at 362. "Equitable indemnity is a *loss shifting* procedure"—it "applies in cases in which one party pays a debt *for which another is primarily liable* and which in equity and good conscience should have been paid by the latter party." *Id.* at 363 (emphasis in original) (cleaned up); *see also St. Paul Fire & Marine Ins. Co. v. Ins. Co. of the State of Pennsylvania*, No. 15-cv-02744-LHK, 2016 WL 1191808, at *4 (N.D. Cal. Mar. 28, 2016) ("California law permits claims for reimbursement for unjust enrichment in the insurance context.") (citing *Hartford Casualty Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 998 1000 (2015)). Sentry seeks to shift any loss it incurs by reason of Wesco's claims to Federal which is plainly allowed under California law.

Order at 13–14.

Judge Hixson permitted Sentry to file the TPC on this theory, *see* Oppo. at 20–21, but the liberal standard governing leave to file under Federal Rule 14 does not control my review of the TPC under Rule 12(b)(6). While *Travelers* notes that insurers who are not joint tortfeasors may utilize equitable indemnity as a means to recoup losses, a close reading questions whether this applies in the instant context. In *Travelers*, the California Court of Appeal noted that "federal courts have come to differing conclusions on the issue of whether a claim for equitable indemnity—like a claim for equitable contribution—is unavailable between carriers who do not share the same level of obligation on the same risk to the same insured." 70 Cal. App. 5th at 363 n.17 (collecting cases)[3]. The court ultimately noted that it was "unaware of any California authority directly on point," and that while it "could eventually become necessary . . . for the trial court to address that issue, it [was] not presently presented, and [the court] therefore do not express any view on the matter." *Id.*

The cases cited by *Travelers* are different from this situation, as they involved cases

[3] Compare *Am. Alternative Ins. Corp. v. Hudson Specialty Ins. Co.*, 938 F. Supp. 2d 908 (C.D. Cal. 2013) (equitable indemnity claim is not available to an excess carrier against a primary carrier) and *Fireman's Fund Ins. Co. v. Commerce & Industry Ins. Co.*, 2000 WL 1721080, at *5 (N.D. Cal. Nov. 7, 2000) (same), *with Travelers Indemnity Co. of Connecticut v. Hudson Ins. Co.*, 442 F. Supp. 3d 1259, 1269–70 (E.D. Cal. 2020) (excess carrier may pursue a claim for equitable indemnity against a primary carrier); *Cont'l Casualty Co. v. St. Paul Surplus Lines Ins. Co.*, 2014 WL 4661087, at *18 (E.D. Cal. Sept. 17, 2014) (same); *Lexington Ins. Co. v. Sentry Select Ins. Co.*, 2009 WL 1586938, at *19 (E.D. Cal. June 5, 2009) (same).

United States District Court
Northern District of California

involving excess carriers seeking equitable indemnity against a primary carrier. But *Travelers* still acknowledges—and ultimately, does not resolve—the inverse question. And while *Travelers* does not endorse Sentry's theory, neither does it reject it. Instead, *Travelers* confirms that California law remains unsettled on the precise question at issue here. Because Sentry's theory is plausible, and it will help to have a complete record, I deny Federal's motion.

**B. Third Party Complaint**

Federal argues that even if California recognizes an equitable indemnification claim between primary and excess insurers, Sentry has not alleged facts that satisfy the elements of equitable indemnity. Mot. at 8–11. Sentry acknowledges that the crux of its equitable indemnity claim rests on the issue of consent: "Sentry sought Federal's consent to contribute a portion of its limits toward a settlement on behalf of Taylor, Federal refused, and as a result Sentry was unable to accept the Offer to Compromise." Oppo. at 12 (citing TPC ¶¶ 38–39, 62–64). The TPC similarly alleges that "Federal is primarily liable due to its failure to consent" to the Offer to Compromise. *Id.* (quoting TPC ¶ 64).[4]

Federal asserts that "an excess [] carrier's consent is not necessary for a primary carrier to contribute towards the satisfaction of a settlement." Mot. at 8. Relying on *Diamond Heights Homeowners Association v. National American Insurance Co.*, Federal contends that a primary insurer retains exclusive control over settlement negotiations and may accordingly enter into a good-faith settlement that implicates excess insurers without obtaining their consent. *See* 227 Cal. App. 3d 563, 577–80. The *Diamond Heights* court explained that the primary insurer's "right of control extends to all aspects of the defense, including the negotiation of any settlement prior to trial," and ultimately found that a primary insurer "may negotiate a good faith settlement of a claim in an amount which invades excess coverage . . . without the excess insurer's consent." *Id.* at 578, 580; *see also Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958, 987 (2006) (noting that "[i]t would impose an unnecessary burden on primary insurers and parties

[4] The TPC also alleges, as an "entirely independent basis for indemnity," that Federal was unjustly enriched because any contribution by Sentry toward the Taylor settlement would have reduced funds available for Alliance. TPC ¶¶ 65–66. I address this argument in Section II, *supra*.

United States District Court
Northern District of California

to an underlying action to hold that an excess insurer has an absolute right to withhold its consent to a settlement[.]").

Sentry, in response, contends that Federal's argument "misconstrues [its] claim" and must be denied. Oppo. at 13. It first notes that "whether Federal's consent was legally required under the circumstances of this case is a disputed question of fact that cannot be resolved on a motion to dismiss." *Id.* Moreover, it alleges that *Diamond Heights* is distinguishable. While *Diamond Heights* "addresse[d] only whether a primary insurer is legally *entitled* to settle without excess carrier consent," Sentry argues that the settlement offer here "exceeded Sentry's available limits, and therefore . . . *required* Federal's participation to fund the portion above the Sentry limit." *Id.* (emphasis added). "Without Federal's contribution," it argues, "there was no way to accept the Taylor-only Offer within the remaining Sentry limits." *Id.* at 13–14.

Sentry also asserts that because Federal provided excess insurance coverage for Alliance, Federal could later pursue an equitable subrogation claim on Alliance's behalf if Sentry used its policy limits to settle Taylor's claims to the detriment of Alliance. *Id.* at 14. This then created a "Catch-22 manufactured by Federal's own conduct: settle for Taylor and face a subrogation claim from Federal or decline to settle and face the claims now asserted by Wesco and Evanston." *Id.* Sentry concludes that "Federal cannot create this dilemma through its own refusal to consent and then argue that its refusal has no relation to the present dispute between Sentry and Wesco." *Id.*

Accepting Sentry's allegations as true, I agree with Sentry that the TPC supports this characterization. Sentry alleges that the Settlement Offer "exceeded the Sentry Policy limits," that "coverage provided by the Federal Policy follows form to the Sentry Policy," and that "to the extent Sentry was obligated to contribute toward the satisfaction of the Offer, Federal was also obligated to contribute toward the Offer and to provide its consent for Sentry to contribute." TPC ¶ 63. Sentry also alleges that it was ultimately "precluded from doing so by the lack of consent by Federal." *Id.* ¶ 62. These allegations plausibly suggest that Sentry's loss was not a result of Federal's refusal to fund the Taylor settlement, but rather from its refusal to consent when Sentry faced competing obligations to Taylor and Alliance with limited funds.

Federal's reliance on *Diamond Heights* does not change this outcome. *Diamond Heights*

makes clear that a primary insurer may settle a claim implicating an excess insurer without their consent. 227 Cal. App. 3d at 577–80. It does not, however, address the issue central to this case: whether a primary insurer may raise an equitable indemnity claim alleging that an excess insurer's refusal to consent caused the primary insurer to face competing obligations from insureds with limited funds. Drawing all reasonable inferences in Sentry's favor, I cannot conclude that *Diamond Heights* forecloses Sentry's theory as a matter of law.

Accordingly, Sentry has plausibly alleged a claim for equitable indemnity. Federal's motion to dismiss is DENIED.

## II. Unjust Enrichment

In its equitable indemnity cause of action, Sentry alleges:

> As an entirely independent basis for indemnity against Federal, the applicable limit of liability of the Sentry Policy has been exhausted through the payment of claims toward the settlement of the *Underlying Action* with respect to Alliance. Therefore, any amount that Sentry had contributed toward the settlement of the *Underlying Action* with respect to Taylor would have reduced the amount available for Sentry to contribute to the settlement claims against Alliance, thereby increasing the amount that Federal would have had to contribute.

TPC ¶ 65. Federal now moves to dismiss this unjust enrichment theory. Mot. at 11–12. In its view, "Federal has not been *unjustly* enriched," as its policy is "excess to that of Sentry." *Id.* at 12 (emphasis in original). "Essentially," in its view, "when Sentry exhausted its policy limit toward the payment of the Alliance settlement, Federal's policy came into effect and Federal met its obligations under the policy by contributing to the settlement." *Id.* That Sentry had "more funds available to pay for the Alliance settlement" is "not the result of wrongdoing on the part of Federal," but is instead the "result[] of Sentry's own conduct and claim handling decisions." *Id.* Finding this theory to be "bizarre," Federal concludes that dismissal is appropriate. *Id.*

Sentry responds by arguing that Federal "ignores the specific theory alleged" in the TPC: that Federal was unjustly enriched because "any amount Sentry contributed toward the settlement of the Taylor claims would have reduced the amount available for Sentry to contribute to the settlement of the Alliance claims, 'thereby increasing the amount that Federal would have had to contribute.'" Oppo. at 15–16 (quoting TPC ¶ 65). In other words, Sentry believes that it alleged

United States District Court
Northern District of California

"Federal paid less toward the Alliance settlement than it otherwise would have because Sentry did not use any of its limits toward the Taylor settlement." *Id.* at 16. Based on this reasoning, Sentry concludes that if it were "now required to reimburse Wesco, Federal will have been unjustly enriched by the corresponding amount." *Id.*

I agree with Sentry and conclude that the allegations are sufficient at the pleading stage. California law permits unjust enrichment claims in the insurance context. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Ins. Co. of the State of Pennsylvania*, No. 15-cv-02744-LHK, 2016 WL 1191808, at *7–8 (N.D. Cal. Mar. 28, 2016) (Koh, J.). As indicated above, Sentry's theory of the case is at least plausible. And Federal's contention that it was not "unjustly" enriched is a question of fact that cannot be resolved at this stage. Accepting Sentry's allegations as true, it has sufficiently pleaded an unjust enrichment claim under Rule 8. Federal's motion to dismiss is therefore DENIED.

### III. Declaratory Relief

Federal finally moves to dismiss Sentry's third cause of action for declaratory relief. In its view, because "Sentry's second cause of action against Federal [for equitable indemnity] does not state claims upon which relief can be granted," Sentry cannot raise a claim for declaratory relief. Mot. at 13; *see Allied Prop. & Cas. Ins. Co. v. Dick Harris, Inc.*, No. CIV. 2:13–00325 WBS DAD, 2013 WL 2145961, at *6–7 (E.D. Cal. May 15, 2013) (finding that where a "plaintiff cannot state a claim for relief against defendant, its request for declaratory relief against defendant falls."). That may be true. But as indicated above, Sentry's equitable indemnification claim passes Rule 8 muster. Accordingly, Sentry's declaratory relief claim does not fall on this basis. Federal's motion to dismiss is DENIED.

## CONCLUSION

For the reasons above, Federal's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: August 19, 2026



William H. Orrick
United States District Judge

United States District Court
Northern District of California